# PROPOSED SECOND AMENDED COMPLAINT

# IN THE UNITED STATED DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

FRANK E. ACIERNO, CHRISTIANA :
TOWN CENTER, LLC, a Delaware limited :
liability company, 395 ASSOCIATES, LLC,:
a Delaware limited liability company, :
ESTATE HOMES, INC., a Delaware :
corporation, STERLING PROPERTY :
HOLDINGS, INC., a Delaware corporation, :
 :
  Plaintiffs, : C.A. No. 04-1376
 :
  v. :
 :
GEORGE O. HAGGERTY, individually and:
in his official capacity as Assistant General :
Manager of the New Castle County :
Department of Land Use, SCOTT G. :
WILCOX, individually and in his official :
Capacity as a First Assistant County :
Attorney, TIMOTHY P. MULLANEY, :
individually and in his capacity as New :
Castle County Attorney, CHARLES L. :
BAKER, individually and in his capacity as :
General Manager of the New Castle County :
Department of Land Use, JAMES H. :
EDWARDS, individually and in his capacity:
As Inspections Manager and Licensing :
Division Manager of the New Castle County:
Department of Land Use, and SHERRY L. :
FREEBERY, in her individual capacity as :
Chief Administrative Office of New Castle :
County, and NEW CASTLE COUNTY, a :
political subdivision of the State of :
Delaware, :
 :
  Defendants. : JURY TRIAL DEMANDED

## SECOND AMENDED COMPLAINT

The Plaintiffs bring this action against Defendants as follows:

## THE PARTIES

1.      Plaintiff Frank E. Acierno ("Acierno") is the owner of certain real estate related businesses, with offices located in New Castle County, Delaware.

2.      Plaintiff Christiana Town Center, LLC ("Christiana" and collectively with other plaintiffs "Acierno") is a Delaware limited liability company owned by Acierno.

3.      Plaintiff 395 Associates, LLC ("395" and collectively with other plaintiffs "Acierno") is a Delaware limited liability company owned by Acierno.

4.      Plaintiff Estate Homes, Inc. ("EHI" and collectively with other plaintiffs "Acierno") is a Delaware corporation owned by Acierno.

5.      Plaintiff Sterling Property Holdings, Inc., formerly known as Sterling Properties, Inc., ("Sterling" and collectively with other plaintiffs "Acierno") is a Delaware corporation owned by Acierno.

5.6.    Defendant George O. Haggerty ("Haggerty") is a Maryland resident who is employed as the Assistant General Manager of the New Castle County Department of Land Use, with offices located at 87 Reads Way, New Castle, DE 19720.  Haggerty was hired by the current New Castle County government administration headed by County Executive Thomas P. Gordon (the "Gordon Administration").

6.7.    Defendant Scott G. Wilcox ("Wilcox") is believed to be a Delaware resident, who at all times relevant to this action was either a First Assistant County Attorney or private outside legal counsel on behalf of the County in dealing with Plaintiffs.  Wilcox was hired by the Gordon Administration.

7.8.    Defendant Timothy P. Mullaney ("Mullaney") is a resident of Kent County, Delaware, who at all times relevant to this action was employed as the purported New Castle

County Attorney, with offices located at 87 Reads Way, New Castle, DE 19720. Mullaney was purportedly the County Attorney, the head of the Office of Law, and served as direct supervisor of Wilcox in Wilcox's dealings with Plaintiff. Mullaney was hired by the Gordon Administration.

8.9.     Defendant Charles L. Baker ("Baker") is a Delaware resident employed as the General Manager of the New Castle County Department of Land Use, with offices located at 87 Reads Way, New Castle, DE 19720. Baker is the administrative head of the New Castle County Department of Land Use, and is Haggerty's direct supervisor. Baker was hired by the Gordon Administration.

9.10.     Defendant James H. Edwards ("Edwards") is a Delaware resident currently employed as the Licensing Division Manager (and previously as the Inspections Manager) for the New Castle County Department of Land Use, with offices located at 87 Reads Way, New Castle, DE 19720. Edwards was hired by the Gordon Administration.

10.11.     Defendant Sherry L. Freebery ("Freebery") is a Delaware resident employed as the Chief Administrative Officer of New Castle County, with offices located at 87 Reads Way, New Castle, DE 19720. Freebery is responsible for the management of the executive branch of the County and is Baker's and Mullaney's direct supervisor pursuant to Title 9 of the Delaware Code. Freebery was hired by Gordon, and Freebery was the Chief Administrative Officer when all other individual Defendants were hired.

11.12.     Defendant New Castle County ("County") is a political subdivision of the State of Delaware, with offices located at 87 Reads Way, New Castle, Delaware 19720. The County is created by and subject to the grant of powers and mandatory responsibilities contained in the Delaware Code at 9 Del. C. § 1101, *et seq.*

## JURISDICTION

~~12.~~13. This Court possesses subject matter jurisdiction over this controversy pursuant to 28 U.S.C. § 1343(a)(3), because this Court enjoys original jurisdiction over any civil action authorized by law to be commenced by any person to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

~~13.~~14. This Court also possesses subject matter jurisdiction over this controversy pursuant to 28 U.S.C. § 1331, because this Court enjoys original jurisdiction of any civil action arising under the Constitution, laws or treaties of the United States.

~~14.~~15. This Court also possesses subject matter jurisdiction over this controversy pursuant to 18 U.S.C. § 1964(c), because this Court enjoys original jurisdiction when any person is injured in his business or property by reason of a violation of 18 U.S.C. § 1962.

~~15.~~16. This Court also possesses subject matter jurisdiction over this controversy pursuant to 28 U.S.C. § 1367, because this Court may adjudicate state law claims that arise out of a common nucleus of operative fact.

## VENUE

~~16.~~17. Venue is proper in the District of Delaware under 28 U.S.C. § 1391(b) since a substantial part of the events and omissions giving rise to the claims asserted by plaintiffs occurred in this district and the property that is the subject of this action is situated in this district.

579628v1

4

## FACTUAL BACKGROUND

~~17.~~18. The current New Castle County Executive, Thomas P. Gordon ("Gordon") was elected in 1996 and 2000 based, in part, upon an anti-developer platform. Because of a two term limit in Delaware for a New Castle County Executive, Gordon could not run in the 2004 County Executive race.

~~18.~~19. State law did not prohibit Gordon's Chief Administrative Officer, Freebery, from running for the office of County Executive in 2004. Freebery ran for County Executive and, following Gordon's past election tactics, publicly and falsely alleged that Acierno was consistently attempting to subvert the law and that his efforts would be vigorously opposed by the County.

~~19.~~20. In or about the year 2002, Haggerty, Wilcox, ~~and~~ Freebery and Baker decided to act in concert to plan and carry out a scheme and conspiracy to deny Acierno his legal right to use and develop properties owned by him in the unincorporated areas of New Castle County within the County's land use regulatory jurisdiction.

~~20.~~21. On December 31, 2002, Haggerty and Wilcox improperly and unlawfully canceled a meeting regarding development of property owned by Acierno's corporation, Sterling Properties, Inc. (the "Pre-Construction Meeting"), thereby preventing Acierno from commencing construction in order to comply with a year-end 2002 deadline to preserve property rights under a previously approved land development plan known as Red Lion Village.

~~21.~~22. Thereafter, Baker improperly and unlawfully ordered that the development plan for Red Lion Village was legally invalidated pursuant to a letter sent via U.S. Mail. These actions have caused Acierno to be unable to utilize his lands in accordance with the previously approved land development plan, to expend substantial sums in attorneys fees to obtain legal

redress for the Defendant's violations of his rights, and to generally deny Acierno the opportunity to use and develop his property as he had intended to and would have otherwise been legally entitled to do.

23.    On March 13, 2002, Baker issued a letter decision to Acierno to expire his record major subdivision plan for a shopping mall known as the Christiana Fashion Center based upon the assertion that he had no alternative under the 1995 County Code due to the fact that a letter from the Delaware Department of Transportation ("DelDOT") required by § 32-97(d)(5) of the Code had not been received by the legal deadline.  In fact, the County had received in substance all comments necessary to satisfy the requirements of § 32-97(d)(5) in a DelDOT letter one (1) month prior.  In addition, the County Code only required Acierno's plan to substantially comply as to form with the document submissions, which the County conceded Acierno had done based upon correspondence admitting that everything was submitted other than the letter from DelDOT expressly stating that it was satisfying the Code provision items needing review and approval.

24.    It is believed, and therefore averred, that Baker took the actions that he did with regard to the Christiana Fashion Center Plan based upon either general or specific direction from Freebery to use any opportunity he could to misapply the law with an aim toward denying Acierno the right to use and develop his lands, or based upon specific instructions from Freebery to not allow the Christiana Fashion Center Plan to be approved.

25.    It is also believed, and therefore averred, that Baker enlisted the assistance of Wilcox in preparing the expiration letter regarding the Christiana Fashion Center plan based upon a reason which in isolation would appear to be technically plausible, but which was in fact known by both of them to be nothing more than a pretext to further the illegal plan and scheme that had been concocted and carried out by them in conjunction with Freebery's orders.

22.26. On December 31, 2002 and January 3, 2002, Wilcox sent certain letters regarding legally and factually incorrect justifications for canceling the Pre-Construction Meeting. The letters were posted in the United States Mail and sent over the telephone via facsimile transmission.

23.27. On January 15, 2003, Haggerty and Wilcox continued their scheme to deny Acierno his rights by issuing a Violation Notice under the County Drainage Code regarding property he owned known as the Christiana Town Center shopping center. A Rule to Show Cause hearing was unilaterally scheduled for January 24, 2003 by Haggerty and Wilcox, and certain Plaintiffs were given less than 24 hours advance notice of the hearing. At the hearing, Haggerty, with Wilcox's express assistance and involvement, found Christiana to be in violation of numerous non-existent provisions of the County Drainage Code, many of which Christiana could not have come into compliance with as a practical matter given the short time period between the date of the Violation Notice issuance and the date of the Rule to Show Cause hearing and the adverse weather conditions. The purpose of Haggerty and Wilcox's unreasonable actions was to further their scheme to deny Acierno his constitutional right to use and develop his property. This phase of the Haggerty-Wilcox conspiracy was carried out through use of the United States mail and via telephone calls.

24.28. On January 24, 2003, a factually incorrect and legally unsupported Violation Notice was issued to Christiana regarding the alleged failure to obtain a Certificate of Occupancy for Building Nos. 4 and 5 at the Christiana Town Center shopping center (the "Shopping Center"). The Violation Notice was issued despite the fact that Certificates of Occupancy had already been issued for all space in Building Nos. 4 and 5, and that the space was already occupied by two (2) retail tenants. The County Code only requires Certificates of Occupancy to

7

be issued for space that is actually occupied, and Christiana was in full compliance with the Code at the time of the issuance of the Violation Notice. Despite this fact, Haggerty and Wilcox brought the bogus charges, prosecuted them, and forced Christiana to spend substantial sums in attorneys fees in prosecuting appeals thereof. This phase of the scheme included use of the United States mails, telephone facsimiles, and telephone calls by Haggerty and Wilcox.

25.29. In March of 2003, Haggerty and Wilcox further carried out their scheme to deny Acierno his constitutional right to use and develop his lands by improperly and unlawfully denying Christiana and one of its tenants, Bertucci's Restaurant Corp., the ability to obtain building permits necessary to complete a small restaurant building at the Christiana Town Center. In the process, Wilcox acted outside of his role as First Assistant County Attorney, instead taking on a role as an administrative decision-maker in Haggerty's stead. In fact, Wilcox authored or assisted in the preparation of numerous letters and other written documents ultimately issued by Haggerty in the course of denying Christiana its legal rights to obtain the necessary building permits. Haggerty and Wilcox also conspired with Baker, who wrote a letter to Acierno regarding a false, manufactured basis for denying the permits. All letters were sent via the United States mail and/or telephone facsimile.

26.30. As a result of the actions of Wilcox, Haggerty and Baker with regard to the improper and unlawful building permit denials in March of 2003, Acierno and Christiana were forced to spend substantial sums in attorneys fees to force said Defendants to follow the law. Throughout the course of approximately 2½ months of expedited litigation on the matter, said Defendants took numerous untenable legal positions on issues, which had no good faith basis, but were instead aimed solely at carrying out the scheme to deny Acierno his legal right to use

8

and develop his land. This part of the Wilcox/Haggerty plot also involved communications via United States mail and via telephone facsimile.

27.31. In June of 2003, Wilcox and Haggerty undertook additional acts in furtherance of their scheme to deny Acierno his legal right to use and develop his land by refusing to issue Letters of Compliance after documentation establishing compliance with prior Violation Notices regarding Home Warranties was submitted to Haggerty on June 5, 2003. Wilcox and Haggerty refused to issue the Letters of Compliance, necessitating the filing of an action in the New Castle County, Delaware Superior Court seeking a Writ of *Mandamus* to force their issuance. In addition, Haggerty and Wilcox authored letters to tenants and contractors which contained knowingly false statements about the status of the Home Warranty issue, with the express intent to carry out their illegal plan and scheme and cost Acierno money in the form of lost rents. The letters were sent by them via the United States mails and telephone facsimile.

28.32. After three (3) weeks of dragging their feet, Haggerty and Wilcox finally issued the Letters of Compliance after the Superior Court indicated it would likely issue a Writ of *Mandamus.* As a result of the acts and failures to act by Wilcox and Haggerty, Acierno was forced to spend substantial sums in attorneys fees and litigation costs. Numerous properties owned by Acierno or entities in which he had a controlling interest were denied the opportunity to use their premises based upon the County's improper and unlawful denial of requests for permits, inspections, and other land use application approvals during that time period.

29.33. Haggerty and Wilcox further continued their scheme to deny Acierno his legal rights to use and develop his land based upon the issuance of a Violation Notice dated June 11, 2003 regarding certain bogus charges under the County Drainage Code. The charges included an allegation that Christiana did not have an approved Erosion And Sediment Control Plan for its

site, despite the fact that the County had stamped such a plan "approved" on April 24, 2002 and was fully aware of that fact. In addition, the charges included overly vague and general allegations without citations to specific regulatory sections, or an explanation of the location and nature of the alleged violation. The County refused to provide any further information regarding the charges despite numerous requests from counsel for Acierno prior to a July 8, 2003 Rule to Show Cause hearing conducted by Haggerty and Wilcox.

30.34. At the July 8th hearing, Haggerty and Wilcox continued their effort to deny Acierno his legal rights by holding a "kangaroo court" session where they committed a half a dozen or more violations of Acierno's Constitutional Due Process Rights: 1) lack of sufficient description of the deficiencies alleged, in order to allow the preparation of a defense; 2) failure to allow cross-examination of the prosecution's sole fact/expert witness; 3) denial of the right to call a County employee present at the hearing as a witness in the defense case; 4) failure to allow a continuance of the hearing after the County presented photographs, diagrams, documents, and additional evidence which identified the specific Code provisions charged and clarified the nature and location of the purported violations for the first time; 5) admission of evidence, which constituted the sole portion of the County's case-in-chief regarding certain of the alleged violations, based solely on hearsay statements contained in documents; and 6) failure to record the hearing in order to allow for an appropriate Court review.

31.35. After Haggerty and Wilcox brought the "trumped up" charges against Acierno, and held the "kangaroo court" hearing, they issued a Rule to Show Cause Decision which contained their pre-ordained conclusion (Drainage Code violations) planned in order to further their scheme to deny Acierno his legal right to use and develop his land. The Rule to Show Cause Decision included the knowingly false finding that an approved Erosion And Sediment

Control Plan had been revoked by a December 20, 2002 Rule to Show Cause Decision. This process involved communications carried out through use of the United States mails and telephone facsimiles.

32.36. As a result of the County's trumped up charges, kangaroo court proceeding, and bogus Rule to Show Cause Decision, Acierno has been caused to spend substantial sums in attorneys fees and expert fees.

37.    Haggerty and Wilcox also furthered their scheme to deny Acierno his legal right to use and develop his land in August of 2003 by ordering that County personnel not issue a building permit for development of Phase 4 of the Christiana Town Center shopping center. One of the purported bases for denial of the permit application, failure to receive a letter from DelDOT regarding road improvements, was known by them to be impossible to comply with since DelDOT had refused to permit the road work and has dubbed it unnecessary in June of 2002. In addition, the three (3) other reasons asserted as bases for permit denial are not required by the County Building Code. Further, Haggerty and Wilcox joined forces to manufacture a letter which falsely alleged that there were additional reasons for denying the building permit. Thus, the only explanation for Haggerty and Wilcox's refusal to accept the application and issue the building permit is their ongoing scheme to illegally and unconstitutionally deny Acierno the right to use and develop his land.

38.    Acierno has incurred legal expenses and lost rents as a result of the unlawful and unconstitutional denial of the building permits for Phase 4 of the shopping center.

34.39. In furtherance of this ongoing scheme to violate Acierno's constitutional rights and in contradiction of law, Freebery did in 2003 and 2004 intentionally and with ill will utilize County resources and personnel to issue multiple inaccurate press releases or written statements;

falsely painting Acierno as a lawbreaking developer. Freebery did so in concert with Mullaney in 2003. Freebery's efforts were aimed at further harming Acierno as a part of the joint scheme among all Defendants.

35.40. In addition, through the uneven and selective application of the law to Acierno from 2002 through 2004, Freebery, Haggerty, Baker, Edwards, and Wilcox (in 2002 and 2003 while employed by the County) intentionally, and with ill will, treated Acierno differently from others subject to the same or similar laws and who were similarly situated, without a rational basis for such different treatment. Such discriminatory treatment of Acierno included, but was not limited to, the unequal use and application of the law with respect to decisions regarding: violation notices, rule to show cause hearings, "clean hands", stop work orders, building permits, inspections, certificates of occupancy, certified construction review reports, the filing of litigation, the issuance of press releases, site inspections, erosion and sediment control plan review, the processing of land use applications, civil penalties, time permitted to obtain code compliance, and interpretation of laws and regulations.

36.41. Such unequal treatment is also evidenced by personal visits from Baker in 2004 at two sites owned by an individual who had a history of outstanding code violations. When Baker visited these two sites he was accompanied by the property owner and a member of Freebery's office. Thereafter, the charges against this same property owner were dropped by the County.

37.42. Thereafter, Baker caused subsequent land use applications for these same two properties, which had been submitted late and/or incomplete, to be placed upon a public hearing agenda. This same property owner had placed Freebery for County Executive signs on his property. In regard to these same land use applications, and just prior to Freebery's primary for County Executive, Baker took affirmative steps in an attempt to cause the issuance of two

favorable recommendations for both of the properties despite the existence of long-standing code violations at both sites, and an unresolved U.S. Army Corps of Engineers stop work order at one of the two sites. After Freebery lost her primary, Baker was ultimately successful in causing one favorable recommendation to be issued.

38.43. On January 30, 2004, Edwards held a rule to show cause hearing regarding one of Acierno's former properties. It was pointed out at the hearing, in writing and verbally, that the rule to show cause hearing was improperly convened, in whole or in part, due to the expiration of a statute of limitations and the applicability of a County home warranty. No decision was issued by Edwards for over six months and Acierno believed the matter was finally resolved. However, in furtherance of the ongoing scheme to violate Acierno's constitutional rights and in contradiction of law, on July 13, 2004 (more than 6 months after the hearing) Edwards issued an adverse decision shortly after Acierno had filed a motion to compel the deposition of Baker and Freebery regarding Baker's alleged active assistance in concealing an alleged criminal act by Freebery for which she has been indicted by a federal grand jury.

39.44. In January, 2004, Edwards conducted a rule to show cause hearing based on charges brought against Edgewood Village, LLC for violating the Unified Development Code and the County Drainage Code as a result of a land disturbing activity and the demolition of an historic stone wall at the Paladin Club community, on Paladin Drive. Edgewood is owned and controlled by major New Castle County developer Verino Pettinaro. Edwards found Edgewood in violation, but only fined it $200. Edwards has refused to require the re-construction of the stone wall or the stabilization of the disturbed land area to this day.

40.45. In February of 2004, the County issued a building permit to Pettinaro for the construction of a 7-story apartment building at Greenville Place despite the fact that the County's "clean hands" provision legally prohibited it.

41.46. Not coincidentally, Pettinaro has had business dealings with Gordon and Freebery which have proven quite favorable to them. Gordon's 2000 and Freebery's 2004 County Executive race headquarters were located at Pettinaro's Tower Office Park in Newport. More importantly, Gordon has for four (4) years now resided in a bi-level luxury, riverfront condominium unit owned by Pettinaro and known as Unit 215, Brandywine Park Condominiums. Gordon has benefited in the amount of thousands of dollars in value from a substantially below market rental rate for the unit. Not surprisingly, Gordon has never reported these substantial gifts from Pettinaro on his annual financial disclosure statement filed with the County Ethics Commission.

42.47. Numerous other examples of differing treatment accorded to developers by Defendants exist. Edwards has previously given developer Louis Capano over six (6) months to resolve relatively minor erosion and sediment control violations at a commercial shopping center site without penalty. In short, the County has a relaxed standard of applying and enforcing the laws with many developers, but a stringent and virtually unforgiving standard that it applies to Acierno. Further, the County does not generally single out developers for schemes to deny property rights like they have with Acierno.

48.     In December of 2004, the County issued a Violation Notice to 395 for four (4) alleged Drainage Code deficiencies at its residential subdivision development site known as the Estates at Farmington in Glasgow.

49.    395 responded and addressed all of the site issues raised by the County. All items except one were either: 1) corrected by 395; or 2) agreed by the County to be unnecessary as a practical or legal matter.

50.    The one (1) unresolved item was a request by the County for 395 to prepare an as-built survey plan regarding a stormwater management basin currently in service as a temporary sediment basin. The plan is not required by law, so 395 requested that the County withdraw this issue. The County refused.

51.    The County instead forced 395 to expend thousands of dollars in legal fees to fight the bogus charge. A hearing was conducted, at which the County Engineer admitted his only reason for requesting a plan was that his supervisor told him to.

52.    But that did not end the County's harassment of 395; a decision followed which required the plan and even more unrequested, unproven measures. 395 protested, and the County then issued an illegal "revised" decision dropping the plan demand and imposing new directives never before requested or heard.

53.    Finally after extensive protests and an administrative appeal, the County relented and begrudgingly withdrew the decision in late February, 2005. To date, however, the Code Official, Haggerty, has failed to issue a Letter of Compliance as he is required to do under the law.

54.    Haggerty was involved behind the scenes regarding the Farmington imbroglio, calling the shots on this latest installment in his artifice to deny Plaintiffs' their legal rights to the free use of their land. He is the Code Official and supervisor responsible for the enforcement activities, and he failed to properly supervise his subordinate personnel in accordance with the law.

55.    As a result of the County's illegal conduct against 395, a purchaser of certain subdivision lots was denied permit based on a false indication that outstanding legal violations existed at Farmington. Delays were caused, and 395's counsel ultimately had to confront County personnel in person to obtain a few minor building permits for the purchase.

44.56.  As Haggerty's supervisor, Baker has been aware of and has failed to intervene to correct Haggerty with respect to his unlawful and unconstitutional actions described herein. Baker has a duty to oversee Haggerty's actions, and he has failed properly to do so with regard to the matters described herein. As noted herein, Baker has also knowingly participated in portions of the illegal and unconstitutional Haggerty/Wilcox scheme. Moreover, in an effort to conceal Freebery's involvement in Acierno related litigation, Baker is believed to have testified under oath untruthfully.

45.57.  As Wilcox's supervisor, Mullaney has been aware of Wilcox's actions described herein. Mullaney failed to properly supervise Wilcox and prevent him from acting unlawfully and unconstitutionally. Mullaney has a duty to properly supervise Wilcox so as to prevent him from undertaking the illegal and unconstitutional actions described herein, but failed to do so.

46.58.  As Baker's and Mullaney's supervisor, Freebery not only failed to properly supervise Baker and Mullaney in order to prevent them from acting unlawfully and unconstitutionally, but, in fact, directed unlawful and unconstitutional actions to be taken against Acierno.

47.59.  Wilcox, Haggerty, Edwards, Mullaney, and Freebery either knew or should have known that they were acting contrary to the law and the Constitution. They took the actions described herein fully aware of the dishonest, reckless, and deceptive nature of their factual misrepresentations and misapplications of the law.

48.60. Counsel for Plaintiffs informed and advised Wilcox and Haggerty in writing on numerous occasions that they were misstating the facts and misinterpreting the law, and warned them of the potential legal effect and consequences of their actions and ongoing scheme. Despite the advisories and warnings of Plaintiffs' counsel, Haggerty and Wilcox continued to carry out their plan to deny Acierno his constitutional right to use and develop his property by knowingly and intentionally fabricating factual allegations and misapplying the law to Acierno's substantial financial detriment.

49.61. The acts and failures to act committed by Haggerty, Wilcox, Baker, Edwards, Freebery, and Mullaney were in violation of Acierno's Constitutional and federal statutory rights and were taken under color of law pursuant to their governmental roles.

## COUNT I - CIVIL RIGHTS VIOLATIONS UNDER
## 42 U.S.C. § 1983 - DUE PROCESS & UNCONSTITUTIONAL TAKING

50.62. The contents of Paragraphs 1 through 49 61 are hereby restated as if fully set forth herein.

51.63. The actions of the individual Defendants have violated Acierno's clearly established substantive and procedural due process rights in violation of the 14th Amendment to the United States Constitution. A reasonable County employee or official should have been aware of the need to provide Acierno adequate notice, a sufficient opportunity to be heard, a fair hearing, and a legally cognizable application of law.

52.64. The actions of the individual Defendants have also caused Acierno's clearly established property rights to be temporarily taken without just compensation in violation of the 5th and 14th Amendments to the United States Constitution. A reasonable County employee or official should have been aware that Acierno could not be prevented from using and developing his lands without a proper police power justification.

~~53.~~65. Freebery, Mullaney and Baker are responsible as supervisors of Haggerty and Wilcox for their actions. They have had knowledge of the actions of Haggerty and Wilcox and have acquiesced in the conduct alleged herein.

~~54.~~66. As a direct and proximate result of the acts and omissions of the individual Defendants, Acierno has been caused to suffer damages in the form of lost rent, lost opportunity costs, attorney and expert witness costs and fees, and other consequential and compensatory damages recoverable under § 1983. The acts of the individual Defendants were taken with evil motive and intent and a reckless indifference to Plaintiffs' rights.

~~55.~~67. The County is liable for the acts of the individual Defendants on the grounds that such acts constitute the implementation or execution of County custom or policy. Their acts were unconstitutional on grounds including, but not limited to, failure to provide pre-and post-deprivation hearings.

**COUNT II - CIVIL RIGHTS VIOLATIONS UNDER**
**42 U.S.C. § 1983 – EQUAL PROTECTION**

~~56.~~68. The contents of Paragraphs 1 through ~~55~~67 are hereby restated as if fully set forth herein.

~~57.~~69. Pursuant to the Equal Protection Clause of the 14th Amendment to the United States Constitution, the County may not deny to any person within its jurisdiction the equal protection of the law.

~~58.~~70. Through the improper, uneven and selective application of the law to Acierno from 2002 through 2004, Freebery, Haggerty, Baker, Edwards, Mullaney, and Wilcox intentionally, and with ill will, treated Acierno differently from others subject to the same or similar laws and who were similarly situated, without a rational basis for such different

treatment. The County is liable for the acts of the individual Defendants on the grounds that such acts constitute the implementation or execution of County custom or policy.

59.71. As a direct and proximate result of the acts and omissions of the individual Defendants, Acierno has been caused to suffer damages in the form of lost rent, lost opportunity costs, attorney and expert witness costs and fees, and other consequential compensatory damages recoverable under § 1983.

### COUNT III - CIVIL RICO
### 18 U.S.C. §§ 1962(c), 1962(d) AND 1964(c)

60.72. The contents of Paragraphs 1 through 5971 are hereby restated as if fully set forth herein.

61.73. Freebery, Haggerty, Wilcox, Baker, and Mullaney were employed by or associated with the County and have, with a scheme to defraud and through the course of two or more acts identified herein, engaged in a pattern of racketeering activity through their participation in an enterprise, the activities of which affect interstate commerce and the activities of which caused injury to Acierno through conduct in violation of 18 U.S.C. § 1962.

62.74. The County is a legally organized governmental entity.

63.75. The County is engaged in, and its activities effect, interstate commerce. Specifically, the County has an authorized employee work force of approximately 1,600 employees who operate in fields including, but not limited to, land use/land development, libraries, parks and recreation, police, paramedics, public buildings, and sewer systems. The County has an annual operating budget of more than two hundred millions dollars ($200,000,000). The County's operational activities regularly involve interstate communications, shipments, ordering of goods and services, and payment of employees and consultants who are residents of other states.

64.76. Wilcox and Haggerty have conducted and participated in, both directly and indirectly, conduct of the County's affairs through a pattern of racketeering activity. Freebery, Baker and Mullaney have participated in a supervisory capacity, indirectly and directly providing authority, review, and approval of activities known by them to be unlawful.

65.77. The racketeering activity committed by Defendants and identified herein has included, but have not been limited to, mail fraud and wire fraud including the use of the United States mails, telephone communications, radio transmissions, and television transmissions. This mail and wire fraud was utilized by Defendants to deceive the public through the intentional use of false and inaccurate statements in an effort to harm the reputation of Acierno and to injure his business and property by preventing Acierno from completing construction projects, retaining tenants, obtaining new tenants, and generally being able to carry on activities necessary to fully use and develop commercial real estate owned, operated, and/or developed by Acierno.

66.78. The actions of Freebery, Baker, Haggerty, Mullaney, and Wilcox identified herein also constitute mail and wire fraud based upon their intent to utilize mail and wire communications to deceive the public, to deny the public and Acierno their right to honest government services, and to further their scheme to defraud and deny Acierno of his right to use and develop his lands by making material misstatements and knowing of their falsity.

67.79. Freebery, Haggerty, Mullaney, Baker and Wilcox have conspired to commit the acts alleged under this Count through their assistance and participation in the creation of false press releases and the preparation, distribution and dissemination through mail and wire fraud of inaccurate information regarding Acierno. Their conspiracy has involved a set and group of related activities, which continue to pose a threat of continued occurrence. The enterprises that they have acted on behalf of include both their own conspiracy and the County.

68.80.  Haggerty and Wilcox have perpetrated a pattern of racketeering activity against Acierno.  Haggerty and Wilcox have used the mails and telephone lines in order to carry out their scheme to deprive the citizens of New Castle County of an honest government and to more specifically deprive Acierno of his rights thereto and his legal rights to use and develop his property.

69.81.  The actions of Freebery, Haggerty, Mullaney, and Wilcox are related to the scheme to defraud Acierno.  Such activities establish and constitute a threat of continued criminal activity due to their consistency, magnitude, length, and clear common purpose.  All reasonable efforts to convince Defendants named in this Count to stop perpetrating these unlawful acts have failed.

70.82.  As a direct and proximate result of the individual Defendants' commission of Civil RICO violations, Acierno has been injured in his business and property as has incurred significant attorneys fees and costs.

71.83.  The County is responsible for the acts of the individual Defendants based upon its k knowledge, approval, assistance and participation in their RICO conduct, under the principles of *respondeat superior*, ratification, aiding and abetting, and conspiracy..

### COUNT IV - CIVIL CONSPIRACY

72.84.  The contents of Paragraphs 1 through 71 82 are hereby restated as if fully set forth herein.

73.85.  The individual Defendants acted in a combined and concerted effort to unlawfully deny Acierno his legal rights to use and develop his properties.  As a direct and proximate result of the unlawful conspiracy, Acierno has been damaged in the form of lost rents, delay damages, attorneys fees, litigation costs, expert fees, and other consequential and compensatory damages.

74.86. The individual Defendants have violated the New Castle County Code ("County Code") and the Delaware State Code. The violations include, but are not limited to, provisions of: 1) County Code Chapter 6, the Building Code, regarding new home warranties and the issuance of building permits; 2) County Code Chapter 12, the Drainage Code, regarding approval of erosion and sediment control plans, violation notice and enforcement procedures and conduct of pre-construction meetings; 3) County Code Chapter 40, the Unified Development Code, regarding sunsetting of previously approved subdivision plans, the application of "Clean Hands" provisions and grand-fathering Old Code subdivision plans; 4) the Delaware Sediment and Stormwater Regulations and Title 7, Chapter 40 of the Delaware Code regarding limits on legal authority delegated by the Delaware Department of Natural Resources and Environmental Control ("DNREC"), Certified Construction Reviewer reports, and approval and enforcement of erosion and sediment control plans; 5) provisions of the former versions of the New Castle County Subdivision Code and Title 9, §§ 3001-3004 of the Delaware Code regarding subdivision regulations; 6) the provisions of Article I, §§ 7, 8 and 9 of the Delaware Constitution regarding due process of law and takings without just compensation; and 7) the provisions of the 5th and 14th Amendments to the United States Constitution regarding due process of law, equal protection of the laws and takings without just compensation.

75.87. The individual Defendants are liable for their conspiracy based on common law tort principles. The County is liable for the conspiracy under common law tort principles and the doctrine of *respondeat superior.*

## COUNT V - TORTIOUS AIDING AND ABETTING

76.88. The contents of Paragraphs 1 through 7586 hereby restated as if fully set forth herein.

~~77.~~89. Freebery, Haggerty, Mullaney, and Wilcox breached their duty to abide by the law and their sworn duty to follow the requirements of the United States and Delaware Constitutions in violating the rights of Acierno to use and develop his land. Their actions have been taken pursuant to a conscious conspiracy, in concert with one another. Their efforts have been based upon a common design to unlawfully deny Acierno the right to use and develop his land.

~~78.~~90. All of the Defendants named in this Count have known of one another's conduct; the unlawful actions taken by Freebery, Wilcox, and Haggerty in an effort to deny Acierno his legal rights to use and develop his land.

~~79.~~91. Each of the Defendants has been fully cognizant of the breach of duty that such actions constitute under the County Code, State Code, and the Constitutions of the United States and the State of Delaware.

~~80.~~92. Each of the Defendants has provided one another with substantial assistance and encouragement so as to achieve the ultimate objective of denying Acierno the legal right to use and develop his land in accordance with the law.

~~81.~~93. As a direct and proximate result of all of the actions of the Defendants *vis a vis* Acierno and his lands, they have caused Acierno to incur damages in the form of lost rent, delay damages, attorneys fees, litigation costs, expert fees, and other compensatory damages.

~~82.~~94. The individual Defendants are liable for aiding and abetting one another and the County in carrying out the scheme described herein pursuant to common law tort principles. ~~The County is liable based upon the doctrine of~~ *respondeat superior.*

**WHEREFORE**, Acierno respectfully requests that this Court enter Judgment in his favor and against all Defendants on ~~all~~ Counts I through III of this Complaint and against the

Individual Defendants on Counts IV and V, and that the Court award Acierno compensatory damages, consequential damages, special damages, punitive damages, statutory treble damages, attorneys fees, court costs, interest, and such other and further relief as the Court deems just and proper.

THE BAYARD FIRM

_____
Richard L. Abbott, Esquire (I.D. No. 2712)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, Delaware  19899
(302) 429-4225

Attorneys for Plaintiffs

DATED:  March 13, 2005