Not Reported in A.2d  
2004 WL 1790164 (Del.Super.)  
(Cite as: 2004 WL 1790164 (Del.Super.))

Page 1

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware.
DOVER HISTORICAL SOCIETY, Henry R. Horsey, Mary Jane Richter, Joseph Gates, III, Larry Josefowski, Susan Terry, Bonnie Johnson, Holly Johnson and Charles Johnson, Petitioners,
v.
CITY OF DOVER PLANNING COMMISSION, consisting of John Friedman, Robert M. Sadusky, Michael Von Reider, William J. DiMondi, Thomas Holt, Ann M. Baker Horsey, Robert D. Welsh, Francis Winsley and Francis C. Nichols; and Young & Malmberg, P.A., a Delaware professional association; Grace Properties, L.L.C., a Delaware limited liability company; and Yozima, L.L.C., a Delaware limited liability co., Respondents.
No. Civ.A 03A-06-002WLW.

Submitted May 10, 2004.
Decided July 30, 2004.

Upon Petitioner's Motion for Writ of Certiorari. Granted. Upon Petition for Judicial Review of the Decision of the City of Dover Planning Commission. Reversed and Remanded.

Grover C. Brown, and Michael J. Maimone, of Gordon, Fournaris & Mammarella, P.A., Wilmington, Delaware, for the Petitioners.

William W. Pepper, Sr., of Schmittinger & Rodriguez, P.A., Dover, Delaware, for City of Dover Planning Commission.

Constantine F. Malmberg, III, of Young & Malmberg, P.A., Dover, Delaware, for Young & Malmberg, P.A. and Yozima, L.L.C.

INTRODUCTION

WITHAM, J.

*1 Before this Court is the Petitioner's Motion for Writ of Certiorari pursuant to 10 *Del. C.* § 562 and Petition for Judicial Review of the Decision of the City of Dover Planning Commission regarding the approval of a structure to be built within the City of Dover Historic District. Writ of Certiorari has been granted by this Court. Upon consideration of the parties' submissions, it appears to this Court that the Planning Commission exceeded its jurisdiction by approving a nonconforming structure without adhering to the *Design Guidelines and Standards* set forth under the City of Dover Code for new construction within the Dover Historic District. Therefore, the decision of the Planning Commission is reversed and the review of the application for this structure is remanded for factual findings consistent with the *Design Guidelines for New Construction* as required for an architectural review certificate per City of Dover Zoning Ordinance, Article 3 § 21.

FACTS

This case involves the construction of a 24,300 square foot, three-story office building of dimensions, 90 feet by 90 feet with a height of 48.5 feet. The building is to be wholly constructed within the Dover Green Historic District and is referred to as the "Water Street Office Plaza II." This building is the twin building of "Water Street Office Plaza I" located outside the Historic District on Water Street.

Under the City of Dover Code, Art. 3 § 21.1, in order to build new construction within the Dover Historic District, an architectural review certificate must be issued by the Dover Planning Commission ("The Commission"). The Historic District Committee ("HDC") was created by Art. 10 § 3 of the City of Dover Code Zoning Ordinance ("Zoning Ordinance") to assist the Commission and City Planner in the duties of reviewing applications for architectural review certifications; make recommendations for designations of historic districts and establish guidelines for the preservation and conservation of historic zones; and to advise other officials and departments in the City of Dover of matters concerning historic preservation. Thus, prior to receiving an architectural review certificate, the HDC must review an application for building new construction in the Historic District and verify that it complies with the standards set forth in Art. 10 § 3.24 of the Zoning Ordinance, before giving a recommendation to the Commission.

The standards that must be met are found in the

*Design Standards and Guidelines for the Dover Historic District Zone ("Guidelines"* ). The *Guidelines* were drafted in 1992 for the primary purpose of providing guidance "in the process of determining whether future construction projects undertaken within the Historic District Zone, involving both new and existing buildings, will be sympathetic to the historic character of the District." [FN1] The *Guidelines* are based upon "the belief that cities must change to be vital, that change must be managed, and that a critical part of that management is the retention of the tangible assets of resources such as the Dover Historic District Zone." [FN2]

> FN1. Design Standards and Guidelines for the Dover Historic District Zone (hereinafter "Guidelines"), p. vii (1992).
>
> FN2. *Id.*

*2 Secondarily, the *Guidelines* are instructional with detailed descriptions as well as pictorial depictions of structures that conform with the standards as well as structures that do not conform. [FN3]

> FN3. *Id.*

The proposal originally submitted to the HDC included plans to completely demolish two 19th century buildings and to demolish the rear portion of one 18th century building as well as to construct a three-story office building with a parking lot and an additional two-story office building. The HDC met on December 19, 2002 to discuss this proposal. Great concern was voiced over the demolition of the 19th century structures [FN4] including ramifications if the buildings were listed on the federally designated National Register of Historic Places, as such buildings require special attention. [FN5] It was acknowledged that the new construction will be in the Historic District and although it is designed to match other nearby buildings, those buildings are not in the Historic District. [FN6] Additionally, concern was expressed regarding the mass of the new building fearing that it will, "loom over other buildings in the front along the street" as this particular building is massive in height and shape. [FN7] The builders stated that they were not considering reducing the mass size, shape or height and were requesting a series of waivers. [FN8] The HDC expressed concern that the "rhythm" of the street would change visually once demolition of the historic structures began. [FN9] Elevation, gateway appearance, roof lines and square footage were also considered. [FN10] Points raised by the public but not discussed by the HDC included visual domination, traffic impact, better suitability to be built elsewhere, height, size, bulk and restoration issues. At the close of the public hearing, the HDC decided that they required more visuals and details on how to handle the mass and bulk as well as historical research on the buildings to be demolished. [FN11]

> FN4. City of Dover Historic District Commission Minutes (hereinafter "HDC (2002) Tr."), p. 2-3 (Dec. 19, 2002).
>
> FN5. *Id.* at 4.
>
> FN6. *Id.*
>
> FN7. *Id.* at 5.
>
> FN8. *Id.*
>
> FN9. *Id.*
>
> FN10. *Id.* at 6.
>
> FN11. *Id.* at 8.

Following this public hearing, these plans were tabled and the new, current proposal was made for a 24,300 square foot, 48.5 foot high, three story office building in the backyards of the existing older buildings with a surface parking lot extending within 1.8 feet to the rear of all four historic structures. The three buildings slotted for demolition would not be demolished, instead only the 20th century additions at the rear of these buildings would be removed, retaining the original buildings.

On January 16, 2003, the HDC held a meeting and public hearing to determine whether to recommend the revised plans to the Commission. The proposal for the new office building does not conform to the bulk requirements of the RG-O Zoning District and requires waivers from the HDC. The specific waivers for bulk standards are as follows:

```
Bulk Standard     Ordinance Requirement   Proposal
```

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                               Page 3
(Cite as: 2004 WL 1790164, *2 (Del.Super.))

| | | | |
|---|---|---|---|
| 1) | Rear yard setback | 48.5 feet | 1.8 feet |
| 2) | Building height | 35 feet | 48.5 feet |
| 3) | Number of stories | 2.5 | 3 |
| 4) | Floor area ratio | .50 | .89 |

*3 The developer, Mr. Malmberg, produced historical information on the three historic buildings to be renovated, as well as usage plans for these structures. If the new office building is not approved then the renovation plans for these three buildings will not take place.

The HDC's discussion on this proposal included: Eleven trees required to be planted; restoration of the 18th and 19th century structures; and the period of the sides of the new building. In the public hearing portion of the meeting, the Dover Historical Society was opposed to these plans which call for the new office building to be built within the Dover Green Historic District. [FN12] It was pointed out that the burden of persuasion is upon the applicant to have the request granted and that the Commission should not grant a request that is contrary to the Dover Green Historic District requirements. The opposition commented that a modern building should not be built next to the unique historic properties of the Green and that the "twin" of this building is not in the Historic District.

> FN12. There are several areas of Dover that are designated as Historic Districts.

Following the public hearing, the HDC discussed the proposal amongst themselves. In considering the application, it was decided to separate the vote into two parts: One for the new three-story office building and one for the demolition of rear portions of the buildings. [FN13] After these votes there would be no further evaluation by the HDC and the Commission can revise, accept or reject the HDC recommendations. [FN14]

> FN13. City of Dover Historic District Commission Minutes (hereinafter "HDC (2003) Tr."), p. 8 (Jan. 16, 2003).

> FN14. Id.

The HDC, with five voting members, took a vote on the new office building that resulted in one member abstaining and a tie of 2--2. [FN15] At this point, a new motion to consider the office building was immediately requested. In consideration of a new vote, the HDC reiterated that the builder would not go forward with the project if all the bulk waivers were not granted and that a comparable office building located on South State Street is located within the Historic District but may not have been at the time it was built. [FN16] On re-vote the motion for the new office building passed 3-2. The vote for the renovation/rear demolition of the historic buildings passed 4-1. Thus, a recommendation for the new office building proposal and renovation and rear demolition of the historical buildings was given to the City of Dover Planning Commission. [FN17]

> FN15. Id.

> FN16. Id. at 9.

> FN17. Id. at 9-10.

On April 21, 2003 the Commission met to vote on the proposed office building. Before the Commission were two additional waivers: one for parking, a reduction of 20% of the required spaces, and the other for the elimination of a loading dock. [FN18] Both of these waivers were thoroughly discussed. The parking waiver generated the majority of concern. Additional topics of discussion were the building facing and the fact there are two street fronts. Discussion ensued about an underground retention and infiltration system, traffic in the area and the state of disrepair of the historical properties slated for renovation and partial demolition.

> FN18. City of Dover Planning Commission Hearing Transcript (hereinafter "Commission Tr."), pp. 3-7 (April 21, 2003).

*4 Following the Planning Commission's discussion, a public hearing was held on the topic. A representative from the Dover Historical Society opposed the new construction because the building does not conform to the *Guidelines* and cited specific sections to illustrate the building's non-conformity.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN19] No comment on these concerns was made by the Commission. Further public concern focused on the current character of the area, the new construction usage and the manner of the HDC vote to recommend the nonconforming structure.

    FN19. Id. at 17-19.

After the public hearing, the Commission commenced further discussion. It was determined that the HDC re-vote necessary to pass a recommendation for the project would not be an obstacle to the Commission's review of the application. [FN20] Parking was again discussed. Final comments were made by Commissioner Anne Horsey who addressed the bulk standard waivers that were approved by the HDC. Ms. Horsey voiced concern that the HDC did not discuss any of these waivers in their meeting to vote on the recommendation of this project. Going through some of the *Guidelines,* Ms. Horsey said, "I think we have to be really careful about this large building because it really does dominate the street scape." [FN21] She also pointed out that the *Guidelines* specify that this type of structure "really should be located somewhere else." There were no comments by the other commissioners about this concern, instead, there was a motion for a vote on the project. This started a discussion on the weight of an HDC recommendation. It was determined that the Commission can act any way it wishes in regard to the recommendation.

    FN20. Id. at 24-25.

    FN21. Id. at 29-30.

Next, a motion was made to refer the file back to the HDC for re-approval given the fact that the HDC seemed torn and required a re-vote. [FN22] However, it was decided that because the HDC had deliberated and acted the Commission should go forward with its vote. [FN23] This vote resulted in a 4-4 tie. Immediately, a new motion was made to override the first tie motion and to favorably vote for the proposed building in accordance with the HDC recommendation. The parking and loading dock waivers were briefly discussed and a vote was again taken. The proposal passed 5-3 in favor of granting an architectural review certificate. [FN24]

    FN22. Id. at 32.

    FN23. Id. at 33.

    FN24. Id. at 38.

On June 18, 2003, following the approval of the new construction by the Commission, the Petitioners; Dover Historical Society, Henry R. Horsey, Holly Johnson and Charles Johnson, sought a Writ of Certiorari pursuant to 10 *Del. C.* § 562 and a Petition for Judicial Review of the Decision of the City of Dover Planning Commission in this Court. Then, on June 23, 2003, this Court entered the Writ of Certiorari pursuant to 10 *Del. C.* § 562 which required the Commission to send a certified copy of the entire record and proceedings below to this Court. On July 21, 2003, the Respondents; City of Dover Planning Commission, Young and Malmberg, Grace Properties, L.L.C. and Yozima, L.L.C., filed a Motion to Dismiss the Petition asserting several reasons but mainly that the Petitioners lacked the requisite standing to challenge the determination of the Commission to approve the recommendation of the HDC for an architectural review certificate to be issued to the Respondents to construct the building in the Historic District. This Court heard oral argument regarding this Motion on August 15, 2003. On August 25, 2003, this Court dismissed the Petition solely on a ruling that the Petitioners lacked the requisite standing to challenge the determination of the Commission to approve the recommendation of the HDC. [FN25]

    FN25. *Dover Historical Society v. City of Dover Planning Commission,* 2003 WL 22904213, at *3 (Del.Super.Ct.2003)

*5 The Petitioners filed a Notice of Appeal and a Motion for Expedited Scheduling on September 4, 2003. On September 23, 2003, the Supreme Court of Delaware granted the Petitioners' Motion for Expedited Scheduling. The Supreme Court reversed the decision of this Court on December 2, 2003, declaring that the Petitioners had standing. [FN26] Now, before this Court is the Petition for Writ of Certiorari pursuant to 10 *Del. C.* § 562 and Petition for Judicial Review of the Decision of the City of Dover Planning Commission.

    FN26. *Dover Historical Society v. City of Dover Planning Commission,* 838 A.2d 1103, 1116 (Del.2003).

*Parties Contentions*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The Petitioner's action involves three issues concerning whether the Commission exceeded its powers and failed to conform to the legal requirements by issuing an architectural review certificate for a nonconforming structure. First, the Petitioners argue that the Commission issued an architectural review certificate without commentary concerning the reason or justification for its decision. Thus, this decision is arbitrary and should be vacated.

Second, by approving a nonconforming structure, the Commission failed to conform to the legal requirements, exceeding its powers, and the decision should be vacated. The Petitioners allege that the Commission can only issue an architectural review certificate after a determination that the proposed construction is in general accordance with the standards set forth in Section 3.24 of the City of Dover Code per Art. 10, § 3.23(a). Moreover, the Petitioners argue that the *Guidelines* state that construction of new buildings in the Historic District should be discouraged, if not prevented, even if those new buildings would be constructed in an historical style. This is particularly true in the Green Historic District where the historic context should be *very carefully preserved and requires the most restrictive design guidelines.* [FN27]

   FN27. *Guidelines*, Ch. 2, p. 3-4.

Third, the Petitioners maintain that the Commission relied upon the recommendation of the HDC without knowledge that such a recommendation was tainted by a disabling conflict of interest by one of the voting members. The Petitioners allege that Mr. Richard E. Scrafford, a member of the HDC had a disabling conflict of interest based upon his relationship with the Van Croy family. The Petitioners argue that at the time of the January 16, 2003 meeting, Mr. Scrafford was an employee of the Van Croy family, the ultimate purchaser of the Water Street Office Plaza II building. The Petitioners contend that Mr. Scrafford should have abstained from voting in connection with any decision involving the Building. If Mr. Scrafford had abstained from voting the decision of the HDC would have been deadlocked.

The Respondents argue that the Commission's decision was supported by substantial evidence and the reasons for approval of the architectural review certificate were apparent on the record. The Respondents maintain that the new office building is a twin of an office building located immediately to the west, thus it can not be argued that the new building is not in harmony with neighboring structures, even if that twin is not in the Historic District. Additionally, three historic buildings currently in disrepair would be restored.

*6 In regard to the alleged conflict of Mr. Scrafford on the HDC, the Respondents contend that this allegation is wholly without merit and unsupported by evidence.

Finally, the Respondents insist that the Petitioner's appeal is untimely and therefore should be dismissed. The Respondents argue that an appellant seeking a Writ of Certiorari from this Court has thirty days in which to seek this review. They maintain that failure to comply with this thirty day deadline may only be excused in "appropriate circumstances" which the Respondents insist is only in situations that are not attributable to the appellant or the appellant's attorney.

## ANALYSIS
*The Standard of Review*

A Writ of Certiorari is a writ of error. [FN28] "The writ lies from the Superior Court to inferior tribunals, such as a county council, to review proceedings that determine legal rights and are capable of legal error. The writ exists to review only errors of law, not errors of fact." [FN29] This Court's review extends only to the record and does not look to the merits of the case. [FN30] A writ of certiorari's purpose is to correct errors of law, to review proceedings not conducted according to law, and to restrain an excess of jurisdiction. [FN31] A writ of certiorari is different from an appeal, as an appeal involves a review of the merits of a case while a writ of certiorari is limited to the regularity of the proceedings. [FN32] The Superior Court may not weigh evidence or review the lower tribunal's factual findings. [FN33] Therefore, substantial evidence which weighs the evidence to determine that there is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion or such that there is a preponderance or "more than a scintilla" of evidence on the record as a whole [FN34] is the incorrect standard of review under a writ of certiorari. [FN35]

   FN28. *Mell v. New Castle County*, 2003 WL

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1919331, at *8 (Del. Ch.2003).

FN29. *Id.*

FN30. *Id.*

FN31. *Delaware State Fair Inc. v. Johnson*, 1999 WL 743478, at *1 (Del.Super.Ct.1999).

FN32. *Id.*

FN33. *Reise v. Board of Building Appeals of the City of Newark*, 746 A.2d 271, 274 (Del.2000) citing Woolley, Delaware Practice, Volume 1, § 896.

FN34. *Slatcher v. Nickle Electric*, 1993 WL 83345, at *2 (Del.Super.Ct.1993).

FN35. Note: A substantial evidence test would not change the holding of this Court. There is not substantial evidence to support the decision of the Planning Commission.

The Respondents argue that the Petition for Writ of Certiorari should be dismissed because the Petitioners have not met the thirty day deadline for filing the Petition. The thirty day deadline is adopted by the Superior Court in exercise of the Superior Court's common law power to regulate certiorari proceedings. [FN36] Thus, the thirty day deadline is not a jurisdictional requirement but rather is subject to the discretionary power of the court to excuse defaults in appropriate circumstances. [FN37] In this case, there was confusion as to which document issued by the Commission began the thirty day statute of limitations period. Additionally, notice of the decision was not received by all parties. Further, the Petitioner's argue that the decision issued by the Commission stated a conditional approval of the project and did not indicate that a final decision had been made.

FN36. *Elcorta v. Summit Aviation, Inc.*, 528 A.2d 1199, 1201 (Del.Super.Ct.1987).

FN37. *Id.*

It is within this Court's discretion to allow the filing of the writ of certiorari after the thirty day deadline. This Court will permit the filing of the petition due to the confusion regarding the date of the Commission's final decision, and because this Court in its previous decision stated that although this petition was filed untimely the Court would be inclined to exercise its discretion and allow the filing of this petition. [FN38]

FN38. *Dover Historical Society*, 2003 WL 222904213, at *3.

*7 The Commission may issue an architectural review certificate if the standards set forth in the City of Dover Code, Art. 10, § 3.24 are met. The City of Dover Code provides:
An architectural review certificate may be issued if it is found that the architectural style, general design, height, bulk and setbacks, arrangement, location and materials and structures affecting the exterior appearance are generally in harmony with neighboring structures and complementary to the traditional architectural standards of the historic district *as set forth in the Historic District Guidelines and Standards* adopted by the [Commission] ....

While this particular paragraph has been mentioned often by both parties regarding whether or not this new office building conforms to the City of Dover Code, the *Guidelines* themselves have scarcely been mentioned. The primary purpose of the *Guidelines* is "to provide guidance in the process of determining whether future construction projects undertaken within the Historic District Zone, involving both existing and new buildings, will be sympathetic to the historic character of the District. In that capacity, these *Guidelines* are intended for use as a general reference by the community and a basic reference for the Historic District Commission and/ or the Planning Commission in their deliberations as they review applications for architectural review certificates." [FN39] The *Guidelines* are very comprehensive including both written descriptions and pictures of the type of structures that conform as well as those that do not. While the *Guidelines* themselves are too lengthy to mention in entirety they are broken into sub-topics for consideration. Each sub-topic contains reasons as to why a particular feature is desirable or undesirable. Under the section of the *Guidelines* called *Design Guidelines for New Construction*, there are at least eleven sub-topics for consideration regarding new construction. [FN40] They are: 1) style; 2) scale; 3) absolute size; 4) massing; 5) orientation; 6) proportions; 7) materials; 8)forms; 9) siting; 10) high density; and 11) secondary structures. Additionally, each Dover historic area designation

has special considerations to maintain that historic context. This proposed office building falls within the "Green Historic Context." [FN41] The *Guidelines* have specific recommendations for the Green. [FN42] Among them are that new construction should be very carefully designed to be compatible with the scale of the Green Historic Context. Also, demolition of historic structures within the Green Historic Context should not be permitted under any circumstance and should be avoided unless a threat to public safety. There are also design guidelines for maintenance, repair, preservation and restoration of historic buildings in order to preserve the distinct character of the Dover Historic Zone. [FN43] These guidelines recognize that healthy cities grow and change but growth and change must be complementary to historic preservation, and vice versa. [FN44]

> FN39. *Guidelines*, at vii.
>
> FN40. *Id.* at Ch. 4, p. 2.
>
> FN41. *Id.* at Ch. 2, p. 3.
>
> FN42. *Id.* at Ch. 2, p. 5.
>
> FN43. *Id.* at Ch. 3, p. 2.
>
> FN44. *Id.*

*8 In order to comply with the Dover Code the above eleven sub-topics must be considered as they pertain to the proposed new construction. Under the City of Dover Code Art. 3 § 21.2, in the Historic District, use and bulk shall be governed by those provisions of this ordinance related to the zone designation of each property, except those aspects of building height, bulk and setback that are subject to architectural review as set forth in Article 10, Section 3 of this ordinance. Article 10 § 3.24 states that an architectural review certificate may be issued if the general design, bulk and setbacks are in general harmony with the neighboring structures and complementary to traditional architectural standards *of the historic district as set forth in the Historic District Guidelines and Standards.* There is no language in the *Guidelines* indicating that there may be a blanket waiver of these bulk requirements. The bulk requirements should be tailored to reflect the neighboring historic buildings. In fact, the *Guidelines* indicate that a massive structure should *not* be built in the Historic District. [FN45] Frequent mention was made of the "twin" nonconforming office building located on the same street as the newly proposed building such that this new construction would be in harmony with existing structures. However, the test is whether the newly proposed building conforms to the *Guidelines* and is in harmony with the *historic* buildings in the Green Historic District, not whether the building conforms to other nonconforming structures. This is especially true where the other nonconforming structures are either not within the historic district or built prior to the adoption of the *Guidelines*.

> FN45. *Id.* at Ch. 4, p. 6.

The new building is a nonconforming structure that matches few, if any, of the *Guidelines* applicable for this Historic District. Although members of the Dover Historical Society and the public presented opposition and concern that the *Guidelines* were not being followed, the HDC and the Commission still did not discuss them. Moreover, although one Commission member addressed both the fact that the HDC did not discuss the waivers and that a nonconforming structure such as this office building should not, per the *Guidelines*, be built in the Historic District, there still was no discussion by the Commission on these four significant waivers. The HDC's recommendation to waive the bulk standards was accepted without question. The only discussion of waivers by the Commission was limited to the waivers for parking and a loading dock.

In conclusion, the proceedings of the Commission in approval of the Water Street Office Plaza II were not conducted according to the law which requires that the *Guidelines* adopted by the City of Dover Zoning Ordinance for the Dover Historic District be followed in order to issue an architectural review certificate. Approval of a nonconforming structure without application of the *Guidelines* exceeds the jurisdiction of the Commission. Therefore, the decision of the Commission is reversed and remanded for factual findings consistent with the *Guidelines* as required for an architectural review certificate. [FN46]

> FN46. This Court has not addressed the allegation of conflict of interest regarding an HDC voting member. The parties on remand may need to investigate this alleged conflict at the Planning Commission level.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.