IN THE UNITED STATED DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

FRANK E. ACIERNO, CHRISTIANA    :
TOWN CENTER, LLC, a Delaware limited :
liability company, 395 ASSOCIATES, LLC,:
a Delaware limited liability company,    :
ESTATE HOMES, INC., a Delaware    :
corporation,    :
   :
       Plaintiffs,    :    C.A. No. 04-1376
   :
   v.    :
   :
GEORGE O. HAGGERTY, individually and:
in his official capacity as Assistant General :
Manager of the New Castle County    :
Department of Land Use, SCOTT G.    :
WILCOX, individually and in his official    :
Capacity as a First Assistant County    :
Attorney, TIMOTHY P. MULLANEY,    :
individually and in his capacity as New    :
Castle County Attorney, CHARLES L.    :
BAKER, individually and in his capacity as :
General Manager of the New Castle County :
Department of Land Use, JAMES H.    :
EDWARDS, individually and in his capacity:
As Inspections Manager and Licensing    :
Division Manager of the New Castle County:
Department of Land Use, and SHERRY L.    :
FREEBERY, in her individual capacity as    :
Chief Administrative Office of New Castle    :
County, and NEW CASTLE COUNTY, a    :
political subdivision of the State of    :
Delaware,    :
   :
       Defendants.    :    JURY TRIAL DEMANDED

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO THE INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS OR STAY**

THE BAYARD FIRM

Richard L. Abbott (I.D. No. 2712)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
Telephone (302) 655-5000
Facsimile (302) 658-6395
E-Mail: rabbott@bayardfirm.com

Attorneys for Plaintiffs

Dated: March 16, 2005

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................... iii

**STATEMENT OF NATURE AND STAGE OF PROCEEDINGS** .................................. 1

**SUMMARY OF ARGUMENT** ................................................................................. 4

**STATEMENT OF FACTS** ...................................................................................... 6

**ARGUMENT** ......................................................................................................... 13

I.      THE   COUNTS   OF   THE   COMPLAINT   ARE
        UNEFFECTED   BY   THE   *ROOKER-FELDMAN*
        DOCTRINE AND THE PRINCIPLES OF *RES JUDICATA*
        AND COLLATERAL ESTOPPEL ................................................................ 14

        A.      Neither The *Rooker-Feldman*, *Res Judicata*, Nor
                Collateral Estoppel Doctrines Bar Any Claims ............................... 17

II.     THE   INDIVIDUAL   DEFENDANTS   ARE   NOT
        COVERED   BY   ABSOLUTE   IMMUNITY   OR   THE
        *NOERR-PENNINGTON*   DOCTRINE   SINCE   THEY
        WERE   NOT   PERFORMING   PROSECUTORIAL
        FUNCTIONS AND DUE TO EXCEPTIONS TO THESE
        DOCTRINES. ............................................................................................ 24

        A.      None of The Individual Defendants Are Cloaked
                With Absolute Immunity ................................................................. 24

        B.      Nor Is *Noerr-Pennington* Of Any Solace To The
                Individual Defendants ...................................................................... 29

III.    THE   § 1983   CIVIL   RIGHTS   CLAIMS   ARE   NOT
        BARRED BY QUALIFIED IMMUNITY ..................................................... 32

        A.      Procedural Due Process Has Been Well Pleaded ........................... 35

        B.      Substantive Due Process Is Also Well Pleaded ............................. 39

        C.      Acierno's Equal Protection Claims Are Also Well
                Pleaded ............................................................................................. 41

        D.      Acierno Has Likewise Pleaded An Adequate Claim
                For Unconstitutional Taking ........................................................... 43

i

E.    Acierno  Has  Adequately  Pled  A  Claim  For Supervisory Liability Under § 1983 .......................................48

IV.    THE   INDIVIDUAL   DEFENDANTS   ARE   NOT ENTITLED  TO  QUALIFIED  IMMUNITY  FROM PROSECUTION UNDER CIVIL RICO .....................................................49

B.    Acierno Has Alleged Violations Of The Law................................54

V.    THE  COURT  SHOULD  RETAIN  SUPPLEMENTAL JURISDICTION OVER THE STATE COMMON LAW TORT CLAIMS .......................................................................................55

VI.    GIVEN THE ONGOING NATURE OF THE COUNTY CONDUCT  BY  WHICH  ACIERNO  IS  BEING VICTIMIZED, THE CONCEPT OF STAYING THIS ACTION IS AN ESTIMABLY BAD IDEA. .............................................56

CONCLUSION ...............................................................................................61

# TABLE OF AUTHORITIES

Page

Cases

*395 Associates, LLC v. New Castle County,*
2003 WL 21499842, Gebelein, J. (Del. Super. 2003)................................................ 11

*Abbiss v. Delaware Dep't of Transp,*
712 F.Supp. 1159 (1989) ................................................................................ 43,44

*Abbott Laboratories v. Gardner,*
387 U.S. 136, 148-49 (1967) ................................................................................ 47

*Acierno v. Cloutier,*
1993 WL 215133, Robinson, J. (D. Del. 1993) ........................................................ 11

*Acierno v. Cloutier,*
1994 WL 827161, Robinson, J. (D. Del. 1994) ........................................................ 11

*Acierno v. Cloutier,*
40 F.3d 597 (3d Cir. 1994)................................................................................. 10

*Acierno v. Folsom,*
313 A.2d 904 (Del. Ch. 1973)............................................................................. 11

*Acierno v. Folsom,*
337 A.2d 309 (Del. 1975) ............................................................................... 9, 11

*Acierno v. Mitchell,*
1992 WL 694590, Robinson, J. (D. Del. 1992) ........................................................ 11

*Acierno v. Mitchell,*
6 F.3d 970 ................................................................................................... 9

*Acierno v. New Castle County,*
1994 WL 720273, Robinson, J. (D. Del. 1994) ........................................................ 11

*Acierno v. New Castle County,*
1995 WL 704976, Robinson, J. (D. Del. 1995) ........................................................ 11

*Acierno v. New Castle County,*
1996 WL 190005, Robinson, J. (D. Del. 1996) ........................................................ 11

*Acierno v. New Castle County,*
1997 WL 447914, Robinson, J. (D. Del. 1997) ..................................................... 11, 34

*Acierno v. New Castle County,*
  1997 WL 447914, Robinson, J. (D. Del. May 27, 1997) ............................................. 10

*Acierno v. New Castle County,*
  2000 WL 718346, Robinson, J. (D. Del. 2000) ......................................................... 10

*Acierno v. New Castle County,*
  2002 WL 125679, Robinson, J. (D. Del. 2002) ......................................................... 10

*Acierno v. New Castle County,*
  2004 WL 745715, Gebelein, J. (Del. Super. 2004) ................................................... 11

*Acierno v. New Castle County,*
  679 A.2d 455 (Del. 1996) ........................................................................................ 11

*Bello v. Walker,*
  840 F.2d 1124 (3d Cir. 1988) ................................................................................... 36

*Bertucci's Restaurant Corp. v. New Castle County,*
  836 A.2d 515 (Del. Ch. 2003) ................................................................................. 11

*Blair v. Wal-Mart Stores, Inc.,*
  2004 WL 2283560, Sleet, J. (D. Del. 2004) .............................................................. 16

*Buckley v. Fitzsimmons,*
  509 U.S. 259 (1993) ................................................................................................. 25

*Cardillo v. Council of South Bethany,*
  1991 WL 113627, Lee, J. (Del. Super. 1991) ............................................................ 46

*Carter v. City of Philadelphia,*
  181 F.3d 339 (3d Cir. 1999) ................................................................................ 24, 33

*Christiana Town Center, LLC v. New Castle County,*
  2003 WL 21314499, Lamb, V.C. (Del. Ch. 2003) ..................................................... 11

*Cort v. Ash,*
  422 U.S. 66 (1975) ................................................................................................... 43

*Counch v. Delmarva Power & Light Co.,*
  593 A.2d 554 (Del. Ch. 1991) ................................................................................. 43

*Data Comm Communications, Inc. v. The Caramon Group, Inc.,*
  1997 WL 792998, (E.D. Pa. 1997) ........................................................................... 15

*DeBlasio v. Zoning Bd of Adjustment for the Township of West Amwell,*
  53 F.3rd 592 (3d Cir. 1995) ..................................................................................... 36

*Dow Chemical Co. v. Exxon Corp.*,
   30 F.Supp.2d 673 (D. Del. 1998) ............................................................... 16, 47

*Dugan v. Bell Telephone of Pennsylvania*
   876 F.Supp. 713 (W.D. Pa. 1994) ...................................................................... 15

*First Evangelical Lutheran Church v. County of Los Angeles, infra.* ................ 35

*Gibbs v. Deckers*,
   234 F.Supp.2d 458 (D. Del. 2002) ..................................................................... 25

*Gould Electronics, Inc. v. U.S.*,
   220 F.3d 169 (3d Cir. 2000) ............................................................................... 16

*Gouldberg v. City of Rehoboth Beach*,
   565 A.2d 936 (Del. Super. 1989) ....................................................................... 46

*Herr v. Pequea Township*,
   274 F.3d 109 (3d Cir. 2001) ............................................................................... 30

*Hishon v. King & Spalding*,
   476 U.S. 69, 73 (1984) ....................................................................................... 15

*Imbler v. Tachtman*,
   424 U.S. 409 (1976) ............................................................................................ 24

*In re: 244.5 Acres of Land*,
   808 A.2d 753 (Del. 2002) ................................................................................... 34

*Jaguar Cars, Inc. v. Royal Oaks Motorcar Co.*
   46 F.3d 258, 268 (3d Cir. 1995) ........................................................................ 50

*Kehr Packages, Inc. v. Fidelcor, Inc.*,
   926 F.2d 1406 (3d Cir. 1991) ............................................................................. 15

*Korn v. New Castle County*,
   2005 WL 396341, Chandler, Ch. (Del. Ch. 2005) ............................................... 6

*Lindquist v. Buckingham Township*,
   68 Fed. Appx. 288 (3d Cir. 2003) ...................................................................... 45

*Lock v Schreppler*,
   426 A.2d 856 (Del. Super. 1981) ....................................................................... 43

*Mariana v. Fisher*,
   388 F.3d 189 (3d Cir. 2003) ............................................................................... 32

*Mell v. New Castle County*,
   2003 WL 1919331, Chandler, Ch. (Del. Ch. 2003) .............................................. 6

579757v1

*Midnight Sessions Ltd. v. City of Philadelphia*,
  945 F.2d 667 (3d Cir. 1991) ............................................................................ 36

*New Castle County v. Acierno*,
  1995 WL 694385, Steele, V.C. (Del. Ch. 1995) .......................................... 11

*New Castle County v. Christiana Town Center, LLC*,
  2004 WL 740029, Gebelein, J. (Del. Ch. 2004) .......................................... 6

*New Castle County v. Sterling Properties, Inc.*,
  379 A.2d 1125 (Del. 1977) ............................................................................ 11

*New Castle County v. Christiana Town Center, LLC*,
  Court of Chancery C.A. No. 20604-N ........................................................ 57

*Oneida Indian Nation v. County of Oneida*,
  414 U.S. 661 (1974).......................................................................................... 16

*Palazzolo v. Rhode Island*,
  533 U.S. 606 (2001).......................................................................................... 45

*Pelligrino Food Products Co., Inc. v. City of Warren*,
  116 Fed. Appx. 346 (3d Cir. 2004).............................................................. 39

*Rodriguez v. Stevenson*,
  243 F.Supp.2d 58 (D. Del. 2002)............................................................ 27, 33

*Rogin v. Bensalem Township*,
  616 F.2d 680 (3d Cir. 1980)...................................................................... 33, 35

*Rose v. Bartle*,
  871 F.3d 331 (3d Cir. 1989)............................................................ 15, 24, 25

*Salem Church (Delaware) Associates v. New Castle County*,
  2004 WL 1087341, Noble, V.C. (Del. Ch. 2004)........................................ 10

*Saporito v. Combustion Engineering, Inc.*,
  843 F.2d 666, 675 (3d Cir. 1988).................................................................. 53

*Sterling Properties, Inc. v. Folsom*,
  1975 WL 168027, Balick, J. (Del. Super. 1975).......................................... 11

*Suitum v. Tahoe Regional Planning Agency*,
  520 U.S. 725 (1997)........................................................................................ 45

*United States of America v. Gordon, Freebery, et al.*,
  334 F.Supp.2d 581 (D. Del. 2004)............................................................ 6, 49

*Video Int'l Prod., Inc. v. Warner-Amex Cable Communications, Inc.*,
   858 F.2d 1075 (5th Cir. 1988) .................................................................................. 32

*Williamson County Regional County Comm'n v. Hamilton Bank of
   Johnson City*,
   473 U.S. 172 (1985).................................................................................................. 44

*Wilmington Hospitality, LLC v. New Castle County*,
   2004 WL 2419157, Johnston, J. (Del. Super. 2004)................................................... 46

*Woodwind Estates v. Gretkowski*,
   205 F.3d 118 (3d Cir. 2000)...................................................................................... 49

*Young v. West Coast Indus. Relations Ass'n, Inc.*,
   763 F.Supp. 64 (D. Del. 1991).................................................................................. 15

Statutes

New Castle County Code § 12.05.007............................................................................ 38

New Castle County Code § 12.08.002............................................................................ 37

New Castle County Code § 12.08.005C.1 ...................................................................... 37

New Castle County Code § 12.08.006............................................................................ 38

7 *Del. C.* § 6006(4) ...................................................................................................... 38

9 *Del. C.* §§ 1101, 1341, and 770 ................................................................................ 12

9 *Del. C.* §§ 2202(1) and 2802(1) ................................................................................ 12

10 *Del. C* § 564 .......................................................................................................... 21

10 *Del. C.* § 4010(1) .................................................................................................... 56

10 *Del. C.* § 4011(a).................................................................................................... 56

10 *Del. C.* § 4011(b) .................................................................................................... 56

10 *Del. C.* § 4011(b)(3)................................................................................................ 56

10 *Del. C.* § 4011(c).................................................................................................... 56

18 U.S.C. § 1346.................................................................................................. 49, 51

18 U.S.C. § 1961(1)(B) ................................................................................................ 49

18 U.S.C. § 1962(d) ...................................................................................................... 53

18 U.S.C. § 1341 ..................................................................................................... 49

18 U.S.C. § 1343 ..................................................................................................... 49

29 *Del. C.* § 9504 ............................................................................................... 43, 44

42 . U.S.C. § 1983 ............................................................................................... passim

Other Authorities

2 Woolley On Delaware Practice, § 1655 ............................................................... 21

Rules

FRCP 8(a) ............................................................................................................... 14

FRCP 12(b)(1) ............................................................................................. 16, 28, 32

FRCP 12 .................................................................................................. 3, 15, 16, 25

FRCP 12(b) ...................................................................................................... 2, 15, 16

FRCP 12(b)(1) .................................................................................................. 2, 15, 16

FRCP 12(b)(6) .................................................................................................. 2, 15, 25

FRCP 56 .................................................................................................................... 3

Constitutional Provisions

14th Amendment to the United States Constitution .................................... 34, 36, 39, 43, 44

5th Amendments to the United States Constitution ............................................................. 43

7th Amendment to the United States Constitution ............................................................. 22

Article I, § 4 of the Delaware Constitution ............................................................. 22

## STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

On October 21, 2004, Plaintiff Frank E. Acierno and three (3) business entities owned by him (jointly "Acierno"), filed this action against New Castle County ("County") and six (6) County officials, 3 of whom were some of the highest level officials in all of the County government.[1]  All Individual Defendants were sued in both their official and individual capacities.  The focus of the Complaint is on a multi-year conspiracy hatched at the instance of Defendant Sherry L. Freebery ("Freebery"), who thereafter enlisted the assistance of her dutiful subordinates: Charles L. Baker ("Baker"); George O. Haggerty ("Haggerty"); Timothy P. Mullaney ("Mullaney"); and Scott G. Wilcox ("Wilcox").  Defendant James H. Edwards ("Edwards") became involved to a limited degree by "just following orders."  The focus of the Complaint is on the administratively ordained pattern, practice, policy, and course of conduct initiated at the behest of Freebery and her underlings to illegally attack and harass Acierno in an effort to cause him severe financial harm by preventing him from using and developing his lands located in the County's land use regulatory jurisdiction.  These endeavors were undertaken by the Defendants as a result of personal animus against Acierno and in order to further the personal political gain of Freebery and the County administration of then County Executive Thomas P. Gordon ("Gordon").

The Complaint does not focus on any legal proceedings brought by Acierno other than to the extent that they evidence the detrimental impact that he has suffered at the hands of the County decision-makers bent on furthering their illegal scheme.  Acierno does appreciate the reference by the Individual Defendants to the magnitude of litigation

---

[1] Acierno filed an Amended Complaint on November 1, 2004 which adds an additional Individual Defendant but otherwise left the substantive averments of the Complaint unchanged.

that he has been forced to pursue and pay for at considerable expense simply to get the County and the Individual Defendants to finally start following the law and their sworn duties to abide by the Constitution and the laws of the United States of America and the State of Delaware. *See* Brief at 1. Any further discussion beyond the general fact that substantial litigation has ensued from the illegal actions of Defendants against Acierno, however, may not be considered at this early pleading stage of the proceeding. To the extent that they might be considered by the Court for some unforeseen reason, however, it should be made clear that the County has not won any lawsuit involving Acierno or any of his business entities based upon a fully developed record and a plenary (versus narrow appellate) scope of review. In contrast, Acierno has on a number of occasions vigorously prosecuted actions against the County to obtain their ever elusive compliance with simple legal principles, and the County has ultimately folded and provided the necessary approvals in order to moot the litigation (and likely avoid a written court decision which establishes that they once again broke the law in dealing with Acierno).

The County and the Individual Defendants have moved to dismiss this action under: 1) Rule 12(b)(1); 2) Rule 12(b)(6); 3) *res judicata*; 4) collateral estoppel; 5) judicial estoppel; 6) the *Noerr-Pennington* doctrine; 7) the *Rooker-Feldman* doctrine; 8) prosecutorial immunity; 9) judicial immunity; 10) qualified immunity; 11) the *Younger* abstention doctrine; 12) the *Colorado River* abstention doctrine; and 13) the *Burford* doctrine, along with the various sub-categories and permutations underlying or arising from each of these thirteen (13) disciplined bases for pursuing dismissal.[2] Both motions

---

[2] And as if these weren't enough bases to try and avoid having to undergo the discovery process so that the Individual Defendants' secretive actions will finally see the light of day, they have requested that the Court stay this action in the alternative.

have attempted to directly inject nearly one thousand (1,000) pages of supplementary and sworn materials and documents which are not part of the Complaint. In addition, all Defendants have attempted to indirectly put before the Court information and assertions outside of the pleadings which would necessarily require the likely submission of thousands of additional pages of documents for the Court's consideration. Thus, at the outset it should be made clear that the Defendants have actually attempted to pursue Motions for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure before the Plaintiffs have been given the opportunity to take any discovery, and that the Plaintiffs strongly object to the conversion of their Motions from a Rule 12 analysis to a Rule 56 analysis.[3]

---

[3] If the Court is to consider the mountainous volumes of documents and information outside of the pleadings, then it should stay consideration of the Motions to Dismiss in order to permit Acierno to compile rebuttal documents, take depositions and written discovery, and develop the record in order to allow him a full and fair opportunity to respond. *See Rose v. Bartle*, 871 F.2d 331, 340 (3d Cir. 1989). *See also* Rule 56(f) of the Federal Rules of Civil Procedure. Since Acierno opposes conversion of the Motions to Dismiss to Motions for Summary Judgment, only a limited response to the voluminous points asserted which arise from outside of the pleadings is contained in this brief.

## SUMMARY OF ARGUMENT

I.    None of the claims brought in this action, which include civil RICO, § 1983 Civil Rights, Civil Conspiracy, and Tortious Aiding And Abetting, have ever been litigated between the parties, and no matters which form the basis for these claims have ever been litigated to a final decision based upon a complete record and *de novo* scope of review, which Acierno is entitled to as a matter of law.

II.   None of the Individual Defendants have absolute immunity or are protected by the *Noerr-Pennington* doctrine since the assertion that they undertook prosecutorial-based actions is nothing more than a facade for carrying out the illegal scheme for which they are liable under the Civil RICO, § 1983 Civil Rights, Civil Conspiracy, and Tortious Aiding And Abetting theories asserted by the Plaintiffs.

III.  None of the Individual Defendants satisfied the prerequisites necessary to establish qualified immunity under Counts I and II of the Complaint, since their actions were not taken in a prosecutorial or judicial role and were instead the subject of an illegal conspiracy being carried out under the pretext of that role. In addition, the Complaint sets out  adequate factual averments to satisfy the necessary elements of supervisory liability under § 1983 with respect to Defendants Freebery, Mullaney, and Baker.

IV.   The Count III Civil RICO claim is not barred by qualified immunity based upon the lack of any legitimate prosecutorial or judicial role being served by them, as well as the fact that any such role was merely a pretextual façade for efforts to illegally inflict harm on Acierno in furtherance of the racketeering activity that the Individual Defendants jointly decided to undertake. In addition, the Complaint

579757v1

4

sets out an adequate claim of fraud with the necessary particularity, since it avers who did what, where, when, and why.

V.   Counts IV and V asserting claims for Civil Conspiracy and Tortious Aiding And Abetting may not be dismissed since this Court has jurisdiction over Counts I through III, and they cover all necessary elements of the causes and have adequate factual allegations stated in support of the applicable elements.

VI.  None of this case should be stayed indefinitely since to do so would merely permit those Individual Defendants who are still employed by the County and are continuing to carry out the illegal scheme against Acierno to cause even further harm without any redress in the foreseeable future.  In addition, the outcome of many of the pending state cases will have little, if any, affect on the ultimate outcome of this action since the claims are completely different and any similarity between issues in other litigation and issues underlying the claims in this action are not based upon a plenary standard of review and therefore will not be dispositive of Acierno's claims herein.

## STATEMENT OF FACTS

Acierno herein incorporates by reference the facts regarding the parties, the claims, the discrete schemes plotted and carried out by the Defendants, and the five (5) Counts asserted which are contained in the Answering Brief In Opposition To New Castle County's Motion To Dismiss. Based upon a review of the pleadings and the Defendants' arguments in support of their Motions to Dismiss, the Court may infer that the primary purpose for which they have been brought was to delay and potentially deny Acierno discovery in order to further buttress his well-founded claims against them. This is no surprise, particularly with respect to Sherry Freebery who has elusively avoided discovery into her conduct *vis a vis* Acierno even in cases her County brought, and probably with good reason; she is currently the subject of a Federal Grand Jury indictment and criminal prosecution by the United States based on charges of Racketeering and Fraud which are strikingly similar to the conduct she orchestrated against her arch enemy Acierno that gave rise to this action. *See United States of America v. Gordon, Freebery, et al.*, 334 F.Supp.2d 581, 582-83 (D. Del. 2004); *New Castle County v. Christiana Town Center, LLC*, 2004 WL 740029, *2-3, Gebelein, J. (Del. Ch. 2004). *See also Mell v. New Castle County*, 2003 WL 1919331, Chandler, Ch. (Del. Ch. 2003) (describing similar illegal conduct orchestrated by Freebery and her enlisted County employee co-conspirators, followed by her usual habit of excuses based upon legal arguments flatly rejected as "pure sophistry."); *Korn v. New Castle County*, 2005 WL 396341, Chandler, Ch. (Del. Ch. 2005) (excoriating Gordon and Freebery for long-term illegal policies and practices regarding hording of excess funds in clear violation of the State and County Code, and holding that the County must start to finally "abide by its own rules.").

What we know already is that Freebery served as the highest level appointed official in the County government from 1997 to 2005, and that she decided some years ago to run for County Executive in 2004.[4]   Freebery's boss and co-defendant in the Federal Racketeering and Fraud prosecution, Thomas P. Gordon ("Gordon"), has long held the belief that publicly opposing Acierno in land use matters is a politically expedient method of garnering public support.   Gordon has previously made public statements in the land use context like "Whatever Frank Acierno is for, I'm against, it's good politics."[5]   Freebery apparently decided that her political suitor's time-tested advice should be followed.

Not coincidentally, Freebery took a decidedly anti-Acierno tack in her ill-fated and law breaking political campaign.   She distributed flyers and campaign literature which made disparaging personal attacks against Acierno; all with the obvious aim of using Acierno as a political foil in the hopes of gaining votes.   One flyer was even prepared at County expense and distributed by County employees working on County time at a meeting of the New Castle County Council. *See* fn. 5. below

Not content with only assailing Acierno for purely partisan political gain in the campaign context, Freebery opened up her personal assault on Acierno under the auspices of her official governmental role as the County's Chief Administrative Officer.

---

[4] Interestingly, it has recently been established by the U.S. Office of General Counsel that Freebery's run for public office was in direct violation of the Federal Hatch Act, and therefore was completely illegal. *See* Exhibit A attached.

[5] While this issue is only generally in the limited pleading record before the Court for purposes of the Motion To Dismiss, the additional specific information will be provided to the Court pursuant to Affidavit if the Court should decide over the Plaintiffs' objection to convert the Defendants' Motions to ones for Summary Judgment.

We know that at Freebery's behest, County Attorney Timothy P. Mullaney[6] Executive Press Secretary Thomas Hubbard worked extensively on a press release to attack Acierno based on a concocted story using manufactured quotes.[7] Countless hours were spent by the troika on wordsmithing the release in order to twist the language for maximum misleading effect. All of this was for the singular purpose of benefiting Freebery's personal political endeavors and agenda, and meting out punishment against Acierno based upon personal biases and prejudices against him.

Without question, the nefarious actions of Freebery and her crew (the other Defendants in this action) have conducted themselves in all manner of land use issues involving Acierno in a despicable and otherwise inexcusable fashion. All of the Defendants continually attempt to play "hide the ball" so that Acierno will not be able to ultimately get them in his sights for purposes of obtaining a full and fair opportunity to prove their illegal conduct and punish them for their misbehavior and malfeasance. If this conduct involved private individuals, it would be shocking, but since it involves public officials who are vested with the public trust and attendant fiduciary duties to the taxpayers and the democratic, honest system of government which they are duty bound to support and defend, their actions border (if not surmount) the standard of outright criminal conduct.

---

[6] It was eventually determined that Mullaney was never legally appointed as County Attorney due to his disqualification based on lack of compliance with the Delaware Constitution and the County Code requirements that he be a New Castle County resident. *See* Exhibit B attached. In addition, Mullaney was never even sworn in as County Attorney: he never took any written oath of office and none was ever recorded as required by the Delaware Code and the Delaware Constitution. Thus, Mullaney actually operated as a rogue actor on behalf of his political benefactors, Gordon and Freebery, rather than as a truly legitimate County official.

[7] The release was originally aimed at leveling equally scandalous attacks on both Acierno and his legal counsel, Richard L. Abbott, Esquire, but it was later amended to focus the barbs primarily on Acierno.

This is certainly not the first time Acierno has been met with County government conspiracies which have flagrantly violated many species of land use laws and legal protections of the local, State and Federal variety. For decades now, Acierno has been the bulls eye target of illegal County conduct perpetrated by County employees and members or the heads of the County's Executive and Legislative branches with an aim toward shooting down his efforts to simply use his lands in accordance with the rules the County itself has promulgated.

A comprehensive recitation of the history of the first 20 years of the County's illegal actions regarding one Acierno property is contained in a 1993 Opinion of the Unites States Court of Appeals for the Third Circuit in an action styled *Acierno v. Mitchell*, and reported at 6 F.3d 970. The Opinion recounts the County's improper denial of approval of a subdivision plan for an earlier version of the Christiana Town Center shopping center, which was remedied by the mandate of the Delaware Supreme Court in its landmark zoning decision: *Acierno v. Folsom*, 337 A.2d 309 (Del. 1975). The Opinion also discusses other litigation regarding the County's legally improper denial of building permits.

Despite numerous court rebukes, the County continued its virtually unbroken string of obstructionist and illegal tactics aimed at denying Acierno his legal right to develop and use his land throughout much of the 1990's. That is until United States District Court Judge Sue L. Robinson finally put a stop to it (or so she thought); rendering an Opinion that held the County must "allow [the owner of Christiana] to develop the [shopping center property] consistent with [the] record plan depicting commercial development… ." *Acierno v. New Castle County*, 1997 WL 447914 at *19,

Robinson, J. (D. Del. May 27, 1997). Judge Robinson's Opinion was implemented pursuant to a Stipulation And Order which mandated that the County permit Christiana to: 1) "use and develop the [shopping center property] for commercial purposes, including the use and development of a shopping center..."; 2) re-subdivide the Shopping Center property and obtain approval of the Resubdivision Plan; and 3) obtain a building permit in order to commence construction of the first building at the shopping center. *See* Exhibit C attached. The County certainly has not abided by at least the spirit and intent of this Order.

It is in the context of decades of obstreperous conduct by the County, consistently denying Acierno his constitutional, statutory, and common law rights, that this Court is now presented with the latest installments in the history of the County's efforts to prevent Acierno from building the shopping center and other projects. Because the County could no longer directly deny Acierno the right to develop the shopping center property, it embarked upon a more piecemeal pattern of continuing conduct, to prevent Acierno from constructing the shopping center and more.

Indeed, the County, its recently departed top officials and their predecessors can aptly be described as serial violators of Acierno's rights. Every once in a while the County gets away with one, but its narrow-minded focus on singling Acierno out for punishment oftentimes in retribution is now legend in this County. *See e.g. Acierno v. Cloutier*, 40 F.3d 597 (3d Cir. 1994) (In Banc); *Salem Church (Delaware) Associates v. New Castle County*, 2004 WL 1087341, Noble, V.C. (Del. Ch. 2004); *Acierno v. New Castle County*, 2002 WL 125679, Robinson, J. (D. Del. 2002); *Acierno v. New Castle County,* 2000 WL 718346, Robinson, J. (D. Del. 2000); *Acierno v. New Castle County*,

1997 WL 447914, Robinson, J. (D. Del. 1997); *Acierno v. New Castle County*, 1996 WL 190005, Robinson, J. (D. Del. 1996)[8]; *Acierno v. New Castle County*, 1995 WL 704976, Robinson, J. (D. Del. 1995)[9]; *Acierno v. Cloutier*, 1994 WL 827161, Robinson, J. (D. Del. 1994)[10]; *Acierno v. New Castle County*, 1994 WL 720273, Robinson, J. (D. Del. 1994); *Acierno v. Cloutier*, 1993 WL 215133, Robinson, J. (D. Del. 1993); *Acierno v. Mitchell*, 1992 WL 694590, Robinson, J. (D. Del. 1992); *Acierno v. New Castle County*, 2004 WL 745715, Gebelein, J. (Del. Super. 2004); *Bertucci's Restaurant Corp. v. New Castle County*, 836 A.2d 515 (Del. Ch. 2003); *395 Associates, LLC v. New Castle County*, 2003 WL 21499842, Gebelein, J. (Del. Super. 2003); *Christiana Town Center, LLC v. New Castle County*, 2003 WL 21314499, Lamb, V.C. (Del. Ch. 2003); *Acierno v. New Castle County*, 679 A.2d 455 (Del. 1996); *New Castle County v. Acierno*, 1995 WL 694385, Steele, V.C. (Del. Ch. 1995); *New Castle County v. Sterling Properties, Inc.*, 379 A.2d 1125 (Del. 1977); *Sterling Properties, Inc. v. Folsom*, 1975 WL 168027, Balick, J. (Del. Super. 1975); *Acierno v. Folsom*, 337 A.2d 309 (Del. 1975); *Acierno v. Folsom*, 313 A.2d 904 (Del. Ch. 1973).

Gordon and Freebery, both long-term County employees, seem to have picked up on this habit of the County to treat Acierno as its public punching bag. In July of 2003, they surprisingly announced that they intended to take Acierno's Merchant's Square

---

[8] A case in which Judge Robinson rejected some of the very same clever and result-oriented arguments raised by the Defendants in their Motions to Dismiss based on startlingly and tragically similar facts.

[9] Whereas Judge Robinson also denied some of the same Constitutional challenges raised by the Defendants' Motions to Dismiss.

[10] Exemplifying the outlandish lengths to which the County has historically gone to beat Acierno; even attacking the ethics of a sitting United States District Court Judge in order to try and disqualify her based upon prior decisions which the County viewed as too favorable to Acierno.

shopping center in an unprecedented proposal to condemn one of numerous underutilized commercial sites in New Castle County and convert it into a park in a geographic area that already enjoys more acres of parkland *per capita* than any other region in northern New Castle County. *See* Exhibit D attached. Even more telling was the fact that in Gordon and Freebery's blind lust to attack and harm Acierno for political gain and personal aggrandizement, they overlooked the important legal point that the County did not even possess the power of eminent domain to take the property for parkland purposes. *See e.g.* 9 *Del. C.* §§ 1101, 1341, and 770, and Cf. 9 *Del. C.* §§ 2202(1) and 2802(1). In short, the County, its top level officials, and their subordinates have continued to follow in the footsteps of their predecessors in taking every feasible opportunity they can to stomp on Acierno and his property rights as a part of a far-flung conspiracy to disproportionately, arbitrarily and with reckless abandon dish-out punishment in order to gain a positive political persona in the eyes of the public.

## ARGUMENT

The seminal issue presented by the defendants' motions to dismiss is whether high level county government officials may get away with successfully plotting and implementing a plan to intentionally and with evil motive deny a private landowner his legally guaranteed right to freely use his land based upon a complex web of technical issues arising from pleading standards and judge-made exceptions to otherwise clear statutory grants of jurisdiction and justiciability. Acierno wants his day in court. and he should have it, particularly given the heinous treatment he has received and the mind-boggling degree of damages he has suffered at the hands of a group of co-conspirators who consciously decided to ignore the law and abuse their positions of authority for purposes of their personal gain and their own sordid and twisted enjoyment. all of this may be reasonably inferred from the pleadings.

The Opening Brief contains the suggestion that the pleading standards have magically changed (no doubt because Acierno is involved) so that they are so onerous and exacting that he must state averments with the degree of specificity and detail normally reserved for determining whether a plaintiff has made out a *prima facie* case-in-chief in the course of trial. In essence, the Defendants suggest that the pleading standards are a throw back to the hyper-technical code pleading practice of a bygone era. The Defendants are sorely misled in this regard.

Indeed, the modern era of pleading focuses on adequate notice, liberally construed, with the parties left to the discovery process to flesh out the details of whether a claim may ultimately be proven at trial. Acierno submits that the Defendants are way off the mark, and that for the Court to buy into the lions share of their arguments would be an injudicious mistake. Otherwise, government actors such as the Defendants could

regularly violate citizens' rights in the land use realm with impunity and face no consequences for using the mechanisms of government at their disposal for consistently illegal purposes. In almost every land use dispute, the government will hold virtually all of the cards; both in terms of the background facts surrounding land use decisions and a "leg up" in administrative and State law court review due to exceedingly narrow scopes of review and close relationships with members of the administrative appellate boards.

I.    THE COUNTS OF THE COMPLAINT ARE UNEFFECTED BY THE *ROOKER-FELDMAN* DOCTRINE AND THE PRINCIPLES OF *RES JUDICATA* AND COLLATERAL ESTOPPEL

At the outset, Acierno notes that the standard of review for Motions to Dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted do not generally permit the consideration of documents and other materials from outside of the pleadings.  Because the Individual Defendants' Motions to Dismiss rely heavily and almost across the board upon such non-pleading information, their Motions must be denied on those grounds alone.  Many of their arguments submitted fall painfully flat absent such impermissible buttressing.[11]

The Court is no doubt mindful of the fact that Federal Rule of Civil Procedure 8(a) only requires that the Complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief... ."  A Plaintiff need not set out extensive details underlying the general facts upon which he bases his claim.  *Data Comm Communications, Inc. v. The Caramon Group, Inc.*, 1997 WL 792998, *2, (E.D. Pa.

---

[11] Acierno also incorporates by reference the dissertation on the appropriate standards of review regarding motions to dismiss found in his Answering Brief in opposition to the County's Motion to Dismiss.

1997). Instead, a plaintiff must only provide the defendant with fair notice of what the claims are and the grounds upon which they are based. *Id.* Similarly put, the question to be decided by the Court is not whether the Plaintiffs will ultimately prevail, but rather whether they can prove any possible facts upon which they may be able to prevail. *Dugan v. Bell Telephone of Pennsylvania*, 876 F.Supp. 713, 718 (W.D. Pa. 1994), citing *Hishon v. King & Spalding*, 476 U.S. 69, 73 (1984).

The standard of review under Rule 12(b)(6) is whether taking the allegations of the Complaint as true, viewing them liberally, and giving the Plaintiffs the benefit of all inferences which may fairly be drawn therefrom, it appears beyond doubt that the Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Rose v. Bartle*, 871 F.3d 331, 342 (3d Cir. 1989). Claims under RICO should be considered based on the same pleading standards as any other claim. *Young v. West Coast Indus. Relations Ass'n, Inc.*, 763 F.Supp. 64, 67 (D. Del. 1991). Rule 12(b) dictates that if matters outside of the pleadings are presented and not excluded by the Court, the motion must be treated as one seeking summary judgment pursuant to Rule 56. *Rose v. Bartle* at 340. No exception to this rule applies in this circuit except in the possible case of documents attached as an exhibit to the Complaint. *Id.* at 340, n.3.

In contrast, a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) must be based on the alleged legal insufficiency of a claim. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408 (3d Cir. 1991). Such motions should only be granted where a claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction, or is wholly insubstantial and frivolous. *Id.* at 1408-9. In other words, a claim must be "so insubstantial, implausible, foreclosed by prior decisions of

this [Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Id.* at 1409, citing *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974).

A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the Court's subject matter jurisdiction. *Gould Electronics, Inc. v. U.S.,* 220 F.3d 169, 176 (3d Cir. 2000). In reviewing a facial attack, the Court may only consider pleadings and documents referenced therein or attached thereto, in the light most favorable to the Plaintiff. *Id.* In reviewing a factual attack, the Court may additionally consider evidence outside the pleadings. *Id.* The Individual Defendants glaze over this dichotomy, and proceed based upon the assumption that their 12(b)(1) challenges constitute factual attacks on the Court's jurisdiction. Brief at 16-17. It makes a difference in this action since the Individual Defendants appear to assert facial and factual challenges to Acierno's Complaint. A facial attack under Rule 12(b)(1) is one that asserts that a Complaint fails to aver a cognizable claim. *See Blair v. Wal-Mart Stores, Inc.*, 2004 WL 2283560, *2, Sleet, J. (D. Del. 2004). A factual attack is one which asserts a broad-based justification for the Court to decline exercising jurisdiction based on a common law or decisional law doctrine or principle. *See Dow Chemical Co. v. Exxon Corp.*, 30 F.Supp.2d 673, 690-93 (D. Del. 1998).

The Rule 12(b)(1) motion of the Individual Defendants is further complicated by the detailed and unique set of procedures that must be applied in the context of a factual attack. The Third Circuit has provided an outline for procedures to insure that a ruling by the District Court under such circumstances will be based on an adequate factual record. If a defendant contests allegations in the pleadings by presenting rebuttal evidence, the

Court must permit the plaintiff to respond with evidence supporting jurisdiction. *Gould Electronics, Inc., supra.* at 177. Only then may the Court determine jurisdiction by weighing the evidence presented by the parties. If there remains a dispute of material fact, the Court must conduct a plenary trial on the contested facts prior to ruling upon jurisdiction. *Id.*

The Individual Defendants have attempted to ignore these requirements. As a result, the Court should not afford them the opportunity to proceed in derivation of the correct procedure. Acierno requests an opportunity to respond to the evidence presented by the County in a subsequent focused submission if the Court is inclined to consider any of the evidence from outside the pleadings, or if the Court deems such evidence to potentially support a successful factual attack on jurisdiction. Consequently, Acierno will only generally respond based upon the failings of the Individual Defendants' non-pleading evidence, and will reserve the right to submit rebuttal documents only if the Court deems it necessary.

A.    Neither The *Rooker-Feldman*, *Res Judicata*, Nor
       Collateral Estoppel Doctrines Bar Any Claims

The Individual Defendants contend that claims asserted by Acierno request a re-review of claims or issues previously decided by State courts which fall within the ambit of the *Rooker-Feldman* doctrine and the principles of *res judicata* and collateral estoppel. Brief at 18-25. As a threshold matter, it is clear that all three (3) of these doctrinal principles have as a necessary prerequisite the litigation to final judgment of claims asserted by Plaintiffs based on an action that they initiated of their own volition and which involve the freedom to assert any and all claims or issues that the law

potentially allows. The common foundation for each of the doctrines is the belief that the federal courts should not be in the business of giving a plaintiff a second bite at the apple.

It should also be noted that the Individual Defendants only actually argue that numerous issues raised by Acierno in this action have previously been finally adjudicated. Brief at 21-25. In addition, they argue only that certain legal issues have been finally decided in the past. *Id.* Because the *Rooker-Feldman* and *res judicata* doctrines are only forms of claim preclusion, the Individual Defendants have not presented any justification for their application in the case *sub judice.* Similarly, they have not established that collateral estoppel applies since they have not alleged that Acierno is attempting to re-litigate a factual issue.

Not surprisingly, the Individual Defendants have failed to point out to the Court that none of the prior actions between Acierno and the County have involved <u>claims</u> under Civil RICO, 42 U.S.C. § 1983, the federal constitution, common law civil conspiracy, or common law tortious aiding and abetting. In addition, a large majority of the cases between the parties were either: 1) appeals based upon a narrow review at the administrative appeal board level; 2) an even more narrow Superior Court review based solely on the record under the common law *Writ of Certiorari*; or 3) a yet narrower Supreme Court review of the *Certiorari* review, which reviewed the limited administrative appellate review. Nor did they mention that some other litigation has been under the common law *Writ of Mandamus* in Superior Court. They have also failed to mention that no United States Constitutional claims have been asserted in the small number of actions where Acierno has initiated suits proactively (rather than reactively) or that some actions have been decided on the very narrow basis of lack of jurisdiction.

Most importantly, the County has misled the Court into believing that one *Mandamus* action filed in June of 2003 resulted in a conclusive victory for them, despite the fact that the case was simply dismissed by Judge Gebelein of the Superior Court on the grounds that it had become moot (as a result of his threat to likely rule against the County on a Friday unless he saw the Letters of Compliance at issue that morning). In fact, the record reflects that Acierno has not yet had any opportunity to actually "litigate" claims or issues asserted in this action in the traditional sense of the word.

The Individual Defendants assert that the Court should deny Acierno his first opportunity to challenge the County based upon the claims and issues asserted in this action because they are kin to issues involved in previous proceedings where the County was in the proverbial driver's seat on what can best be described as a protective "closed course." Now that Acierno has the chance to take them head-on in unbridled litigation, they have begun clamoring for an escape valve since they do not control this Court in the same fashion that they control the administrative decision making process. Nor can the Individual Defendants hide behind the limited record-making opportunity and narrow scope of review of the administrative appellate level where the decisions are made by their buddies that they appointed to the board. Nor can they here play the same "catch me if you can" game that they are afforded in a State Court system where the record and scope of review are so narrow that almost no one is ever able to succeed on such hair-splitting appellate arguments. This action is Acierno's first clear shot at being able to proactively challenge the County's scheme and its various component parts based upon a fully developed record and a *de novo* review. Thus, it should come as no surprise that the Individual Defendants seek instead to box him in, handcuff him, and back him into a

corner so that he may never be allowed to truly litigate his claims and reveal their dastardly conduct. Same story, different day.

Turning to the specific criteria necessary to establish each of the doctrines, Acierno first points out in response to the *Rooker-Feldman* argument that he has not "actually litigated" the claims asserted in this action, and that none of the claims in this action are "inextricably intertwined" with any state adjudication. The Complaint does not assert, nor will Acierno argue in this action, that any State Court decision wrongly decided the law. If the Delaware Superior Court denied a *Writ of Mandamus* on the narrow basis that the action being challenged was discretionary rather than ministerial, or if reversal of an administrative appellate decision was denied in a narrow *Certiorari* appeal proceeding, however, Acierno will be free to bring in the full panoply of evidence which will be culled when the mechanisms of discovery in this action (as opposed to the closed record administrative proceedings), are brought to bear. In short, State Court decisions based upon limited records and narrow standards of review do not and cannot have any preclusive effect beyond the limited set of facts upon which they are based. In other words, such rulings are limited solely to the facts and circumstances before the Court at the time.

Appellate decisions are also not preclusive of issues the administrative hearing officers and appellate boards failed or refused to consider or rule upon. For example, the License Inspection & Review Board and the Planning Board have previously refused to consider Constitutional and equitable arguments presented to them on the grounds that they lacked jurisdiction. At least they have a transcript of their proceedings. As for the original administrative hearings, however, there is no such record and the hearing officers

are often wont to fluff up the facts presented by the County and conveniently (not) overlook critical admissions against interest and virtual confessions by County witnesses in their decisions. Some of Acierno's equitable and State Constitutional arguments not considered by the boards have been presented in actions seeking equitable relief filed in the Court of Chancery, but this is the first time Acierno has been able to present claims under the U.S. Constitution, RICO, and the common law of torts.

The Individual Defendants' argument that *res judicata* prevents any of the claims in this action is similarly misplaced. They themselves admit that the cause of action must be the same or the issues decided must be the same, and that the issues in the prior action must be decided adversely to the Plaintiffs' contentions herein. Brief at 19-20. It is clear that the causes of action brought in this case have not been previously asserted by Acierno. In addition, Court findings in prior actions that Acierno is not entitled to the limited affirmative relief in the form of a *Writ of Mandamus*, where a case is dismissed as a result of the County throwing in the towel and the court finding the action to thereby be mooted or where a court decides that sufficient evidence existed and no clear errors of law were committed based upon a limited record, cannot have preclusive effect. The peremptory *Writ of Mandamus* is a limited, special proceeding which may not be granted if there is another legal remedy. 10 *Del. C.* § 564; 2 Woolley On Delaware Practice, § 1655. Because a *Mandamus* proceeding must for its possible success include only the single legal claim seeking the *Writ*, it is syllogistic for the Individual Defendants to suggest that any form of estoppel or preclusion may result from a *Mandamus* action.

Further, no actions have previously been conducted by Acierno which have resulted in adverse decisions based upon the traditional concept of "litigation," where

Acierno would have been permitted to use the typical discovery mechanisms with free range to make his case based upon a plenary standard of review. This is also important because Acierno for the first time in this action has an opportunity to present his case not only with a full record and a full scope of review, but also to a jury of his peers, which is a guarantee provided to him by both Article I, § 4 of the Delaware Constitution and the 7th Amendment to the United States Constitution. Acierno has never had a full and fair opportunity to present any of the claims or issues asserted in this case, and consequently *res judicata* does not forestall his pursuit of them hereby.

In the Individual Defendants' Brief, they also concede that in order for collateral estoppel to apply, a question of fact must have been litigated and determined by a final judgment. Brief at 20. The Superior Court has never needed to finally determine any questions of fact in *Mandamus* proceedings since all have been resolved pursuant to the County conceding defeat or the Court narrowly ruling that the challenged act is legally not ministerial but is instead discretionary in nature. No questions of fact have been litigated and determined in any common law *Certiorari* proceedings since they are by their very nature limited to the narrow record handed up from the closed record developed in the abbreviated administrative process. The Chancery actions which are concluded, including two brought by Acierno and one brought by the County, have resulted in only jurisdictional or preliminary determinations entered at the outset before any factual record was developed or presented for final decision.

The Individual Defendants' argument at page 20-21 of their Brief that administrative review board decisions can have collateral estoppel effect would be humorous if the County were intending it as a joke. Even though they do appear to be

seriously suggesting this proposition, the Court may promptly dispense with it since there is no legitimate argument that board hearings based upon a narrow scope of review, which do not involve pre-hearing discovery or the opportunity to subpoena witnesses or cross-exam witnesses, can at least in developing world be considered "an adequate opportunity to litigate."[12]

It is possible that there may be a few legal or factual issues which this Court ultimately decides to give preclusive effect to. If so, then it is reasonably presumed that the Individual Defendants will raise that limited argument at the appropriate time (*i.e.* summary judgment and/or trial). The Court may not and should not, however, "throw the baby out with the bathwater" by dismissing the entirety of Acierno's claims on the grounds that there may be some *de minimis* connection between a few matters and his case herein.[13]

Finally, the Individual Defendants' snide attempt to catapult a polite comment by Acierno's counsel that Wilcox was likely "well-meaning" to the status of a binding party admission is sophomoric and logically inane. The statement was extended as a professional courtesy. It cannot be instantaneously mutated into a bar to Acierno's

---

[12] The County citation to *Acierno v. New Castle County* is completely inapposite. *See* Brief at 21. The New Castle County Board of Adjustment is a *quasi*-judicial board which applies a plenary standard of review and provides all the attributes of a full-blown adversarial proceeding. In direct contradistinction, appeals to the Planning Board and License Inspection & Review Board at issue in this action are appellate hearings on the record from below (which does not include a transcript or exhibits submitted) based upon a limited appellate scope of review (clear error, or orderly and deductive thought process).

[13] The Individual Defendants inexplicably insert an argument regarding judicial estoppel in the middle of their misleading screed about reasons why a Court wearing blinders might be tricked into believing certain outcomes which they suggest, but that are factually misrepresentative. *See* Brief at 23-24. Since administrative hearing officers are not judges in the traditional sense, and Individual Defendants cite no law that modifies this fact, the Court should take a common sense approach and decline to find any judicial immunity to exist under the circumstances.

position in this action, however, since it was not stated as a formal position <u>by Acierno</u>, and it was not presented for purposes of the Court's reliance in its decision making process. It was nothing more than a inconsequential pleasantry. In addition, given the passage of time and occurrence of further mistreatment at Wilcox's hands, it is readily apparent that his efforts were patently illegal. This is to say nothing of the what the impact that the Individuals Defendants' suggested punishment of Acierno's counsel's kindness would have on the professional civility that the Bar of this State so relishes.

II. THE INDIVIDUAL DEFENDANTS ARE NOT COVERED BY ABSOLUTE IMMUNITY OR THE *NOERR-PENNINGTON* DOCTRINE SINCE THEY WERE NOT PERFORMING PROSECUTORIAL FUNCTIONS AND DUE TO EXCEPTIONS TO THESE DOCTRINES.

A. None of The Individual Defendants Are Cloaked With Absolute Immunity

It is well established that absolute immunity from civil liability is only available for activities which are intimately associated with the judicial phase of the criminal process, such as initiating a prosecution and presenting the State's case. *Rose v. Bartle*, 871 F.2d 331, 343 (3d Cir. 1989), citing *Imbler v. Tachtman*, 424 U.S. 409, 430-31 (1976). Under those circumstances where a prosecutor acts in the role of an administrator or an investigative officer rather than an advocate, however, only qualified immunity may apply. *Id.* Indeed, the Court's analysis of this affirmative defense must begin with the presumption that qualified immunity is favored over absolute immunity since the U.S. Supreme Court has been "quite sparing" in its recognition of absolute immunity. *Carter v. City of Philadelphia*, 181 F.3d 339, 355 (3d Cir. 1999). In addition, the Supreme Court dictates application of a functional approach to immunity issues,

which requires an official seeking it to bear the burden of showing it is justified for the actions at issue. *Id.* at 355-56.

Additionally, there are situations in which a prosecutor acts outside a legitimate prosecutorial role and is therefore not entitled to absolute immunity. *Rose v. Bartle* at 434. For example, a prosecutor's involvement in wiretapping, and giving legal advice to police during a police investigation, making false statements at a press conference, and fabricating evidence prior to indictment or arrest, are not protected by prosecutorial immunity. *Gibbs v. Deckers*, 234 F.Supp.2d 458, 462 (D. Del. 2002). It is only once a prosecutor has decided to seek an indictment that absolute immunity is triggered, so that only those actions taken in anticipation of the impending judicial proceedings or as an advocate in those proceedings are immune from liability. *Id.*, citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 272-78 (1993).

Once again, Acierno notes that to the extent that the Court wishes to consider any matters outside of the pleadings, an opportunity to fully respond and rebut the non-pleading information presented by the Individual Defendants should be provided in accordance with the Third Circuit's decision in *Gould Electronics, Inc.*. A supplemental submission will likely be unnecessary, however, since Acierno believes that even after considering all of the information from outside of the pleadings, the Court will conclude that the County's arguments do not hold water. In fact, since the immunity issue has been typically treated by the Courts as a Rule 12(b)(6) Motion, no items outside of the pleadings should be considered by the Court in deciding the absolute immunity issue. *See Gibbs v. Deckers, supra.* at 458.

The only Defendant who took any actions raised in the Complaint in even a remotely prosecutorial role was Wilcox. Importantly, Wilcox spent most of his time in dealing with matters involving Acierno in his role as an investigator for administrative decision-makers. Wilcox denied permits to Acierno - *eg.* he intervened to deny Acierno permits for Phase 4 of the Christiana Town Center shopping center and for Bertucci's Restaurant. Wilcox also participated in investigatory efforts regarding the condition of Acierno's properties, and assisted Haggerty as his "right hand man" in manufacturing false and legally inapplicable bases for denying Acierno reviews, such as a preconstruction meeting cancellation that allowed the County to carry out the intentionally illegal sunsetting of Acierno's Red Lion Village plan. Wilcox also provided legal advice tailored to reach the pre-determined, anti-Acierno conclusion by intentionally misstating the law, which was intended to provide "cover" for Haggerty and their members of the merry band of Acierno-bashers. Further, Wilcox did not bring the specific charges; Haggerty and Edwards did (based upon the general, and sometimes specific, approval of Baker).

Plus the Individual Defendants fail to understand how this entire Racketeering conspiracy went down. Freebery, who is at the top of the chain of command, obviously made it known to one or more of the other Defendants that she considered it to be politically expedient and personally advantageous to try and figuratively run Acierno into the ground. Once these marching orders were given, and likely incentivized and rewarded, other County employees further down the pecking order got the message and acted accordingly. Haggerty certainly took the concept to new heights, and kept his finger on the pulse of any activities involving Acierno in order to implement Freebery's

fiat. A racketeering scheme does not require any greater formality than this. In the end, Wilcox willingly and knowingly enlisted in the behind-the-scenes efforts to strategize methods to fabricate non-existent legal standards and blatantly misapply the law with the single-minded objective to shut Acierno down.

No allegations of the Complaint involve Wilcox *qua* prosecutor. In fact, the Complaint specifically indicates that Wilcox took actions as a land use administrator, as opposed to a prosecutorial attorney (which he did). In addition, there is no indication that prosecutorial immunity applies to every day run-of-the-mill legal advice and input. In fact, it is Acierno's firm belief that one of Freebery's and the County's primary methods of attempting to hide their illicit activities against Acierno, as well as others, was to typically include attorneys such as Wilcox in meetings so that they could thereafter assert the attorney/client privilege to prevent any release of their shenanigans under the Freedom of Information Act or in litigation discovery. The fact that Wilcox allowed himself to used as a pawn and a tool in Freebery's jaded campaign to try and ruin Acierno simply does not come anywhere near qualifying as an immune activity.

As for the allegations that Individual Defendants other than Wilcox are absolutely immune from suit, the Court is called upon to undertake a three-part analysis: 1) whether there is "a historical or common law basis for the immunity in question"; 2) whether performance of the function poses a risk of harassment or vexatious litigation against the official; and 3) whether there exists alternatives to damage suits against the official as a means of redressing wrongful conduct. *Rodriguez v. Stevenson*, 243 F.Supp.2d 58, 64 (D. Del. 2002). In *Rodriguez*, the plaintiff sued a Delaware Deputy Attorney General and an appellate hearing officer who prosecuted and presided over a hearing which affirmed a

determination of abuse arising from an informal review hearing at the administrative level. *Id.* at 61-62 and 64. The Court, however, held that only the actions taken in the context of the preparation for conduct of the *quasi*-judicial administrative hearing were subject to qualified immunity, and that the conduct of all parties involved in the administrative review process which proceeded the appeal were only potentially covered by qualified immunity. *Id.* at 64-65.

In the case *sub judice*, no members of any County administrative appeal board have been named as Defendants in this action. Based upon the holding in *Rodriguez v. Stevenson*, it is only the prosecutorial conduct of presenting the County's case at such hearings that could potentially be subject to absolute immunity. Instead, this case involves parties who have taken actions akin to the administrative review stage in *Rodriguez*; conducting a more informal "meeting" characterized by none of the typical formalities that are attendant to the type of administrative hearing for which absolute immunity might be available (*i.e.* the availability of limited discovery, a record of the hearing, the ability to subpoena witnesses and cross-exam adverse witnesses, etc.).

Additionally, the dye was already cast by the time Acierno was able to proceed to the non-adjudicatory proceedings conducted by Haggerty and Edwards; the administrative footwork had already been conducted by Haggerty, Wilcox and others in order to manufacture non-existent legal requirements and cull facts from past or specially ordered inspections to fabricate make believe charges. They used this format to further the illegal scheme that they concocted with other Defendants because they knew that they could abuse the administrative system based upon its (likely unconstitutional) shift in the burden of proof, which essentially presumes Acierno to be guilty unless and until he

proves himself innocent. In addition, the nightmarish County administrative process strangely forces Acierno to rely on a virtually insurmountable legal standard and to bear the burden to prove it beyond a reasonable doubt. The County has no obligation to prove Acierno did anything wrong; all they have to do is say it, and it shall be so. This Star Chamber-like course of proceeding is ripe with potential for abuse; a fact not missed on Defendants. They know from firsthand experience just how pliable the process is. Given the Third World specter of the County administrative "hearing" process, it should not be accorded the level of deference and respect which is necessary in order to apply the doctrine of absolute immunity for "judicial" proceedings.

>B.    Nor Is *Noerr-Pennington* Of Any Solace To The
>Individual Defendants

Contrary to the assertion contained in the Individual Defendants' Brief, Acierno's primary focus in this action is to number one recoup the delay damages that he has suffered while under their chafing yoke. Their illegal conduct has improperly denied him the ability to move forward with development projects years ago, so that he could recognize the ultimate profits the projects would generate. *See* Brief at 29. In addition, the Individual Defendants' assertion that Acierno is to blame for his attorneys fees expended in numerous lawsuits is so misguided that it could only be put forth by persons with no conscience. *See* Brief at 29. It unveils the true heartless personalities which are at the core of the problems which gave birth to this litigation.

Acierno has brought zero (0) lawsuits of his own volition. All of the actions he has filed have been reactive; forced upon him by the illegal conduct of the Defendants. Indeed, the fact that Acierno has been required to expend hundreds of thousands (if not millions) of dollars to vindicate his rights against serial Racketeers who also double as

579757v1

29

corrupt governmental officials speaks volumes about the importance of this litigation proceeding and the injustice of applying any judicially created prohibitions which might apply to a "plain vanilla" suit challenging government decisions. This case is so extraordinary and unique that it defies finite categorization or overly simplistic pigeonholing.

As for the *Noerr-Pennington* doctrine, it fails to apply for precisely the same reasons that the absolute prosecutorial immunity argument fizzled: Acierno sues not for the Individual Defendants' participation in criminal prosecutions, but instead zeros in on the illegal conspiracy that gave life to them. In addition, none of the Individual Defendants petitioned the government; they were the government.

Nor did the Individual Defendants attend proceedings of other non-County governmental bodies or submit politically motivated positions contrary to Acierno's interest. That is precisely what was at the heart of the case cited by the Individual Defendants: *Herr v. Pequea Township*, 274 F.3d 109 (3d Cir. 2001). Indeed, the Third Circuit noted this very distinguishing fact: "[the landowner's] claim is thus not that the defendants subverted a decision making process by taking irrelevant considerations into account[; i]t is rather that the defendants contested issues before the bodies authorized to resolve various permitting issues because they wished to defeat or delay the approval of [the landowner's] project by those bodies." *Herr* at 112. By way of analogy, *Herr* would protect, under the guise of the *Noerr-Pennington* doctrine, the actions of a County Councilperson who attends a County Board of Adjustment hearing and advocates for the denial of a variance on behalf of constituents.[14]

---

[14] This is a situation with which Acierno's counsel is not completely unfamiliar.

This action is not brought against any members of the New Castle County Council who may have appeared at an administrative appellate hearing and testified in favor of their constituents and against "big bad developer" Acierno. Obviously, elected officials wear a different hat in the context of public speaking versus their role in deciding administrative appeals or voting on legislation (in which case other forms of immunity such as judicial immunity and legislative immunity would likely apply). Thus, it appears that the *Herr* case really just represents a desire by the courts to protect the elected officials based on whatever hat they're wearing; a purpose not served by application of *Noerr-Pennington* in the case at bar.

In addition, the argument that the *Noerr-Pennington* doctrine immunizes the Individual Defendants in this action is inherently inconsistent with its sister argument regarding absolute immunity. When the Individual Defendants argued qualified immunity, they submitted that this action challenged solely their actions in bringing criminal charges and prosecuting them in a formal adjudicatory proceeding (which of course proved to be incorrect). But yet another method of possibly slipping away from liability in this action presents itself, and so they cannot resist the temptation to avoid facing the music. Based upon this opportunity, their position on the thrust of Acierno's case has been miraculously transmuted into one attacking their actions in a public petition role outside of the confines of formal adjudicatory proceedings. The Individual Defendants cannot have it both ways. In fact, the pleadings establish that they are wrong on both counts. They did not petition any non-County body or entity. Why would they when they could not be assured of the same anti-Acierno outcome that they so joyously enjoyed in the County process that they controlled?

Regardless, no public petitioning activity such as that involved in *Herr* took place. No did Individual Defendants do anything remotely resembling the activities at issue in the Third Circuit's more recent decision in *Mariana v. Fisher*, 388 F.3d 189 (3d Cir. 2003). Therein, the Court held that the Pennsylvania Attorney General's actions in filing suits against tobacco companies and lobbying elected officials in support of the ultimate tobacco trust fund settlement was protected conduct under *Noerr-Pennington*. Political suits and lobbying were never conducted by Individual Defendants.

In fact, the court in *Mariana* indicated implicitly that the *Noerr-Pennington* doctrine does not apply to circumstances where a plaintiff seeks to impose liability against a local government based on zoning enforcement decisions. *Mariana* at 199, discussing *Video Int'l Prod., Inc. v. Warner-Amex Cable Communications, Inc.*, 858 F.2d 1075, 1086 (5th Cir. 1988). The *Warner-Amex* court noted the same point that counsel for Acierno previously raised: "it is impossible for the government to petition itself" under such circumstances. *Id.* The proposition applies equally in the case *sub judice*.

III.    **THE § 1983 CIVIL RIGHTS CLAIMS ARE NOT
        BARRED BY QUALIFIED IMMUNITY**

The next defense in the Individual Defendants' laundry list, shotgun approach to avoid releasing the truth is their claim of qualified immunity for all.[15] If it were only so. Amazingly, the Individual Defendants assert that they are entitled to qualified immunity because Acierno has not alleged a violation of "clearly established" Constitutional rights. Brief at 31. Presumably, Individual Defendants have conveniently forgotten their legal

---

[15] Indeed, qualified immunity is a defense and therefore the issue is appropriately considered based on the 12(b)(6) standard which excludes the consideration of extraneous materials from outside the pleadings.

training in some instances, and their oaths of office that they all swore to for either their current job or a prior position during their working careers.

Governmental officials exercising discretionary functions are entitled to qualified immunity from suit under § 1983 to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Rodriguez v. Stevenson, supra.* at 65. The analysis involves a two-part test: 1) whether the facts alleged, viewed in the light most favorable to the plaintiff, sufficiently establish that the defendant violated a constitutional right; and 2) whether the right was clearly established at the time of the alleged violation such that a reasonable official would have understood his actions violated the right. *Id.* If these two criteria apply, then official action is only protected by qualified immunity if the official's conduct was "objectively reasonable" in light of the constitutional rights implicated. *Carter v. City of Philadelphia, supra.* at 356.

It cannot be legitimately gainsaid that persons so well trained in the law and experienced in dealing with innumerable challenges to land use decisions during their careers, many of them involving Acierno, could have failed to see that their actions affected important United States Constitutional rights. In particular, the fundamental principles of Due Process require adequate notice, a hearing at which witnesses may be called (by subpoena if necessary) and at which government witnesses may be cross-examined, and reliance upon the applicable legal standard. *Rogin v. Bensalem Township, infra.* The Equal Protection And Substantive Due Process issues were equally well-established in the context of Acierno and some of the very same Defendants (as well as some of their legal counsel) who are involved in this action. In 1997, then Judge

Robinson of this Court held that the County had violated Acierno's 14th Amendment rights with respect to ill-motivated and pretextual actions akin to those at issue in this action, for one of the very same properties that is asserted in this a component of this case (Christiana Town Center shopping center). *Acierno v. New Castle County*, 1997 WL 447914, Robinson, J. (D. Del. 1997).

In Delaware, a property owner's rights to develop in accordance with governmental approvals vests prior to a local government's final sign off. In fact, where a landowner complies with all legal requirements of the local code within his control, the right to final approval vests in spite of any extraneous non-local government requirements which may not have been satisfied. *In re: 244.5 Acres of Land*, 808 A.2d 753, 758 (Del. 2002). Thus, any hold-up in granting Acierno land use approvals in spite of his good faith compliance with all elements of County law within his sole control would constitute a *per se* violation of his legal right to use and develop his land.

Notably, Baker previously attended a CLE legal seminar in or about June of 2002 at which Acierno's counsel lectured and presented materials including U.S. Supreme Court *jurisprudence* on temporary takings and regulatory takings. Wilcox was shown the ropes on eminent domain law in approximately 2001 by Acierno's counsel. Virtually every member of the County's Land Use and Law Departments attend seminars and receive training on land use and Constitutional law at various points during their tenures. It is well established that where the government takes action which denies a property owner like Acierno of the right to use his land in accordance with the correct application of the law, that compensation is due and such action is Constitutionally prohibited even if

it only affects use for a short number of years in duration. *First Evangelical Lutheran Church v. County of Los Angeles, infra.*

A.    Procedural Due Process Has Been Well Pleaded

The Individual Defendants correctly note that in order for there to be a valid procedural due process claim, Acierno must attack the adequacy of procedures for challenging the alleged deprivation of the right. A constitutionally adequate procedure is present when there are reasonable remedies to challenge the governmental decision. *Rogin v. Bensalem Township*, 616 F.2d 680, 694-95 (3d Cir. 1980). In *Rogin*, the Court held that the procedure for challenging a land use decision was adequate where a landowner could challenge the validity of a zoning officer's decision to an appellate zoning hearing board which was required by State law to conduct a hearing and render a decision based on the merits. *Id.* The board proceeding included the ability to administer oaths, subpoena witnesses, cross-examine adverse witnesses, and to maintain a record of the proceedings. *Id.* at 695. More importantly, the State procedure provided a direct statutory right of appeal, and the landowner was entitled to a completely *de novo* court proceeding in case he opted to further pursue the issue. *Id.*

In the case *sub judice*, the available appellate process falls far short of the *Rogin* model which received the Third Circuit's express *imprimatur* as providing adequate procedural due process. No right to subpoena or cross-examine witnesses exists. No oaths are administered; a must given the County's track record in dealing with the utmost bad faith in Acierno's matters in the past. No record of the initial administrative proceeding is kept; in direct contravention of State law (*see* 3 paragraphs, *infra.*). Most

importantly, Delaware procedure does not allow a *de novo* court challenge as a matter of right. Consequently, the County and State procedures are deficient.

More generally stated, precepts of procedural due process require "reasonable remedies to rectify a legal error by a local administrative body" for it to provide adequate procedural due process to satisfy the 14th Amendment. *Bello v. Walker*, 840 F.2d 1124, 1128 (3d Cir. 1988) (approving the same Pennsylvania statutory process that provides substantially greater procedural protections for challenges to potentially erroneous administrative decision-making then does Delaware and/or the County as in *Rogin*). This requires a State to afford a full judicial mechanism with which to challenge the administrative decision. *DeBlasio v. Zoning Bd of Adjustment for the Township of West Amwell*, 53 F.3rd 592, 597 (3d Cir. 1995), citing *Midnight Sessions Ltd. v. City of Philadelphia*, 945 F.2d 667, 682 (3d Cir. 1991). Of course, Delaware does not afford Acierno an opportunity to challenge administrative decisions rendered by the County based upon a *de novo* standard of review and a fully developed record. This is far less than a "full judicial mechanism with which to challenge the administrative decision." Indeed, it is by its very nature a limited judicial "look see" at best. It is akin to a doctor attempting to diagnose an internal physiological defect based upon a superficial external exam of a patient. It is tough to diagnose a possible problem if you don't get a chance to "look under the hood."[16]

Acierno supposes that this will leave the Court with the question of "where's the beef?" (*i.e.* a Complaint averment). Paragraph 51 of the Complaint asserts that Acierno's

---

[16] Providing a broader, more certain opportunity to challenge administrative decisions in Court is inherently self-limiting, so it raises no real risk of overheating the State Court docket. Few persons have the financial means to lodge such a challenge. Even many that do choose not to for fear of "biting the hand that feeds."

procedural due process rights were violated based upon inadequate notice, opportunity to be heard, etc. This could be reasonably interpreted to constitute a general allegation that the procedures permitted are inadequate. To the extent that it does not, Acierno would request leave of Court pursuant to Federal Rule of Civil Procedure 15 to further expound upon this point. Accordingly, the § 1983 claim alleging a substantive due process violation is not appropriate for dismissal.

It should also be noted that the Individual Defendants' inaccurate representation regarding the County Code administrative process for handling violation notices under the Drainage Code points out their misunderstanding of what procedural process is due Acierno. *See* Brief at 35-36. First, the Drainage Code does not permit Acierno to appeal a Violation Notice. Under § 12.08.002, the Code Official may issue a written Notice of Violation under the County Drainage Code, which shall include a description of the real estate at issue, a statement of the reason or reasons why a violation is alleged, and include a correction order allowing the landowner a reasonable time to bring the property into compliance. Pursuant to § 12.08.005C.1., the Building Code Official may conduct a Show Cause Hearing to determine punitive measures to be instituted against the person violating the Drainage Code. This is the only post-Violation Notice hearing the Drainage Code permits immediately after the notice is issued.[17]

If a party disagrees with a Violation Notice, and the Building Code Official never conducts a Show Cause Hearing to impose penalties, all the landowner need do is ignore

---

[17] The Code Official may penalize a person found in violation by denying building permits and Certificates of Occupancy, and the Code Official may do the same to any other legal entity that is associated with the violator. The Code Official may also suspend, pursuant to the issuance of "stop work orders," all building permits the person has outstanding. Penalties also include fines of up to $1,000 per day per violation.

the Violation Notice, for it has no mandatory self-enforcing authority or trigger mechanism to affect the landowner or the land. Logically, therefore, the only time that a party will need to avail himself of the means of appeal provided by County Code § 12.08.006 to the License Inspection & Review Board would be with regard to a Show Cause Hearing decision that imposes penalties.

The County is also in error when it asserts that the Show Cause Hearing conducted by individuals such as Haggerty and Edwards with respect alleged Drainage Code violations need not be recorded. First, without such record it is impossible for Acierno to effectively have an opportunity to challenge the contents of the resulting decision which can impose tens of thousands of dollars in penalties; a serious practical and questionable legal circumstance. Second, the County has a clear legal obligation under Delaware law to record the Show Cause Hearings. County Drainage Code § 12.05.007 incorporates by reference the Delaware Sediment & Stormwater Regulations. Section 17 of those Regulations provides that "[t]he conduct of all hearings conducted pursuant to these regulations shall be in accordance with the relevant provisions of Delaware Code, Title 7, Chapter 60." Under 7 *Del. C.* Ch. 60, any administrative hearing which adjudicates an alleged violation shall be conducted pursuant to numerous detailed specifications including, *inter alia*, the preparation of a record from which a verbatim transcript can be prepared. 7 *Del. C.* § 6006(4).[18]

Under the circumstances here present, the Complaint alleges that Wilcox and Haggerty were alerted on numerous occasions regarding their violation of Acierno's

---

[18] In addition, the County is required pursuant to § 6006 to provide alleged violators with the opportunity to subpoena witnesses and request the production of documents. So much for the alleged procedural due process sufficiency of the County's Drainage Code enforcement proceedings; they are blatantly unconstitutional.

rights to due process (both substantive and procedural) and the 5th and 14th Amendment protection against uncompensated governmental takings of private property. Allegations were brought in State Court litigation under State Constitutional provisions in that regard. Conversations with these individuals likewise made these issues known. News travels fast in the County government, and the "gossip grapevine" which thrives in its innards. Thus, there is both direct evidence and sufficient reasonable inferences to establish that Defendants were aware and should have been highly sensitive to their conduct *vis a vis* Acierno and his land use applications and projects.

### B.    Substantive Due Process Is Also Well Pleaded

The Third Circuit has recently held that a plaintiff satisfied the "recognized Constitutional right" component of the qualified immunity analysis regarding a Substantive Due Process claim where it alleged that the governmental decision at issue restricted a landowner's use and enjoyment of property and that the decision limiting the use of land was arbitrarily or irrationally reached. In *Pelligrino Food Products Co., Inc. v. City of Warren,* 116 Fed. Appx. 346, 347-48 (3d Cir. 2004), the Third Circuit held that a substantive due process claim is subject to review under the "irrational or wholly arbitrary" standard. Put differently, the Court stated the test was that similarly-situated entities should be treated similarly. *Id.* Thus, it does not appear that the standard for establishing a substantive due process claim in the Third Circuit's jurisdiction is actually as clear as the Individual Defendants would have this Court believe.

Applying the newly revived arbitrary or irrational standard, Acierno's Complaint easily satisfies the requisite degree of specificity. Decisions regarding Acierno's properties are required to be made based upon a good faith, even-handed application of

the law to the facts. When personal animus and political grandstanding invade the sphere of meritorious governmental decision-making and poison it in a fashion that the governmental authority is abused through intentional misstatements and misapplication of the law in order to achieve an orchestrated, illicit objective, circumstances are present which constitute the epitome of irrationality and arbitrariness.

No different a conclusion would be reached, however, if the Court did apply a "shocks the conscience" standard to Acierno's substantive due process claim. A government conspiracy to use illegal means and abuse governmental authority for the purpose of literally shutting down ongoing development projects and prohibiting the commencement of new development projects at numerous properties within the County's jurisdiction is a startling and outrageous revelation. That the conspiracy has been carried out consistently for more than two (2) years establishes that this course of outlandish conduct has in fact flourished and probably succeeded beyond even its most optimistic hopes. This is not a case in which a developer is bemoaning the loss of a single zoning vote, or the denial of a single building permit, or the failure to gain approval of a single variance. It does not involve one project. It encompasses many projects, many applications, and many items over a period of many years. Particularly when viewed in the light of decades of illegal permit and approval denials that Acierno has suffered at the hands of the often irrational County authorities, the conduct alleged is compellingly egregious. The Defendants are not strangers to Acierno, and they should know better than to even take the slightest chance that their conduct might be misconstrued; they knew right well that they could be questioned regarding their actions involving Acierno.

No case law holds that a wrongful death or dismemberment of body must occur before governmental action rises to the "shocks the conscience" level  It appears that the standard suggests the need for an "I can't believe it" response from the Court in order for it to apply.  Or perhaps evidence of the "I don't care" attitude traditionally applied as the test of "willful and wanton" conduct test is appropriate  In any event, under the facts alleged, and all reasonable inferences that may be drawn therefrom, it is hard to believe of any more clear cut a case which would leave the Court so dumbfounded and outraged then this one.

### C.    Acierno's Equal Protection Claims Are Also Well Pleaded

Once again, the Individual Defendants misstate the applicable legal standard for analyzing one of Acierno's claims.  They cite to 7th and 8th Circuit decisions stating that Acierno must show that he was treated differently than others who are identical to him in all respects.  Brief at 39.  This is not so in this circuit.

The Individual Defendants do correctly note that a party proceeding under a "class of one" theory must show that he was intentionally treated differently from others similarly situated, and that there was no rational basis for the differing treatment - *i.e.* the difference is irrational and wholly arbitrary.  Brief at 39.  It cannot legitimately be questioned that Acierno's Complaint properly states the necessary criteria for pleading an equal protection claim under a class of one theory.  The Complaint goes so far as to provide specific examples of well-known developers of Acierno's stature who received radically more favorable treatment when similar types of problems the County has persecuted Acierno for arose at their properties.  Acierno even goes farther by pointing out how one of those developers, who provided substantial valuable consideration to

Gordon, got the proverbial "slap on the wrist" when he committed misdeeds that Acierno has similarly been accused of. You simply cannot get more unequal than that. Nor is it rational or legally permissible (*i.e.* non-arbitrary) for the government to accord special treatment to those who do questionable personal favors for them, evenhanded treatment to other developers, and then extra-legal and intentionally punitive treatment to Acierno. No more perfect example of irrational and arbitrary conduct can there be.

It seems that the Individual Defendants fail to understand what arbitrary governmental conduct is. Perhaps this is because the people who ran the County government until recently never apparently understood that there was actually a difference between their own personal self-satisfaction and good faith, merit-based governmental administration. Instead, they attempt to point the finger of blame at Acierno just like they've been brainwashed to do for lo these many years now by their bosses in the Gordon-Freebery gang. It is more than enough that Acierno has pointed out that there is no legitimate legal basis for the County to have taken numerous actions with respect to various properties owned and/or being developed by him. The discovery process and further proceedings in this case will either bear Acierno's assertions out or not. It is not the appropriate stage of this proceeding for the Court to engage in the wholesale guesswork and prognostication that the Individual Defendants invite it to undertake. Consequently, Acierno has satisfied the requirements for stating an equal protection claim, and qualified immunity is therefore unavailable to Individual Defendants with respect to this portion of his Complaint as well.

579757v1

42

D.    Acierno Has Likewise Pleaded An Adequate Claim
      For Unconstitutional Taking

The Individual Defendants argue that Acierno's claim of an uncompensated

taking in violation of the 5th and 14th Amendments to the United States Constitution

should not be heard by the Court on the grounds of ripeness. Brief at 43-44. In doing so,

they seek to jettison Acierno's well-pleaded claim into a procedural abyss based upon

*Abbiss v. Delaware Department of Transportation*, 712 F.Supp. 1159 (D. Del. 1989).

The Court should reject this argument based upon: 1) the procedural quagmire that would

result; 2) considerations of judicial economy and efficiency; and 3) the purpose of the

ripeness doctrine.

The State of Delaware does not provide an express statutory right to challenge

State Constitutional violations akin to 42 U.S.C. § 1983. Nor does Delaware provide a

specific statutory right to pursue any type of inverse condemnation claim. Courts

frequently mis-cite 29 *Del. C.* § 9504 as the basis for a statutorily established right of

action for inverse condemnation. Section 9504 does not expressly create an independent

cause of action; it contains no affirmative language establishing a right of action. Nor

have the Delaware courts concluded that § 9504 creates an implied cause of action for

inverse condemnation under the well-recognized test outlined by the U.S. Supreme Court

in *Cort v. Ash*, 422 U.S. 66 (1975). *See Counch v. Delmarva Power & Light Co.,* 593

A.2d 554, 558-59 (Del. Ch. 1991); *Lock v Schreppler*, 426 A.2d 856, 864 (Del. Super.

1981). Even if it did, § 9504's plain language only applies when the government applies

a property owner's land to public use for a government program or project.[19]

---

[19] In fact, § 9504 plainly reads as nothing more than a guarantee of reimbursement of litigation costs for a successful inverse condemnation claimant whose lands have been physically invaded by the government.

Because Acierno asserts a regulatory takings claim in this action, he may only look to the federal courts in order to seek redress for the violation of his 5th and 14th Amendment rights. In *Williamson County Regional County Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 196-97 (1985), the Supreme Court held that the plaintiff's claim of an unconstitutional taking under the 5th and 14th Amendments was not ripe for adjudication in the federal courts since the State of Tennessee provided an express statutory right of action for inverse condemnation which the State courts had interpreted to allow recovery in instances were it was alleged that there was a regulatory taking based upon restrictive zoning laws or development regulations. This Court, following the *Williamson County* precedent, held that a Plaintiffs' claim that DelDOT's long-term plan to construct a project necessitating the taking of the Plaintiffs' land and the subsequent entry into negotiations for an advance acquisition despite plan changes eliminating the need to take the land, encompassing a seventeen (17) year time frame of alleged uncertainty, did not have a ripe § 1983 claim until after he exhausted efforts to pursue compensation in an inverse condemnation action via the available State procedure. *Abbiss v. Delaware Dep't of Transp,* 712 F.Supp. 1159 (1989). There Judge Roth expressly relied on the mistaken belief that 29 *Del. C.* § 9504 "specifically provides for action in inverse condemnation." In addition, it was a case where the property was at least indirectly applied to use by DelDOT for a public project, thereby bringing it within the purview of the § 9504 provision the Court conclusorilly decided was a basis for an express inverse condemnation right of action.

In this action, none of Acierno's lands have even arguably been applied to a public project. Thus, *Abbiss* is distinguishable. In addition, a lot has changed since the

Supreme Court issued its decision in *Williamson County*. The Supreme Court has now taken a much more practical approach in its *jurisprudence* regarding the ripeness of regulatory takings claims.

In *Palazzolo v. Rhode Island*, 533 U.S. 606, 620-21 (2001), the court explained that ripeness for purposes of regulatory takings claims only requires a landowner to have followed reasonable and necessary steps to allow regulatory agencies to exercise their discretion in considering a development application, including any variances or waivers that the law permits. This approach is particularly sensible in the case at bar, where Acierno had an approved development plan which the County illegally expunged. In addition, other less severe delays constituting temporary takings by the County have occurred. Acierno has sought redress through the administrative appeals process. Therefore, Acierno satisfies the "final decision" requirement under federal takings ripeness rules.

The Supreme Court further explained in *Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725, 734 (1997) that a State must provide an adequate procedure for seeking just compensation in order for the second prong of the two-part ripeness test in takings claims cases to apply. Delaware does not provide a certain avenue of relief in the State courts for regulatory takings claims such as Acierno's. The Third Circuit has previously held that Pennsylvania's condemnation process is not adequate for obtaining compensation for a taking, thereby obviating the need for the landowner to pursue such a claim in State court. *Lindquist v. Buckingham Township*, 68 Fed. Appx. 288, 289 (3d Cir. 2003). The only Delaware cases based on a local government's alleged regulatory taking were in fact based upon U.S. Constitutional principles and U.S. Supreme Court

*jurisprudence*, thereby evidencing the fact that no right to pursue a takings claim under the State Constitution or any other express statutory procedure exists in this State. *See Wilmington Hospitality, LLC v. New Castle County*, 2004 WL 2419157, *1-2, Johnston, J. (Del. Super. 2004); *Cardillo v. Council of South Bethany*, 1991 WL 113627, *2, Lee, J. (Del. Super. 1991); *Gouldberg v. City of Rehoboth Beach*, 565 A.2d 936, 943-45 (Del. Super. 1989). Thus, Delaware has no reasonable, adequate method to remedy Acierno's takings claim in State court. As a consequence, ripeness does not bar this Court's consideration of his takings claim.

The Individual Defendants' other arguments regarding Acierno's claims point out the procedural quagmire that Acierno would be faced with if he did go to State court and receive a denial of his claim.[20] If Acierno pursued the takings claim asserted in this action in the State courts in the first instance, he would undoubtedly need to thereafter contend with a myriad of additional defensive hurdles which would be asserted by the Individual Defendants: the *Rooker-Feldman* doctrine; *res judicata*; collateral estoppel; judicial estoppel; statute of limitations; and any other defenses which are based on some other hyper-technical federal decisional law principle which might prevent Acierno from getting a shot at finally being able to present his claim on the merits. This would leave Acierno prey to a tangled web of inconsistent and conflicting principles. In a close case, the Court should therefore decide in favor of permitting the claim to move forward so as to prevent a future procedural morass and the attendant potential denial of Acierno's day in court.

---

[20] Another question that arises is just how far does Acierno have to go in the State court process. May he simply make a claim in any trial court, and then proceed to federal court after being denied compensation? Or is he required to await an ultimate decision by the Delaware Supreme Court on appeal?

Allowing Acierno's takings claim to proceed is also consistent with the original objectives of the ripeness requirement. The policies underlying the ripeness doctrine are: 1) to prevent the courts from entangling themselves in abstract disagreements over administrative policies by avoiding premature adjudication; and 2) to protect the government agencies from judicial interference until an administrative decision has been formalized and its effects established in concrete way. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967). No problem here. The disputes are clear, real and cemented.

The Supreme Court's two-prong standard by which it evaluates a ripeness defense is: 1) the "fitness of the issues for judicial decision"; and 2) "the hardship to the parties of withholding court consideration." Issues are fit for adjudication if there exists a present case or controversy between the parties. *Dow Chemical Co. v. Exxon Corp.*, 30 F.Supp.2d 673, 690 (D. Del. 1998). This action presents cases and controversies aplenty, and Acierno desperately needs to stop the illegal mistreatment of which he to this day suffers. This Court's failure to proceed with the litigation on this claim will be yet another delay that will be imposed on Acierno, in contrast to no hardship to the County given the pendency of so many other claims in this action. Consequently, the traditional ripeness test is satisfied and its purposes are respected by permitting Acierno's takings claim to move ahead in the litigation.

Finally, the County amusingly asserts that Acierno has not asserted sufficient facts to establish a Constitutional taking. Brief at 44-46. Because the question is admittedly a fact intensive analysis, a determination of whether a takings claim has been stated is by its very nature cursory at this pleading stage of the action. Acierno has

alleged that the County has illegally prevented him from constructing a 600+ unit manufactured home community known as Red Lion Village for more than two (2) years. In addition, Acierno has described circumstances whereby the County has delayed his ability to commence collecting rent at the Bertucci's Restaurant and Phase 4 of the Christiana Town Center shopping center, for six (6) months and eighteen (18) months respectively. Acierno was completely unable to productively utilize his lands which were the subject of final County approvals. Acierno has stated a claim for a temporary taking under the applicable standards. The County's argument to the contrary is so farfetched that it again points up the stretch that they are willing to ask the Court to take with respect to all of their purported bases for dismissal.

E.     Acierno Has Adequately Pled A Claim For
Supervisory Liability Under § 1983

The Individual Defendants' next illusory argument for dismissal is the assertion that Mullaney, Baker, and Freebery have not adequately been charged with supervisory liability under § 1983. Brief at 46-47. Of course, the County concedes that a sufficient claim can be pleaded based upon allegations of personal direction and acquiescence. Brief at 47. Acierno's Complaint contains these very averments with respect to each of these Defendants.

The Individual Defendants then assert that there is not a sufficient causal link alleged between the supervisors and the illegal actors. Brief at 47. The Complaint avers that there is a conspiracy, that Freebery and Mullaney were involved in that conspiracy, and that Baker was aware of and failed to take action in reigning in his subordinate, Haggerty. In other words, "but for" the acts and failures to act of Freebery, Mullaney, and Baker, Haggerty and Wilcox would not have had the wherewithal to perpetrate the

wrongs that they did against Acierno. Further, it is clear that Freebery was the initiator of this scheme under the averments of the Complaint, alleging that she took actions to advance her personal political agenda. The Individual Defendants have failed to bear their burden to establish this affirmative defense by showing that the law was unclear. *See Woodwind Estates v. Gretkowski*, 205 F.3d 118, 125-26 (3d Cir. 2000). As a result, the Complaint passes muster under the supervisory liability test suggested by the Individual Defendants.

## IV.    THE INDIVIDUAL DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY FROM PROSECUTION UNDER CIVIL RICO

For starters, the Court is well aware that effective September 2002 it was publicly revealed that the United States Attorney for Delaware was undertaking a federal corruption probe into the County government. *See United States of America v. Gordon, Freebery, et al., supra.* This fact was not a secret to the Defendants. They were doubtless fully aware of the ongoing investigation into potential Racketeering and Fraud, which was being viewed in light of the criminal provisions of the Federal Racketeering-Influence And Corrupt Organizations Act. At its base, a RICO claim depends upon no more than the commitment of two or more discrete federal criminal law violations, such as mail fraud and wire fraud. 18 U.S.C. § 1961(1)(B). Mail fraud and wire fraud are not difficult to prove in today's world of frequent mail and wire communications, particularly in the context of governmental officials who are acting in a fashion which denies citizen(s) the intangible right to honest governmental services. *See* 18 U.S.C. § 1346; *See also* 18 U.S.C. §§ 1341 and 1343. Accordingly, all of the Defendants were reasonably cognizant of the fact that any actions that they might take against Acierno in concert with

a scheme to deny him the honest application of the law in the land use context could potentially subject them to Civil RICO liability, particularly given their additional knowledge of the fact that Acierno has not been shy to assert his legal rights when they have been trampled upon by the County throughout many decades now.

The Individual Defendants allege that Acierno has not stated a RICO cause of action against them under § 1962(c) because he did not plead with particularity and did not ever rely upon their misrepresentations. Brief at 48-52. The Complaint alleges: 1) conduct by all of the Individual Defendants; 2) constituting their own conspiratorial enterprise, and a separate enterprise with the County; 3) through a long-term series of actions (*i.e.* pattern); 4) of activities which included the use of the mails (*i.e.* racketeering via mail fraud); and 5) resulting in injury to Acierno in the form of millions of dollars in land development delay and litigation cost damages. While their Brief asserts that the Individual Defendants' conspiracy cannot constitute an enterprise, a RICO enterprise may exist when officers or employees operate and manage a legitimate entity and use it to conduct a pattern of racketeering activity. *Jaguar Cars, Inc. v. Royal Oaks Motorcar Co.*, 46 F.3d 258, 268 (3d Cir. 1995). Acierno alleges that the Individual Defendants conspired to deny him the rights to use and develop his lands whenever the opportunity arose, in furtherance of the personal animus and personal agenda of Freebery. And the opportunities arose aplenty; the Complaint spells out the numerous occasions on which the Individual Defendants took action in furtherance of the central plot that was their mantra.

Acierno also avers that the Defendants: 1) devised, and intended to devise; 2) a scheme to defraud him in particular, and the citizens of the County generally, of the right

to honest services; 3) using the mails and wires for the purposes of executing the scheme; and 4) with full knowledge that they were in fact using the mails and wires. Therefore, a claim was adequately pled.

Acierno also pleaded the various points in time at which Defendants used the mail and wires for purposes of defrauding him. A review of the Complaint reveals various instances where the allegation regarding illegal use of the mail and wires occurred in a particular month and year, or at least at the end of a certain specific time frame alleged. The Complaint also alleges that Defendants used the mail and wires. It should be no surprise to the Individual Defendants that the primary focus of the RICO claims are Haggerty and Wilcox, who combined their forces quite consistently and effectively in dishing it out in any way they could to advance their cause against Acierno by intentionally misinterpreting and misapplying the law so as to deny Acierno the right to use and develop his lands in accordance with the law. Did Acierno take the dynamic duo's pablum as gospel? Heck no! But he did have to stop projects and react to and counteract it at every turn. So Acierno did detrimentally rely on the legitimacy of their County posts and most of their actions, even though he obviously believed their positions taken were wrong.[21]

Additionally, Acierno has asserted the "honest services" form of mail and wire fraud. Under 18 *Del. C.* § 1346, such fraud is expressly defined as a "scheme or artifice to deprive another of the intangible right of honest services." While this does not obviate

---

[21] This argument is reminiscent of the earlier suggestion that Acierno must agree with the County as a prerequisite to suing them to disagree. The circuitous logic of the theory that one must suck up to the blatant falsehoods of the County in order to challenge them should be deemed antithetical to the concepts of equity and fairness inherent in this Court's *jurisprudential* conscience.

the need for Acierno to plead the fraud with particularity, it does constitute a statutory abrogation of the traditional fraud element of detrimental reliance. This fact makes sense since no rational person would ever detrimentally rely on governmental actions which they recognize were false and illegal, and then proceed to challenge them in good faith. To hold otherwise would essentially wipe out a wholesale category of governmental RICO liability which the Courts have held is within the clear purview of the Act's coverage.

The Answering Brief also argues that the Complaint does not plead acts which amount to or pose a threat of continued criminal activity. Brief at 51. The period of conduct alleged in the Complaint stretches over an approximately two (2) year time period. This is hardly an insubstantial time frame, particularly considering the numerosity of separate incidents. In addition, Acierno has recently filed a Motion To Amend The Complaint which will stretch the overall time period of conduct to three (3) years. This conduct is currently threatened to continue despite the fact that numerous Individual Defendants have recently left the County's employ (both voluntarily and involuntarily), since Baker, Haggerty and Edwards soldier on in their seemingly never-ending effort to violate Acierno's rights *vis a vis* the ability to freely use his land under the law. The proposed Amended Complaint points up this fact, and there is no contrary evidence that such activities will at any time soon be abated.

It should also be noted that Acierno also believes, but has not yet had the chance through discovery to prove, that there will likely be residual animosity toward him among any of those additional minions who have been enlisted in the Freebery-Haggerty led Racketeering war declared against him a number of years ago. Thus, there may be

additional Defendants who are ultimately added to this case as a result of the discovery process. It is also quite likely that additional claims will arise as a result of the discovery process, particularly now that the prior heavy-handed regime that ruled the County through a policy of fear and intimidation have left, thereby clearing the air and calming the nerves of County employees and officials who may now be finally willing to come forth and expose the scheme directly.[22]

Even assuming *arguendo* that Acierno's RICO claim is deficiently plead in some minor respect, the Court should grant leave to amend in order to permit Acierno the opportunity to correct any defects. *See Saporito v. Combustion Engineering, Inc.*, 843 F.2d 666, 675 (3d Cir. 1988). Since the requisite conduct for a RICO claim is set out in the Complaint, any technical issues such as the appropriate recitation of the necessary terminology is appropriate for amendment. In any case, such a deficiency does not mean that Acierno may never state a claim, and therefore the requested dismissal with prejudice sought by the Individual Defendants is clearly inappropriate.

Finally, the Individual Defendants have done it again. They essentially assert that in order to prove a conspiracy claim under 18 U.S.C. § 1962(d), Acierno must state facts with such a degree of specificity that he would have to have been intimately familiar with the behind-the-scenes discussions that took place over the last few years between the co-conspirators. This is not the case. A conspiracy is nothing more than an agreement between two or more persons to commit an illegal act and an overt act in furtherance thereof. The Complaint is replete with allegations regarding the joint efforts of the parties, and the carrying out of general commands pronounced by top level County

---

[22] This likelihood is also enhanced by the enactment a few years ago of a County "whistleblower law." *See* New Castle County Code § 2.03.301.

officials. The Complaint also avers that supervisors willingly permitted the activities to continue, in spite of a legal responsibility to act to the contrary. The Individual Defendants would have this Court believe that absent a mound of virtual "smoking gun" evidence a party cannot assert a conspiracy claim. They just don't get it: alleging that parties agreed to act in concert for an illicit purpose is the entire part and parcel of what a conspiracy claim must aver.

B.     Acierno Has Alleged Violations Of The Law

The Answering Brief lastly makes a meek attempt to suggest that the Complaint fails to allege illegal conduct. Brief at 53-54. It probably would have served Individual Defendants better to not have even made this confounded argument. It is based on the same inaccurate and misguided posit upon which most of their Motion To Dismiss rests: the mischaracterization of Acierno's case as one which requests damages for the County's code enforcement actions. Either counsel for the Individual Defendants has been fooled by the transparent pretext which their client's have apparently deluded themselves into believing, or they have simply misread Acierno's Complaint. The fundamental thesis of Acierno's case is the well-founded supposition that: 1) actions taken against him by Defendants have been based upon a scheme to deny him his legal guarantees to use and develop his land; 2) even after he meets all requirements of the law; 3) in order to further the personal agenda of Freebery, and now any of the Individual Defendants who may have taken up Freebery's torch and adopted Acierno-bashing as a cause of their own. It is no mystery that when the County invalidly mistreats Acierno that he will sue the County for redress. This makes for wonderful news headlines. It allows the County to continue fabricating and proselytizing about how Acierno is the

rightful scapegoat of all that is wrong in land use in this County. The County's argument should be denied with extreme prejudice.

## V.    THE COURT SHOULD RETAIN SUPPLEMENTAL JURISDICTION OVER THE STATE COMMON LAW TORT CLAIMS

In their nearly final shot at knocking Acierno out of the box before he gets to pull the lid off more County corruption in discovery, the Individual Defendants assert that this Court should dismiss his claims for Civil Conspiracy and Tortious Aiding And Abetting because (here we go again) none of his other claims have merit and besides they have not been plead with a sufficient degree of particularity. Brief at 54-56. The first point may be discarded to the same trash heap already burgeoning like the Cherry Island landfill with the Individual Defendants' preceding arguments on the basis that supplemental jurisdiction is appropriate due to the continued vitality of Counts I through III. The second argument can be disposed of with similar dispatch on the grounds that the Complaint in fact contains more than sufficient averments to satisfy the necessary elements of the torts alleged. The Federal Rules of Civil Procedure require notice pleading, and the illegal acts upon which the State law tort claims are based include the violation of numerous legal provisions separate and apart from Counts I through III. Thus, Counts IV and V are not conjoined with Counts I through III, and they may live to see another day in this litigation regardless of the ultimate outcome regarding their predecessor Counts.

Finally, the Individual Defendants cannot resist sneaking in one more argument: Counts IV and V are barred by the Delaware County And Municipal Tort Claims Act, 10 *Del. C.* Ch. 4010 *et seq.* Brief at 56. Unfortunately for the Individual Defendants, only

persons who qualify as an "employee" are immune from suit for tort claims seeking a damages recovery. 10 *Del. C.* § 4011(a). The Individual Defendants are not entitled to treatment as an "employee" under the Tort Claims Act since they are alleged to have been acting on behalf of themselves, their RICO enterprise, and/or their supervisors, rather than "acting on behalf of a governmental entity." *See* 10 *Del. C.* § 4010(1). They are also sued in their individual capacities. Additional language which discusses damage claims resulting from granting, denying, or revoking licenses, permits, orders, or other administrative approvals or denials only applies to "a governmental entity." 10 *Del. C.* § 4011(b). The same holds true for language absolving a party of liability for performing or failing to perform a discretionary function or duty, regardless of whether it is abused or whether the purported legal underpinning of the decision is valid or not. 10 *Del. C.* § 4011(b)(3).

More importantly, the Tort Claims Act expressly provides that "[a]n employee may be personally liable for acts or omissions causing property damage…in instances in which the governmental entity is immune under this section, but only for those acts which were not within the scope of employment or which were performed with wanton negligence or willful and malicious intent." 10 *Del. C.* § 4011(c). Since the Complaint alleges the requisite state of mind regarding Individual Defendants' actions, the exception applies and any possible immunity that they might enjoy under the Tort Claims Act evaporates under the circumstances.

VI.    **GIVEN THE ONGOING NATURE OF THE COUNTY CONDUCT BY WHICH ACIERNO IS BEING VICTIMIZED, THE CONCEPT OF STAYING THIS ACTION IS AN ESTIMABLY BAD IDEA.**

In a last ditch attempt to stave off discovery and its concomitant public revelations about their conduct, the Individual Defendants beg the Court for a stay -- well just because. In so doing, they return to their well worn argument that -- well there are lots of other cases out there. The only reason that there exist any State court proceedings upon which to buttress their stay request is their unconscionable conduct as lawbreaking co-conspirators. Why would the Court want to allow the Individual Defendants who remain employed by the County to continue exercising free reign to illegally snuff out Acierno's additional future land use endeavors? It would seem that a more appropriate course of action would be to instead further the Court's ultimate objective of getting to the truth and doing justice. This leads to the inexorable conclusion that a stay would make about as much sense as feeding a stray cat that you want to get rid of.

Despite the lack of any common sense, reasonable basis to stay this action, the old Shakespearean adage regarding the law is oft-times the unfortunate rule in federal *jurisprudence*. Therefore, Acierno will continue to slog on in dispensing with the Individual Defendants' final three (3) arguments, in what now seems to possess a somewhat surreal "twilight zone" quality. It's about: 1) *Younger*; 2) *Colorado River*; and 3) *Burford*. *See* Brief at 56 through 59.

In what can aptly be described as a "interesting" circumstance, the Individual Defendants neglect to ever mention that one of the most heavily litigated and technically complex pieces of State court litigation was brought by the County; an action styled *New Castle County v. Christiana Town Center, LLC*, Court of Chancery C.A. No. 20604-N

(filed October 10, 2003). So far in that action, the County dropped its claim for temporary restraining order, its claim for a preliminary injunction, and has lost numerous discovery motions in which it has attempted to withhold documents and prohibit the deposition of County employees with relevant evidence. It is this very same "hide the ball" litigation tactic that the County is renowned for, and that should give the Court pause in considering a possible stay of this action. It is the County's continued prosecution of that Chancery action, in the face of thus far uncontraverted expert reports showing full legal compliance, that Acierno would submit makes it imperative that this action move forward in order to hopefully start bringing this recalcitrant governmental organization into line and holding them accountable for their misconduct.

Moving to the final troika of defenses, it appears the Individual Defendants are saying that the *Younger* doctrine applies. This is despite the fact that the pending State proceedings cannot possibly afford Acierno an adequate opportunity to raise the federal claims brought herein on the grounds that the only pending Delaware cases will not accord him the right to a trial by jury (*i.e.* they are either pending equity proceedings in the Court of Chancery or appeals based on the record in Superior Court). Certainly the *Younger* doctrine cannot override Acierno's right to a trial by a jury guaranteed to him under the 7th Amendment of the United States Constitution. In addition, the State proceedings only involve some of the legally invalid actions of the Defendants, thereby eliminating the possibility of adequate redress in the pending State actions.

Unlike the winding Colorado River itself, the doctrine which bears its name requires that there be a completely straight degree of parallel. The Court need proceed no further than the initial stage of analysis regarding this doctrine, however, because this

action and the State actions do not involve the same parties and claims. The only common Plaintiffs are Christiana and Acierno, and the only common Defendant is the County. None of the five (5) Counts brought in this action will be decided in the State court proceedings now pending. Nor could one envisage any commonality of claims given the absence of the Individual Defendants in the State actions and their integral role in the establishment of the claims in the case at bar.

Assuming *arguendo* that the Court does somehow take up consideration of the *Colorado River* doctrine's "exceptional circumstances" test, the six-part test is not satisfied based upon the facts at issue herein. This Court is no less convenient than the State courts, and in fact those of us whose offices are located in the central business district favor the shorter walk to the Boggs Building. Staying this case will not avoid piecemeal litigation, since the State court proceedings will have little, if any, affect on the outcome of this action based upon the lack of commonality of claims. Further, the claims asserted in this action should be decided in the federal forum since the primary and predominant claims are brought pursuant to federal statutes. Lastly, the State courts which host the pending actions cannot adequately protect Acierno's interest in exercising his constitutional right to a trial by jury, as he is capable of doing in the case *sub judice*. Notably, the only factors that are satisfied essentially boil down to one fact: the State court proceedings were filed first. Standing alone, a race to the courthouse has rarely, if ever, been deemed to constitute a rational basis upon which to determine the forum in which a case should be litigated.

The sixty-two (62) year old *Burford* doctrine appears to be a weather-worn anomaly in today's modern era of federal litigation. Were it a person, it would be eligible

for Social Security benefits and likely retired off to greener pastures. The idea that the Court should stay federal litigation because "difficult questions of State law" which bear on "policy problems of substantial public import" seems to be an anachronistic concept in light of the explosion of federal court jurisdiction brought about by the expansive broadening of federal commerce clause power which today regularly involves this Court in matters of local concern that would have been unimaginable in 1943.[23] Regardless, the Individual Defendants provide no basis to conclude that the application of local law rises to the level of "policy problems of substantial public import." Indeed, the "policy problems" presented by a corrupt County government and its willing actors who participate in such misconduct is of such public importance that it would transcend any *de minimis* concern about invading the State realm (this certainly seems to be the opinion of the FBI and the local U.S. Attorneys' Office). Nor are any of the State law issues underlying the predominant federal claims in this action alleged to be "difficult" ones. Therefore, the *Burford* doctrine does not apply.

---

[23] It should be kept in mind that *Burford* was decided just 6 years after the proverbial "switch in time that saved 9" decision in *NLRB v. Jones & McLaughlin Steel Corp.*, 301 U.S. 1 (1937) in which the U.S. Supreme Court departed from its prior restrictive interpretation of the commerce power in the 1935 *Schechter Chicken* case decision, and before the substantial broadening of reliance on the commerce clause by the Court and Congress in the post-World War II era.

## CONCLUSION

Based on the foregoing arguments, the Plaintiffs respectfully request that this Court deny the Individual Defendants' Motion to Dismiss in its entirety, or in the alternative, grant them leave pursuant to Rule 15 in order to amend the Complaint to correct any technical matters.    In addition, the Court should deny the Individual Defendants' request to stay this action since none of the three (3) doctrinal bases for their request come close to applying under the circumstances.

Respectfully submitted,

THE BAYARD FIRM

Richard L. Abbott (I.D. No. 2712)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
Telephone (302) 655-5000
Facsimile (302) 658-6395
E-Mail: rabbott@bayardfirm.com

Attorneys for Plaintiffs

Dated: March 16, 2005

## CERTIFICATE OF SERVICE

I, Richard L. Abbott, Esquire, do hereby certify that on this 16th day of March, 2005, I caused the foregoing **Plaintiffs' Answering Brief In Opposition To Individual Defendants' Motion To Dismiss  Or Stay** t to be electronically filed with this Court, and to be served upon the below-listed individuals according to electronic notification:

| | |
|---|---|
| Collins J. Seitz, Jr., Esquire<br>Matthew F. Boyer, Esquire<br>Max B. Walton, Esquire<br>Connolly Bove Lodge & Hutz, LLP<br>The Nemours Building<br>1007 North Orange Street<br>Wilmington, DE 19801<br><br>Jeffrey I. Pasek, Esquire<br>Shelly A. Kinsella, Esquire<br>Cozen O'Connor<br>1201 North Market Street, Suite 1400<br>Wilmington, DE 19801<br><br>Joseph R. Biden, III, Esquire<br>Ian Connor Bifferato, Esquire<br>Joseph K. Koury, Esquire<br>Bifferato, Gentilotti & Biden, P.A.<br>1308 Delaware Avenue<br>Wilmington, DE 19806 | Michael P. Kelly, Esquire<br>Paul Bradley, Esquire<br>McCarter & English<br>919 N. Market Street, Suite 1800<br>Wilmington, DE 19801<br><br>Claire M. DeMatteis, Esquire<br>C. Clark Hodgson, Jr., Esquire<br>Stradley Ronon<br>300 Delaware Avenue, Suite 1018<br>Wilmington, DE 19801<br><br>Dennis J Siebold, Esquire<br>New Castle County Department of Law<br>87 Reads Way<br>New Castle, DE 19720 |

Richard L. Abbott, Esquire (I.D. 2712)