EXHIBIT A
PLAINTIFFS' ANSWERING BRIEF IN
OPPOSITION TO THE INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS OR STAY



U.S. OFFICE OF SPECIAL COUNSEL
1730 M Street, N.W., Suite 201
Washington, D.C. 20036-4505

January 24, 2005

Mr. William Narcowich
2807 Rickdale Road
Wilmington, DE 19810-3433

Re: <u>OSC File No. HA-04-2890</u>

Dear Mr. Narcowich:

This letter is in response to information the Office of Special Counsel received from you concerning allegations that Ms. Sherry Freebery's candidacy in a partisan election for New Castle County Executive in September 2004 may have violated the Hatch Act. At the time of Ms. Freebery's alleged activity, she was employed as the Chief Administrative Officer of New Castle County. After reviewing this information, we believe that Ms. Freebery was covered by the Hatch Act, and therefore, her candidacy violated the Act. However, for the reasons stated below, we have decided to close our file in this matter.

The Hatch Act (5 U.S.C. §§ 1501-1508) restricts the political activity of individuals principally employed by state, county, or municipal executive agencies in connection with programs financed in whole or in part by loans or grants made by the United States or a federal agency. It has long been established that an officer or employee of a state or local agency is subject to the Hatch Act if, as a normal and foreseeable incident of her principal position or job, she performs duties in connection with an activity financed in whole or in part by federal funds. <u>In re Hutchins</u>, 2 P.A.R. 160, 164 (1944); <u>Special Counsel v. Gallagher</u>, 44 M.S.P.R. 57 (1990). An employee covered by the Act may not be a candidate for public office in a partisan election, i.e., an election in which any candidate represents, for example, the Republican or Democratic Party.

We understand that New Castle County receives grants from a number of federal agencies, including the Federal Emergency Management Agency, and the Departments of Housing and Urban Development, Agriculture, and Justice. These funds are primarily managed by four departments within New Castle County, namely the Community Services Department, the Department of Land Use, the Police Department and the Finance Department.

In a conversation with our office, Ms. Freebery stated that she is a political appointee of the County Executive. She executes the orders of the County Executive, and assists the County Council in carrying out its mandate. She also stated that she does not have any duties in connection with the federal funds received by the County, and that her

U.S. Office of Special Counsel
Page 2

knowledge of the federal funds received by the County arises because of her familiarity with the budget

We also spoke with Mr. Tom Gordon, County Executive. He stated that Ms. Freebery works for him on such activities as proposing legislation and getting bills passed. He also said that Ms. Freebery does not have duties in connection with the federal funds received by the County because staff within the departments that receive federal funds manage and perform all duties in connection with these funds. Further, Mr. Gordon stated he is the individual who has oversight responsibilities and signs paperwork for the federal grants

In addition, we spoke with officials in the County's Land Use, Police and Community Services Departments who stated that the duties pertaining to the federal grants, such as day-to-day management, are performed by the Departments' staff and not by Ms. Freebery. However, Ms. Freebery reviews and approves the Police Department's pre-grant application for federal grants and signs paperwork approving the use of these grants to hire police officers

Notwithstanding Mr. Gordon's and Ms. Freebery's description of her duties, we note that New Castle County Code § 14.01.006 gives Ms. Freebery as CAO the authority to accept, enter an appendix to the grants budget, and authorize expenditures from grants. These grants include federal grants. Further, an official in the County's Finance Department explained to our office that the County's Chief Financial Officer (CFO) sends a letter to Ms. Freebery for her approval of the grants budget prior to its submission to the County Council.[1] Ms. Freebery stated to our office that she does not perform the functions in § 14.01.006 because she believes they have been delegated long-term to the County's Finance Department. However, she acknowledged that since she reviews the County's budgets when they are completed, it is possible that she performs this same function for the County's grants budget. Additionally, Ms. Freebery stated that she ensures that County managers provide information about federal grants in a timely manner to the Finance Department for the preparation of the budget. Moreover, information on the County's website state that the CFO, who is responsible for the County's overall financial management and policy, including federal grants, reports directly to Ms. Freebery

Based on the preceding, we believe that as a normal and foreseeable incident of Ms. Freebery's position with New Castle County, she performed duties in connection with federally funded activities at the time of the primary election. Therefore, her candidacy was in violation of the Hatch Act. Nonetheless, in this instance, we have decided to close our file in this matter. The penalty for violating the Hatch Act for state and local employees is removal from employment. See 5 U.S.C. § 1505. Because Ms. Freebery is no longer employed by New Castle County, even if we were to conclude that her

---

[1] We were unable to verify this information with Ms. Freebery's superior, Mr. Gordon

U.S. Office of Special Counsel
Page 3

violation warranted prosecution, we would be unable to receive meaningful disciplinary action. Furthermore, we have decided to take no further action in this matter because we understand that the U.S. Attorney's Office in Delaware has an ongoing criminal investigation that, among other things, involves Ms. Freebery's political activities.

    Please contact me at (800) 854-2824 if you have any questions concerning this matter.

Sincerely,

Mariama Liverpool
Attorney
Hatch Act Unit

# EXHIBIT B
# PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS OR STAY



M. JANE BRADY
ATTORNEY GENERAL

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

NEW CASTLE COUNTY
Carvel State Building
820 N. French Street
Wilmington, DE 19801
Criminal Division (302) 577-8500
Fax: (302) 577-2496
Civil Division (302) 577-8400
Fax: (302) 577-6630
TTY: (302) 577-5783

KENT COUNTY
102 West Water Street
Dover, DE 19904
Criminal Division (302) 739-4211
Fax: (302) 739-6727
Civil Division (302) 739-7641
Fax: (302) 739-7652
TTY: (302) 739-1545

SUSSEX COUNTY
114 E. Market Street
Georgetown, DE 19947
(302) 856-5352
Fax: (302) 856-5369
TTY: (302) 856-2500

PLEASE REPLY TO :
New Castle County-Civil Division

September 23, 2004

<u>Via Fax (302) 395-5150</u>
Timothy P. Mullaney, Sr., Esq.
County Attorney
New Castle County Government Center
87 Read's Way
New Castle, DE 19720

      Re:    Residency of New Castle County Attorney

Dear Mr. Mullaney:

      This office has received a letter from County Auditor Robert Hicks requesting us to commence litigation to seek compliance by you with New Castle County Code §26.01.003 that requires New Castle County employees to become residents of New Castle County within six (6) months of hire. His letter also requests that we compel New Castle County to enforce the penalties in New Castle County Code §1.01.009. These requests are based on Mr. Hicks' belief that you are in violation of the residency requirement and that you, as the subject of the complaint, have a conflict of interest in enforcing New Castle County Code.

      This office has no jurisdiction to compel compliance with the New Castle County Code and, by copy of this letter, I am informing Mr. Hicks of this. Further, regardless of your conflict, this office has neither the jurisdiction nor the standing to enforce the New Castle County Code. Those are New Castle County matters for the County Executive or the County Council to deal with as they may deem appropriate.

      However, Mr. Hicks' complaint also raises the issue of whether or not your appointment complied with <u>Del.Const.</u>, Art. III. Now that this situation has been brought to our attention, we

Page 2
Timothy P. Mullaney, Sr., Esq.
September 23, 2004

have an obligation to inquire into it, and if necessary, ensure compliance with the constitutional requirements. The relevant section provides:

> No person shall be elected or appointed to an office within a county, who shall not have a right to vote for a Representative in the General Assembly, and have been a resident therein one year next before his or her election or appointment, nor hold the office longer than he or she continues to reside in the county, unless herein otherwise provided. . . .

Del. Const., Art. III, Section 11. It is clear the Constitution requires you to have been, at the time of your appointment as County Attorney, a resident of New Castle County for the preceding year. If you were not, your appointment as County Attorney would have been invalid. Further, such deficiency cannot be remedied by establishing a residence at the present time in New Castle County as you would not meet the requirement to have been a resident one year prior to your appointment.

We are copying County Executive Thomas P. Gordon, as appointing authority under 9 Del.C. §1392, so that he may take appropriate action. We are also copying County Auditor Hicks as well as Council Attorney Carol Dulin, as she was copied on Mr. Hicks' letter.

Please respond within 10 days of the date of this letter as to whether and why you believe your original appointment complied with Del. Const. Article III, Section 11, as well as how your continued service complies with that section. Please provide any documentation which establishes your residence in New Castle County prior to your appointment as County Attorney or establishes that you have resided in New Castle County for the past 12 months or more, which would establish compliance with the Constitutional provision, and allow for your lawful appointment to the position.

Very truly yours,

Malcolm S. Cobin
State Solicitor

MSC:lnc

Xc:  The Honorable M. Jane Brady
     The Honorable Thomas P. Gordon [via fax (302) 395-5268]
     Carl Danberg, Chief Deputy Attorney General
     Carol Dulin, Council Attorney [via fax (302) 571-7364]
     Robert I. Hicks, Jr., Esq., County Auditor [(302) 395-8385]

L:\Lois C\correspondence\mullaney ltr.doc

2

# EXHIBIT C
# PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS OR STAY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

281

FRANK E. ACIERNO,                  :
                                   :
        Plaintiff,                 :    C.A. No. 93-579 (SLR)
                                   :
    v.                             :
                                   :
NEW CASTLE COUNTY,                 :
                                   :
        Defendant.                 :

## STIPULATION AND ORDER

WHEREAS, Plaintiff Frank E. Acierno("Plaintiff") brought this Action ("Action") against Defendant New Castle County, Delaware ("County"), alleging that the County violated Plaintiff's constitutional rights in connection with zoning decisions made by the County concerning property owned by Plaintiff in the vicinity of Interstate Highway 95 and Route 273 in New Castle County, Delaware (the "Route 273 Property"); and

WHEREAS, the parties desire to settle and fully resolve this Action upon the terms and conditions set forth herein;

IT IS HEREBY STIPULATED AND AGREED THAT:

1.  The Plaintiff and the County stipulate and agree to the entry of a final judgment in favor of Plaintiff and against the Defendant. The County further agrees that it will not appeal or otherwise challenge the final judgment of this Court.

2.  The term "Route 273 Property" as used herein means and refers to parcels A, B and C depicted on the County Approved Record Resubdivision Plan dated March 9, 1989, microfilm number 9669. The Plaintiff shall be permitted to use and develop the Route 273 Property for

commercial purposes, including the use and development of a shopping center, as depicted on the County approved Record Resubdivision Plan dated March 9, 1989. It is further agreed that the Route 273 Property may be referred to as the Christiana Town Center.

3. No later than seven (7) days after the entry of this Order, the County shall issue a building permit for building number 4, depicted on the County approved Record Resubdivision Plan dated March 9, 1989, microfilm no. 9669.

4. The Plaintiff shall be permitted to reconfigure the buildings, the dimensions of the buildings and site positioning of the buildings to be constructed on the Route 273 Property by processing a resubdivision plan. The resubdivision plan shall be approved by the County within seven (7) days after submission, provided that such reconfiguration does not have a material impact upon on-site traffic flow patterns, and meets applicable parking ratios and setbacks. The aggregate leasable square footage for the Route 273 Property shall not exceed Four Hundred Fifty-Three Thousand (453,000) square feet.

5. The County agrees to pay Plaintiff's reasonable attorneys' fees and costs not to exceed Two Hundred Fifty Thousand Dollars ($250,000.00). Thirty (30) days following the entry of this Order, Plaintiff shall submit an application for attorneys' fees and costs with supporting affidavits. Fourteen (14) days after the submission of Plaintiff's application for attorneys' fees, the County shall submit its Response, if any, to Plaintiff's application. Seven (7) days after the submission of the County's Response, Plaintiff may resubmit a Reply. It is agreed that the Court's decision regarding attorneys' fees and costs shall be final and binding, and that neither party will appeal or otherwise challenge said decision. Thirty (30) days following the issuance of the Court's decision on attorneys' fees and costs, the County shall forward payment to the Plaintiff for the amount determined by this Court to be appropriate. Plaintiff hereby waives and releases all claims

for attorneys' fees and costs related to C.A. No. 93-579, in excess of Two Hundred Fifty Thousand Dollars ($250,000.00).

6. The Plaintiff waives, releases and forever discharges the County and its agents, officers and employees and the other persons, firms or corporations liable or who might be claimed liable, with respect to claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever relating to this Action or which have resulted or may result from zoning decisions made by the County in connection with the Route 273 Property, from the beginning of time to the present date, excepting only those claims heretofore made in the related action captioned Frank E. Acierno v. Philip Cloutier, filed in the United States District Court for the District of Delaware, C.A. No. 92-385 (SLR).

7. The parties stipulate that this Settlement Agreement, and the payments set forth in this Agreement, shall not be construed as an admission of liability, negligence, willful misconduct, misrepresentation, gross negligence, or fault of any kind whatsoever by any party to this Action, or by any other person or corporation whatsoever, but shall be construed strictly as a compromise and settlement of all disputes between Plaintiff and the County for the purposes of avoiding further controversy, litigation and expenses.

8. This Court shall retain jurisdiction of this matter to ensure compliance with this Order and the judgments to be entered pursuant to this Order.

9. The parties hereby acknowledge that they have read and reviewed this Settlement Agreement, that they have consulted with their attorneys about the provisions of this Settlement Agreement and that their attorneys have fully discussed the Settlement Agreement and its legal implications with them, that they enter into this Agreement voluntarily and that in entering into this

Agreement, they rely upon no inducements or representations other than as set forth in this Stipulation Order and the Stipulation and Order entered into concurrently in C.A. No. 92-385 (SLR).

10. This Stipulation and Order shall be entered in this Court as a non-appealable Final Order and Judgment.

11. This Agreement, Stipulation and Order shall be binding upon and shall inure to the benefits of the parties' successors, assigns, heirs and beneficiaries.

OBERLY, JENNINGS & DREXLER

By: *Charles M. Oberly III* (signature)
Charles M. Oberly, III, Esquire
800 Delaware Avenue, Suite 901
Wilmington, DE 19801
(302) 576-2000

YANNACONE, FAY, BALDO & DALY

By: *John Yannacone* (signature)
John J. Yannacone, Esquire
200 East State Street
Media, PA 19063
(610) 565-9500
Attorneys for Plaintiff,
Frank E. Acierno

DATE: October 24, 1997

*Frank E. Acierno* (signature)
Frank E. Acierno

NEW CASTLE COUNTY

By: _____
William J. Rhodunda, Jr.
New Castle County, Division of Law
Louis L. Redding City/County Building
800 N. French Street, 8th Floor
Wilmington, DE 19801
(302) 573-2151


CONNOLLY, BOVE, LODGE & HUTZ


By: _____
Collins J. Seitz, Jr., Esquire
1220 Market Street
P.O. Box 2207
Wilmington, DE 19899
(302) 888-6278

Attorneys for Defendant,
New Castle County, Delaware


By: _____
Thomas P. Gordon
New Castle County Executive
Louis L. Redding City/County Bldg.
800 N. French Street, 8th Floor
Wilmington, DE 19801
(302) 571-7500

DATE: October 24, 1997


IT IS SO ORDERED this 27th day of October, 1997.

_____
J.

CERTIFIED: 6/18/03
AS A TRUE COPY:
ATTEST:                              October 9, 1997
PETER T. DALLEO, CLERK
BY _____
       Deputy Clerk

S:\03\WJR\ACIERNO\STIPORD3.WPD

# EXHIBIT D
# PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS OR STAY

home | News Journal | entertainment | homes | cars | jobs | classifieds

www.delawareonline.com
**The News Journal**



MAACO AUTO PAINTING AND BODYWORKS
2409 Governor Printz Blvd. Wilmington 302-762-5777
728 Dawson Drive Delaware Industrial Park Newark 302-737-8460

TODAY IS Friday, July 11, 2003

HOME
The News Journal

Local
Business
Sports
High School Sports
Life & Leisure
Opinion
U.S./World
Technology

Obituaries
Celebrations
Traffic
Weather
School closings
Government
Births
Lottery
Police news
Archive
Delaware Info
Forums
Entertainment
Homes
Cars
Jobs
Classifieds
Delaware Directory
Help

Search
Advanced search

## Local News from The News Journal

### County executive plans to force mall site bid
#### Developer Frank Acierno owns property, says it's not for sale

By CHARLOTTE HALE
Staff reporter
07/11/2003

New Castle County Executive Tom Gordon wants to acquire Merchant's Square in Fox Point and turn the mostly vacant shopping center into a park.

Gordon on Thursday told the Council of Civic Organizations of Brandywine Hundred that the property along Gov. Printz Boulevard and Edgemoor Road is not for sale, so the county likely would have to condemn it to obtain it from a company headed by developer Frank E. Acierno.

"Mr. Acierno did not call me up and offer it to me, but I'm going to make him an offer he can't refuse," Gordon said during the meeting at the Brandywine Hundred Branch Library.

Acierno's attorney, Richard Abbott, said the property is not for sale. He also said the county does not have the authority under state law to condemn property for a park. The county's condemnation powers are limited to projects such as sewers, trash dumps or a reservoir along White Clay Creek, he said.

"They didn't do their homework," Abbott said.

A copy of county law provided by the Gordon administration says that before the county can begin condemnation proceedings, the county executive must determine the property cannot be bought at a price agreeable to County Council.

That same section of the law says the county executive has the power to begin condemnation to acquire property, in accordance with state law, if council agrees it is required to "carry into effect any project or program of the government of the county."

But Abbott said state law trumps that section of county law.

Acierno also heads companies that own Concord Mall in Brandywine Hundred and the Christiana Town Center off Del. 273. There is a history of litigation between his companies and the county, including an ongoing lawsuit over the county's refusal to issue a permit for a restaurant at the Christiana Town Center. However, Acierno is letting the county use the Merchant's Square parking lot this weekend as a satellite lot for people attending the Rockwood Ice Cream Festival.

Gordon's top aide, Chief Administrative Officer Sherry Freebery, said if a condemnation is successful, the county would have to pay the property's appraised value. She said the county does not yet know that price.

Abbott also said he does not know the appraised value.

The property, which is about 25 acres, is zoned for the most intense commercial use allowed under county law. However, it has only a few

Subscribe
Auctions
Coupons
Interact
Feedback
Contests

**U.S. & World News >>**
updated every 30 minutes

**need help? have questions?**

SPONSORS



ESSENTIALS
• Weather
• Traffic
• Obituaries
• Celebrations
• Government

SPECIALS
SPACE.COM
News and info about our univ[e]
INTERACTIVE

- Bingo
- Lottery
- Police news

Abbott said trying to attract tenants is difficult without an anchor store.

Most retailers left the shopping center after a Strawbridge & Clothier closed in 1983.

Brandywine Hundred resident Judy Gallagher said she thinks the shopping center should be used in some way and is in favor of the park plan.

"Just sitting there empty is such a waste," she said.

Gordon said he would forward a letter to County Council asking the seven members to approve a resolution supporting negotiations with Acierno.

"We both want to make sure that everyone is supportive of this," she said. "It is going to be a difficult undertaking," she said.

County Council President Chris Coons said he has long been interested in redeveloping and revitalizing older properties, though using condemnation to achieve that goal is a dramatic step. But he said Gordon's proposal deserves attention.

"I'm looking to see the price tag, and I'm looking to see how hard it will be to accomplish," he said. "But basically I have a positive response."

Reach Charlotte Hale at 324-2792 or chale@delawareonline.com.

[ Printer-friendly format ]   [ E-mail this article ]

Participate in government!

**PRIME LIFE**
For the mature Delawarean

**DELAWARE WC**
Articles, archiv and more for women of the I State

**DELAWARE PAI**
Special section families


SEE SEABISCUIT IN THEATERS JULY 25
WIN A TRIP TO L.A.
The News Journal
www.delawareonline.co

Copyright ©2003, The News Journal. Use of this site signifies your agreement to the Terms of Service (updated 12/19/2002)



The Jewel of Little Italy
**www.delaware[online].com**
A service of The News Journal



print

http://www.delawareonline.com/newsjournal/local/2003/07/12merchantssquare.html

## Merchant's Square 'is not for sale'
### Owner Acierno, NCCo at odds

**U.S. & World News >>**
updated every 30 minutes



By CHARLOTTE HALE
Staff reporter
07/12/2003

SPONSORS

Merchant's Square owner Frank Acierno said Friday that he is determined to make his mostly vacant shopping center in Fox Point work as a retail center and is not interested in selling it to New Castle County for a park.

"I've never put it up for sale, and it's not for sale," Acierno said.

Acierno's comments came one day after County Executive Tom Gordon announced that he wanted to acquire the property and would try to condemn it for a park if Acierno did not sell.

Gordon's top aide, Chief Administrative Officer Sherry Freebery, said Friday that the administration thinks the property at Gov. Printz Boulevard and Edgemoor Road is no longer viable as a shopping center. The subsequent development of Christiana Mall, the Brandywine Town Center and Concord Mall - the latter of which Acierno owns - has shifted retail business away from the more than 50-year-old property, she said. A government subsidy to redevelop Merchant's Square for retail use won't help, she said.



Win a Dozen Roses
click here!

"It would just be pouring money down the drain," Freebery said.

Most businesses left Merchant's Square after a Strawbridge & Clothier closed in 1983. A Gold's Gym, Tuesday Morning, Woodworker's Warehouse and a county police substation, which is leased for free to the government, are the only tenants in the more than 400,000-square-foot complex on about 24 acres.



Famous For Fine Flowers

Jonathan Husband, president of the Fox Point Association and a development planner in the county Special Services Department, said area residents want to see Merchant's Square rejuvenated, and a park is a good idea. He said association members had been approaching retailers to try to assure them they would patronize businesses that moved to the shopping center.

**(888) 333-3681**

Order 24 hours a day
Delivery 7 days a week
North Wilmington
to Bear

"We just hope everything can be amicable because ... we were really working with Frank Acierno," Husband said.

In a July 10 letter urging County Council to support his efforts, Gordon argues the shopping center site would be an ideal location for a regional county park. He said it would bridge northern Wilmington and Brandywine Hundred, creating a bond between residents in the two areas and bringing a new vitality to the region.

**Wilmington's Premier Florist Since 1900**

However, Freebery acknowledged that the county does not have the authority to condemn property for a park. She said a change in state law would be required.

Acierno said he did not think the condemnation would succeed. He pointed out that the surrounding area already has major parks, such as the county's Rockwood Park and Fox Point State Park.

To send flowers, click here

Improving county parks to broaden their appeal to more residents has been one of Gordon's major initiatives since he entered office in 1997.

Carousel Park was upgraded to play up its equestrian roots. About $15.5 million has been committed for the renovation of Rockwood Museum and the grounds and parkland surrounding the 1850s-era estate. The county recently spent $15 million to buy nearly 300 mostly undeveloped acres in Glasgow to create a regional park.

ESSENTIALS
- Weather
- Traffic
- Obituaries
- Celebrations
- Government
- Births
- Lottery

SPECIALS
**SPACE.COM**
News and info about our universe!

**INTERACTIVE TOWN HALL**
Participate in government!

Gordon made his announcement Thursday without knowing the shopping center's appraised value, which is how much the county would have to pay if it successfully condemns the property.

Acierno also said he did not know the appraised value. But he said a potential buyer who had retailers who wanted to move into the property offered him $33 million five or six years ago.

Acierno said he acquired the property 22 years ago for about $2.7 million.

Freebery said she did not view the $33 million offer as a credible indication of the shopping center's appraised value based on its condition or current use. The county is seeking a professional appraisal, she added.

Acierno said the announcement is reflective of the way the Gordon administration deals with him.

He said the administration views opposing him as a politically popular position, despite his allowing the county to use the Merchant's Square lot for free parking during the Rockwood Ice Cream Festival and his donation of money for the construction of the Brandywine Hundred Branch Library.

"I don't think he really believes that," Freebery said about Acierno's view that the acquisition is political.

Freebery said Gordon has wanted to do something with Merchant's Square since he was elected and has discussed options with Acierno. Those discussions resulted in the county establishing the police substation there to stabilize the area and make it more appealing to potential tenants, she said.

*Reach Charlotte Hale at 324-2792 or chale@delawareonline.com.*

**PRIME LIFE**
For the mature Delawarean

**DELAWARE WOMAN**
Articles, archives, and more for women of the First State

**DELAWARE PARENT**
Special section for families

Copyright ©2003, The News Journal. Use of this site signifies your agreement to the Terms of Service (updated 12/19/2002)