EXHIBIT 7
TO PLAINTIFFS' COMPENDIUM OF
UNREPORTED CASES TO THEIR ANSWERING
BRIEF IN OPPOSITION TO THE INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS OR STAY

Not Reported in F.Supp.     Page 87
1996 WL 190005 (D.Del.)
**(Cite as: 1996 WL 190005 (D.Del.))**
▷

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
Frank E. **ACIERNO,** Plaintiff,
v.
NEW CASTLE COUNTY, Defendant.
Civ. A. No. 93-579-SLR.

March 8, 1996.
Charles M. Oberly, III, and Kathleen M. Jennings of Oberly & Jennings, Wilmington, Delaware; John J. Yannacone of Yannacone, Fay, Baldo & Daly, Media, Pennsylvania, for plaintiff.

Collins J. Seitz, Jr., of Connolly, Bove, Lodge & Hutz, Wilmington, Delaware, for defendant.

*MEMORANDUM OPINION*

SUE L. ROBINSON, District Judge.

*1 Before the court is defendant New Castle County's (the "County's") motion to dismiss or stay or in the alternative for summary judgment. (D.I. 210) The motion is based on the issuance of a decision by the Court of Chancery of the State of Delaware. Before analyzing the County's motion and plaintiff Frank E. **Acierno**'s opposition thereto, the court will briefly review the procedural posture of this case.

I. PROCEDURAL BACKGROUND

By motion filed in September 1992, plaintiff **Acierno** sought preliminary injunctive relief in the form of the issuance of a building permit for certain property (the "273 property"). He asserted that defendant New Castle County's continuing conduct in denying him the permit violated his right to due process and equal protection under the Fourteenth Amendment to the Constitution. After expedited discovery and an evidentiary hearing, this court entered a preliminary injunction against the County. *Acierno v. Mitchell,* C.A. No. 92-384-SLR (D.Del. 1992).

The County filed an appeal from the court's opinion and order of December 30, 1992, but did not file a motion to stay proceedings in this court during the pendency of the appeal. Nonetheless, the permit did not issue timely because the County found that plaintiff's building permit application was incomplete and his building design plans failed to comply with the New Castle County Building Code.

On February 1, 1993, plaintiff filed a motion with this court seeking an order to show cause why the County should not be held in contempt of the December 30, 1992 order. A further evidentiary hearing was held in April 1993, and by memorandum opinion and order issued July 7, 1993, this court concluded that "defendant New Castle County violated both the letter and the spirit of the court's December 1992 order...." The court declined at that juncture to enter a finding of civil contempt, however, in order to allow the administrative process to conclude. Apparently, the County thereafter complied with the terms of the injunction and a building permit issued.

Prior to plaintiff engaging in any "earth-disturbing activity" on the 273 property, the United States Court of Appeals for the Third Circuit vacated this court's decision and remanded with instructions to dismiss without prejudice. *Acierno v. Mitchell,* 6 F.3d 970, 978 (3d Cir. 1993). More specifically, the Third Circuit held plaintiff's claims to be premature:
> We agree the County has made a final decision with respect to plaintiff's development plans. Plaintiff submitted three plans depicting commercial development on the M-1 portion of the property. The Department of Planning and the County Council accepted those plans, which are final decisions under state law and the County's zoning ordinance. *See Acierno v. Folsom,* 337 A.2d 309, 313 (Del. 1975) (planning board has "final decision" to approve development plans). There has been no action by any authoritative body to reverse these actions, and thus we assume without deciding plaintiff has a property interest in his plans under Delaware law.
> *2 Plaintiff need only secure a final decision from the Board of Adjustment on his application for a building permit before his claims are mature.... Here, the Department of Planning and County Council approved plaintiff's development plans and approved commercial development on the property. The County has done nothing to revoke the approval. Plaintiff will have a "final" decision once the Board of Adjustment renders its decision.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-01376-KAJ   Document 54-6   Filed 03/17/2005   Page 3 of 9

Not Reported in F.Supp.
(Cite as: 1996 WL 190005, *2 (D.Del.))

Page 88

If the Board determines commercial development is prohibited under the amendment, plaintiff's application for a building permit will have been conclusively rejected and his § 1983 claims will be ripe.
Although plaintiff may appeal for judicial review of the Board of Adjustment's decision, Del. Code Ann. tit. 9, § 1353(a), he need not do so before his § 1983 claims are ripe. A claim is "final" after the Board of Adjustment has rendered a decision. As we [have] noted..., "[f]inality does not require state court review of the board's decision."
*Acierno,* 6 F.3d at 975, 976-77 and n. 17 (emphasis added) (citations omitted).

Following the mandate of the Third Circuit, this court dismissed plaintiff's case without prejudice by order issued October 28, 1993. Likewise following the Third Circuit's mandate, plaintiff promptly filed an appeal with the New Castle County Board of Adjustment (the "Board") pursuant to 9 Del. C. § 1352(a); Ordinance § 23-84. By decision rendered verbally on December 16, 1993, the Board affirmed the decision of the Department of Public Works, Division of Development and Licensing, to deny plaintiff's building permit application.

Without waiting to see if plaintiff would file an appeal with the Delaware Superior Court, as provided in 9 Del. C. § 1353, the County filed a complaint at 8:26 a.m. on December 17, 1993 in the Court of Chancery of the State of Delaware seeking a declaration "that defendant Frank E. Acierno ... does not have a right to proceed with commercial development plans on certain property ("the 273 Property") which is zoned M-1 (manufacturing)." [FN1] *New Castle County v. Acierno,* C.A. No. 13302 (Del. Ch.).

By motion filed in January 1994, Acierno moved to stay the Chancery Court proceedings pending resolution of the continued federal court proceedings. (D.I. 214 at A2) By motion filed in the Court of Chancery in February 1994, the County moved for entry of summary judgment. In its moving papers, the County reiterated the legal conclusions of the Board of Adjustment, that is, that: 1) Acierno abandoned any development rights through inaction and expiration of the three-year protection provided by County Ordinance § 23-6; 2) the doctrine of vested rights does not protect Acierno because he failed to demonstrate a substantial change of position or expenditures; and 3) the doctrine of equitable estoppel should not be invoked because Acierno did not exhibit good faith reliance. The County's argument in support of its motion consisted of the following two paragraphs:
*3 Having failed to appeal the Board's decision to Superior Court, Acierno is barred from relitigating any of these issues under principles of collateral estoppel (issue preclusion) and res judicata (claim preclusion). Under Delaware law, the Board's findings are entitled to preclusive effect.... Acierno is therefore bound under principles of collateral estoppel and res judicata from relitigating the Board's findings of fact and conclusions of law set forth in its January 14, 1994 opinion.
Summary judgment should be granted when no material issue of fact exists and the moving party is entitled to judgment as a matter of law.... In light of the preclusive effect of the Board's determination, there are no disputed issues of fact or law concerning the validity of the Division of License and Inspections' decision not to grant Acierno a building permit. Summary judgment is therefore appropriate as to the County's request for a declaratory judgment that Acierno is precluded from establishing a commercial use on that portion of the 273 property which is zoned only for manufacturing uses.
(D.I. 214 at A26-27)

The Chancery Court addressed Acierno's motion to stay by decision issued October 19, 1995, refusing to stay the proceedings because "Acierno declined to participate" in the state review process:
I agree with the contentions [that] the "County's complaint is drawn to a narrow issue - whether an unappealed decision of the Board of Adjustment adverse to Acierno establishes preclusivity that he is not entitled to make a commercial use of the 273 Property." There is a procedure in existence in the State of Delaware carefully considered by our General Assembly for the purpose of adjudicating grievances involving land-use planning. Certainly the presence or absence of a Federal interest in the matter is an appropriate determination for a Federal Court. However, one questions whether the heart of the issue is one of Federal Law and one about which the Federal Courts have "special knowledge and expertise." ... I cannot conclude it is more convenient for the parties to litigate in the Federal forum rather than in the state forum.... Pursuit of this action will not result in piecemeal duplicative litigation since the issues before this Court, in the technically first filed action, will

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
(Cite as: 1996 WL 190005, *3 (D.Del.))

Page 89

obviate the need for Federal intrusion in state subject matter jurisdiction.
(D.I. 214 at A138-39)

By opinion issued November 9, 1995, the Chancery Court rendered a decision on the County's motion for summary judgment. The decision includes a review of the procedural history of the dispute:

[T]he County Board of Adjustment heard Acierno's appeal from the decision of the Division of Development and Licensing of New Castle County denying him a building permit for a commercial use on property that is zoned manufacturing. Among the relevant facts not in dispute before the County Board of Adjustment, nor in dispute now are: (a) Acierno requested a building permit to construct a commercial building on a parcel which is zoned M-1 or manufacturing; and (b) the proposed commercial use violates the current zoning code; and (c) the Division declined to issue the building permit directly as a result of the conflict of the proposed use with the existing zoning code at the time of the application.

*4 On December 16, 1993, the Board voted unanimously to uphold the decision of the Division denying the building permit application....

The Superior Court of the State of Delaware may review the determination of the Board of Adjustment pursuant to 9 Del.C. § 1353. Acierno has never requested review under the State's statutory scheme to challenge the decision of the Board of Adjustment....

(D.I. 214 at A194-195) The Chancery Court went on to review the jurisdiction of the Superior Court to hear such appeals:

Had Acierno made a timely appeal to Superior Court, the Superior Court could have examined the record below to determine (1) whether substantial evidence existed in the record to support the Board's findings of fact and conclusions of law; and (2) whether in its application of the law to the facts the Board had committed error.

(D.I. 214 at A195) The Chancery Court then concluded: "In the interest of finality and stability, this Court concludes Delaware law precludes Acierno from challenging the finality of the Board of Adjustment's decision in the state court system."
(D.I. 214 at A195) (emphasis added). Having so concluded, the Chancery Court went on to explain that the Board of Adjustment had upheld the decision of the Division of Licensing and Inspection
  on a precise issue: the property for which [ Acierno] sought a building permit was zoned manufacturing and therefore, inappropriate at the time of the application for a commercial use. Delaware law precludes Acierno from requesting judicial review of that decision after he had an opportunity to seek such a review before the Superior Court and declined to do so. There can be no question the Superior Court could and would address, in the course of an appropriate appeal, alleged violations of procedural and/or substantive due process.... It is routine to address federal and state constitutional law in the course of an appeal where a party alleges the failure to recognize a denial of procedural and/or substantive due process was the "error of law" an administrative board or agency made below. Had Acierno given the Superior Court an opportunity to address his grievance in accordance with long-standing statutory appellate processes, he could have raised those issues and had them adjudicated with the possibility of success. The resulting order on remand could have directed the County to issue the building permit Acierno sought.

Acierno has abandoned that opportunity by electing to forgo an available appeal to the Superior Court. This is not a case where the issue was "not previously decided by the Board of Adjustment." Here the decision not to appeal clearly precludes an inquiry into Acierno's right to a building permit for a commercial use in a manufacturing zone....

Therefore, Plaintiff's Motion for Summary Judgment is granted and judgment is entered declaring Delaware law precludes Acierno from obtaining a building permit for a commercial use on the subject property which is zoned for manufacturing purposes only.
*5 (D.I. 214 at A195-196) (emphasis added). [FN2]

II. ROOKER-FELDMAN DOCTRINE

Having initiated the state court action to preclude federal review of plaintiff's claims, the County now contends it has succeeded in that endeavor, arguing that this court has been divested of subject matter jurisdiction by virtue of the state court judgment and application of the "*Rooker-Feldman* doctrine." As explained by the Third Circuit, those cases which spawned the *Rooker-Feldman* doctrine "held that lower federal courts lack subject matter jurisdiction to engage in appellate review of state-court determinations or to evaluate constitutional claims that are 'inextricably intertwined with the state

Case 1:04-cv-01376-KAJ   Document 54-6   Filed 03/17/2005   Page 5 of 9

Not Reported in F.Supp.
(Cite as: 1996 WL 190005, *5 (D.Del.))

Page 90

court's [decision] in a judicial proceeding."' *Port Auth. PBA v. Port Auth.*, 973 F.2d 169, 177 (3d Cir. 1992), *citing District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n.16 (1983).

Because the constitutional claims presently pending before this court have never been presented to or determined by a state agency or court, the *Rooker-Feldman* doctrine would bar this court from hearing plaintiff's claims only if the success of the federal claims was dependent upon a determination that "'the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment."' *Marks v. Stinson*, 19 F.3d 873, 885-86 n.11 (3d Cir. 1994), *citing Centifanti v. Nix*, 865 F.2d 1422, 1430 (3d Cir. 1989).

In support of its contention that this court lacks subject matter jurisdiction by operation of the *Rooker-Feldman* doctrine, the County argues that "[t]his court cannot grant the relief plaintiff seeks [i.e., a building permit] without a *de facto* reversal of the state court judgment.... The relief requested is, therefore, inextricably intertwined with the state court judgment." (D.I. 211 at 5-6)

The court commences its analysis under *Rooker-Feldman* with the observation that the doctrine applies only to state court decisions. The state court decision sought by the County to wield as a sword in this case to thwart federal jurisdiction contains no substantive holding. The Chancery Court could not and did not review the merits of the administrative agency's decision; [FN3] the only decision rendered by the Chancery Court was that, in the absence of an appeal to the Superior Court, the administrative agency's decision was final and plaintiff was thereafter precluded "from challenging the finality of the Board of Adjustment's decision in the state court system." (D.I. 214 at A195) (emphasis added). This court concludes, therefore, that *Rooker-Feldman* is inapplicable to the case at bar, based on the fact that the critical state decision at issue here in the case at bar is the one rendered by the state administrative agency, not by the Court of Chancery. The finality of the state administrative process is not disputed in these federal proceedings.

*6 Even if the Chancery Court decision were deemed to be the appropriate focus of the *Rooker-Feldman* analysis, the doctrine would be inapplicable instantly because, contrary to the County's argument, the relief requested in the case at bar is not inextricably intertwined with the state court judgment, as illustrated by Third Circuit precedent. In *Marks v. Stinson*, 19 F.3d 873 (3d Cir. 1994), a case charging election fraud, the Third Circuit decided that the *Rooker-Feldman* doctrine did not bar the district court from hearing the plaintiff's claims because the state court had never reached the merits of such claims [FN4] and the district court need not reverse the state court decision before granting federal relief. *Id.* at 886 n.11. The relief requested (undoubtably in both the state and federal cases) was the unseating of the formerly declared winner of the election and certifying plaintiff to be the *bona fide* winner. The fact that the state court, on state law grounds, denied plaintiff the relief he requested did not preclude the federal court from ordering the same relief, albeit on different grounds. Indeed, the Third Circuit in *Marks v. Stinson* specifically addressed the remedies available to the district court upon the finding of a constitutional violation, including the certification of a candidate, with or without ordering another election. *Id.* at 886-90. The County offers no case authority standing for the incredibly broad proposition it seeks to invoke, that is, that an adverse state court judgment (especially one based on grounds other than the merits) should forever bar federal review of constitutional issues whenever relief of the same nature available in the state judicial system is requested on the federal level.

III. ENGLAND RESERVATION

Yet another reason for rejecting application of *Rooker-Feldman* is that plaintiff validly reserved his federal claims in the state proceedings pursuant to *England v. Louisiana State Bd. of Medical Examiners*, 375 U.S. 411 (1964). In *England*, the Supreme Court held that a federal court plaintiff involuntarily remitted to state court by the federal court's decision to abstain could reserve his right to litigate his federal claims in federal court. An effective *England* reservation is accomplished by informing the state court of the nature of plaintiff's federal claims, that he does not wish to litigate those claims in state court, "'and that he intends, should the state courts hold against him on the question of state law, to return to the District Court for

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-01376-KAJ    Document 54-6    Filed 03/17/2005    Page 6 of 9

Not Reported in F.Supp.
(Cite as: 1996 WL 190005, *6 (D.Del.))

Page 91

disposition of his federal contentions."' *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1071 (3d Cir. 1990), *quoting England*, 375 U.S. at 421.

In *Bradley*, the plaintiff first filed his § 1983 action in federal district court raising numerous federal constitutional claims. Plaintiff was fired while his federal action was pending and he subsequently initiated state proceedings. At defendants' request, the federal court stayed the federal proceedings pending the outcome of the state action and plaintiff "was unable to pursue his federal claims in a federal forum until the resolution of the state appeal of his termination." *Id.* Plaintiff expressly reserved the federal claims for litigation in federal court. The Third Circuit ruled that the *England* doctrine applied in this context as well, recognizing "that the Supreme Court has never explicitly limited *England* to the ... abstention context...." 913 F.2d at 1071. Consequently, the Third Circuit examined

*7 the rationale underlying *England* to determine if it ha[d] equal applicability [t]here. The Supreme Court explained the two bases of the *England* decision as the right of a litigant to choose a federal forum and the duty of the federal court to take jurisdiction over federal claims that have been properly brought before it. 375 U.S. at 415....

913 F.2d at 1071-72 (citations omitted).

The County contends in the case at bar that plaintiff did not effectively reserve his federal claims under *England;* further, because this court has neither abstained nor stayed the federal proceedings pending completion of the state proceedings, the County asserts that *England* is inapplicable in any event. With respect to the former contention, plaintiff's lawyer stated the following before the Board of Adjustment in December 1993:

We're here tonight because we're at an intermediate stage of a major civil rights lawsuit in Federal court.

The Federal court here in Delaware and the United States Court of Appeals in Philadelphia, the second highest court in the land, have both said that [the County] wrongfully denied a building permit to my client; but they have ordered that you have the first chance at correcting [the] error before the courts have to step in. If you do not correct [the] error, then we will be back in Federal court.

(Transcript of December 2, 1993 hearing before the Board of Adjustment of New Castle County, submitted as plaintiff's exhibit 2 in the preliminary injunction proceedings at bar, hereinafter referred to as "Tr.," at 10) (emphasis added). Later in the same proceeding a member of the Board of Adjustment queried why plaintiff had resorted to federal court rather than coming directly to the Board.

Mr. Neuberger: My client has a right to go to Federal court.

Ms. Jester: It looks like he's sidestepping this Board.

Mr. Neuberger: No. My client has an absolute right to see that his civil rights are protected. There are federal laws.

Ms. Jester: Are you saying that we wouldn't protect them, too?

Mr. Neuberger: I'm saying, my client has an absolute right to go to court; and he chose to exercise that right....

(Tr. at 51-2) In the concluding remarks made to the Board, plaintiff's lawyer reiterated that if the Board did not grant the permit, "the case" would then be ripe and the "court case" would be "reactivated." (Tr. at 171) Finally, the County's lawyer stated: "I think you can be guaranteed that if Mr. **Acierno** were unsuccessful tonight, there would be a federal court lawsuit filed shortly." (Tr. at 178)

In the Chancery Court proceeding, plaintiff's initial response to the complaint was a motion to stay in favor of this federal proceeding. That motion was denied 19 months after it was filed. The County in the interim filed a motion for summary judgment which was specifically and deliberately limited to a "precise" state procedural issue. In response to the summary judgment motion, plaintiff reiterated his position that the state proceedings should be stayed because it was "clear" "that the federal suit" would proceed.

*8 Thus, while it may be true that plaintiff did not mention the *England* case by name in the two state proceedings in which he has been required to participate, the record clearly demonstrates that he intended to pursue his federal claims in federal court and that the County, the Board, and the Chancery Court were all well aware of his position. To say that plaintiff did not make an effective *England* reservation is, at best, to elevate form over substance and, at worst, disingenuous.

With respect to the County's second argument, that *England* is inapplicable in this context, plaintiff was forced to litigate in the state system, first by the federal appellate court and second by the County. During completion of the state administrative

Not Reported in F.Supp.
(Cite as: 1996 WL 190005, *8 (D.Del.))

Page 92

process, plaintiff was precluded from pursuing his federal claims in federal court. As soon as he was legally able to resume the federal litigation, plaintiff did so. It was the County which initiated the second state proceeding over plaintiff's objection; plaintiff requested that the state court stay its proceedings pending resolution of his federal case, which request was denied. In both state proceedings, then, "plaintiff's presence in the state [system was] compelled and involuntary." *Bradley,* 913 F.2d at 1071. To punish plaintiff for this court's decision to proceed rather than abstain or stay flies in the face of *England's* underlying principles: that a litigant has the right to choose a federal forum and that a federal court has a duty to take jurisdiction over federal claims that have been properly brought before it.

## IV. ISSUE AND CLAIM PRECLUSION

Even where *England* is properly invoked and the federal court retains subject matter jurisdiction over a federal plaintiff's federal claims, the question of what effect the state proceedings should have in the § 1983 litigation must be addressed.

> Normally, when the federal court abstains... and the federal litigant reserves his rights as required by *England,* issue preclusion applies only to the state law question decided by the state court. Upon return to federal court, the federal plaintiff may fully litigate his federal claims, including the factual issues that may be identical to those underlying the state law question.

*Ivy Club v. Edwards,* 943 F.2d 270, 283 (3d Cir. 1991), *cert. denied, sub nom. Del. Tufo v. Ivy Club,* 503 U.S. 914 (1992). *Accord Instructional Systems, Inc. v. Computer Curriculum Corp.,* 35 F.3d 813, 822-23 (3d Cir. 1994), *cert. denied,* 115 S.Ct. 1176 (1995). Thus, although neither claim nor issue preclusion applies with respect to federal issues properly reserved, the Third Circuit has held that a federal court under *England* is bound to accept the state court's answer to state issues, "as well as the factual and legal findings necessary to that answer." *Id.* at 823.

The question then becomes, what state law issue was posed to the state court? According to the Chancery Court, the issue posed was whether plaintiff was precluded by Delaware law from seeking judicial review of the Board's decision after plaintiff declined the opportunity to appeal to the Superior Court. The answer to that issue was that "Delaware law precludes [plaintiff] from challenging the finality of the Board of Adjustment's decision in the state court system." The facts underlying the procedural history of the case are undisputed; the Chancery Court relied on no legal precedents for its legal conclusion; plaintiff is not attempting to challenge the Board's decision in the state court system and, therefore, the legal conclusion is not relevant to the constitutional issues before this court. [FN5]

*9 The County argues that the state law issue posed to the Chancery Court was whether "Delaware law precludes **Acierno** from obtaining a building permit for a commercial use on the subject property which is zoned for manufacturing purposes only." (D.I. 211 at 16-17) This language, as opposed to the more limited holding recited above, is tantamount to a review of the merits of the administrative agency's decision, a review the Chancery Court did not claim to (and had no jurisdiction to) undertake. Indeed, despite the County's urging, the Chancery Court did not characterize its decision in terms of issue and claim preclusion, but instead limited its holding to undisputed facts and a legal conclusion that plaintiff could not seek a remedy in state court. Characterizing that holding as a "merits judgment[]" is overreaching. [FN6]

In the absence of a valid *England* reservation (assuming federal subject matter jurisdiction), the preclusive effects of the state proceedings in dispute would require a slightly different analysis. In the first instance, it is undisputed that plaintiff's constitutional claims have not been litigated and decided in the state proceedings. Therefore, the concept of issue preclusion is not applicable to the facts at bar.

The United States Supreme Court has held that "[t]he Full Faith and Credit Act mandates that the 'judicial proceedings' of any State 'shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken.' 28 U.S.C. § 1738." The Supreme Court in *Migra v. Warren City School District Bd. of Educ.,* 465 U.S. 75 (1984), examined issues concerning the claim preclusive effect [FN7] of a state court judgment in the context of a subsequent suit filed pursuant to 42 U.S.C. § 1983. The Court concluded that where a federal plaintiff had sought and obtained a state court judgment, she was precluded from

Case 1:04-cv-01376-KAJ    Document 54-6    Filed 03/17/2005    Page 8 of 9

Not Reported in F.Supp.
(Cite as: 1996 WL 190005, *9 (D.Del.))

Page 93

subsequently litigating her federal claims in federal court, having declined to present such claims in her original suit in state court.

The facts at bar, of course, are distinguishable from those reviewed in *Migra*. Plaintiff here did not voluntarily initiate any of the state proceedings and did not have a "full and fair opportunity" to litigate his claims in the state proceedings. *Kremer v. Chemical Const. Corp.*, 456 U.S. 461 (1982), quoting *Allen v. McCurry*, 449 U.S. 90, 95 (1980).

The County argues that plaintiff is precluded from pursuing his constitutional claims in federal court because he had the opportunity to litigate them in the Chancery Court action. A review of the facts belies the County's assertion. Upon service of the complaint in the Chancery Court action, plaintiff filed in January 1994 a motion to dismiss or, in the alternative, to stay. Within three days of filing that motion, the County filed its motion for summary judgment. Plaintiff's motion to stay was denied in October 1995, which decision was followed by a motion for reargument. That motion was denied by order issued November 13, 1995; the County's motion for summary judgment was granted by opinion issued that same date. (D.I. 214 at A2-4) To say that plaintiff should have filed an answer and should have pursued his constitutional claims in the state forum under those procedural circumstances defies logic, especially when the state court itself did not acknowledge plaintiff's right to have pursued his constitutional challenges within the context of its proceeding, and the County aggressively pursued its single "state law" issue to resolution.

*10 The County likewise asserts that plaintiff should be precluded from litigating his constitutional claims in this court on the basis of his "opportunity" to present his claims before a state administrative agency composed of laypersons. According to the Supreme Court's directive in *University of Tennessee v. Elliott*, 478 U.S. 788 (1986), although § 1738 "is not applicable to ... unreviewed state administrative factfinding... ," nevertheless "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." *Id.* at 794, 797-98, quoting *United States v. Utah Const. & Mining Co.*, 384 U.S. 394, 421-22 (1966) (emphasis added). Accord *Ivy Club v. Edwards,* 943 F.2d at 282.

A review of the record demonstrates that the administrative agency in this case resolved issues of fact and of law which were not properly before it and that plaintiff did not have an adequate opportunity to litigate those issues. The discrete question before the Board was whether the administrative officer was correct in denying plaintiff's building permit application on the grounds he asserted, that is (as characterized by the Chancery Court), that the application sought permission for commercial development on property zoned manufacturing. At most, the issue could have been expanded to the purely legal issue of whether the County Law Department's interpretation of County Ordinance § 23-6 was correct. It was the County, at the time of the hearing, which brought into issue the equitable doctrines of vested rights and equitable estoppel, doctrines unfamiliar to the lay Board members. The issues presented to the Board by the County were complex enough to warrant the County's calling a legal expert (an out-of-state attorney) to inform the lay Board members of the County's view of the law. For plaintiff to have presented a fully developed factual record at the administrative level to address the legal issues raised by the County at the hearing would have minimally required plaintiff to disclose his personal finances to a group of lay persons (political appointments) without the procedural and substantive safeguards available in a court proceeding, and certainly would have required more than an evening's hearing to amass and tender.

V. CONCLUSION

This court, perhaps above all else, is a court of equity. The judge-made doctrines with which the County has armed itself in this case have been created to ensure "finality and stability" and to further the interests of comity, but never at the expense of equity; before a federal litigant is precluded from having his day in federal court, he must have had a full and fair opportunity to present his claims elsewhere. *Ivy Club v. Edwards,* 943 F.2d at 281. Under the admittedly exceptional circumstances of this case, "a sense of basic fairness dictates that [plaintiff] be permitted to litigate [his] federal claims in the federal forum." *Id.* at 282. To bind plaintiff in this case to either the factual "findings" of the Board or its legal conclusions based on those findings is inequitable and this court

Not Reported in F.Supp.
(Cite as: 1996 WL 190005, *10 (D.Del.))

Page 94

declines to do so. [FN8] The County's motion is denied. [FN9]

*11 An order shall issue.

> FN1. On the same day, plaintiff filed suit in federal court renewing his motion for a preliminary injunction in this court. (D.I. 2) Injunctive relief was granted, but that decision was reversed by the Third Circuit. (D.I. 27, 61) The cause, having been remanded to this court, was placed on the court's calendar and, consistent with the scheduling order entered by the court, case and issue dispositive motions were filed in July 1995. By memorandum opinion and order issued November 1, 1995, this court granted in part and denied in part the parties' respective motions, leaving plaintiff's substantive due process and equal protection claims for trial. (D.I. 198, 199)
>
> FN2. Only one case was cited in support of the Chancery Court's concluding language recited above: *Wiggin v. Mummert,* C.A. No. 8556, 1992 WL 113455 (Del. Ch. May 26, 1992) (Hartnett, V.C.). In the *Wiggin* case, the court examined 9 Del. C. § 2609(d), a statute which allows suits for injunctive relief "if the separate action relates to an issue not previously decided by the Board of Adjustment."
>
> FN3. The County was precluded from filing an appeal with (and, thus, precluded from seeking a merits review by) the Superior Court because the County was the prevailing party before the administrative agency.
>
> FN4. Under the facts of *Marks v. Stinson,* the Board of Elections for the County of Philadelphia had rejected the challenges to various absentee ballots, having determined that it could only consider testimony from authorized poll-watchers. None being present at the hearing, the Board certified defendant Stinson as the winner of the election. On appeal, the Common Pleas Court likewise declined to hear plaintiff Marks' evidence of electoral fraud and affirmed the Board's certification of Stinson. Plaintiff Marks appealed this decision to the Pennsylvania Supreme Court and, concomitantly, filed suit in federal district court.
>
> FN5. For these same reasons, abstention under *Younger v. Harris,* 401 U.S. 37 (1971) is inappropriate.
>
> FN6. In the absence of a state court merits judgment, the issue once again becomes the preclusive effects of the administrative agency's decision in the federal proceedings.
>
> FN7. "Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." 465 U.S. at 77 n. 1.
>
> FN8. A contrary conclusion would essentially negate the Third Circuit's "ripeness" holding in this litigation and would reward the County for what can only be described as extreme measures to avoid federal review of its conduct in this case.
>
> FN9. The damages issues addressed by the County in its motion will be addressed as needed in the context of pretrial and trial.

1996 WL 190005 (D.Del.)

Motions, Pleadings and Filings (Back to top)

• 1:93CV00579 (Docket) (Dec. 17, 1993)

END OF DOCUMENT