EXHIBIT 9
TO PLAINTIFFS' COMPENDIUM OF
UNREPORTED CASES TO THEIR ANSWERING
BRIEF IN OPPOSITION TO THE INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS OR STAY

Not Reported in F.Supp.2d  
2000 WL 718346 (D.Del.)  
(Cite as: 2000 WL 718346 (D.Del.))

Page 78

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.  
Frank E. ACIERNO, Plaintiff,  
v.  
NEW CASTLE COUNTY, Defendant.  
No. C.A. 92-385(SLR).

May 23, 2000.

Charles M. Oberly, III, of Oberly & Jennings, Wilmington, Delaware, John J. Yannacone, of Yannacone & Baldo, Media, Pennsylvania, for plaintiff, of counsel.

Collins J. Seitz, Jr., and Matthew F. Boyer, of Connolly, Bove, Lodge & Hutz LLP, Wilmington, Delaware, for defendant.

MEMORANDUM OPINION

ROBINSON, J.

I. INTRODUCTION

*1 Currently before the court is defendant New Castle County's ("the County") renewed motion for summary judgment on plaintiff Frank **Acierno's** complaint, which alleges that the County violated his constitutional rights by voiding a filed record plan for development on property owned by plaintiff and by "down-zoning" the property from a diversified planned unit development ("DPUD") zoning classification to a more restrictive R-1-B classification. [FN1] The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367. For the reasons that follow, the court shall grant in part and deny in part defendant's motion for summary judgment.

> FN1. The R-1-B classification is more restrictive than the DPUD classification in that it requires an average minimum lot size of 15,000 square feet and thus precludes the building of plaintiff's 322-unit apartment complex *See* New Castle County, Del., Code § 23-39(3).

II. BACKGROUND

The facts giving rise to plaintiff's complaint have been stated both by this court in its memorandum opinion on the individual defendants' motion for partial summary judgment and by the Third Circuit. Therefore, the court shall give only a broad account of the events leading to the instant motion.

Plaintiff filed suit against the County and current and former individual members of the County Council ("the Council"). The individual Council members moved for partial summary judgment on plaintiff's constitutional claims and also raised the defenses of legislative and qualified immunity. The court granted the individual defendants' motion for summary judgment as it related to plaintiff's procedural due process claim, but denied their motion in all other respects. The Council members then filed an interlocutory appeal. Finding that the Council members enjoyed legislative and qualified immunity, a panel of the Third Circuit reversed the court's denial of summary judgment with respect to Council members no longer in office, but dismissed for lack of appellate jurisdiction the appeal of the Council members remaining in office. On motion for rehearing, the Third Circuit vacated the panel's decision and granted reargument on the jurisdictional question. Sitting in banc, the Third Circuit then reversed the court's order denying the Council members' motion for summary judgment on the immunity claims as to both current and former members of the Council. *See generally Acierno v. Cloutier,* 40 F.3d 597 (3d Cir.1994). The case was then remanded to this court for further proceedings.

On remand, plaintiff and the County (now the only remaining defendant) engaged in extensive settlement negotiations. On October 27, 1997, the court approved a stipulation submitted by both parties that provided, in relevant part, as follows: (1) plaintiff dismissed with prejudice all claims against the individual defendants, and dismissed with prejudice and released the County from all claims for monetary damages; (2) plaintiff reserved his right to proceed against the County for equitable relief, and both parties agreed to a non-jury trial on the remaining claims; (3) no part of the record or any ruling or finding in the court's prior memorandum opinion shall constitute res judicata or collateral estoppel as to any fact, issue, or claim; and (4) the parties agreed that plaintiff has no adequate remedy at law. (D.I.255)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*2 Given the stipulation filed by the parties, the court need only consider whether plaintiff is entitled to equitable relief. In its present motion, the County argues that plaintiff is not entitled to equitable relief on his constitutional claims or on his supplemental state law claim.

III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Federal Kemper Life Assurance Co.,* 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial." ' *Matsushita,* 475 U.S. at 587 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pennsylvania Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

IV. DISCUSSION

A. Plaintiff's Substantive Due Process Claim

Plaintiff claims that the County violated his substantive due process rights when the Council, motivated by ill-will toward plaintiff, (1) voided his record development plan and (2) rezoned the property from a DPUD classification to a more restrictive R-1-B zoning classification. The court shall begin with an analysis of whether the rezoning violated plaintiff's due process rights.

1. The Rezoning of Plaintiff's Property

In order to state a substantive due process violation, plaintiff first must establish that he had a property interest worthy of substantive due process protection. *See DeBlasio v. Zoning Bd. of Adjustment,* 53 F.3d 592, 598 (3d Cir.1995). Plaintiff argues that he had a protected property interest in the DPUD zoning classification.

*3 In several cases, the Third Circuit has ruled on the scope of due process protection accorded to property interests. In *DeBlasio,* the Third Circuit concluded that mere "ownership is a property interest worthy of substantive due process protection." *See id.* at 600 (footnote omitted). Specifically, the court explained that:

> In the context of land use regulation, that is, in situations where the governmental decision in question impinges upon a landowner's use and enjoyment of property, a land-owning plaintiff states a substantive due process claim where he or she alleges that the decision limiting the intended land use was arbitrarily or irrationally reached.

*Id.* at 601 (footnote omitted). It is not disputed that plaintiff owned the land that the Council "down-zoned." Moreover, the down-zoning of plaintiff's property "impinged upon" plaintiff's use and enjoyment of the property by limiting his intended use for it--namely, by precluding him from building a multi-unit apartment complex on the land. Thus, under *DeBlasio,* plaintiff had protected property interest in the DPUD zoning classification.

The second prong of the substantive due process inquiry is more complicated. The court first must decide what standard of review to apply to the Council's down-zoning ordinance. In this regard, it is important to reiterate the Third Circuit's finding that the Council was acting in an administrative capacity when it voided plaintiff's record plan but that the Council was acting in a substantively and procedurally legislative manner when it rezoned plaintiff's land. [FN2] *See Acierno,* 40 F.3d at 612, 613. Federal courts normally review zoning

ordinances under the highly deferential rational basis test. *See, e.g., Pace Resources, Inc. v. Shrewsbury Township,* 808 F.2d 1023, 1034 (3d Cir.1987). Indeed, the Third Circuit in *Pace* held specifically that, " 'federal judicial interference with a state zoning board's quasi-legislative decisions, like invalidation of legislation for "irrationality" or "arbitrariness," is proper only if the governmental body could have had no legitimate reason for its decision." ' *Pace,* 808 F.2d at 1034 (quoting *Shelton v. City of College Station,* 780 F.2d 475, 482-83 (5th Cir.1986) (en banc)) (emphasis added in *Pace* ). In *Pace,* the township zoning board passed an ordinance down-zoning plaintiff's property from an industrial classification, which comported with plaintiff's intended use for the land, to an agricultural classification, which did not. The Third Circuit concluded that the zoning board was acting in a legislative capacity and, therefore, the court conducted a rational basis review of the ordinance. *See also Rogin v. Bensalem Township,* 616 F.2d 680, 689 (3d Cir.1980) (explaining that, "[t]he test for determining whether a [zoning] law comports with substantive due process is whether the law is rationally related to a legitimate state interest").

> FN2. The Third Circuit distinguished between the two by noting that the voiding ordinance was passed in an effort to enforce existing zoning laws and (unlike the rezoning ordinance) not to facilitate enactment or amendment of new zoning laws "involving broad-based policy or line-drawing determinations." *See Acierno,* 40 F.3d at 612-13.

*4 Plaintiff argues, however, that the court should look beyond the mere rationality of the down-zoning and inquire into the allegedly improper motives of the Council. As support, plaintiff points to several land-use decisions from the Third Circuit suggesting that substantive due process is violated whenever a government official, acting with an "improper motive," deprives a person of property rights. [FN3] *See Woodwind Estates, Ltd. v. Gretkowski,* 205 F.3d 118, 124-25 (3d Cir.2000); *Sameric Corp. of Del., Inc. v. City of Philadelphia,* 142 F.3d 582, 590-91 (3d Cir.1998); *Blanche Road Corp. v. Bensalem Township,* 57 F.3d 253, 268 (3d Cir.1995); *DeBlasio,* 53 F.3d at 599-601; *Midnight Sessions, Ltd. v. City of Philadelphia,* 945 F.2d 667, 683 (3d Cir.1991); *Bello v. Walker,* 840 F.2d 1124 (3d Cir.1988).

> FN3. Plaintiff also relies on *Masurek v. Armstrong,* 520 U.S. 968 (1997) and *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252 (1977) for the proposition that courts may inquire into legislative motives when reviewing zoning ordinances. These cases, however, concerned laws that impinged upon a woman's right to terminate her pregnancy and suspect classes, respectively--issues not relevant in the zoning ordinance at bar. Additionally, plaintiff erroneously relies on *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432 (1985) because, according to plaintiff, the Supreme Court held invalid a "[c]ity ordinance requiring [a] special use permit for [a] group home for the mentally retarded [sic] ... based upon [the] improper motives of City Council." (D.I. 287 at 12) In that case, the Supreme Court actually held the ordinance invalid because there was no rational basis supporting the ordinance's requirement of a special use permit. *See id.* at 447-50. The Court did not reach its decision after an analysis of the city's subjective motivations.

These cases, however, each address various administrative actions (i.e., the governmental entities took actions to enforce existing zoning laws against individual property owners, *see Acierno,* 40 F.3d at 612-13) that adversely affected the particular land owner's intended use for the property and, as such, are distinguishable from the present case where the Council, acting in a legislative manner, passed an ordinance down-zoning plaintiff's parcel of land. [FN4] Consistent with *Pace* and *Rogin,* the court shall inquire if the Council's ordinance down-zoning plaintiff's property was rationally related to a legitimate government interest. [FN5]

> FN4. Even in cases where the Third Circuit considered the subjective motivations of government actors (i.e., where the local government was acting in an administrative manner), it generally has "decline[d] to federalize routine land-use decisions." *Sameric,* 142 F.3d at 596. Indeed, the Third Circuit emphasized in *Sameric* its "reluctance to substitute [its] judgment for that of local decision-makers, particularly in matters of such local concern as land-use planning, absent a local decision void of a 'plausible rational basis." ' *Sameric,* 142 F.3d at 596

> FN5. Other circuits also employ a rational basis review of zoning ordinances. *See, e.g., Bannum, Inc. v. City of Fort Lauderdale,* 157 F.3d 819, 822-24 (11th Cir.1998); *Texas Manufactured Housing Ass'n v. City of Nederland,* 101 F.3d 1095, 1106 (5th Cir.1996).

For the ordinance to withstand rational basis review, there must be a legitimate state interest that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
(Cite as: 2000 WL 718346, *4 (D.Del.))

Page 81

the Council rationally could conclude was served by the challenged zoning ordinance. *See Pace,* 808 F.2d at 1034; *Rogin,* 616 F.2d 689. The actual motivations of the Council are entirely irrelevant. *See FCC v. Beach Communications, Inc.,* 508 U.S. 307, 315 (1993).

In the case at bar, the Council identified two concerns motivating the rezoning of plaintiff's property. First, rezoning the property to a less intensive, residential use would conform the zoning of plaintiff's property to that of the surrounding properties. Second, rezoning plaintiff's property to a single-family residential use classification would prevent the traffic congestion that likely would result from developing the land in accordance with the more intensive DPUD classification. At the public hearing on the rezoning, Council member Cloutier stated that:

> I request the rezoning for R-2 [FN6] for the simple purpose of bringing the zoning of this 38 acre parcel ... in harmony with the zoning of the surrounding communities in the area. Further[,] the highway system in the immediate vicinity of this property is inadequate....

>> FN6. The ordinance was later amended to reflect a rezoning to the present R-1-B classification.

(D.I. 55, A-98, at 2) Residents of the neighboring housing development also stated their traffic-related concerns at the public hearing. One resident testified that, "if [plaintiff's land] was developed as a DPUD, it would generate somewhere in the neighborhood of 2,500 vehicle traffic usage in that development daily.... I would also like to point out that there would be a noise factor in the area in the development because of the density...." (D.I. 55, A-98, at 4) The concerns about traffic congestion are also reflected in greater detail by the Department of Planning's April 2, 1992 memorandum to the Council. In that memorandum, the Director of Planning explained as follows:

> *5 This issue with traffic is slightly more complex. Both the original and revised plan provide access to McKennans Church Road and to Oakridge Road, a residential street in the Oakwood Hills subdivision. This second access has been objected to by the residents of Oakwood Hills. Throughout last summer and early fall, several meetings were held between representatives of [plaintiff] and the neighborhood in an attempt to resolve this dispute.... To the Department's knowledge, however, no discussions have taken place since last October between the two parties, nor is there any indication that such meetings are planned or a solution to this conflict likely.

> Responding to the Department of Planning's inquiry, DelDOT, in a letter dated November 8, 1991 ... recommended that the Oakridge Road access be deleted from the plan, and that a note be placed on the plan limiting development to 100 units until such time as additional frontage is obtained on McKennans Church Road. [Plaintiff] has agreed to place such a note on the plan but, to date, has not been willing to delete the secondary access to Oakridge Road.

> In summary, it would appear that the only remaining issue ... is access through the Oakwood Hills subdivision. The Department has been given no indication that [plaintiff] will voluntarily remove this access from the plan. Further, we see no evidence that any meaningful dialogue is ongoing between the applicant and community to find a compromise position.

(D.I. 55 at A-90)

Alleviating traffic congestion and providing for consistently zoned communities constitute legitimate governmental interests. The Council's decision to rezone the property to a less intensive use is consistent with these objectives. Accordingly, the rezoning ordinance advances legitimate state interests and thereby survives plaintiff's substantive due process challenge to it.

2. The Voiding of Plaintiff's Record Plan

The Third Circuit found that, in voiding plaintiff's record plan, the Council acted in an administrative capacity. *See Acierno,* 40 F.3d at 612. Under Third Circuit precedent, it appears that the court may inquire into the subjective motivations of the Council members (at least when they act in an administrative capacity) to determine whether their decision to void plaintiff's record plan was taken for "partisan political or personal reasons unrelated to the merits" of plaintiff's record plan. *See, e.g., Bello,* 840 F.2d at 1129. [FN7] If the Council acted with personal animus toward plaintiff, the Council's action could constitute a violation of plaintiff's substantive due process rights. When taken in the light most favorable to plaintiff, the record reveals facts indicating that certain Council members did harbor ill-will toward plaintiff. (D.I. 286 at A-10, 11, 14, 16-18) Accordingly, the court is inclined to deny the

Not Reported in F.Supp.2d
(Cite as: 2000 WL 718346, *5 (D.Del.))

Page 82

County's motion for summary judgment on this ground.

> FN7. *Bello'*s subjective test has prompted criticism. *See Phillips v. Borough of Keyport,* 107 F.3d 164, 186 (3d Cir.1997) ("*Bello* broke new ground, without acknowledging that it was doing so, and I see nothing in *Bello* or the cases that have followed it that convinces me that every ill-motivated governmental action that restricts the use of real estate constitutes a violation of substantive due process.") (Alito, J., dissenting).

It is unclear to the court, however, whether its finding that plaintiff is not entitled to the reinstatement of the DPUD zoning classification has rendered moot plaintiff's due process and equal protection claims arising from the voiding of his record plan. Significantly, plaintiff seeks only the reinstatement of his record plan, not compensatory damages, and it appears that the voided record plan is inconsistent with the current R-1-B zoning classification of plaintiff's land. Therefore, the court shall order further briefing on whether its finding that the R-1-B classification was lawfully enacted renders moot plaintiff's due process claims arising out of the voiding of his record plan.

B. Plaintiff's Equal Protection Claims

1. The Rezoning of Plaintiff's Land

*6 Plaintiff contends that the rezoning of his land and the voiding of his record plan also violated the Equal Protection Clause of the Fourteenth Amendment. The Fourteenth Amendment provides, in relevant part, that "no State ... shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Where a state law does not classify by race, alienage, national origin, or gender, "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne,* 473 U.S. at 440. The Equal Protection Clause affords the states particularly wide latitude with respect to zoning decisions. *See id.* Indeed, a zoning ordinance not affecting suspect classes

> cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. Further, a legislature that creates these categories need not actually articulate at any time the purpose or rationale supporting its classification. Instead a classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

*Heller v. Doe,* 509 U.S. 312, 320 (1993) (citations, internal punctuation omitted). In the context of zoning legislation, the Third Circuit has held that "to prevail on [an] equal protection claim, [the plaintiff] must [demonstrate] that the passage and application of [local] zoning [ordinances] 'so lack rationality that they constitute a constitutionally impermissible denial of equal protection." ' *Rogin,* 616 F.2d at 688 (quoting *New Orleans v. Dukes,* 427 U.S. 297, 305 (1976) (per curiam)). Rational basis review "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Beach Communications,* 508 U.S. at 313; *see also Dukes,* 427 U.S. at 303 (commenting that, "the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines").

As noted above, plaintiff does not argue that he is a member of a suspect class. Instead, he argues that the Council targeted his parcel of land for "down-zoning" while leaving other similarly situated landowners with DPUD-zoned parcels untouched. As evidence of disparate treatment in the rezoning of his property, plaintiff submits evidence indicating that plaintiff's property is the only property ever rezoned at the Council's initiative. (D.I. 234 at A-16, 17, 23) Merely demonstrating that other DPUD parcels have not been rezoned at the Council's initiative does not establish that these other parcels are "similarly situated" to plaintiff's. At a minimum, plaintiff would have to demonstrate that these other DPUD parcels posed the same traffic problems as plaintiff's parcel. This plaintiff has not done.

*7 Even if the Council treated plaintiff differently than other similarly situated landowners, a legislative classification does not fail rational basis review because it results in some inequality. *See Dandridge v. Williams,* 397 U.S. 471, 485 (1970); *see also Beach Communications,* 508 U.S. at 313 (explaining that the fairness of legislative choices is irrelevant under a rational basis review). Instead, to violate the Equal Protection Clause, a zoning ordinance must be irrational. For the reasons set forth in the court's substantive due process analysis,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the rezoning of plaintiff's land was not an irrational or arbitrary action. Accordingly, plaintiff's equal protection claim, as it relates to the rezoning of his property, must fail.

2. The Voiding of Plaintiff's Record Plan

Plaintiff also argues that the voiding of his record plan constituted an equal protection violation. The Third Circuit has not carved an "ill-will" exception to the rational basis test in the context of an equal protection challenge to a zoning board's administrative actions. Accordingly, the court need only inquire whether the Council's decision to void plaintiff's record plan was rationally related to a legitimate government interest. *See City of Cleburne,* 473 U.S. at 440.

The Council's stated reasons for voiding the record plan are identical to those it gave for rezoning plaintiff's land. The Council and local residents worried that plaintiff's planned apartment complex would contribute to traffic congestion in and around the Oakwood Hills subdivision. (D.I. 55 at A-90) As noted above, traffic congestion is a legitimate governmental concern and voiding plaintiff's record plan was a rational means to prevent such congestion. Accordingly, the court shall grant the County's motion for summary judgment on plaintiff's equal protection claim.

C. Plaintiff's Equitable Estoppel Claims

Relying on Delaware common law, plaintiff seeks to estop the County from enforcing the ordinances that void his record plan and rezone his property. Generally, a local government may be estopped from exercising its zoning powers against a property owner where the owner has relied in good faith on some act or omission of the government and has made such a substantial change of position or incurred such extensive obligations and expenses that it would be inequitable to impair or destroy the rights acquired by the property owner. *See DiSabatino v. New Castle County,* No. 12714, 2000 WL 354394, at *3 (Del. Ch. Mar. 29, 2000). Plaintiff argues that each of these elements is present. In its motion, the County argues first that plaintiff's equitable estoppel claim is time-barred and, second, that it fails as a matter of law. The court shall address each of these arguments in turn.

1. The Statute of Limitations Issue

The County argues that 10 Del. C. § 8126(a) bars plaintiff's equitable estoppel claims. Section 8126 is Delaware's zoning and planning statute of limitations, and it reads as follows:

*8 No action, suit or proceeding in any court, whether in law or equity or otherwise, in which the legality of any ordinance, code, regulation or map, relating to zoning, or any amendment thereto, or any regulation or ordinance relating to subdivision and land development, or any amendment thereto, enacted by the governing body of a county or municipality, is challenged, whether by direct or collateral attack or otherwise, shall be brought after the expiration of 60 days from the date of publication in a newspaper of general circulation in the county or municipality in which such adoption occurred, of notice of the adoption of such ordinance, code, regulation, map or amendment.

*Id.* § 8126(a) (emphasis added). Because plaintiff's equitable estoppel claim "challenges" two zoning ordinances passed by the Council, § 8126(a) applies. [FN8] At issue, then, is whether plaintiff filed his suit within the appropriate time period.

> FN8. Section 8126 does not apply, however, to constitutional challenges to zoning ordinances. *See Baldini West, Inc. v. New Castle County,* 852 F.Supp. 251, 255 (D.Del.1994); *Amico v. New Castle County,* 101 F.R.D. 472 (D.Del.1984), *aff'd,* 770 F.2d 1066 (3d Cir.1985).

a. Ordinance 91-190

The Council passed Ordinance 91-190 (the voiding ordinance) on April 14, 1992 and advertised its passage on April 18, 1992. (D.I. 286 at A-55) Under § 8126(a), the period for challenging Ordinance 91-190 ran sixty days later on June 17, 1992. Plaintiff filed his complaint in this matter on July 1, 1992. The motion to amend the complaint to add the equitable estoppel claim was not filed until April 2, 1993. [FN9] (D.I.72) Even if the amended complaint [FN10] relates back to the filing date of the original complaint (i.e., July 1, 1992), plaintiff still failed to comply with the statute of limitations period provided by § 8126(a). Accordingly, plaintiff's equitable estoppel claim as it relates to Ordinance 91-190 is time-barred under § 8126(a). [FN11]

> FN9. The court ordered the County to refrain from filing an answer to the amended complaint. (D.I.77) By complying with the court's order, the County has

Not Reported in F.Supp.2d                                                                                    Page 84
(Cite as: 2000 WL 718346, *8 (D.Del.))

not thereby waived its statute of limitations affirmative defense.

FN10. Technically speaking, plaintiff's "amended" complaint is a "supplemental pleading" under Fed.R.Civ.P. 15(d) because it sets forth events "that happened since the date of the pleading sought to be supplemented." Nonetheless, because the pleading was captioned as "amended," the court shall refer to it throughout as the amended complaint.

FN11. Plaintiff contends that § 8126(a) does not apply to Ordinance 91-190 because § 8126 governs only challenges to zoning ordinances and not ordinances that void record plans. At least one Delaware court has rejected a similar argument, finding that § 8126's provisions are very broad and applicable to "any ordinance [relating to] subdivision and land development." *See Bay Colony Ltd. Partnership v. County Council,* 1984 WL 159382, at *2 (Del. Ch. Feb. 1, 1984). Because Ordinance 91-190 relates to land development, challenges to it are subject to the sixty day limitations period of § 8126.

b. Ordinance 92-119

The Council enacted Ordinance 92-119 (the rezoning ordinance) on September 8, 1992. The Council published a notice of enactment on September 12, 1992. (D.I. 286 at A-54) Thus, the sixty day period for challenges to Ordinance 92-119 ran on November 11, 1992. As noted, plaintiff filed his initial complaint on July 1, 1992 and filed the amended complaint, which added the equitable estoppel claim, on April 2, 1993. (D.I.72) Under § 8126(a), plaintiff's equitable estoppel claim with respect to Ordinance 92-119 is time-barred unless the amended complaint relates back to the July 1, 1992 filing date of the initial complaint.

Rule 15(c) of the Federal Rules of Civil Procedure governs relation back of amended pleadings. Rule 15(c) reads, in pertinent part, as follows:
An amendment of a pleading relates back to the date of the original pleading when
(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading....
Fed.R.Civ.P. 15(c). By its terms, Rule 15(c) requires the court to ask first whether relation back is permitted by 10 Del. C. § 8126(a) and, if not, whether plaintiff's challenge to Ordinance 92-119 arose out of the same conduct, transaction, or occurrence set forth in plaintiff's initial complaint.

*9 With respect to the first question, § 8126(a) does not permit relation back of plaintiff's claim. Delaware courts have characterized § 8126 as a "statute of repose" that terminates a right of action after the passage of sixty days. *See Council of Civic Orgs. of Brandywine Hundred, Inc. v. New Castle County,* No. C.A. 12048, 1993 WL 390543, at *6 (Del. Ch. Sept. 21, 1993); *Council of S. Bethany v. Sandpiper Dev. Corp.,* 1986 WL 13707, at *3 (Del. Ch. Dec. 8, 1986). Accordingly, sixty days after notice of the passage of Ordinance 92-119, plaintiff's equitable estoppel cause of action ceased to exist. The court now must determine whether relation back is permitted under the more liberal standards of Fed.R.Civ.P. 15(c)(2).

As an initial matter, the court notes that there is disagreement over whether relation back under Rule 15(c) is permissible when a state statute of repose otherwise prevents assertion of the claim. *Compare Neuner v. C.G. Realty Capital Ventures-I L.P. (In re Sharps Run Assocs., L.P.),* 157 B.R. 766, 784 (Bankr.D.N.J.1993) (rejecting notion that "calling a statute one of repose rather than limitations automatically proscribes relation back") *with Resolution Trust Corp. v. Olson,* 768 F.Supp. 283, 285 (D.Ariz.1991) (holding that Rule 15(c) does not apply when the statute at issue defines substantive rights, as with a statute of repose, rather than merely limiting procedural remedies, like a statute of limitations); *see also* 6A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1503, at 169-74 (1990) (explaining that when Rule 15(c) is more liberal than a state statute of limitations, "the clear weight of authority is that Rule 15(c) governs, although there are some cases to the contrary").

The court shall permit the amended complaint to relate back under Rule 15(c)(2) because doing so will further the federal goal of deciding controversies on their merits. Further, the rezoning of plaintiff's property arose from the same conduct as the voiding of his record plan and, as such, the amended complaint qualifies for relation back under Fed.R.Civ.P. 15(c)(2). Moreover, the County was well aware that its decision to rezone plaintiff's property would provoke further legal action from plaintiff. (*See* D.I. 55 at A-98, 5-6)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2. The Merits of the Equitable Estoppel Claim

Having determined that plaintiff's equitable estoppel claim (as it relates to the rezoning of his property only) is not time-barred, the court now must determine whether plaintiff has adduced sufficient evidence to survive the County's motion for summary judgment on the claim.

The doctrine of equitable estoppel may be raised as a defense against the enforcement of a zoning regulation where:
(1) a party, acting in good faith, (2) on affirmative acts of a municipal corporation, (3) makes expensive and permanent improvements in reliance thereon, and (4) the equities strongly favor the party seeking to invoke the doctrine.

*10 *Miller v. Board of Adjustment of the Town of Dewey Beach*, 521 A.2d 642, 645-46 (Del.Super.1986); *see also Voshell v. Board of Adjustment of Kent County*, Civ. A. No. 95A-03-003, 1995 WL 656802, at *2 (Del.Super.Sept. 5, 1995). Delaware courts do not lightly estop local governments from issuing zoning ordinances: "[T]he courts are extremely cautious in invoking the doctrine of estoppel ... unless there are exceptional circumstances which make it highly inequitable or oppressive to enforce the regulations." *Miller*, 521 A.2d at 646. In fact, Delaware courts have approved its application in only a handful of cases. *See, e.g., DiSabatino*, 2000 WL 354394; *DMDY, L.P. v. Board of Adjustment of Sussex County*, No. C.A. 92A-10-005, 1994 WL 150082 (Del.Super.Mar. 16, 1994); *City of Rehobeth Beach v. Shirl Ann Assocs.*, Civ. A. No. 1552, 1993 WL 401876 (Del. Ch. Aug. 31, 1993); *Dragon Run Farms, Inc. v. Board of Adjustment of New Castle County*, 1988 WL 90551 (Del.Super.Aug. 11, 1988); *Wilmington Materials, Inc. v. Town of Middletown*, Civ. A. No. 10392, 1988 WL 135507 (Del. Ch. Dec. 16, 1988).

Assuming that the County affirmatively indicated that plaintiff could rely on the DPUD zoning classification and without gainsaying plaintiff's good faith reliance on this representation, the record lacks evidence indicating that plaintiff made expensive and permanent improvements that would justify equitably estopping the County from enforcing the rezoning ordinance. Plaintiff argues that, relying on the County's representations, he incurred substantial expenditures of over $1 million "including mortgage interest, engineering fees, architectural fees, legal fees, demolition costs and real estate taxes." (D.I. 61, **Acierno** Aff. ¶ 24) A review of the itemized list of expenditures associated with this property reveals that the vast majority of expenses come from the purchase of the property and the attendant mortgage interest. As a general rule, land acquisition costs are not expenditures that satisfy the "substantial reliance" prong of the equitable estoppel test. *See Raley v. Stango*, Civ. A. No. 1047-S, 1988 WL 81162, at *4 (Del. Ch. Jul. 28, 1998). The remaining expenditures (approximately $38,500) are due to engineering and architectural fees. (D.I. 55 at A-41-46) While by no means insignificant, $38,500 simply does not rise to the level of substantial reliance. Where Delaware courts have enjoined the enforcement of zoning regulations, the plaintiffs either have expended much more on permanent improvements or have demonstrated that they have no alternative use for the land.

For instance, in *Wilmington Materials*, the plaintiff purchased an industrial tract of land on which it expected to build a concrete pipe factory and an asphalt factory. *See id.*, 1988 WL 135507, at *1-*5. Plaintiff had no other alternative use for the land and incurred approximately $88,000 in engineering and architectural fees based on the town's explicit assurances that the proposed uses complied with the extant zoning ordinances. After incurring these expenses, the town reneged on its assurances and rezoned the land in such a fashion as to prevent plaintiff from building either a concrete or an asphalt factory on it. The Chancery Court estopped the town from enforcing the ordinance, reasoning that the $88,000 in preconstruction costs were significant and that the town had acted inequitably. *See id.* at *8-*9. Similarly, in *DMDY*, the plaintiff began construction on a house after the local building inspector had given assurances that the house complied with the various setback requirements. *See id.*, 1994 WL 150082, at *1-*2. After the foundation and decking of the house had been built, the County informed the plaintiff that the house was in violation of the local zoning ordinances. *See id.* The Chancery Court estopped the county from enforcing the ordinances because the plaintiff had incurred significant expenses on permanent improvements. *See DMDY*, 1994 WL 150082, at *6; *see also Shirl Ann*, 1993 WL 401876, at *1-*3 (estopping enforcement of ordinance requiring demolition of neon sign where it would render plaintiff's costs worthless and cause additional dismantling costs). In *Dragon Run Farms*,

the Superior Court estopped the County's denial of a use permit to landowners who had incurred $750,000 in expenses. *See id.*, 1988 WL 90551, at *1- *7. The Superior Court specifically noted that plaintiffs had purchased the land solely for the purpose of mining sand and gravel and that, while the land could be used for farming, plaintiffs were "not farmers." *See id.* at *6; *see also DiSabatino,* 2000 WL 354394, at *5 (granting estoppel and ordering issuance of a building permit where plaintiffs had no other use for the lots involved).

*11 Thus, Delaware courts have estopped enforcement of zoning regulations where landowners have incurred considerable expenses on permanent improvements and where the landowners had no other use for the land. Plaintiff at bar fits into neither category. His engineering and architectural expenses fall far below those recognized as significant by the Delaware courts and, moreover, plaintiff has not expended money on permanent improvements to the land. Further, plaintiff has not demonstrated that he has no other use for his land. Indeed, the current R-1-B zoning classification would allow plaintiff (a land developer) to build a housing development--albeit not a 322-unit apartment complex. Because he has other practical uses for the land, he is unlike the landowners in *Dragon Run Farms, Wilmington Materials,* or *DiSabatino.* Finally, given these facts, the equities do not strongly favor estopping the County from enforcing the R-1-B zoning classification against plaintiff. Accordingly, the court shall grant the County's motion for summary judgment on plaintiff's equitable estoppel claim.

V. CONCLUSION

For the aforementioned reasons, the court shall grant the County's motion for summary judgment in part. An appropriate order shall issue.

2000 WL 718346 (D.Del.)

Motions, Pleadings and Filings (Back to top)

. 1:92CV00385 (Docket) (Jul. 01, 1992)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 10
# TO PLAINTIFFS' COMPENDIUM OF UNREPORTED CASES TO THEIR ANSWERING BRIEF IN OPPOSITION TO THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS OR STAY

Not Reported in F.Supp.2d  
2002 WL 125679 (D.Del.)  
(Cite as: 2002 WL 125679 (D.Del.))

Page 76

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.  
Frank E. ACIERNO, Plaintiff,  
v.  
NEW CASTLE COUNTY, Defendant.  
No. CIV. A. 92-385-SLR.

Jan. 8, 2002.

MEMORANDUM ORDER

ROBINSON, District J.

*1 At Wilmington this 8th day of January, 2002, having reviewed defendant's renewed motion for summary judgment and the papers submitted in connection therewith, and having heard oral argument on the same;

IT IS ORDERED that said motion (D.I.308) is granted for the reasons that follow:

1. By memorandum order issued February 8, 2001, the court denied defendant's motion for summary judgment as it related to plaintiff's substantive due process claim. (D.I.305) More specifically, the court held that, should plaintiff prove that defendant violated his substantive due process rights when it voided his revised record plan of June 1988, reinstatement of said plan could provide meaningful relief under the "sunsetting" provision of the Unified Development Code ("UDC"). That provision read at the time as follows:

> Construction of development or improvements shown on an approved record plan for a major subdivision or major land development shall commence within five (5) years from the date of adoption of these regulations.

UDC Article 01 of § 01.130B, at 01-2 (Dec. 31, 1997). The court concluded that, "absent evidence of record concerning legislative intent or accepted application contrary to the plain meaning of the sunsetting provision, there is no basis for the court to exclude plaintiff from its scope." (*Id.* at 7)

2. Trial was scheduled to commence on January 14, 2002. (D.I.307)

3. On November 30, 2001, defendant renewed its motion for summary judgment on the basis of new legislation adopted on or about November 19, 2001.

a. The sunsetting provision now states:
> Construction of development or improvements shown on an approved record plan for a major subdivision or major land development shall commence within five (5) years from December 31, 1997; except that, as provided in Section 40.01.120, any approved record plan for: ... any major subdivision or major land development plan that was unbuildable immediately prior to the adoption of this Chapter for any reason ... shall remain unbuildable and shall remain exempt from, and not eligible for protection under, this sunsetting provision.

UDC Article 01 § 40.01.130. (D.I. 310, Ex. C at 3-4)

b. The clarifying ordinance defines the term "unbuildable" as follows:
> Unbuildable. For purposes of Article 01 of this Chapter, an approved record plan for a subdivision or land development shall be deemed unbuildable if, immediately prior to the adoption of this Chapter, such plan did not comply with all applicable laws, including zoning and subdivision regulations, and no longer fell within any period of protection under former code provisions, so that a valid building permit could not have been issued for construction of development or improvements.

UDC Article 33 Division 40.33.300. (D.I. 310, Ex. C at 5-6)

c. The synopsis to the ordinance states that these amendments are intended "to clarify the scope and meaning of Sections 40.01.120 and 40.01.130 of the UDC with regard to the non-application of its sunsetting provisions to an approved record plan for a subdivision or major land development that was not buildable at the time of adoption of the UDC." (D.I. 310, Ex. C at 6-7)

*2 d. The synopsis further explains:
> County Council adopted the sunsetting provisions of the UDC to reduce the number of plans approved under former New Castle County Code provisions that could be built, not to increase the number of former Code plans that could be built. An approved record plan for a subdivision or land development under former Code provisions that was rendered unbuildable, due to, for example,

zoning changes and the expiration of any applicable period of protection under former Code sunsetting provisions, is not eligible for an additional sunsetting period under the UDC. The current sunsetting provisions are intended to apply only to an approved record plan of a subdivision or land development that remained buildable as of the adoption of the UDC. This Ordinance is intended to clarify that purpose and, by doing so, to prevent the construction of developments pursuant to record plans that were unbuildable prior to the adoption of the UDC....
(D.I. 310, Ex. C at 7)

e. The clarifying ordinance was proposed on or about September 25, 2001. Defendant's Department of Land Use recommended adoption of the clarifying ordinance on or about October 18, 2001. The New Castle Planning Board, by unanimous vote, recommended adoption of the clarifying ordinance by County Council on or about October 18, 2001. The Land Use Committee of County Council considered the ordinance at a public meeting held on November 6, 2001, in which plaintiff's counsel participated. County Council adopted the ordinance by a 6-0 vote at its November 13, 2001 meeting. Finally the County Executive signed the ordinance into law on November 19, 2001. (D.I. 310 at ¶¶ 7-9)

4. Defendant argues in support of its renewed motion for summary judgment that, in light of the clarifying amendment, the case is now moot because plaintiff cannot build even if his record plan were reinstated.

5. Plaintiff does not dispute the legal principle that clarifying legislation may render a case moot. *See, e.g., United States Dep't of Justice v. Provenzano,* 469 U.S. 14, 15 (1984); *Diffenderfer v. Cent. Baptist Church, Inc.,* 404 U.S. 412, 414 (1972); *McLarty v. Borough of Ramsey,* 270 F.2d 232, 234 (3d Cir.1959). Instead, plaintiff argues that, even under the new legislation, his record plan was "buildable" immediately prior to the adoption of the UDC.

6. The court disagrees. First, the court finds that plaintiff's record plan did not fall within any period of protection under former Code provisions. The period of protection under former Code Section 23-81(18) expired in 1981, ten years after the effective date of the original rezoning ordinance. [FN1] The period of protection under former Code Section 23-81(21), repealed in October 1987, expired at the earliest in 1979, five years after approval of the original record development plan, or at the latest in 1993, five years after plaintiff's record resubdivision plan was approved in 1988.

> FN1. The effective date of the original zoning ordinance is April 1971, when the Westhampton property was rezoned to DPUD. *See Acierno v. Cloutier,* 40 F.3d 597, 600 (3d Cir.1994).

7. Second, the court finds that the process described for continuing development under a zoning classification after the expiration of any period of protection does not extend the period of protection, as argued by plaintiff. *See Acierno,* 40 F.3d at 602 n. 3, 617, 619 n. 15.

*3 8. In conclusion, plaintiff's plans could not be built under either the 1992 R-1-B zoning classification or the current Suburban zoning classification. [FN2] Plaintiff's plans, if reinstated, would not qualify for the protection of the UDC's sunsetting provision as amended. Therefore, even if plaintiff were to prevail on his challenge to defendant's April 1992 voiding ordinance, the court can provide no effective relief. The case is dismissed as moot.

> FN2. *See* D.I. 309 at 8 n. 3.

2002 WL 125679 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.