EXHIBIT 13
TO PLAINTIFFS' COMPENDIUM OF
UNREPORTED CASES TO THEIR ANSWERING
BRIEF IN OPPOSITION TO THE INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS OR STAY

Not Reported in A.2d  
1991 WL 113627 (Del.Super.)  
(Cite as: 1991 WL 113627 (Del.Super.))

Page 1

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware, Sussex County.
Joseph P. CARDILLO and Rita L. Cardillo, his wife, Plaintiffs,
v.
The COUNCIL OF SOUTH BETHANY, the Planning and Zoning Commission of South Bethany and the Members of the Town Council, in their individual and official
capacities and the Members of the Planning & Zoning Commission, in their
official and individual capacities, Defendants.
Civ. A. Nos. 86A-NO2, 86C-OC23 and 86M-OC8.

Submitted: Feb. 19, 1991.
Decided: May 24, 1991.

Plaintiffs' Motion for Summary Judgment--granted in part, denied in part.

Defendants' Motion for Summary Judgment--granted in part, denied in part.

John A. Sergovic, Jr., and Althea E. McDowell, Sergovic & Ellis, P.A., Georgetown, for plaintiffs.

Tempe Brownell Steen, Tunnell & Raysor, Georgetown, for defendants.

MEMORANDUM OPINION

LEE, Judge.

*1 Plaintiffs, Joseph P. Cardillo and Rita L. Cardillo (hereinafter "the Cardillos"), own lot 104 located in York Beach in the Town of South Bethany, Sussex County, Delaware. On May 17, 1986, pursuant to the procedures outlined in Town's Subdivision Ordinance, Ordinance No. 2-83, the Cardillos filed with the Town's Planning Commission (hereinafter "the Commission") a subdivision plan and an application for the subdivision of lot 104. The proposed plan would divide lot 104 into three separate lots. On June 21, 1986, a public hearing on the application was held by the Commission. The Commission denied the Cardillos' application.

The Cardillos, again pursuant to the procedures outlined in the Town's Subdivision Ordinance, appealed the denial of their application to the Town Counsel (hereinafter "the Council"). [FN1] The Council would hear this appeal on September 24, 1986 at a public hearing. In the meantime, the Cardillos requested that the Commission reconsider the matter and submitted a second application (attached hereto as Appendix "A") on June 27, 1986. On July 19, 1986, another public hearing was held by the Commission. There was some discussion of the application, but the application was tabled until the Commission meeting on September 20, 1986. At the September 20, 1986 public hearing in front of the Commission, the application was again tabled until the next public hearing to be held on October 18, 1986.

Prior to this meeting, however, the Town Council met on September 24, 1986 to consider the Cardillos' appeal of the denial of their first subdivision plan by the Commission. The Council decided to return the application to the Commission because it felt that the reasons for not approving the subdivision were not clearly stated in the minutes of the Commission's hearing.

The Planning Commission met again on November 15, 1986 to consider the Cardillos' second application and the return of the first application by the Town Council. The Commission denied the Cardillos' second application because proposed lot 1 "does not meet the dimensional requirements of Article X as defined by Article III (lot width and setback line) as required by Section 704.1 of the Subdivision Ordinance." (Minutes of the Cardillo Applications (First & Second) to Subdivide Lot 104 York Beach Area--November 15, 1986). Also, in response to the Town Council's return of the first Cardillo application, the Commission held that, "the first application ... was rejected due to the fact that the plot plan that was submitted for this minor subdivision did not complete all the boundaries as specified in Subdivision Ordinance Section 704.1 and further did not have setbacks required by Article X of the Zoning Ordinance; and therefore, the Planning Commission was unable to make a determination under Article X as required by Section 704.1 of the Subdivision Ordinance." *Id.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
(Cite as: 1991 WL 113627, *1 (Del.Super.))

Page 2

The Cardillos appealed once again to the Town Council. This appeal was heard at a public hearing on January 10, 1987. The Council affirmed the Commission's decision for the above-stated reasons.

*2 On October 24, 1986, after the denial of their first subdivision application, the Cardillos filed a petition and complaint in this Court for writ of certiorari, writ of mandamus, declaratory judgment and damages for violations of their constitutional rights and for inverse condemnation of their property. Basically, the Cardillos wanted this Court to declare that the Town's Planning Commission and Council incorrectly applied the Subdivision and Zoning Ordinances to their application; to require the Commission and Council to approve the subdivision application; and to award them damages for the difference in the value of their property as one lot, and the value as three lots. The Town answered on December 5, 1986.

On February 6, 1987, after the appeal process on their second subdivision application was completed, the Cardillos amended their Complaint. The Town answered on February 25, 1987.

After a Request for Admissions had been served upon and answered by the Town, the Cardillos filed a Motion for Summary Judgment on January 26, 1988. On January 27, 1988, the Town filed a Motion to Dismiss or, in the Alternative, to Stay the Action. The reason for the motion to stay was that some of the Cardillos' neighbors had filed suit against them in the Court of Chancery on September 29, 1987. The purpose of the Chancery action was to enjoin the Cardillos, under a deed restriction which allowed only one single-family house per lot, from subdividing their lot. This Court granted the Town's Motion to Stay on July 26, 1988, because if the Court of Chancery ruled that the deed restriction prohibited the Cardillos from subdividing their lot, the action in this Court would be moot.

The Court of Chancery, however, ruled in favor of the Cardillos and against the neighbors, holding that the deed restriction did not prohibit the Cardillos from subdividing lot 104. *Kane v. Paradise Shores, Inc. and Cardillo*, Del.Ch., C.A. No. 1288, Berger, V.C. (June 4, 1990). On July 20, 1990, this Court granted the Cardillos' motion to lift the stay. On October 15, 1990, the Town filed a Motion for Summary Judgment simultaneously with its Answering Brief to the Cardillos' Motion for Summary Judgment.

This is my decision on these cross motions for summary judgment.

On a motion for summary judgment, the Court's function is to examine the record to determine whether there are any genuine issues of material fact. *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, Del.Super., 312 A.2d 322 (1973); *Moore v. Sizemore*, Del.Supr., 405 A.2d 679 (1979). If, after viewing the record in the light most favorable to the non-moving party, the Court finds there are no genuine issues of material fact, summary judgment will be appropriate. *Moore v. Sizemore, supra; Pullman, Inc. v. Phoenix Steel Corp.*, Del.Super., 304 A.2d 334 (1973). Summary judgment will not be granted under any circumstances where the record reasonably indicates that a material fact is in dispute or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of the law to the circumstances. *Ebersole v. Lowengrub*, Del.Supr., 180 A.2d 467 (1962). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

*3 In the present case, the material facts are not in dispute. The Cardillos submitted a subdivision plan which the Town rejected because proposed lot 1 allegedly did not meet the requirements of the Town's Subdivision and Zoning Ordinances. The plan, ordinances and minutes of all the hearings stating the reasons for the denial of the application are in the record before this Court. All that remains to be determined is whether or not the Planning Commission and Town Council correctly construed and applied the Subdivision and Zoning Ordinances to the Cardillo subdivision application.

The subdivision ordinance of the Town of South Bethany, Ordinance No. 2-83, states at Section 307 that "[n]o subdivision shall be approved which would create or cause to exist, lots or parcels of ground within or without the subdivision that are not in conformance with the requirements of these Regulations." Section 704.1 of the same ordinance states that, "[l]ot dimensions and area shall not be less than the requirements of the Zoning Ordinance." The dimensional requirements pertinent to the present case are found in Article X

Not Reported in A.2d    Page 3
(Cite as: 1991 WL 113627, *3 (Del.Super.))

of the Zoning Ordinance of the Town of South Bethany, Zoning Ordinance No. 4-73.

The Town based its denial of the Cardillos' application on proposed lot 1's alleged failure to meet the "lot width and setback requirements" of the Zoning Ordinance as construed by the Town Council and Planning Commission.

"It is well settled [in Delaware] that since zoning ordinances are in derogation of one's common law right to use his property as he sees fit, they must be construed in case of doubt in favor of the unrestricted used of the land." *The Commissioners of Bellefonte v. Coppola,* Del.Ch., C.A. No. 6005, Brown, V.C. (March 2, 1982), citing *Mergenthaler v. State,* Del.Supr., 293 A.2d 287 (1972); *see also, Rothkopf, The Law of Zoning and Planning,* § 5.03(3)(a), and cases cited therein. "Any ambiguity or uncertainty must be decided in favor of the property owner." *Id.*

The Planning Commission and Town Council construed the Town's zoning ordinance to require that lots in proposed subdivisions be at least fifty (50) feet wide at a point twenty (20) feet from the street. Since proposed lot 1 in the Cardillos' subdivision application did not meet the requirement, the application was denied. However, this interpretation is not in accord with the above-stated rule of zoning ordinance construction. While great weight is to be given to the interpretation a governmental body places on its own rules and regulations, it is the courts which ultimately determine the true interpretation or construction of a particular statute or regulation. *Daniel D. Rappa, Inc. v. Engelhardt,* Del.Supr., 256 A.2d 744, 746 (1969); *Vassallo v. Haber Electric Co.,* Del.Super., 435 A.2d 1046, 1050 (1981). In so doing, this Court is bound by the rule of construction stated above: that zoning ordinances are to be construed in favor of the free use of land.

The parties agree that the Cardillos' lot is zoned "R-1" in Sub District "f" for residential one family dwelling lots west of York Canal and south of Bay Shore Canal. The Zoning Ordinance requires that lots zoned R-1-f have "Minimum Yard Depths Front (street)" of 20 feet. (Zoning Ordinance No. 4-73, Article X, Table X-1, Set Back Requirements). That ordinance further requires that such lots have a "Minimum Lot Size width ft." of 50 feet. (Zoning Ordinance No. 4-73, Article X, Dimensional Requirements).

*4 In Article III, Section 301 of the Zoning Ordinance, certain terms are defined for the purpose of interpreting the ordinance. Four of these definitions are relevant to this case. First, Section 301(v) defines "Lot, Width" as, "The horizontal distance between the side lot lines, measured across the rear of the required front yard." Second, Section 301(bb) defines "Setback Line" as, "The building setback line shall be the rear line of the front yard as herein required for each district." Third, Section 301(mm) defines "Yard" as, "A required open space, on the same lot with a building." Finally, Section 301(nn) defines "Yard, Front" as, "A yard measured generally at right angles from the street line to the nearest point of the principal building and extending the full width of the lot."

These definitions, and the interplay between them, is far from clear. The ordinance is ambiguous, and it will therefore be interpreted in favor of the Cardillos' free use of their land.

The second application submitted by the Cardillos to the Planning Commission (attached hereto as Appendix "A") shows proposed buildable areas for each of the three proposed lots. It also shows the width of each lot across two different lines. The southernmost width line was requested to be drawn on the plat by the Planning Commission. It is a line interpolated from a point twenty feet from the street on lot 103, the lot adjoining the Cardillos' lot 104. On this line, proposed lot 1 has a width of only about thirty (30) feet. The northernmost lot width line was provided by the Cardillos. On this line, proposed lot 1 has a width in excess of sixty-three (63) feet.

It is clear that if the front of the Cardillos' building on lot 1 is on the northernmost lot width line, that lot meets the minimum lot width requirements of the Zoning Ordinance. And, since a building on that line would be over twenty (20) feet from the street, the setback requirement of the Zoning Ordinance is met as well. Again, the Town construed its ordinance to require that the proposed lots be at least 50 feet wide at a point 20 feet from the street. However, nothing in the ordinance requires the "principal building" to be constructed on the minimum setback line, and the definition of "front yard," controlling in this case, is based upon the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

location of the building, not the minimum setback requirement.

A reasonable construction is that as long as the Cardillos' lots are fifty feet wide at the front of their principal building, they conform with the ordinance. Again, the front yard is measured from the street line to the principal building. See Zoning Ordinance, Section 301(nn). Hence, the rear of that yard is the front of the building closest to the street. If the Cardillos build at least twenty feet from the street, they have the "required front yard." See Zoning Ordinance, Section 301(v). If they build more than twenty feet from the street, they still have the "required front yard." Lot width is measured across the rear of that front yard. As long as the lots are fifty feet wide at that point, they meet the lot width and setback requirements of the ordinance.

*5 Turning to the Cardillos claims for damages, I must grant summary judgment in favor of the Town on that issue. The Cardillos have alleged that the arbitrary and capricious acts of the Town Planning Commission and Council in denying their request for a subdivision constitute a deprivation of private property without due process of law and a taking of property without compensation in violation of the Fifth and Fourteenth Amendments of the United States Constitution, the Delaware Constitution of 1897 and 42 U.S.C.A. §§ 1981, 1982 and 1983. [FN2] They also seek damages in inverse condemnation pursuant to 29 Del.C. § 9504 in the amount of the value of the property as three separate building lots, less the value of such property as only one building lot.

The Cardillos contend that they were entitled as a matter of law to have their application for subdivision approved and were denied the right to use their property as three lots susceptible of maintaining three dwellings within the Town of South Bethany. They characterize the actions of the Town Council and Planning Commission as having deprived them of their private property rights without due process of the law. The Cardillos do not challenge the constitutionality of the Town's zoning ordinance. Instead, they argue that its *application* to their request was arbitrary and capricious in that the Council and Commission misread and knowingly misapplied the ordinance. As such, I will treat their claim as asserting only a procedural due process violation.

The case of *Goldberg v. City of Rehoboth Beach*, Del.Super., 565 A.2d 936 (1989) precludes the maintenance of such claims. The Cardillos' arguments on these issues parallel the arguments made by the plaintiffs in *Goldberg*. Instead of restating the well-reasoned opinion by Judge Chandler in that case, I shall simply refer the parties to that case, and adopt the reasoning therein. The relevant portions of the *Goldberg* opinion are found at 565 A.2d at 939-945.

For the above-stated reasons, the Cardillos' Motion for Summary Judgment is granted in part and denied in part. The decision of the Town Council in denying the Cardillos' subdivision application is hereby reversed, but the Cardillos' claim for damages under 42 U.S.C.A. § 1983 and under the theory of inverse condemnation is hereby dismissed. The Town's Motion for Summary Judgment is likewise granted in part and denied in part.

IT IS SO ORDERED.

> FN1. The Planning Commission and Town Council may at times be referred to collectively as "the Town of South Bethany" or simply "the Town."
>
> FN2. Only 42 U.S.C.A. § 1983 applies to the Cardillos' claim. *Goldberg v. City of Rehoboth Beach*, Del.Super., 565 A.2d 936, f.n. 1 (1989).

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 14
TO PLAINTIFFS' COMPENDIUM OF
UNREPORTED CASES TO THEIR ANSWERING
BRIEF IN OPPOSITION TO THE INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS OR STAY

Not Reported in A.2d  
2003 WL 21314499 (Del.Ch.)  
(Cite as: 2003 WL 21314499 (Del.Ch.))

Page 41

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware.  
CHRISTIANA TOWN CENTER, LLC, a Delaware limited liability company, Plaintiff,  
v.  
NEW CASTLE COUNTY, a political subdivision of the State of Delaware, Defendant.  
No. Civ.A. 20215.

Submitted May 16, 2003.  
Decided June 6, 2003.

Richard L. Abbott, the Bayard Firm, Wilmington, Delaware, for Plaintiff.

Scott G. Wilcox, New Castle County Law Department, New Castle, Delaware, for Defendant.

*MEMORANDUM OPINION AND ORDER*

LAMB, Vice Chancellor.

I.

*1 A developer seeks an injunction against the County government barring the application of the "unclean hands" provision of the County development code based on violations of other chapters of County ordinances. The court concludes that the injunction action must be dismissed both because the complaint does not properly invoke this court's equity jurisdiction and because the plaintiff has failed to exhaust its administrative remedies.

II.

The following facts have been stipulated to by both parties. Christiana Town Center, LLC ("Christiana") is a Delaware limited liability company. Christiana is the owner of approximately seventy acres of land located in White Clay Creek Hundred, New Castle County, at the intersection of Maine Street and Delaware Route 273 near the village of Christiana. The land is zoned Commercial Regional. It is approved for the development of 452,842 square feet of commercial space (the "Shopping Center").

Christiana is owned and operated by Frank E. Acierno. Acierno also owns and operates 395 Associates, LLC ("395") and Estate Homes, Inc. ("EHI"). 395 is a Delaware limited liability company. EHI is a Delaware corporation. 395 and EHI are the respondents in the Home Warranty Decisions referenced hereinafter.

On March 19, 2002, Christiana entered into a lease agreement with Bertucci's Restaurant Corp. to locate a restaurant at the Shopping Center. Christiana received a building permit from the County to construct the Bertucci's restaurant building shell (the "Building") on November 7, 2002. Christiana completed construction of the shell of the Building by the beginning of March 2003.

On Thursday, March 13, 2003, a Bertucci's representative attempted to apply to the County for a building permit in order to perform finishing work and improvements to the Building (hereinafter, the "Tenant Fit-Out Permit"). The County refused to accept Bertucci's application for the Tenant Fit-Out Permit based on a note in the Christiana file that the provisions of § 40.31.901D of the County's Unified Development Code (the "UDC Clean Hands Provision") prohibited acceptance of the application. [FN1]

> FN1. The UDC is Chapter 40 of the New Castle County Code.

Christiana believed that the County may have refused to accept the Tenant Fit-Out Permit application from Bertucci's based on a decision dated January 30, 2003 finding Christiana in violation of the County Drainage Code (Chapter 12 of the New Castle County Code), and a decision dated February 10, 2003 finding Christiana in violation of the County Building Code (Chapter 6 of the New Castle County Code) (collectively, the "Decisions"). The Decisions were appealed to the New Castle County Board of License, Inspection & Review in late February and early March 2003.

On March 17, 2003, Christiana's counsel and counsel for the County discussed the County's ability to refuse applications at the Shopping Center site. The parties agreed that the appeal of the Decisions should have stayed any application of the UDC Clean Hands Provision that was predicated on them. Counsel for the County stated that he would discuss the matter with the County and advise it that

Not Reported in A.2d
(Cite as: 2003 WL 21314499, *1 (Del.Ch.))

Page 42

applications for the Christiana Town Center should not legally be denied.

*2 On March 18, 2003, a representative of Christiana went to the County's offices and attempted to submit an engineering report for the footings and foundation for the Building and requested final inspections for the purpose of ultimately obtaining a Certificate of Occupancy for the building shell. The County refused to accept the submission or provide inspections based on: (1) a January 22, 2003 decision finding that 395 and EHI failed to obtain home warranties for new houses constructed in the subdivision of Farmington in violation of the County Building Code ("Home Warranty Decision I"); and (2) the UDC Clean Hands Provision.

On that same day, counsel for the County advised counsel for Christiana that Home Warranty Decision I had been overlooked during their March 17 discussions. According to the County, the UDC Clean Hands Provision precluded the County from accepting or granting any land use applications, including issuing any permits or certificates of occupancy or performing any inspections, based upon the violations found in Home Warranty Decision I.

On Thursday, March 20, 2003, a representative of Bertucci's once again attempted to make application to the County for the Tenant Fit-Out Permit. The County again refused to accept Bertucci's application. The basis for the County's refusal was: (1) Home Warranty Decision I; (2) a March 19, 2003 decision finding 395 and EHI in violation of the County Building Code home warranty requirements for new homes ("Home Warranty Decision II"; and collectively with Home Warranty Decision I, the "Home Warranty Decisions"); and (3) the UDC Clean Hands Provision.

On Friday, March 21, 2003, a representative of Christiana and its counsel went to the County's offices and again sought to submit an engineering report for the footings and foundation for the Building and requested inspections necessary to ultimately obtain a Certificate of Occupancy. At that time, counsel for the County refused to accept the application or conduct any inspections. The County's counsel stated that the basis for his refusal was the Home Warranty Decisions and the UDC Clean Hands Provision. Christiana filed suit on March 28, 2003.

### III.

Christiana seeks a preliminary and permanent injunction prohibiting the County from applying the UDC Clean Hands provision against it in situations where the UDC has not been violated (as, for example, in the case of Building Code violations) and where violations do not involve Christiana (but some other entity affiliated with **Acierno**). The standard for granting a permanent injunction requires Christiana to demonstrate that: (1) it has proven actual success on the merits of the claims; [FN2] (2) irreparable harm will be suffered if injunctive relief is not granted; and (3) the harm that will result if an injunction is not entered outweighs the harm that would befall the County if an injunction is granted. [FN3] Before reaching any of these questions, however, the court must determine that it has subject matter jurisdiction to hear a dispute. Here, the court finds that it lacks subject matter jurisdiction, and, therefore, Christiana's motion for permanent injunctive relief will be denied.

> FN2. The standard for preliminary injunction requires a reasonable probability of success on the merits. *See Next Level Communications, Inc. v. Motorola, Inc.*, 2003 WL 549083, at *13 (Del. Ch. Feb. 26, 2003).

> FN3. *Draper Communications, Inc. v. Delaware Valley Broadcasters LP*, 505 A.2d 1282, 1288 (Del. Ch. 1985) (citations omitted).

### IV.

A. *Subject Matter Jurisdiction May Be Raised* Sua Sponte *By The Court And May Not Be Waived By The Parties*

*3 Some states, while recognizing the traditional common law limitations on equitable jurisdiction, nonetheless permit their courts of equity to decide causes of action even where a full and sufficient remedy exists at law so long as no jurisdictional objection is raised by either party. [FN4] "In other words, such an objection may be waived, and equitable subject matter jurisdiction in effect may be conferred upon a court of equity by explicit, implicit or constructive agreement of the parties." [FN5] This is not the rule in Delaware. Rather, "it is clear that, unlike many jurisdictions, judges in the Delaware Court of Chancery are obligated to decide

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

whether a matter comes within the equitable jurisdiction of this Court regardless of whether the issue has been raised by the parties." [FN6]

> FN4. See, e.g., Moore v. McAllister, 141 A.2d 176 (Md 1958); Kornstein v. Almac's, Inc., 201 A.2d 645 (R.I.1964).

> FN5. Donald J. Wolfe, Jr., & Michael A. Pittenger, Corporate and Commercial Practice in the Delaware Court of Chancery, § 2-3[a] (2001 ed.) (hereinafter, "Wolf & Pittenger").

> FN6. IBM Corp. v. Comdisco, Inc., 602 A.2d 74, 77 n. 5 (Del. Ch.1991) (citing DuPont v DuPont, 85 A.2d 724 (Del.1951); Wife v. Husband, 285 A.2d 824 (Del. Ch.1974); Timmons v. Cropper, 172 A.2d 757 (Del. Ch.1961)). But see Clark v. Teeven Holding Co., Inc., 625 A.2d 869, 877 (Del. Ch.1992) ("[A] decision by the Court of Chancery that it will assume 'equity jurisdiction' over a particular controversy because there is no adequate remedy at law is not void if wrong and is subject only to direct attack. An objection to the exercise of equity jurisdiction may therefore be waived") (citations omitted).

When the issue of subject matter jurisdiction is raised, by the court or the parties, the plaintiff bears the burden of establishing such jurisdiction. [FN7] In this connection, the court must review the allegations of the complaint as a whole to determine the true nature of the claim. [FN8] As Chancellor Allen once observed:

> FN7. See Wilmington Fraternal Order of Police Lodge No 1 v. Bostrom, 1999 WL 39546, at *4 (Del. Ch. Jan. 22, 1999) ("The burden of establishing the Court's subject matter jurisdiction rests with the plaintiff") (citing Scattered Corp. v. Chicago Stock Exchange, 671 A.2d 874, 877 (Del. Ch.1994); Yancey v. Nat'l Trust Co., 1993 WL 155492, at * 6 (Del. Ch. May 7, 1993), aff'd, 633 A.2d 372 (Del.1993)).

> FN8. See Diebold Computer Leasing, Inc. v. Commercial Credit Corp., 267 A.2d 586, 590 (Del.1970); Western Airlines, Inc. v. Allegheny Airlines, Inc., 313 A.2d 145, 149 (Del 1973).

Chancery jurisdiction is not conferred by the incantation of magic words. Neither the artful use nor the wholesale invocation of familiar chancery terms in a complaint will excuse the court ... from a realistic assessment of the nature of the wrong alleged and the remedy available in order to determine whether a legal remedy is available and fully adequate. If a realistic evaluation leads to the conclusion that an adequate remedy is available, this court, in conformity with the command of Section 342 of Title 10 of the Delaware Code, will not accept jurisdiction over the matter. [FN9]

> FN9. McMahon v. New Castle Assocs., 532 A.2d 601, 603 (Del. Ch.1987) (citation omitted); see also Zeneca, Inc. v. Monsanto Co., 1996 WL 104254, at *4 ("this Court must examine the pleadings to determine the true substance of the relief [plaintiff] actually seeks, and will not be bound by the form of relief as describe [by plaintiff]"); New Castle County Vocational Technical Sch. Dist. v. Bd. of Educ., 451 A.2d 1156, 1164 (Del. Ch.1982) (noting that "if there is an adequate remedy existing at law, it is at best unlikely that this court has jurisdiction over this matter").

"Equity jurisdiction can arise in two ways: (1) from the invocation of an equitable right, or (2) from the request for an equitable remedy when there is no adequate remedy at law." [FN10] Equitable rights are rights that have traditionally not been recognized at common law. [FN11] The most common example of equitable rights in this court are fiduciary rights and duties that arise in the context of trusts, corporations, other forms of business organizations, guardianships, and the administration of estates. [FN12] Equitable remedies, by contrast, may be applied even where the right sued on "is essentially legal in nature, but with respect to which the available remedy at law is not fully sufficient to protect or redress the resulting injury under the circumstances." [FN13] In the current case, Christiana seeks the equitable remedy of an injunction to enforce the legal rights related to its (and Bertucci's) construction of a restaurant.

> FN10. Azurix Corp. v. Synagro Technologies, Inc., 2000 WL 193117, at *2 (Del. Ch. Feb. 3, 2000), appeal denied, 748 A.2d 406 (Del.2000) (TABLE).

> FN11. See Wolf & Pittenger, § 2-3[b].

> FN12. See id.

> FN13. Id.

If the court is asked to exercise its equitable jurisdiction to remedy a legal wrong, the critical jurisdictional question is whether an adequate remedy at law exists. [FN14] If a litigant can seek a

remedy in a law court, or other adequate venue, that would provide full, fair, and practical relief, the Court of Chancery is without subject matter jurisdiction to hear the matter. [FN15] In this regard, the Court of Chancery will not exercise subject matter jurisdiction "where a complete remedy otherwise exists but where plaintiff has prayed for some type of traditional equitable relief as a kind of formulaic 'open sesame' to the Court of Chancery." [FN16]

> FN14. See Comdisco, 602 A.2d at 78.
>
> FN15. See 10 Del. C. § 342; Comdisco, 602 A.2d at 78; In re Real Property of Wife, K, 297 A.2d 424, 425-26 (Del. Ch. 1972); Hughes Tool Co. v. Fawcett Publications, Inc., 315 A.2d 577, 579 (Del. 1974).
>
> FN16. Comdisco, 602 A.2d at 78; see also City of Wilmington v. Delaware Coach Co., 230 A.2d 762, 766-67 (Del. Ch. 1967).

B. *An Adequate Remedy At Law Exists*

*4 Turning to Christiana's complaint, a plain reading shows that all Christiana realistically seeks is a declaratory judgment as to the meaning and scope of the UDC Clean Hands Provision. [FN17] Generally speaking, an adequate remedy at law exists under the Declaratory Judgment Act [FN18] for Christiana to obtain such a determination in the Superior Court. Armed with a declaration that the UDC Clean Hands Provision is not triggered by the Home Warranty Decisions, Christiana should have no need for an injunction from this court. Christiana suggests that even if a court of law were to issue a declaratory judgment in its favor, the County would disregard such a judgment and continue to act with hostility towards Christiana. Thus, the argument goes, a coercive remedy in the form of an injunction will be required to enforce any declaratory judgment. This argument cannot succeed, as the court must presume that the County will respect any decision rendered by any competent court of this State. [FN19]

> FN17. Verified Comp. at ¶ 17.
>
> FN18. 10 Del. C. § 6501 et seq.
>
> FN19. See Delaware Coach, 230 A.2d at 767 ("It follows that the prospective possibility that injunctive relief may be required is not the basis for equity jurisdiction in this action for a declaration of rights under a contract"). But see Diebold, 267 A.2d at 591 (holding that a declaratory judgment action to determine the rights of the parties under a contract could be brought in equity because, in that case, a declaratory judgment rendered by the Superior Court might well require a return to the Court of Chancery for enforcement, and "ultimate coercive relief would be injunctive"). The concerns of the Supreme Court in Diebold are not present here. It would be anathema to our form of government to believe, as a baseline principle, that after a court renders a declaratory judgment another governmental agency would not follow that decision. It may actually be the case that a particular agency does not follow such a judgment, but a party should only seek injunctive relief if that agency *actually* refuses to comply with the judicial declaration.

C. *Christiana Failed to Exhaust Its Administrative Remedies*

Moreover, Christiana has, or had, administrative avenues of redress that it may have failed to exhaust. The County's denial of Christiana's application was appealable to the New Castle County Planning Board (the "Planning Board"). [FN20] Further, any decision of the Planning Board can also be appealed by writ of certiorari to the Superior Court. [FN21]

> FN20. See County Code §§ 40.31.510 and 40.30.110. Section 40.31.510 provides:
> An applicant pursuing approval of a land use application who is aggrieved by a finding, decision, or interpretation of a decision maker made in response to a review of such application may appeal such action to the jurisdictionally approved agency pursuant to Table 40.30.110 [which in this case is the Planning Board]. Appeals may only be taken based upon a final decision, not the recommendation of an agency. All appeals from the final decision of an administrative body or the [New Castle County Department of Land Use] shall be filed with the [New Castle County Department of Land Use] within twenty (20) days of the date the written decision is issued by the body or [the New Castle County Department of Land Use].... Unless otherwise provided by law, any appeal to a court of law or equity shall be made within twenty (20) days of the issuance of a written final decision. Unless otherwise provided by law, no appeal to a court of law or equity may be taken until all remedies made available by this Chapter have been exhausted.
>
> FN21. See 10 Del. C. § 562.

Delaware law strongly favors the exhaustion of

Not Reported in A.2d
(Cite as: 2003 WL 21314499, *4 (Del.Ch.))

Page 45

administrative remedies before resorting to judicial intervention. [FN22] Pursuant to this doctrine, "where a remedy before an administrative agency is provided, relief must be sought by exhausting this remedy before the courts will either review any action by the agency or provide an independent remedy." [FN23] The purpose of the exhaustion-of-remedies requirement is to prevent judicial interference in the administrative process and to allow the administrative agency to apply its expertise and discretion, and possibly resolve the conflict without judicial intervention. [FN24]

> FN22. *Levinson v. Delaware Compensation Rating Bureau*, 616 A.2d 1182, 1186 (Del.1992); *Hundley v. O'Donnell*, 1998 WL 842293, at *2-*5 (Del. Ch. Dec. 1, 1998) (Finding that where, pursuant to the New Castle County Code, plaintiff had an effective administrative remedy available pursuant to the New Castle Department of Land Use's denial of a subdivision plan, the court denied injunctive relief and granted defendant's motion to dismiss); *Smith v. Christiana Sch. Dist.*, 1996 WL 757282, at *2 (Del. Ch. Jan. 2, 1997) ("judicial review cannot be had until the aggrieved party has first resorted to the appropriate administrative bodies and procedures designed to address his claims").

> FN23. *Levinson*, 616 A.2d at 1186.

> FN24. *Id.* at 1187.

The administrative remedy available to Christiana

Christiana claims that it "could not have pursued an administrative appeal pursuant to County Code § 40.31.510 because the County refused to accept the land use application and never provided a 'written decision,' therefore no appealable 'final decision' or 'written decision' on a 'land use application' was ever rendered by the County." [FN28] It may be true that the County refused to accept Christiana's land use application, but Christiana did receive a written decision on its application from which it could have sought an appeal. On April 2, 2003, counsel for Christiana received a letter from the New Castle County Department of Land Use stating the basis for the County's refusal to accept Christiana's application. In particular, the letter provides:

> FN28. Pl. Reply Br. at 20-21.

*5 [T]he Department refused to accept [Christiana's and Bertucci's applications] based upon prohibitions contained in the clean hands provisions of the UDC. Section 40.31.901(D) of the UDC states that "no land use application shall be granted by any board, Department, or Council if the applicant is not in good standing with New Castle County. Not in good standing means that at the time of the request, the applicant is ... in violation of the Code." Your client is currently in violation of Chapters 6 and 12 of the New Castle County Code. Therefore, the Department is

Not Reported in A.2d
(Cite as: 2003 WL 21314499, *5 (Del.Ch.))

Page 46

V.

For the foregoing reasons, Christiana's motion for a permanent injunction is DENIED and this action is DISMISSED without prejudice. IT IS SO ORDERED.

2003 WL 21314499 (Del.Ch.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.