EXHIBIT 17
TO PLAINTIFFS' COMPENDIUM OF
UNREPORTED CASES TO THEIR ANSWERING
BRIEF IN OPPOSITION TO THE INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS OR STAY

Not Reported in A.2d
2003 WL 1919331 (Del.Ch.)
(Cite as: 2003 WL 1919331 (Del.Ch.))
H

Page 11

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware.
Donald C. MELL, III, Andrew Dal Nogare, James J. Brannon and Paul J. Falkowski,
Plaintiffs,
v.
NEW CASTLE COUNTY, Thomas Gordon and Sherry **Freebery**, Defendants.
No. Civ.A. 20003NC.

Submitted March 17, 2003.
Decided April 11, 2003.

Richard H. Cross, Jr., of Law Office of Richard H. Cross, Jr. LLC, Wilmington, Delaware, for Plaintiffs.

Peter J. Walsh, Jr. and John M. Seaman, of Potter Anderson & Corroon LLP, Wilmington, Delaware, for Defendants.

*MEMORANDUM OPINION*

CHANDLER, J.

*1 This lawsuit, initiated by taxpayers in New Castle County, seeks to enjoin New Castle County from paying the legal fees of defendants Thomas Gordon, Sherry **Freebery**, and non-party Janet Smith. Pending before the Court are summary judgment motions filed by plaintiffs and defendants.

I. PROCEDURAL BACKGROUND

Plaintiffs filed suit on November 4, 2002, seeking to enjoin New Castle County from paying attorneys' fees and expenses for defendants Gordon and **Freebery** with regard to an investigation being conducted by the United States Attorney for the District of Delaware. Plaintiffs are New Castle County taxpayers opposed to the use of public funds to pay for the legal defense of Gordon and **Freebery** and non-party Janet Smith. The amended complaint also requested an injunction barring defendants (and their attorneys) from conducting their investigation and defense work in County office space and interviewing County employees during work hours. As to this latter request, I granted a temporary restraining order on December 19, 2002. The complaint has been amended three times, once to remove New Castle County Council as a party, the second time to add the claim for injunctive relief against use of County office space, and the last time to clarify that the injunctive relief applies to the activities under investigation by the United States Attorney and not just to acts related to the recent primary elections.

II. FACTUAL BACKGROUND

The facts giving rise to this action occurred right before the 2002 primary election. Defendant Gordon is the New Castle County Executive; defendant **Freebery** is the New Castle County Administrator; non-party Smith is an executive assistant for New Castle County. [FN1] Evidently, Gordon and **Freebery** differed from former Councilmen Richard Abbott and Christopher Roberts with respect to certain County policies. Both councilmen were involved in primary election contests. Gordon and **Freebery** favored two other candidates-Tansey and Powell-in those primary elections. **Freebery** had extra phone lines installed in her home, creating a phone bank that could be used to make calls in support of Tansey and Powell. **Freebery**, however, did not list the phones in her own name. Instead, the phones were listed under the name of Charlotte Gilbert, a New Castle County classified employee.

> FN1. Ms. Smith's role in this dispute has not been made clear to the Court. Because of this, and the fact that she is not a party to this action, I do not discuss Ms. Smith with the same depth as I do defendants Gordon and **Freebery**.

For at least two weeks before the primary election, Gordon and **Freebery** assigned certain unclassified County employees [FN2] to perform various political campaign activities, such as making telephone calls, in support of Tansey and Powell, and against Abbott and Roberts, during County working hours. The employees were not on leave, but were assigned to political campaign duties as part of their normal working routine. [FN3] They operated the phone bank, and performed certain other campaign-related activities, out of **Freebery**'s home, soliciting support for Tansey and Powell. The primary was held on September 7, 2002, and the employees' efforts paid off. Tansey and Powell both won their primary races and went on to win the general election as well.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

> FN2. Unclassified employees are political appointees who are not protected by, or evaluated upon, a merit system of employment. NCCC § 26.01.002(C).

> FN3. NCCC § 26.03.1411 permits county employees up to three months unpaid leave to work on political campaigns.

*2 On September 24, 2002, the Federal Bureau of Investigation, on behalf of the United States Attorney's Office, served New Castle County with subpoenas seeking records relating to employee leave and assignments during the period just before the primary. Two days later, on September 26, 2002, **Freebery** asked County Attorney Eric Episcopo to draft a memorandum, allegedly to confirm his earlier informal advice, that unclassified County employees could legally perform campaign-related work during County time. Episcopo's memorandum concluded that nothing barred County employees from volunteering for candidates during County work hours, but Episcopo's memorandum failed to reference any applicable state law. Instead, Episcopo erroneously found that state law did not apply and that the proposed activities were not barred by either County or federal law. [FN4] Almost three weeks after the primary election, **Freebery** met with various County employees, and reiterated her opinion that the use of County employees to campaign on County time was legal.

> FN4. In a half-hearted attempt to defend the Episcopo memorandum, the current County Attorney, Mr. Timothy Mullaney, suggested at oral argument that one possible reason for this oversight would be that Mr. Episcopo searched for prohibitions on government employees not on "government entities." Regardless of how the oversight came about, Delaware state law is still applicable to the circumstances that gave rise to this lawsuit.

In response to the growing federal investigation, Gordon retained the law firm of DiGenova & Toensing on October 9, 2002. That same day, **Freebery** retained the firm of Sutherland, Asbill, and Brennan as her counsel. Two News Journal reporters interviewed Gordon and **Freebery** on October 21, 2002. **Freebery** outlined for the reporters how she and Gordon selected the two law firms. She stated that the firms were retained to represent certain individuals in connection with the document production requested under the federal subpoena. Gordon and **Freebery** also described how several County employees worked during the day for about eight hours per day for eight days (over a two week period) in support of Tansey and Powell. Gordon explained he believed it was critical to his "legacy" of "cleansing" New Castle County's land development procedure that Abbott and Roberts be defeated. **Freebery** explained that she sought a verbal opinion from Episcopo before the primary and only had him memorialize it in writing when the federal investigation began.

On October 9, 2002, Assistant County Attorney Megan D'Iorio notified **Freebery** that counsel had been retained at County expense for Gordon, **Freebery**, and others involved in the ongoing federal investigation. [FN5] After learning that the County was paying for **Freebery** and Gordon's legal representation, plaintiffs, four New Castle County taxpayers, filed this action to enjoin the County from paying the legal fees and expenses of Gordon and **Freebery** with respect to the ongoing federal investigation. On November 5, 2002, the date of the general election, the United States Attorney's Office executed a search warrant on **Freebery's** home to obtain campaign-related material for its investigation.

> FN5. Certain County employees, other than Gordon and **Freebery**, are being represented by the law firm of Oberly & Jennings. Those employees with conflicts prohibiting representation by Oberly & Jennings are represented by the law firm of Janis, Schuelke & Weschler. Janet Smith is also being represented by Janis, Schuelke & Weschler.

The New Castle County Code, as it existed at the time this suit was filed, did not provide for advancement or reimbursement of legal fees, or legal representation by the County Attorney, for criminal investigations of County employees. The code required the County Attorney to represent a County officer or employee in a criminal action "arising from performance of his or her duties" that "does not allege official misconduct, profiteering, bribery, receiving unlawful gratuities, improper influence or other abuse of his or her office or employment." [FN6] If the County Attorney did not represent a County officer or employee, the County Council possessed the authority to reimburse an officer or employee for representation in a criminal *action* as long as the action arose in the course of County employment and did not involve a breach of the public trust. [FN7] The Council was required, however, to review the application for

Not Reported in A.2d  
(Cite as: 2003 WL 1919331, *2 (Del.Ch.))

Page 13

reimbursement under a five-factor test set forth in NCCC § 2.03.201(C). The five factors include whether the activities taken:

> FN6. The full text of the provision reads:
> The County Attorney or his or her designee shall undertake the representation or defense without charge of any County officer or employee in a civil action arising out of or related to the performance by such officer or employee of his or her public duties or may undertake in a criminal action arising from performance of his or her duties and which action does not allege official misconduct, profiteering, bribery, receiving unlawful gratuities, improper influence or other abuse of his or her office or employment. An officer or employee may select his or her attorney with the concurrence of the County Attorney and County Council.
> NCCC § 2.03.201(B) (as of November 4, 2002, subsequently amended on February 25, 2003).

> FN7. The full text of the provision reads:
> County Council may, upon resolution, authorize the payment of legal fees incurred by a County employee for representation in a criminal action, if the charge arose directly out of or in the course of County employment. The Council shall review an application for reimbursement based upon the criteria set forth in subsection C of this Section. In no event shall any payment under this Section be authorized where the employee has been found guilty, after trial and any appeal, of a crime involving a breach of public trust
> NCCC § 2.03.201(E) (as of November 4, 2002, subsequently amended on February 25, 2003).

*3 (1) Were done in good faith;  
(2) Were done in the reasonable belief that such activities were in the best interest of the County and in the furtherance of the official practices and policies of the County;  
(3) Were within the scope of the authority of the person so acting;  
(4) Were within the course of employment of the person so acting; and  
(5) Were not willful, malicious or wanton. [FN8]

> FN8. NCCC § 2.03.201(C)(1)-(C)(5).

After this lawsuit was filed, the New Castle County Council began work to amend the code so as to cover criminal investigations. On February 25, 2003, the County Council amended § 2.03.201 to include civil or criminal *investigations and legal proceedings*. [FN9] Additionally, the section was amended to define public duties under the five-factor test set forth in § 2.03.201(C)(1)-(C)(5). The amended procedure to obtain legal representation at County expense requires an employee seeking legal fees from the County to make a request to the County Attorney. The County Attorney must evaluate that request based on the five factors listed in the code. Additionally, if the legal fees exceed $50,000.00, the New Castle County Council must also approve payment. [FN10] The amendment is to apply retroactively "to any and all pending and current investigations." [FN11] The New Castle County Council also amended the code in November, 2002, to expressly prohibit unclassified employees from performing any campaign activity during regular working hours. [FN12]

> FN9. NCCC § 2.03.201(B) (as amended February 25, 2003). The ordinance also amended other provisions of § 2.03.201 to conform with the amendments in (B). Subsection (E) was amended to outline the time requirements for requesting reimbursement for legal fees incurred with respect to a criminal investigation. Subsection (F) was added to require the County Attorney to collect any legal expenses paid when the employee is subsequently adjudicated guilty of any misdemeanor or felonious criminal act.

> FN10. *Id.*

> FN11. Substitute No. 1 to Ordinance No. 03-015 as amended by Oral Amendments 1,2, and 3 (introduced February 11, 2003).

> FN12. NCCC § 26.01.019(B)(as amended November 12, 2002). Classified employees were already barred from such activity under NCCC § 26.01.019(B)(2).

Defendant Gordon has not yet made a request upon the County for legal representation under the new code. **Freebery** has made a request, according to Mr. Mullaney, but he has not yet received any bills. The New Castle County Attorney indicated during oral argument that he will wait until the Court determines the validity of the ordinance before making any determination with respect to defendant **Freebery.** He has also stated that his determination on Gordon or **Freebery's** request would be made without a record.

During the pendency of this litigation, the counsel for both Gordon and **Freebery** hired former FBI

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

agents to conduct an investigation related to their defense. The investigators began using County office space and interviewing County employees during working hours for their investigation on behalf of defendants. I enjoined this activity on December 19, 2003.

### III. STANDARD OF REVIEW

Court of Chancery Rule 56 outlines the standard for summary judgment motions. Summary judgment will be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of any genuine issue of material fact. [FN13] All doubt must be resolved in favor of the non-moving party. [FN14] The court may grant summary judgment to the non-moving party if the evidence supports that conclusion. [FN15]

> FN13. *Am. Legacy Found. v. Lorillard Tobacco Co.*, 2003 Del. Ch. LEXIS 12, at *21 (Del. Ch.).
>
> FN14. *Id.*
>
> FN15. *Id.*

### IV. ANALYSIS

Plaintiffs seek injunctive and declaratory relief on three fronts. First, they seek to enjoin the use of County office space for defendants' investigations and to enjoin interviews of County employees during working hours. Second, they seek to enjoin the County from providing Gordon, **Freebery**, and Smith legal representation at County expense. Finally, plaintiffs seek to have the amended sections of the County code declared unconstitutional or, alternatively, barred from retroactive application. Defendants seek summary judgment on the constitutionality and enforceability of the amended code section. Initially, I address the constitutionality and retroactivity issues regarding the amended code sections. Then, I will address plaintiffs' request for permanent injunctive relief.

#### A. Validity of the Amended Code Section

*4 Plaintiffs attack the amended code section on two grounds: (1) its retroactive application; and (2) its constitutionality. I consider the retroactivity issue first.

##### 1. *Retroactive Application*

The New Castle County Council stated in the ordinance amending the applicable code section that the amendments would apply retroactively to any pending or current investigation. A statute may be applied retroactively when the statute expressly permits retroactive application. [FN16] Since the ordinance is civil and not criminal, there is no *ex post facto* concern. [FN17] Accordingly, retroactive application of the amended code section is proper.

> FN16. *See Hubbard v. Hibbard Brown & Co.*, 633 A.2d 345, 354 (Del.1993).
>
> FN17. *Helman v. State*, 784 A.2d 1058, 1076 (Del.2001) (finding that retroactive application of a sex offender registration statute was constitutional and did not violate the *ex post facto* clause).

##### 2. *Constitutionality*

Plaintiffs contend that the amended code sections are unconstitutional under Article VIII, § 8 of the Delaware Constitution of 1897. Section eight provides that "[n]o county, city, town, or other municipality shall lend its credit or appropriate money to, or assume the debt of, or become a shareholder or joint owner in or with any private corporation or any person or company whatever." [FN18] The basic principle of this section is that "public funds may not be used for a private purpose." [FN19] If a public purpose is found, the act is constitutional even if the proceeds go to a private individual. [FN20] "[O]nce a court has found the existence of a public purpose it will not pass judgment on the means chosen to effect the valid purpose." [FN21] Thus, to determine the constitutionality of this act, I must determine whether it serves a public purpose.

> FN18. Del. Const., art. VIII, § 8.
>
> FN19. *Fraternal Order of Firemen of Wilmington, Del., Inc. v. Shaw*, 196 A.2d 734, 735 (Del.1963).
>
> FN20. *Id.*
>
> FN21. RANDY J. HOLLAND, THE DELAWARE STATE CONSTITUTION: A REFERENCE GUIDE 193 (2002).

A presumption of constitutionality exists regarding legislative acts. [FN22] It is not the proper role of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

this Court to decide legislative policy. [FN23] Therefore, a legislative body's determination of public policy, though not conclusive, is entitled to great weight. [FN24] Plaintiffs assert that County indemnification of its officers or employees during criminal investigations or actions constitutes a private purpose. They cite *Corning v. Village of Laurel Hollow,* [FN25] but this case is inapposite. In *Corning,* the village officials were receiving representation at county expense when they "fired" the county attorney and retained an expensive Wall Street firm without any statutory authority or county permission. After successfully defending themselves, the officials sought reimbursement from the village. The court denied reimbursement because no legal authority existed to support their claim. Thus, any reimbursement would be for a private purpose. Here, an ordinance exists providing advancement and/or indemnification, but only after approval is given by the County Attorney and, if necessary, the County Council. *Corning* is inapposite.

   FN22. *Helman,* 784 A.2d at 1068.

   FN23. *Id.*

   FN24. *Id.*

   FN25. 398 N.E.2d 537 (N.Y.1979).

Plaintiffs also cite *Township of Manalapan v. Loeb,* [FN26] but it, too, is inapposite. The Township sought a legal determination whether it could reimburse the legal fees of certain officers defending an indictment. The court held that reimbursement was unlawful because (1) no statutory basis existed for it; and (2) "under no circumstances can it be said that the acts charged against defendants in the indictment were for the benefit of the municipality." [FN27] Again, in this case a statute exists providing for indemnification. As to defendants' acts, no determination has yet been made as to whether those acts were within Gordon and **Freebery's** scope of authority and in furtherance of official County policies.

   FN26. 314 A.2d 81 (N.J.Super.1974).

   FN27. *Id.* at 82.

*5 The ordinance provides a five-factor test to determine if the acts were performed as part of defendants' public duties. If that test is not met, no public purpose is found. If, after indemnification is granted, defendants plead or are adjudicated guilty, the County Attorney is required to collect any fees paid to defendants. [FN28] Generally speaking, indemnification ordinances promote the public interest by encouraging the recruitment and retention of high-risk officers, protecting the government from liability for their officers' criminal actions, helping to maintain morale, and providing necessary protection to those whose line of work exposes them to the financial burdens of defending baseless civil and criminal charges. The public is served by reimbursing public officials for their attorneys' fees in order to meet the above-stated policy goals. Consequently, the combination of the five-factor analysis and the requirement to seek reimbursement for improperly paid legal fees leads me to the conclusion that a public purpose is served by the amended New Castle County Ordinance § 2.03.201.

   FN28. NCCC § 2.03.201(F) (as amended February 25, 2003).

In support of this conclusion, I note that a similar indemnification ordinance was applied in *Savage v. City of Wilmington* [FN29] without any mention of constitutional infirmity. Generally, indemnification statutes passed by a municipality in support of its officers and employees are constitutional. [FN30] No authority cited by plaintiffs, as shown above, changes my mind. The ordinance, on its face, serves a public purpose. Accordingly, I grant defendants' cross-motion for summary judgment and declare that New Castle County Code § 2.03.201, as amended on February 25, 2003, is constitutionally valid.

   FN29. 1989 WL 64115 (Del.Super.).

   FN30. *See generally* 47 A.L.R.5th 553; 71 A.L.R.3d 90; 71 A.L.R.3d 6 (each citing numerous cases in support of the constitutionality of municipal indemnification of officers and employees).

**B. Plaintiffs' Request for Injunctive Relief**

1. *Use of County Office Space and Interviewing County Employees During Working Hours*

A temporary restraining order currently prohibits defendants from using County office space to conduct investigations related to their legal defense. The restraining order also prohibits interviewing

Not Reported in A.2d  
(Cite as: 2003 WL 1919331, *5 (Del.Ch.))

Page 16

County employees during working hours. Defendants contend that the request for a permanent injunction is moot because defendants do not intend to use County office space or conduct interviews on County time. An issue does not necessarily become moot based solely on an affirmation that the enjoined activity will cease. If defendants do not intend to use County office space or conduct interviews on County time, I do not understand how they will be prejudiced by a permanent injunction prohibiting those activities.

Accordingly, I grant plaintiffs' motion and permanently enjoin defendants from using County office space to conduct their investigations. Further, I permanently enjoin defendants from interviewing County employees during working hours concerning the issues raised by the pending federal investigation. This decision in no way restricts defendants' ability to prepare their defense; nor does it interfere with defendants' counsel or private investigators' ability to conduct interviews or review documents. They simply cannot intrude on the work time of County employees or use County work space. Instead, all such activities must be conducted off-site and outside work hours.

2. *Legal Representation at County Expense*

*6 In November of 2002, when plaintiffs filed this action, the only remedy available to plaintiffs was an injunction. About three months later, the New Castle County Council amended the County code to address the legal fees issue. The procedure to obtain legal representation at County expense, as amended on February 25, 2003, requires the individual seeking legal fees from the County to make a request to the County Attorney. The County Attorney must evaluate that request based on five factors listed in the code. [FN31] Additionally, if the legal fees exceed $50,000.00, the New Castle County Council must also approve payment. [FN32] The amendment is to apply retroactively. [FN33]

   FN31. NCCC § 2.03.201(B) (as amended February 25, 2003).

   FN32. *Id.*

   FN33. Substitute No. 1 to Ordinance No. 03-015 as amended by Oral Amendments 1, 2, and 3 (introduced February 11, 2003).

The code lists five factors for the County Attorney to use in determining if legal fees should be granted to an individual. [FN34] The County will provide legal representation in a legal proceeding, civil or criminal investigation, or a civil action when it is *related to the officer's or employee's public duties.* [FN35] In this case, the determination whether Gordon and **Freebery's** political campaign activities were "public duties" must be based upon the five factors. [FN36] Additionally, if a criminal action arises, representation will be granted only where the five factors are met *and* there are no allegations of official misconduct, profiteering, bribery, receiving unlawful gratuities, improper influence or other *abuse of office or position.* [FN37] To obtain representation, it must be found that the activities that gave rise to the need for representation were (1) in good faith; (2) in the reasonable belief that such activities were in the best interest of the County and in the furtherance of official practices and policies of the County; (3) within the scope of authority of the person so acting; (4) within the scope of employment of the person so acting; and (5) not done willfully, maliciously, or wantonly. [FN38]

   FN34. NCCC § 2.03.201(C)(1)-(C)(5).

   FN35. NCCC § 2.03.201(B) (as amended February 25, 2003) (emphasis added).

   FN36. I confess that I find it impossible to imagine circumstances in which the use of county or state employees, on county or state time, to perform political campaign tasks would ever qualify as a "public duty" of the officer who assigned county or state employees to such tasks.

   FN37. NCCC § 2.03.201(B) (as amended February 25, 2003) (emphasis added).

   FN38. NCCC § 2.03.201(C)(1)-(C)(5).

Plaintiffs contend that a public duty cannot be found in this case because state law specifically prohibits the activities in question. Plaintiffs specifically point to 15 *Del. C.* § 8012(d), which provides: "No agency of the State, no political subdivision of the State, no agency of any political subdivision of the State and no agency authorized by an act of the General Assembly shall make any contribution to any political committee or candidate for any elective office." Contribution is defined under 15 *Del. C.* § 8002(6) to include:

any advance, deposit, gift, expenditure or transfer, of money or any other thing of value, to or for the benefit of any candidate or political committee involved in an election, including without limitation any: .... (f) Service or use of property without full payment therefor (except the contribution of services by an individual, the use of an individual's residence, the contribution of such items as invitations, food and beverages by an individual volunteering personal services or the individual's residence, or the use of the telephone equipment of any person).

*7 In a remarkable display of legerdemain, defendants contend that § 8012(d) does not govern County employees working on County time for a political campaign. Defendants argue that such activity is allowed under state law because County employees may volunteer their *individual* services to a campaign. This argument, in my opinion, is pure sophistry. Section 8002(6) does permit individuals to contribute their own personal services. The County employees in this case, however, were contributing *County* services to a political campaign. The County employees were campaigning during working hours while continuing to receive their salaries from the County. When an individual works on a political campaign during working hours, he or she is not contributing his or her own *individual* service, but, instead, is contributing the service of that person or entity paying him or her to work. In this case, political activity performed during County working hours is the contribution of County services, *not* individual service. Just as I could not direct my law clerk, an unclassified state employee, to perform political activities during working hours (as defendants' counsel grudgingly accepted), so too County employees may not campaign during the hours they are being paid by the County. This is not to say that County employees are barred completely from working full time on political campaigns. New Castle County Code § 26.03.1411 permits County employees to take a three month leave of absence each election year to participate in political campaigns. This provision implicitly recognizes that performing political activities while receiving a salary from the County is improper. Defendants do not assert, however, that any of the employees in question availed themselves of this provision.

But, at this stage of the proceeding, I am not yet in a position to decide whether plaintiffs' contentions are correct. In the case of both Gordon and **Freebery**, the County Attorney has yet to make a determination as to whether legal representation at County expense would be proper. [FN39] The County Council created a procedure for evaluating when legal representation is proper to deal with situations such as the one currently before the Court. For me to rule now on plaintiff's motion to enjoin legal fees, *before* the procedure outlined in the County code is followed, would be premature and advisory in nature. [FN40]

> FN39. It seems odd, at least to me, that the County Council would place the County Attorney in such an awkward and uncomfortable position. The County Attorney necessarily must work closely with the County Executive and his administrative assistant. It is not clear whether the County Attorney holds his position at the pleasure of the County Executive, but he certainly is expected to carry out the policy agenda of the executive department. Placing the County Attorney in the position of having to rule upon a fee request from the County Executive and his Chief Administrative Assistant seems most unfortunate. The County Council would appear to be the more appropriate body to make such determinations for senior County personnel.

> FN40. *See Stroud v. Milliken Enter., Inc.*, 552 A.2d 476, 480 (Del.1989) (Delaware courts decline to exercise jurisdiction in cases where the controversy is not yet mature enough for judicial action.)

Once the County Attorney and County Council, if necessary, make a determination, the next question is the proper forum to consider a challenge to that determination. Although the parties to this dispute have not addressed this question, I turn now to a consideration of whether ultimate relief in this case is available at law in the Superior Court under a common law writ.

a. *Common Law Writs*

No express right of appeal applies to the determination that legal representation should or should not be granted to an individual employed by New Castle County. Therefore, one of the common law writs must apply for an action at law to exist. Three common law writs possibly apply to this action: certiorari, mandamus, and prohibition. I address each in turn to determine if such a writ would provide an adequate legal remedy in this action.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

i. Writ of Certiorari

**\*8** The writ of certiorari is a writ of error. The writ lies from the Superior Court to inferior tribunals, such as a county council, to review proceedings that determine legal rights and are capable of legal error. [FN41] The writ exists to review only errors of law, not errors of fact. [FN42] The review is confined to the record, and the Court must not re-decide the merits of the case. [FN43]

> FN41. WOOLLEY'S PRACTICE IN CIVIL ACTIONS, Vol. 1, §§ 895-96 [hereinafter WOOLLEY'S].
>
> FN42. *Id.* at § 895.
>
> FN43. *Id.* at § 897.

Writ of certiorari does not apply here for two reasons. First, the determinations made by the County Attorney and, if necessary, the County Council rest solely on the specific facts of each case. The writ does not allow review of fact errors, therefore such a right would be ineffectual. In addition, the County Attorney indicated at oral argument that he did not plan to create a record when making his determination.

Generally, the Superior Court could remand a proceeding and require factual findings to be made for review. [FN44] In this instance, however, the County Attorney appears to be acting properly by not creating a record. Since the County Attorney represents employees of the County, any record could arguably be seen as a waiver of attorney-client privilege. Finally, the purpose of the code in question is to provide representation for County employees. If an employee is concerned that possibly incriminating information could be revealed or, at the very least, a possibly incriminating conclusion be drawn, that might stifle requests for representation. That result could lead to employees without representation because they lack the personal funds to provide for their own counsel. Hiring qualified individuals requires that they believe the County will protect them if an investigation occurs. Accordingly, I conclude that a writ of certiorari is likely an inadequate remedy for plaintiffs in the circumstances of this case.

> FN44. *See CBS Foods, Inc. v. Redd*, 1982 Del.Super. LEXIS 823, at \*12-\*13 (Del.Super.) (remanding an action for certiorari to the town council for a determination of factual findings).

ii. Writ of Mandamus

The writ of mandamus is a remedial writ used to compel officers and other officials to perform their duties as required by law. [FN45] The writ only applies to ministerial actions, not to discretionary acts. [FN46] The amended code grants the County Attorney and, if necessary, the County Council the discretion to grant legal representation at County expense to an officer or employee. This is a discretionary act, and, accordingly, the writ of mandamus does not provide plaintiffs an adequate remedy at law.

> FN45. WOOLLEY'S at §§ 1653-56.
>
> FN46. *Id.* at § 1655.

iii. Writ of Prohibition

Superior Court may issue a writ of prohibition when there is no other adequate remedy. The purpose of this writ is to prevent an inferior tribunal or agency from acting when it lacks the authority or jurisdiction to act. [FN47] The writ of prohibition cannot be used to correct errors of fact or law made by a tribunal or agency acting within the scope of its authority. [FN48]

> FN47 *CBS Foods*, 1982 Del.Super. LEXIS at \*4-\*5.
>
> FN48. *Id* at \*5.

The County Council acted within the scope of its authority by passing a law appropriating public funds for the legal defense of its officers or employees for actions done in the scope of employment. The issue here is whether the discretion associated with that action is appropriate. A writ of prohibition is not a proper vehicle for obtaining judicial review of discretionary acts. Plaintiffs cannot seek the relief they seek through a writ of prohibition.

**\*9** No right of appeal or common law writ exists to provide plaintiffs the relief they seek. Accordingly, plaintiffs do not possess an adequate and full remedy at law.

### b. *Court of Chancery Jurisdiction*

When relief does not lie at law, it lies in equity. [FN49] Plaintiffs seek to stop the County from providing legal representation to Gordon, **Freebery,** and Smith. Should the County decide, in its discretion, that legal representation is proper, the only way for plaintiffs to stop that representation would be through an injunction. Plaintiffs have no other remedy available at law. Therefore, jurisdiction properly lies in this Court.

>   FN49. 10 *Del. C.* §§ 341, 342.

Alternatively, the Court of Chancery has the discretion to exercise jurisdiction over an entire controversy if it has equitable jurisdiction over part of the controversy. [FN50] Factors involved in exercising that discretion include promoting judicial efficiency, avoiding multiple suits, affording complete relief in one action, avoiding redundant costs, and dealing with insufficient procedures at law. [FN51] Chancery currently has jurisdiction over this case through the injunction prohibiting the use of County office space by defendants and the interviewing of County employees during working hours.

>   FN50. *Clark v. Teeven Holding Co., Inc.,* 625 A.2d 869, 881 (Del. Ch. 1992).

>   FN51. *Id.* at 882.

Maintaining jurisdiction over the entirety of this action meets all of the aforementioned factors. Judicial efficiency is promoted by having one judicial officer hear all the issues related to a fixed set of facts. That same efficiency avoids multiple suits and redundant costs, and provides for relief in one action. Additionally, maintaining jurisdiction resolves the difficulty and insufficient relief associated with the common law writs, as applied to these facts. Therefore, I conclude that jurisdiction properly lies in the Court of Chancery. Plaintiffs' request for injunctive relief, however, is stayed until such time as New Castle County exercises its discretion under the amended code.

### V. CONCLUSION

I grant defendants' cross-motion for summary judgment and declare New Castle County's Ordinance No. 03-105 constitutionally valid and enforceable. I grant plaintiffs' motion for summary judgment in part and stay the motion in part. Specifically, I permanently enjoin defendants from using County office space to conduct their investigation and from interviewing County employees during working hours. As to enjoining the County from providing legal representation to Gordon, **Freebery,** and Smith at County expense, I will not act on plaintiffs' motion until the County Attorney and County Council, if necessary, have acted.

IT IS SO ORDERED.

2003 WL 1919331 (Del.Ch.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 18
# TO PLAINTIFFS' COMPENDIUM OF UNREPORTED CASES TO THEIR ANSWERING BRIEF IN OPPOSITION TO THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS OR STAY

Not Reported in A.2d  
1995 WL 694385 (Del.Ch.)  
(Cite as: 1995 WL 694385 (Del.Ch.))

Page 53

H

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware.  
NEW CASTLE COUNTY  
v.  
ACIERNO  
Civ. A. No. 13302-NC.

Submitted: Oct. 20, 1995.  
Decided: Nov. 9, 1995.

Collins J. Seitz, Jr., Connolly, Bove, Lodge & Hutz, Wilmington.

Charles M. Oberly, III, Oberly & Jennings, P.A., Wilmington.

John J. Yannacone, Yannacone, Fay, Baldo & Daley, Media, PA.

STEELE, Vice Chancellor.

*1 On December 17, 1993, New Castle County ("County") filed a Declaratory Judgment action in this Court against Frank E. Acierno ("Acierno" or "Defendant"). The County seeks a declaratory judgment that Defendant Acierno is not entitled under state and county law to engage in a commercial use on property which is zoned only for manufacturing. Alleging there are no genuine disputes on any material facts, the County has moved for summary judgment.

The Defendant sought a stay of this Court's decision in light of the complaint he filed on December 17, 1993 in the Federal District Court. That Complaint alleged the County violated Defendant's civil rights by declining to issue a permit for the construction of a building for an intended commercial use on property zoned only for manufacturing. A detailed history of the federal action up to the District Court's most recent opinion of November 1, 1995, is in *Acierno v. New Castle County,* 40 F.3d 645 (3rd Cir.1994). I denied the Motion for a Stay in this Court's Opinion of October 19, 1995. The Defendant moved for Reargument of the Denial of the Stay and filed an Application for Certification of an Interlocutory Appeal. On November 8, 1995, I denied the Motion for Reargument and declined to certify the Denial of the Stay to the Supreme Court of Delaware as an Interlocutory Appeal. This is the Court's Opinion on the County's Motion for Summary Judgment.

On December 2, 1993, the County Board of Adjustment heard **Acierno's** appeal from the decision of the Division of Development and Licensing of New Castle County denying him a building permit for a commercial use on property that is zoned manufacturing. Among the relevant facts not in dispute before the County Board of Adjustment, nor in dispute now are:

(a) **Acierno** requested a building permit to construct a commercial building on a parcel which is zoned M-1 or manufacturing; and

(b) the proposed commercial use violates the current zoning code; and

(c) the Division declined to issue the building permit directly as a result of the conflict of the proposed use with the existing zoning code at the time of the application.

On December 16, 1993, the Board voted unanimously to uphold the decision of the Division denying the building permit application. The Board issued written findings substantiating the decision on January 14, 1994.

The Superior Court of the State of Delaware may review the determination of the Board of Adjustment pursuant to 9 *Del.C.* § 1353. **Acierno** has never requested review under the State's statutory scheme to challenge the decision of the Board of Adjustment. **Acierno** could have challenged the denial on either or both of two well recognized grounds: (1) a lack of substantial evidence in the record to support the decision of the Board as a matter of fact; or (2) errors of law which the Board may have committed in the course of reviewing the permitting process. *Kollock v. Sussex County Bd. of Adjustment,* Del.Super., 526 A.2d 569 (1987); *Janaman v. New Castle County Bd. of Adjustment,* 364 A.2d 1241 (1976), *aff'd,* Del.Supr., 379 A.2d 1118 (1977). Had **Acierno** made a timely appeal to Superior Court, the Superior Court could have examined the record below to determine (1) whether substantial evidence existed in the record to support

the Board's findings of fact and conclusions of law; and (2) whether in its application of the law to the facts the Board had committed error.

*2 In the interest of finality and stability, this Court concludes Delaware law precludes **Acierno** from challenging the finality of the Board of Adjustment's decision in the state court system. **Acierno** requested the issuance of a building permit before the Division of Licensing and Inspection. In his appeal to the Board of Adjustment, he sought to reverse the decision denying him a building permit fully aware the basis for that decision was the fact he sought a building permit to construct a commercial building in a manufacturing zone. The decision of the Board of Adjustment could not be more clear. It upheld the decision of the Division of Licensing and Inspection on a precise issue: the property for which he sought a building permit was zoned manufacturing and therefore, inappropriate at the time of the application for a commercial use. Delaware law precludes **Acierno** from requesting judicial review of that decision after he had an opportunity to seek such a review before the Superior Court and declined to do so. There can be no question the Superior Court could and would address, in the course of an appropriate appeal, alleged violations of procedural and/or substantive due process. See *1001 Jefferson Plaza Partnership, L.P. v. New Castle County Dept. of Fin. and New Castle County Bd. of Assessment Review,* Del.Super., C.A. No. 94A-11-004, Babiarz, J. (Nov. 8, 1995) Let. op. at 8. It is routine to address federal and state constitutional law in the course of an appeal where a party alleges the failure to recognize a denial of procedural and/or substantive due process was *the* "error of law" an administrative board or agency made below. Had **Acierno** given the Superior Court an opportunity to address his grievance in accordance with long-standing statutory appellate processes, he could have raised those issues and had them adjudicated with the possibility of success. The resulting order on remand could have directed the County to issue the building permit **Acierno** sought.

**Acierno** has abandoned that opportunity by electing to forgo an available appeal to the Superior Court. This is not a case where the issue was "not previously decided by the Board of Adjustment." Here the decision not to appeal clearly precludes an inquiry into **Acierno's** right to a building permit for a commercial use in a manufacturing zone. See *Wiggin v. Mummert,* Del.Ch., C.A. No. 8556, Hartnett, V.C. (May 26, 1992) Mem.Op. at 4.

Therefore, Plaintiff's Motion for Summary Judgment is *granted* and judgment is entered declaring Delaware law precludes **Acierno** from obtaining a building permit for a commercial use on the subject property which is zoned for manufacturing purposes only.

IT IS SO ORDERED.

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.