# EXHIBIT 19
# TO PLAINTIFFS' COMPENDIUM OF UNREPORTED CASES TO THEIR ANSWERING BRIEF IN OPPOSITION TO THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS OR STAY

Not Reported in A.2d  
2004 WL 740029 (Del.Ch.)  
(Cite as: 2004 WL 740029 (Del.Ch.))

Page 1

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware.
NEW CASTLE COUNTY, a political subdivision of the State of Delaware, Plaintiff,
v.
CHRISTIANA TOWN CENTER, LLC, a Delaware Limited Liability Company, Defendant.
No. Civ.A.20604-NC.

Submitted Feb. 10, 2004.
Decided April 7, 2004.

Upon Consideration of Plaintiff's Motions for Protective Orders: Granted in part, Denied in part.

Scott G. Wilcox, Collins J. Seitz, Jr., and Max B. Walton, Connolly Bove Lodge & Hutz, LLP, Wilmington, Delaware, for Plaintiff.

Timothy P. Mullaney, Sr., New Castle, Delaware, for Plaintiff.

Richard L. Abbott, The Bayard Firm, Wilmington, Delaware, for Defendant.

Shawn P. Tucker, Duane Morris, LLP, Wilmington, Delaware, for Defendant.

MEMORANDUM OPINION

GEBELEIN, J. [FN1]

    FN1. Sitting by designation as Vice Chancellor under Del. Const., Art. IV, § 13(2).

FACTUAL BACKGROUND

*1 On October 10, 2003, New Castle County ("County") filed the instant action against Christiana Town Center ("Christiana") seeking injunctive relief prohibiting Christiana from interfering with the County's inspections at the Christiana Town Center work site and any necessary remediation of violations. The County also seeks injunctive relief to stop Christiana from further violating the stop work orders and reimbursement for remediation costs, penalties, and fees assessed against Christiana. Christiana filed counterclaims and argues that some of the continuing violations of the stop work order are stayed by C.A. No. 03A-10-006-RSG. Christiana also claims that the County's September 24, 2003 stop work order is void and that the County is not able to undertake remedial measures at the site. Furthermore, Christiana claims that its work was performed in accordance with an approved Erosion and Sediment Plan.

NATURE AND STAGE OF THE PROCEEDINGS

The County initially sought a stay of discovery pending the outcome of mediation. In the alternative the County sought a protective order to prevent the noticed depositions of John Connell ("Connell") and John Gysling ("Gysling"), and to prevent any potential attempt by Christiana to depose Thomas Hubbard ("Hubbard"). The County filed a separate motion for a protective order to preclude the deposition of Sherry L. Freebery ("Freebery"). On December 12, 2003, this Court granted the County's motion to stay discovery. [FN2] Mediation was held on December 19, 2003 and the stay of discovery remained in place until February 10, 2004. The County's motions for protective orders are now fully briefed and ripe for decision.

    FN2. New Castle County v. Christiana Town Center, LLC, Del. Ch. C.A. No. 20604-NC, Lamb, V.C. (Dec. 12, 2003) (ORDER) (staying all discovery until January 7, 2004).

SUMMARY OF THE ARGUMENTS

The County sets forth the following arguments in support of their motion for a protective order to preclude the deposition of Freebery, the County's Chief Administrative Officer: (1) the information about which Christiana seeks to depose her on is irrelevant to this case; (2) Christiana can obtain any relevant, non-privileged information through its own witnesses and the series of depositions it has noticed; and, (3) the deposition would unduly interfere with Freebery's governmental duties. Christiana indicates that despite the County's claim that Freebery has not had any involvement with this case, Hubbard confirmed that she was one of the two people involved in the creation and issuance of a press release directly related to this case.

The County argues that the depositions of Connell and Gysling would be duplicative and unnecessary because the facts have already been gleaned from

Not Reported in A.2d                                                                                                          Page 2
(Cite as: 2004 WL 740029, *1 (Del.Ch.))

other witnesses deposed by Christiana. In response, Christiana claims that Inspector Connell and County Engineer Gysling have direct knowledge regarding the Christiana Town Center site. In reference to Connell, Christiana indicates that he provided an affidavit supporting the County's verified complaint in this action and that Stephen Hokuf ("Hokuf") delegated the responsibilities of conducting daily site visits and preparation of written inspection reports to Connell. As a result, Christiana maintains that Connell's deposition is essential because none of the witnesses deposed thus far have visited and inspected the site as frequently and thoroughly.

*2 Christiana maintains that the deposition of Gysling is necessary because he reviewed and approved a revised Erosion and Sediment Control Plan for the site that the County claims was never approved. Christiana calls into question whether or not Hokuf is legally permitted to perform some of the assignments he conducted while Gysling was on vacation for a few weeks. As such, Christiana claims that Gysling would have information relevant to that issue.

The County indicates that Hubbard, a public information officer for the County, has not been involved with this action or with Christiana. Despite their acknowledgment that Hubbard issued a press release, the County argues that it is not relevant or essential to Christiana's case regarding site compliance issues. Christiana argues the deposition Hubbard must be taken in order to determine the veracity of the claims made in the County's motion for protective order in connection with **Freebery**. Christiana asserts that the County cannot object to the taking of a deposition that is necessary to determine if that motion should be granted or denied. As press secretary, Christiana claims that Hubbard is the only known County employee who can confirm **Freebery's** involvement in this case.

DISCUSSION

Discovery should be allowed unless the Court is satisfied that the administration of justice will be impeded by such an allowance. [FN3]

> FN3. *Fish Eng'g Corp. v. Hutchinson,* 162 A.2d 722, 725 (Del.1960) (citations omitted).

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. [FN4]

> FN4. Chancery Court Rule 26(b)(1).

The Court shall limit the frequency or extent of the use of discovery, by acting upon its own initiative after reasonable notice or upon motion, if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake. [FN5] A court may grant a motion for protective order where justice requires to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense" in connection with requests for discovery.

> FN5. *Id.*

A. MOTION FOR PROTECTIVE ORDER TO PRECLUDE THE DEPOSITION OF SHERRY L. **FREEBERY**

*3 In the connection with its motion to preclude the deposition of Ms. **Freebery**, the County argues that high-ranking government officials are "generally entitled to limited immunity from being deposed." [FN6] While applicable Delaware law is limited, courts have recognized that a request to depose a high-ranking government official is subject to a heightened standard of review. [FN7] The burden that a deposition would place on a high ranking governmental official must be given special scrutiny even though granting a protective order is the exception rather than the rule. [FN8] Under the persuasive heightened standard of review, depositions of high ranking governmental officials

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
(Cite as: 2004 WL 740029, *3 (Del.Ch.))

Page 3

are not permitted unless the party seeking deposition can show that: "(1) the deposition is necessary in order to obtain relevant information that cannot be obtained from any other source, and (2) the deposition would not significantly interfere with the ability of the official to perform his governmental duties." [FN9] The first prong of this test is strictly imposed such that the deposition only be permitted if the high ranking government official has unique, personal knowledge that cannot be obtained elsewhere. [FN10] The limited immunity provided to high ranking government officials ensures that they have the necessary time to dedicate to the performance of their governmental duties and also "protect[s] the mental processes of executive and administrative officers in order [to] promote open channels of communication within government." [FN11] Whether the government official is in active service or has left the public arena, courts have permitted deposition if the high-ranking official was personally involved in a material aspect of the claim. [FN12] "Mere knowledge or awareness of information that may be helpful if discovered is insufficient." [FN13] The courts will require the high-ranking official submit to deposition in litigation not specifically directed at his conduct if: 1) extraordinary circumstances are shown; or 2) the official is personally involved in a material way. [FN14]

> FN6. *Hankins v. City of Philadelphia*, 1996 WL 524334 (E.D.Pa.).
>
> FN7. *See Jones v. Hirschfield*, 219 F.R.D. 71 (S.D.N.Y.2003); *Marisol v. Giuliani*, 1998 WL 132810 (S.D.N.Y.).
>
> FN8. *Marisol A*, 1998 WL 132810, at *2.
>
> FN9. *Id.* (citing *Martin v. Valley Nat'l Bank of Arizona*, 140 F.R.D. 291, 314 (S.D.N.Y.1991)).
>
> FN10. *Id.*
>
> FN11. *L.D. Leasing Corp. v. Crimaldi*, 1992 WL 373732 (E.D.N.Y.) (citing *United States v. Morgan*, 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941); *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586-87 (D.C.Cir.1985); *Ernest and Mary Hayward Weir Found. v. United States*, 508 F.2d 894, 895 (2d Cir.1974) (*per curiam*); *In Re Franklin Nat'l Bank Sec. Litig.*, 478 F.Supp. 577, 581 (E.D.N.Y.1979)).
>
> FN12. *See Am. Broad. Co. v. U.S. Info. Agency*, 599 F.Supp. 765, 769 (D.D.C.1984) (the Court determined that the United States Information Agency Director should be subjected to deposition given that he was the sole person responsible for the creation of the documents in question); *Gibson v. Carmody*, 1991 WL 161087 (S.D.N.Y.) (the Court allowed the deposition of a former New York City Police Commissioner, principally because he personally participated in proceedings related to or stemming from the investigation of the facts underlying the case). *See also Sandstrom v. Rosa*, 1996 U.S. Dist. LEXIS 11923 (S.D.N.Y.).
>
> FN13. *United States v. Wal-Mart Stores*, 2002 WL 562301 (D.Md.).
>
> FN14. *Id.* at *3.

Under the first prong of the *Morgan* two-prong test, the County argues that **Freebery's** knowledge is not "unique personal knowledge" regarding the merits of this case. The County claims that Christiana is also unable to satisfy the second prong of the analysis because the proposed deposition would clearly interfere with **Freebery's** official duties. According to the County, the press release in question and the content thereof are irrelevant to the merits of this action. The County indicates that the press release involves an investigation into allegations of misconduct concerning a certified construction review report that is being conducted by County Attorney, Timothy P. Mullaney, Sr., Esq. The County maintains that the press release nor the investigation deals with the County's ability to enforce the stop work order to inspect and remediate the site. As such, the County claims that any limited knowledge **Freebery** may have can be obtained for other less senior County officials. In addition, the County indicates that several officials within the Department have the same knowledge as **Freebery** in greater detail. Specifically, the County acknowledges the noticed depositions of Charles L. Baker ("Baker"), General Manager of the Department of Land Use; [FN15] George O. Haggarty ("Haggarty"), Assistant General Manager of the Department of Land Use and Code Official; and, Stephen D. Hokuf, Jr., Civil Engineer I of the Department of Land Use and the Engineer working on the continuing Christiana Town Center violations.

> FN15. Affidavit of Charles L. Baker at 3 (stating that "[t]hese actions were pursued without reliance

Not Reported in A.2d                                                                                                     Page 4
(Cite as: 2004 WL 740029, *3 (Del.Ch.))

upon or approval from the County Chief Administrative Officer Sherry L. **Freebery**. At no point has Ms. **Freebery** participated in the day-to-day administration or decision making relating to these actions or any of the County's activities related to regulatory enforcement at the Christiana Town Center site ... I am personally aware of several department officials who have been more closely involved in the ongoing controversy, and whose knowledge of the controversy surpasses that of Ms. **Freebery** in both breadth and detail." (The officials mentioned include Charles L. Baker, George Haggerty, and Stephen D. Hokuf, Jr.)).

*4 It appears to the Court that **Freebery** does not possess any special knowledge related to the material issues of this case that cannot be obtained from other county employees. Indeed, if she was involved in preparing a press release she undoubtedly obtained the information used from other county employees. Plaintiff's motion for a protective order as to **Freebery** is GRANTED.

B. MOTION FOR PROTECTIVE ORDER FOR JOHN CONNELL AND JOHN GYSLING

The County argues that the depositions of Connell and Gysling will simply result in a rehashing of the facts already obtained from other witnesses that have been deposed. Specifically, the County indicates that Christiana has already deposed Hokuf and Haggarty who are the individuals most knowledgeable about the Christiana Town Center site and the facts of this case. According to the County, Connell's testimony would be duplicative of the information provided by Hokuf in his deposition because Connell performed the inspections under the direction of Hokuf, who met with him every day regarding his site inspection reports. The County concedes that Connell provided an affidavit supporting their Verified Compliant in this action, however, the County contends that the information contained in the affidavit concerns an undisputed point. Christiana argues that the information provided in Connell's affidavit addresses different issues than that of the affidavit provided by Hokuf. Christiana indicates that, upon being deposed, Hokuf verified that Connell and Gysling have direct knowledge concerning the Christiana work site. Christiana maintains that Connell personally conducted site inspections and completed site inspection reports. [FN16] Therefore, Christiana argues that Connell has information distinguishable from that possessed by Hokuf.

FN16. The Court notes that Christiana provided copies of inspection reports signed by Connell and Gysling. See Def. Exhibit 7 & 8.

The County's argument with respect to Gysling is that Christiana has or will have access to depose higher-level County employees. In fact, the County points out that Christiana has already deposed Haggerty, Assistant General Manager of the Department of Land Use, who is Gysling's supervisor. Accordingly, the County asserts that there is no reason to depose Gysling, as his testimony would be duplicative of Baker, Hokuf and Haggerty. Christiana believes that Gysling, who is Hokuf's supervisor, reviewed and approved a revised Erosion and Sediment Control Plan for the Christiana Town Center site based upon the deposition testimony of Hokuf. Hokuf also took over responsibility for the site from Gysling and handled matters while he was away on vacation.

The Court finds that the discovery sought by Christiana, to depose Connell and Gysling is not unreasonably cumulative or applicative. The County acknowledges that Connell did perform inspections of the Christiana Town Center site and that he provided an affidavit supporting the County's verified complaint in this action. Gysling is Hokuf's direct supervisor and would therefore be privy to information not readily known by Hokuf. Based upon the evidence presented, it is clear that both Connell and Gysling have personal knowledge surrounding this case including inspection of the Christiana Town Center site. Accordingly, the County's motions for protective order with respect to John Connell and John Gysling are DENIED.

C. MOTION FOR PROTECTIVE ORDER FOR THOMAS HUBBARD

*5 The County argues that Hubbard has not had any involvement with Christiana Town Center or this action with the exception of the issuance of a press release by New Castle County. As previously mentioned, the County claims that the issuance of the press release is not relevant or essential to Christiana's site compliance issues in this case. Christiana maintains that Hubbard's deposition is required to determine the validity of the claims made in the County's motion for protective order with respect to **Freebery**. Christiana also alleges that Hubbard previously indicated that **Freebery** had decision-making involvement regarding the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
(Cite as: 2004 WL 740029, *5 (Del.Ch.))

Page 5

Christiana Town Center site. Since the County has also objected to the deposition of **Freebery,** Christiana argues that the deposition of Hubbard is necessary to further explore the issues set forth in connection with that motion. Christiana claims that Hubbard's knowledge is unique and different from all other witnesses that they plan to depose.

Hubbard is in fact the contact listed on the New Castle County press release. While the County may be correct that the issuance of the press release is not necessarily essential to Christiana's site compliance issues, it is alleged that he told counsel for Christiana that the press release was created by the "Law Department" and "Sherry." [FN17] The County has objected to the deposition of **Freebery** indicating that she has had no personal involvement. Based upon the arguments set forth, it is not unreasonable to explore Hubbard's personal knowledge of this case, including but not limited to any information surrounding **Freebery's** potential involvement in the decision making as to the site. [FN18] As such, the County's motion for protective order for Hubbard is DENIED.

FN17. Def. reply brief at 8, note 4.

FN18. The Court has granted the motion as it pertains to Ms. **Freebery.** Should it be developed that Ms. **Freebery** was actively involved in decision making as to the matters raised in this action, the Court would entertain a motion to vacate that order.

CONCLUSION

Considering the facts and circumstances of this case, the discovery requested by Christiana is not unduly burdensome, unreasonably cumulative or duplicative, and is relevant to the subject matter involved in the instant action. Accordingly, the County's motions for protective orders for John Connell, John Gysling and Thomas Hubbard are DENIED. As to Sherry **Freebery,** the motion is GRANTED.

IT IS SO ORDERED.

2004 WL 740029 (Del.Ch.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 20
# TO PLAINTIFFS' COMPENDIUM OF UNREPORTED CASES TO THEIR ANSWERING BRIEF IN OPPOSITION TO THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS OR STAY

Not Reported in A.2d  
2004 WL 1087341 (Del.Ch.)  
**(Cite as: 2004 WL 1087341 (Del.Ch.))**

Page 30

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware.  
SALEM CHURCH (DELAWARE) ASSOCIATES  
v.  
NEW CASTLE COUNTY and The State of Delaware  
No. Civ.A. 20305-NC.

Submitted Jan. 7, 2004.  
Decided May 6, 2004.

Dear Counsel:

NOBLE, Vice Chancellor.

*1 Defendant New Castle County (the "County") asserts that portions of the Complaint filed by Plaintiff Salem Church (Delaware) Associates ("Salem Church") are immaterial, impertinent, and scandalous and, thus, pursuant to Court of Chancery Rule 12(f), should be stricken. [FN1] While the County's position is not without some appeal, its motion will be denied because it has failed to demonstrate that the challenged allegations are irrelevant or that it will suffer prejudice from them. [FN2]

> FN1. Specifically, the County challenges Paragraphs 14, 15, and 16 of the Complaint, together with the first sentences of Paragraphs 17, 21, 22, and 30, and the last sentence of Paragraph 33.

> FN2. The County's motion carries the impression that the County does not perceive the challenged allegations as assisting Salem Church's effort to state a claim upon which relief can be granted. That question, one that is distinct from the inquiry required by Court of Chancery Rule 12(f), is properly answered in the context of a motion under Court of Chancery Rule 12(b)(6). The County's co-defendant in this action, the State of Delaware, has separately presented such a motion.

I. BACKGROUND

In 1974, the owners of approximately 100 hundred acres of land located in Pencader Hundred, New Castle County, Delaware, now known as "French Park" persuaded the County to rezone their property to the category of Diversified Planned Unit Development ("DPUD"). After obtaining approval of an Exploratory Sketch Major Land Development Plan showing the land's proposed development, no additional approvals were sought.

Salem Church bought French Park from those owners on July 21, 1987. Salem Church alleges that between 1987 and 1997 it unsuccessfully sought to obtain additional approvals to develop the lands. [FN3] In 1999, Salem Church attempted to gain final subdivision plan approval for French Park. Salem Church alleges that the County informed it that the Exploratory Plan was still valid and that Salem Church could obtain final approval in accordance with the process in effect in 1974 by submitting a revised preliminary plan which conformed to the Exploratory Plan and was based on 1974 regulatory requirements. [FN4] Salem Church claims that in spite of submitting such a plan it never received the promised final approval.

> FN3. Compl. ¶ 7.

> FN4. Id. ¶ 9.

The chief reason approval was never received was Senate Bill No. 143 ("SB 143") which was introduced in the General Assembly in the spring of 2001 and signed into law on May 17, 2001. [FN5] This legislation added the last two sentences of 9 Del. C. § 2659(c) and, as a result, conditioned development of Salem Church's proposed project, for which an exploratory sketch had been approved in 1974, upon compliance with current environmental and traffic impact standards. [FN6]

> FN5. 73 Del. Laws, c. 33.

> FN6. The last two sentences of 9 Del. C. § 2659(c) provide:  
> All subdivision or land development applications heretofore or hereafter filed or submitted to New Castle County that do not receive final approval from New Castle County government within 5 years from the date of application shall be subject to the environmental standards contained in Chapter 40, Articles 5 and 10, of the New Castle County Code, as may be amended, and the traffic impact standards contained in Chapter 40, Articles 5 and 11, of the New Castle County Code, as may be amended. This section shall not be construed to extend any time limitations pertaining to the expiration of subdivision or land development applications contained in the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

New Castle County Code.

Salem Church filed its Complaint in this action on May 16, 2003. It asks this Court to prevent the enforcement of SB 143 against it. Its main arguments are that the alleged bad faith motives of the County in supporting the legislation and the General Assembly in enacting the legislation should prevent its application to French Park and that the legislation interferes with Salem Church's vested property rights.

The County objects to those portions of the Complaint which allege these bad faith motives on the part of County and State officials in the adoption of SB 143. The following paragraphs of the Complaint are representative of the allegations to which the County has taken offense:

14. By Spring of 2001, various County and State elected officials decided to try and prevent the French Park subdivision plan from receiving final approval. They were motivated in part by a desire to prevent French Park from receiving final approval based upon the potential negative political impact that it could have on their careers, and in part by the fact that some of the elected officials had a personal animus toward the owner of Salem Church: Frank E. **Acierno** ("**Acierno**"). The County enlisted the assistance of State officials because the County knew it could not legally change the rules for French Park since the County Code and the County Opinion Letter had already "grandfathered" French Park. Thus, the County hoped to achieve indirectly what it could not do directly.

*2 15. Based upon the political desires of certain County and State elected officials, combined with their personal dislike of **Acierno,** State legislation was prepared and introduced in the Delaware General Assembly in order to attempt to take away the ability of Salem Church to receive final record plan approval for French Park. At all times, the County and State officials intended to deprive Salem Church of its vested rights to develop the DPUD Lands in accordance with the 1974 rezoning and Explanatory Plan approvals, as well as the Preliminary Plan approval in 2001....

16. The political concerns with respect to French Park, combined with a personal animus toward **Acierno,** drove County and State officials to ultimately bring about the introduction of Senate Bill No. 143.... The lead sponsors of SB 143 were State Senator Anthony DeLuca ("DeLuca") and State Representative William Oberle ("Oberle"). One of the chief County proponents of the legislation was New Castle County Executive Thomas P. Gordon ("Gordon"). Gordon has an extreme personal dislike of **Acierno.** DeLuca's wife and Oberle's daughter have been employed for years by Gordon. Thus, a conspiracy among a small number of close-knit political allies pushed SB 143 through the General Assembly for purposes of advancing their own political agendas and careers, and carrying out their own personal animosities against **Acierno.**

....

30. The actions of the County and the State were taken in bad faith, with an intent and motive to deny Salem Church its property rights and to carry out a political and personal vendetta against **Acierno.**

## II. ANALYSIS

Under Chancery Court Rule 12(f), "the Court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." [FN7] Motions to strike focus on the form of the pleading and not the substance of the pleadings. [FN8] It is said that these motions are not favored. [FN9] They are granted sparingly and only when clearly warranted with all doubt being resolved in the nonmoving party's favor. [FN10] "The test employed in determining a motion to strike is: (1) whether the challenged averments are relevant to an issue in the case and (2) whether they are unduly prejudicial." [FN11]

FN7. Court of Chancery Rule 12(f).

FN8. *Pack & Process, Inc. v. Celotex Corp.,* 503 A.2d 646, 660 (Del.Super.1985).

FN9. *Id.*

FN10. *Mills v. Gosling Creek, Inc.,* 1993 WL 485901, at *2 (Del.Super.1993) (interpreting Superior Court Civil Rule 12(f) which is identical to Chancery Court Rule 12(f)).

FN11. *Shaffer v. Davis,* 1990 WL 81892, at *4 (Del.Super.1990); *Pack & Process, Inc.,* 503 A.2d at 660-61. *See also* 2 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 12.37[3] (3d ed. 2004) ("To prevail on [a] motion to strike, the movant must clearly show that the challenged matter 'has no bearing on the subject matter of the litigation and that its inclusion will prejudice the defendants.' "

' (quoting *FRA S.P.A. v. Surg-O-Flex of Am., Inc.*, 415 F.Supp. 421, 427 (S.D.N.Y.1976)).

* * *

A useful starting point is a review of the definitions of "immaterial," "impertinent," and "scandalous." " 'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded, or a statement of unnecessary particulars in connection with and descriptive of that which is material." [FN12] Similarly, impertinent material is defined as "statements that do not pertain, and are not necessary, to the issues in question." [FN13] Finally, scandalous material is defined as that "which improperly casts a derogatory light on someone, most typically on a party to the action." [FN14]

> FN12. 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1382, at 706-08 (2d ed.1990).

> FN13. *Id.* § 1382, at 711.

> FN14. *Id.* § 1382, at 712.

Factual allegations must be irrelevant to the claims asserted and the relief sought in order to be stricken from the complaint. [FN15] For instance, in *Vets Welding Shop, Inc. v. Nix*, the Court was asked to strike Count IX of a complaint. While acknowledging that the "import of Count IX was not entirely clear," the Court refused to strike it, holding "[a]lthough the exact theory that the defendants are relying on in Count IX is not clear from the pleading, it cannot be said that if the defendants establish a valid legal theory for the allegation in Count IX that it would not advance the defendants' cause." [FN16]

> FN15. *See Vets Welding Shop, Inc. v. Nix*, 1988 WL 67703, at *1-*2 (Del.Super.1998).

> FN16. *Id.* at 4. *See also Crowhorn v. Nationwide Mut. Ins. Co.*, 2001 WL 695542, at *7-*8 (Del.Super.2001) (refusing to strike allegations to which the Court could find no connection in the case but instead allowing party to amend complaint to remove allegations or name another party as defendant).

*3 Furthermore, "[o]bjectionable material will be stricken only if it is clearly shown to be unduly prejudicial." [FN17] For instance, in *Shaffer v. Davis*, the Court rejected the defendants' motion to strike because there had been no showing of prejudice even though they claimed the objectionable allegations were irrelevant. [FN18] The Court noted that "defendants have made no attempt to show prejudice if the irrelevant pleadings remain in the pleadings. Thus, the Court denies defendants' Motion to Strike subject to defendants' right to renew the motion upon a showing of prejudice." [FN19] However, in *Board of Education v. Sussex Tech Education Association*, [FN20] where the Court was asked to determine whether a teacher's claim of improper termination was subject to arbitration and the School District's Complaint included specific detail of the conduct which caused the teacher's dismissal, irrelevance and prejudice supported a motion to strike. [FN21] The alleged improper conduct involved "touching female students and conducting activities of a sexual nature in the classroom." [FN22] The Court reasoned that:

> FN17. *Pack & Process, Inc.*, 503 A.2d, at 661; *Shaffer*, 1990 WL 81892, at *4. Allegations which offend a party's sensibilities will not be stricken if they are relevant to the action. *See Shaffer*, 1990 WL 81892, at *4-*5; *Mills*, 1993 WL 485901, at *2.

> FN18. *Shaffer*, 1990 WL 81892, at *4.

> FN19. *Id. See also Vets Welding Shop, Inc.*, 1988 WL 67703, at * 3 ("because the parties have not plead sufficient facts for the Court to determine that these charges are unduly prejudicial, on their face, the motion to strike ... is DENIED.")

> FN20. 1998 WL 157373 (Del. Ch. Mar. 18, 1998).

> FN21. *Id.* at *2.

> FN22. *Id.* at *1.

[The] specific allegations have no legal relevance to the purely procedural issue involved here, which is what tribunal - this Court or an arbitrator - should decide the question of arbitrability. Those "charging allegations" are also unduly prejudicial, because they attack [defendant's] character, and their determination (by an administrative body) is contested and on appeal. Because they would be irrelevant to the procedural issue presented here and to the Court's analysis, it was unnecessary to include these charging allegations in the complaint.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
(Cite as: 2004 WL 1087341, *3 (Del.Ch.))

Page 33

By including those allegations the plaintiff has made public, charges that are contested and of a highly sensitive nature for no legally appropriate reason. In these circumstances, even though motions to strike are normally disfavored, the Court grants the motion to strike the irrelevant and prejudicial allegations...." [FN23]

> FN23. *Id.* at *2. Furthermore it should be noted that:
> The granting of a motion to strike scandalous matter is aimed, in part, at avoiding prejudice to a party by preventing a jury from seeing the offensive matter or giving the allegations any other unnecessary notoriety. Of course, if the complaint will not be submitted to the jury, or if the case will be tried to the court ... there is less need to strike scandalous allegations.
> 5A WRIGHT & MILLER, *supra* note 12, § 1382, at 715-16.

\* \* \*

The County claims first that portions of the Complaint are immaterial because they have no bearing on Salem Church's requested relief. Salem Church contends that it should be shielded from the consequences of SB 143 because of the forces motivating certain public officials to pursue enactment of SB 143. The challenged allegations are relevant to the grounds tendered by Salem Church as support for the relief that it seeks. [FN24] Thus, the allegations will not be stricken as immaterial or irrelevant. [FN25]

> FN24. This, of course, does not mean that the allegations - even if true - would justify limiting the application of SB 143. I note in passing that SB 143 was overwhelmingly passed in both the Senate and the House of Representatives. That the motivations of a few legislators (even if proven) could somehow taint the enactment of legislation with substantial support in the General Assembly is a question for another day.

> FN25. The County also asserts that "[p]resumably, Plaintiff will not stop with the allegations in the Complaint and will also seek freewheeling discovery into the motives of the legislators who enacted SB-143 - a practice that courts do not allow." Def.

New Castle County's Br. in Supp. of its Mot. to Strike Pursuant to Ct. of Chancery Rule 12(f) at 10. These concerns, if they do materialize, are better addressed in the context of specific discovery disputes. The "free speech and debate" clause of the Delaware Constitution may prohibit legislators from being deposed to determine why they voted the way they did. *See* Del. Const. art. II, § 13 (1897); *McClendon v. Coverdale*, 203 A.2d 815, 815-17 (Del.Super.1964); *Shellburne, Inc. v Roberts*, 238 A.2d 331, 337 (Del.1967). *See also* RANDY J. HOLLAND, THE DELAWARE STATE CONSTITUTION, A REFERENCE GUIDE 87 (2002).

The County next claims prejudice because these allegations are nothing more than attacks on the legislators who enacted the SB 143 and that they will "place a cloud over the reputations of these political officials." [FN26] First, the County has not demonstrated how negative comments about members of the General Assembly or County officials will prejudice the County. Second, any potential prejudice is significantly less than that which could have befallen the teacher in *Sussex Tech Education Association*, who risked having further publication of accusations of sexual misconduct if the offending portions of the complaint were not stricken. In contrast, Salem Church merely alleges personal animus and political motivations on the part of elected officials.

> FN26. Def. New Castle County's Br. at 13.

*4 Because the County has not shown that the challenged allegations are irrelevant to Salem Church's claim or that the County will be prejudiced if they remain as part of the Complaint, I deny the County's Motion to Strike.

III. CONCLUSION

For the foregoing reasons, the County's Motion to Strike is denied.

IT IS SO ORDERED.

2004 WL 1087341 (Del.Ch.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.