remedies to rectify a legal error by a local administrative body."); *Highway Materials Inc. v. Whitemarsh Township*, 2004 WL 2220974 (E.D. Pa. 2004), at *10 (same).

In their separate Answering Brief in Opposition to the Individual Defendants' Motion to Dismiss or Stay, Plaintiffs cite *Rogin v. Bensalem Township*, 616 F.2d 680, 694-95 (3d Cir. 1980), which they attempt to turn on its head. In *Rogin*, the Third Circuit upheld a procedure for challenging a land use decision that included the ability to administer oaths, subpoena witnesses, cross-examine adverse witnesses, and to maintain a record of the proceedings. *See Rogin*, 616 F.2d at 695. While such a procedure undoubtedly satisfies the requirements of procedural due process, Plaintiffs' implication that any less formal procedure does not satisfy due process is contrary to long-standing Supreme Court precedent. *See e.g. Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (stating that all due process requires is "notice and opportunity for hearing appropriate to the nature of the case"). Moreover, Plaintiffs ignore the fact that the Third Circuit recognized in *Rogin* that every land use case does not require this level of formalities. *See Rogin*, 616 F.2d at 694 (stating that "[t]he exact process required varies with the demands of the particular situation in question" and referencing the *Mathews v. Eldridge* balancing test).

4. **Count I Fails to State a Cognizable Claim for a Temporary Taking**

Plaintiffs' claim of a temporary taking must fail because the delay alleged is not long enough to be considered a taking and because Plaintiffs have not alleged deprivation of all economic value. In response, Plaintiffs cite to *First English Evangelical Church of Glendale v. County of Los Angeles*, 482 U.S. 304 (1987). In *First English*, however, the Court made clear that a temporary taking would not be found "in the case of normal delays in obtaining building permits, changes in zoning ordinances, variances, and the like." *Id.* at 321. The Court reiterated this point in *Palazzolo v. Rhode Island*, 533 U.S. 606, 627 (2001), stating that "[t]he right to

improve property, of course, is subject to the reasonable exercise of state authority, including the enforcement of valid zoning and land-use restrictions." *Id.* Even accepting Plaintiffs' allegations as true, the delays are far short of the extraordinary delays which may give rise to takings liability. *See Tahoe-Sierra Preservation Council v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 341-42 (2002) (32-month moratorium on land development did not amount to a compensable taking); *Appolo Fuels, Inc. v. United States*, 381 F.3d 1338 (Fed. Cir. 2004) (18-month delay in permit application process ruled "far short of extraordinary"). Rather, Plaintiffs have experienced only short-term delays attendant to zoning and permit regimes of the type recognized by the Supreme Court as longstanding features of state property law and part of a landowner's reasonable investment-backed expectations. *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1034 (1992).

Moreover, Plaintiffs fail to allege that the delays in their proposed developments denied them all economically viable use of their lands, another requirement of a compensable temporary taking. *See Tahoe-Sierra*, 535 U.S. at 309; *Lucas*, 505 U.S. at 1017; *Midnight-Sessions*, 945 F.2d at 676 (unconstitutional taking not established simply upon a showing of "the denial of 'the ability to exploit a property interest that [plaintiffs] heretofore had believed was available.'") (quoting *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 130 (1978)).

Finally, Plaintiffs' takings claim is premature, since Plaintiffs failed to seek inverse condemnation in Delaware's state courts. *See Abbiss v. Delaware Dep't of Transportation*, 712 F. Supp. 1159 (D. Del. 1989). In their Answering Brief, Plaintiffs do not cite *Abbiss*, but nevertheless claim that their takings claim is ripe because "Acierno has received numerous 'final decisions' from the Department at issue in this action." Answering Brief at 34. The issue, however, is not whether Plaintiffs received a final decision from a Department, but whether they

received a final decision from the State of Delaware. If a Department made a decision Acierno did not like, Plaintiffs were first obliged to seek compensation in a state inverse condemnation proceeding before coming to federal court. *See Abbiss*, 712 F. Supp. at 1162 ("Until the state fails to provide adequate compensation for the alleged taking, the state's action is not complete; there can be no taking; and there is no federal cause of action."). Recognizing this problem, Plaintiffs tries to suggest that Delaware has recognized inverse condemnation actions only in situations where there was an attempt to physically acquire land. Answering Brief at 34. No law whatsoever is cited for this proposition, however, and Plaintiffs' description appears to be contradicted by *Abbiss* itself, where the issue was not the physical taking of land *per se*, but a mere plan to transform the land's use. *See Abbiss*, 712 F. Supp. at 1161 ("Del DOT has, *in effect*, by implementing its plan to transform Red Mill Road into a cul-de-sac, taken the Property") (emphasis added). Moreover, as the Individual Defendants note in their separate reply brief, inverse condemnation appears to be an available remedy in this context. Even if it were not, federal jurisdiction does not emerge from a Plaintiffs' mere assertion, as here, that there is no "possibility of any effective State court review." Answering Brief at 34. As *Abbiss* makes clear, Plaintiffs were required to test that view before asking a federal court to step in and grant "takings" relief against a County government. *See Abbiss*, 712 F. Supp. at 1162 ("Even if Delaware law did not provide specifically for inverse condemnation actions or even if every decision from the Delaware courts to have considered the issue of inverse condemnation had denied recovery to the plaintiff, that would not be enough to waive the requirement for the plaintiffs to pursue their state law remedies first."). *See also id.* at 1163 ("[U]ntil a plaintiff pursues state law remedies, federal courts must assume that state courts will interpret state law in line with the Supreme Court's fundamental constitutional commands concerning just

compensation.... Because the plaintiffs have not pursued the available state law remedies with respect to their takings claims, these claims are not ripe, and we do not have jurisdiction over them."). In sum, the County is entitled here to the same relief that was granted in *Abbiss* – the takings claims should "therefore be dismissed." *Id.*

### 5. Plaintiffs Have Not Adequately Alleged an Equal Protection Claim

Courts are reluctant to overturn governmental action on the ground that it denies equal protection of the laws, particularly in the context of land use decisions. *See Congregation Kol Ami v. Abington Township*, 309 F.3d 120, 133-35 (3d Cir. 2002). Indeed, a panel of the Third Circuit recently noted that "[i]t may be very unlikely that a claim that fails the substantive due process test will [ever] survive under an equal protection approach." *Eichenlaub*, 385 F.3d at 287.

Plaintiffs' "class of one" equal protection theory must fail because Plaintiffs cannot establish that Acierno has been treated differently than similarly situated developers. *See Village of Willoughbrook v. Olech*, 528 U.S. 562, 564 (2000) (stating that class of one can bring a successful equal protection claim where a "plaintiff alleges that she has been intentionally treated differently from others similarly situated" and there is no adequate basis for the disparate treatment). Although the Amended Complaint contains a general averment that Acierno was treated differently than other developers, there are no factual allegations that speak to how these developers were similarly situated to Acierno. Parcels of land and proposed developments are unique in many respects, such as location, access to roads, zoning district, topography, size, and prior use. Thus, the fact that another developer was able to resolve a dispute with the County does not establish that a developer with an identical or very similar issue would be treated differently. This is in stark contrast to the facts of *Village of Willoughbrook*, where the plaintiffs were property owners who requested that the Village connect their property to the water supply.

There, the Olechs were situated similarly, if not identically, to all other property owners who had requested connection to the water supply. Whereas the Village requested a 15-foot easement from all of the others, it requested a 33-foot easement from the Olechs.

In the instant case, Plaintiffs' averments are insufficient to state a claim for relief on a "class of one" theory. If general averments that a developer was treated differently than other developers are sufficient to raise an equal protection claim, then every person who lost a zoning dispute would be able to file a § 1983 claim merely by asserting that he was treated differently. That is clearly not the law. Plaintiffs have failed to cite any law at all in favor of their equal protection claim, which should be dismissed.

### C. Count III Fails to State a Valid Civil RICO Claim Against the County

Although not pled with requisite specificity, the best interpretation of County III is that it is premised on the allegation that the County is the RICO "enterprise." As this Circuit made clear in *B.F. Hirsch v. Enright Refining Co.*, 751 F.2d 628, 633 (3d Cir. 1984), however, a RICO "enterprise" cannot also be a "person" subject to civil RICO liability, since it would be illogical to declare that the entity is "employed by or associated with" itself. *See also Petro-Tech, Inc. v. Western Company of North America*, 824 F.2d 1349 (3d Cir. 1987) (extending this rule to enterprises allegedly liable under a theory of *respondeat superior*). Moreover, a municipal corporation cannot be held liable under civil RICO anyway, as declared in *Gentry v. Resolution Trust Corp.*, 937 F.2d 899, 910 (3d Cir. 1991).

Plaintiffs now attempt to distance themselves from Count III's own description of their RICO claim. Plaintiffs' Answering Brief states that paragraph 76 of their Amended Complaint "describes the RICO enterprise as including four (4) individual defendants and the County (using 'and' in the disjunctive)." Answering Brief at 36. However, there is nothing in paragraph 76 of any Complaint filed by the Plaintiffs that says this. Paragraph 67 of the Amended Complaint

(and paragraph 79 of the proposed Second Amended Complaint), however, states: "The enterprises that they acted on behalf of include both their own conspiracy and the county." The Answering Brief's discussion of how these are pled in the "disjunctive" makes plain that Plaintiffs are alleging the existence of two enterprises: (1) a group of individuals associated in fact, *i.e.*, the "conspiracy," and (2) the County, a legal entity. On the first of these, nowhere does the Amended Complaint state that the County was a part of this "group of individuals" enterprise, and any suggestion that the County might be held liable for these individuals' acts is premised on the same type of *respondeat superior* theory rejected in *Petro-Tech*. As for the second listed RICO enterprise, liability against the County is barred by *Enright*'s "distinctiveness" rule. Even if Plaintiffs tried to claim that the RICO "enterprise" consisted of a combination of the County and a group of individuals – something no Complaint ever does – nothing in the RICO statute permits such a thing to constitute an enterprise. An enterprise may consist of a "legal entity" or of "a group of individuals associated in fact." 18 U.S.C. § 1961(4). The statute does not say that an enterprise may be made up of a group of individuals and a legal entity, like the County, in some combination. RICO requires a single enterprise and Plaintiffs must plead their complaint with sufficient particularity to identify that enterprise.[9] *See e.g. Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640 (7th Cir. 1995) ("A RICO complaint must identify the enterprise."); *see also Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.*, 87 Fed. Appx. 227, 2003 WL 23155074 (3d Cir. 2003) (affirming dismissal where other specifics required for a valid civil RICO claim premised on mail fraud were not adequately pled with particularity—a situation similar to Plaintiffs' Amended Complaint here).

---

[9] The Amended Complaint speaks of "an enterprise" (¶ 61), as does 18 U.S.C. § 1962(c), the relevant subsection.

The crux of the Amended Complaint is that the County is an enterprise that should be held vicariously liable for the acts of its agents. *See, e.g.*, Amended Complaint at ¶¶ 62-64 (stating that the County is a legal entity and that Defendants Wilcox and Haggerty participated in its affairs through a pattern of racketeering activity); *see also* Amended Complaint at ¶ 71 (expressly acknowledging that Plaintiffs seek to hold the County liable for civil RICO under a theory of *respondeat superior*). There is nothing in the Amended Complaint to support the idea that the County participated in a pattern of racketeering as a member of the Individual Defendants' separate "enterprise," and Plaintiffs have not cited to any paragraphs thereof. *See* Answering Brief at 38. Even if they had, Plaintiffs' argument would run afoul of the law of this Circuit that "a corporation which is alleged to be a RICO enterprise under 18 U.S.C. § 1962(c) cannot be held vicariously liable for RICO violations committed by its employees if the employees are the § 1962(c) persons named in the complaint as having conducted the affairs of the enterprise through a pattern of racketeering activity." *Petro-Tech*, 824 F.2d at 1351.

Plaintiffs mischaracterize *Petro-Tech* as supporting the proposition that "an entity/enterprise that benefited from (rather than being victimized by) the actions of the RICO employees could be liable under § 1962(c)." Answering Brief at 37. It is unclear how Plaintiffs read *Petro-Tech* to support this conclusion. In *Petro-Tech*, the Third Circuit clearly stated that "respondeat superior and aiding and abetting liability would disrupt the intended operation of § 1962(c), by making the § 1962(c) enterprise—the victim as *Enright* tells us, of the racketeering activity—liable. Respondeat superior would have that effect because it renders the employer—i.e. the enterprise—responsible for the acts of the employees—i.e. the persons." *Petro-Tech*, 824 F.2d at 1359.

WO 384296.1                                    16

*Petro-Tech* does say, "Respondeat superior liability under § 1962(c) is therefore foreclosed by the rationale in *Enright* insofar as it would make the enterprise liable for the RICO violations which victimized it." *Id.* However, this statement provides no support for the opposite proposition put forth by Plaintiffs, that an enterprise that benefited from the actions of its employees could be liable under § 1962(c). In fact, the court's clarification of its statement in footnote 11 reveals that it did not intend to make such an implication, but rather finds *respondeat superior* always impermissible under § 1962(c):

> *Enright* did not hold, however, that a motion to dismiss would be granted under § 1962(c) whenever the enterprise in fact benefited from the racketeering activity; it simply held that there can be no recovery from the enterprise when a claim is made under § 1962(c). It is thus possible for an employer alleged to be an enterprise under § 1962(c) to have benefited from the racketeering activity. Indeed, it may be common. But that does not matter under *Enright* so long as no attempt is made to recover from the employer. Respondeat superior circumvents the prohibition on recovery, however, and it therefore impermissible under § 1962(c).

*Id.* at 1360 n. 11.

Furthermore, even if Plaintiffs were correct that a benefiting enterprise might be held liable under § 1962(c), there are no allegations in the Complaint that the County benefited from the conduct of the individual defendants. In fact, the Complaint paints a picture of Acierno being victimized for the personal political benefit of Freebery and Gordon. Plaintiffs admit that "no affirmative assertion of benefit to the County as a result of the RICO activities of the Individual Defendants has been directly alleged in the Complaint, unless Freebery's well documented belief in the Napoleonic adage 'le estat est moi' is sufficient." Answering Brief at 38. Plaintiffs' reference to French history[10] makes the opposite point, *i.e.*, that actions taken on behalf of the

---

[10] The statement was actually made by Louis XIV, the Sun King. Plaintiffs' Answering Brief in Opposition to the Individual Defendants' Motion contains another dubious literary reference. At page 57, there is a reference to an unspecific "Shakespeare adage concerning the law." Since the adage is not quoted, it is not possible to ascertain precisely what Plaintiffs are

County were actually for the benefit of Freebery, not the County. Plaintiffs' suggested amendment is equally unconvincing, as it alleges no County benefit, and would only suggest that the administration benefited politically. In short, Plaintiffs have done nothing to show, and in fact, cannot show, how the County benefited from the alleged unfair enforcement of its zoning and permitting laws.

Finally, Plaintiffs ignore controlling precedent in this Circuit by arguing that municipal corporations are not immune from liability for exemplary damages of the type permissible under § 1962(c). Plaintiffs recognize as much by stating that the case of *Gentry v. Resolution Trust Corp.*, 937 F.2d 899 (3d Cir. 1991) "does in fact hold that a civil claim brought under § 1964(c) [sic] of the RICO Act cannot be maintained against a municipal corporation due to the mandatory award of treble damages, which the Third Circuit found to be punitive in nature, based upon a lack of evidence that Congress intended to abrogate the long-established common law principle prohibiting the award of punitive damages against municipalities." Answering Brief at 39 (citing *Gentry*, 937 F.2d at 914). That is the law in this Circuit which the Court must follow despite Plaintiffs' blandishments to the contrary.

D.   **Counts IV and V Fail to State a Claim Against the County**

With regards to Counts IV and V, Plaintiffs agree that the County has sovereign immunity but strangely assert that dismissal is not appropriate. Instead Plaintiffs ask for leave to amend their complaint to eliminate the County from these two claims. Plaintiffs do not need leave to amend as a plaintiff can always seek to dismiss counts under Rule 41(a), Fed. R. Civ. P., and if no answer has been filed, as it has not here, court approval is not required. The County would not (and probably could not) oppose such dismissal, but in any event, reiterates that both

referring to, but in context, it appears to be a reference to Mr. Bumble's famous statement in *Oliver Twist*, which was of course written by Charles Dickens.

counts fail to state a claim upon which relief can be granted. Since Plaintiffs have not dismissed these counts, the Court should do so.

## CONCLUSION

For the reasons stated above and those set forth in the County's Opening Brief in support of its motion to dismiss Plaintiff's Amended Complaint, as well as in the various briefs of the individual defendants filed in support of their consolidated motion to dismiss, this Court must dismiss Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) & 12(b)(6) for failure to state a claim upon which relief may be granted. If this Court decides not to dismiss Plaintiffs' Amended Complaint, the County also submits that any counts that survive dismissal should be stayed pending the resolution of the various state court actions related to Plaintiffs' claims.

Dated: April 22, 2005.                    Respectfully submitted,

/s/ Dennis J. Siebold
Dennis J. Siebold (Del. Bar No. 751)
NCC DEPARTMENT OF LAW
87 Reads Way
New Castle, DE 19720
Telephone (302)-395-5130
*Acting County Attorney for New Castle County*

OF COUNSEL:
Hamilton P. Fox, III
Gregory S. Smith
Carter L. Williams
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone (202)-383-0100

*Counsel for New Castle County*