IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FRANK E. ACIERNO, CHRISTIANA TOWN CENTER, LLC, a Delaware limited liability company, 395 ASSOCIATES, LLC, a Delaware limited liability company, ESTATE HOMES, INC. a Delaware corporation,<br><br>    Plaintiffs,<br><br>    v.<br><br>GEORGE O. HAGGERTY, individually and in his official capacity as Assistant General Manager of the New Castle County Department of Land Use SCOTT G. WILCOX, individually and in his official capacity as a First Assistant County Attorney, TIMOTHY P. MULLANEY, individually and in his capacity as New Castle County Attorney, CHARLES L. BAKER, individually and in his capacity as General Manager of the New Castle County Department of Land Use, JAMES H. EDWARDS individually and in his capacity as Inspections Manager and Licensing Division Manager of the New Castle County Department of Land Use, and SHERRY L. FREEBERY, in her individual capacity as Chief Administrative Office of New Castle County, and NEW CASTLE COUNTY, a political subdivision of the State of Delaware,<br><br>    Defendants. | Civil Action No. 04-1376<br><br>JURY TRIAL DEMANDED |

**APPENDIX TO DEFENDANT NEW CASTLE COUNTY'S REPLY BRIEF
IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

OF COUNSEL:
Hamilton P. Fox, III
Gregory S. Smith
Carter L. Williams
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202)-383-0100
*Attorneys for Defendant New Castle County*

Dennis J. Siebold (Del. Bar No. 751)
NCC DEPARTMENT OF LAW
87 Reads Way
New Castle, DE 19720
(302)-395-5130
*Acting County Attorney for New Castle County*

A-1

WO 386614.1

## TABLE OF CONTENTS

| Tab | Description |
|---|---|
| A | Unpublished Opinions Cited in Defendant New Castle County's Opening Brief in Support of Its Motion to Dismiss the Amended Complaint |

1. Acierno v. Cloutier, No. 92-385-SLR, 1993 WL 215133 (D. Del., filed June 9, 1993).

2. Bonavitacola Elec. Contractor, Inc., 87 Fed. Appx. 227, 2003 WL 23155074 (3d Cir., filed Dec. 8, 2003).

3. Highway Materials, Inc. v. Whitemarsh Township, No. Civ. A. 02-3212, 2004 WL 2220974 (E.D. Pa. 2004, filed Oct. 4, 2004).

4. Levin v. Upper Makefield Township, Bucks County, Pa., 90 Fed. Appx. 653, 2004 WL 449189 (3d Cir., filed Mar. 8, 2004).

5. Thornbury Noble, Ltd. v. Thornbury Township, 112 Fed. Appx. 185, 2004 WL 2341811 (3d Cir., filed Oct. 18, 2004).

**Tab A**

Case 1:04-cv-01376-KAJ   Document 58   Filed 04/22/2005   Page 3 of 11

Tab A



Not Reported in F.Supp.  
1993 WL 215133 (D.Del.)

**(Cite as: 1993 WL 215133 (D.Del.))**

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.  
Frank E. ACIERNO, Plaintiff,  
v.  
Phillip CLOUTIER, in his individual and official capacity, Richard Cecil, in  
his individual and official capacity, Robert Powell, in his individual and  
official capacity, J. Robert Wood, in his individual and official capacity, J.  
Christopher Roberts, in his individual and official capacity, Penrose Hollins,  
in his official and individual capacity, Karen Venezky, in her official and  
individual capacity, Michael Mitchell, in his official and individual capacity,  
and New Castle County, Defendants.  
**No. C.A. 92-385-SLR.**

June 9, 1993.  
Carl A. Agostini, of Agostini, Levitsky & Agostini, Wilmington, DE, John J. Yannacone, of Yannacone, Fay, Baldo & Daly, Media, PA, for plaintiff.

Collins J. Seitz, Jr., and James D. Heisman, of Connolly, Bove, Lodge & Hutz, Wilmington, DE, for New Castle County and the Council Member defendants.

Barry M. Willoughby, of Young, Conaway, Stargatt & Taylor, Wilmington, DE, for Michael Mitchell.

MEMORANDUM OPINION

ROBINSON, District Judge.

I. INTRODUCTION

*1 Plaintiff Frank E. Acierno, a real estate developer, brings this action pursuant to title 42, section 1983 of the United States Code, seeking damages as well as injunctive and declaratory relief. Plaintiff's Amended Complaint raises several federal constitutional claims as well as a Delaware state law claim under the equitable estoppel doctrine. These claims focus on two ordinances adopted in 1992 by the New Castle County Council ("County Council") which had the effect of precluding plaintiff from developing certain property consistent with a record development plan and zoning classification. Before the Court is defendants' motion for partial summary judgment as to plaintiff's constitutional claims.

II. PROCEDURAL BACKGROUND

Plaintiff filed his original Complaint with this Court on July 1, 1992 raising claims against New Castle County ("County"), members of County Council, and the Delaware Department of Transportation ("DelDOT"). By stipulation of the parties and order of the Court, DelDOT was dismissed from the case without prejudice.

On or around December 4, 1992, the remaining parties-defendant filed a motion for summary judgment and for a stay of discovery pending resolution of the summary judgment request. (D.I. 29) Plaintiff filed a brief in opposition to defendants' summary judgment motion on December 18, 1993. Defendants filed their reply brief on January 7, 1993. The Court determined that defendants raised arguments in their reply brief which were not included in their opening brief, *see* District of Delaware Local Rule 7.1.2(c)(2), and *sua sponte* granted plaintiff leave to file a brief in sur-reply. (D.I. 60) Plaintiff filed his brief in sur-reply on or around March 29, 1993.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1993 WL 215133 (D.Del.)

**(Cite as: 1993 WL 215133 (D.Del.))**

Page 2

Plaintiff filed a motion requesting leave to file an amended pleading on March 12, 1993. On April 2, 1993, the Court granted plaintiff's motion for leave to amend. [FN1] Plaintiff's Amended Complaint deleted one state law claim and asserted another, raised additional averments of fact, and added an additional party defendant. [FN2]

On April 8, 1993, defendants requested leave to file a brief in response to plaintiff's sur-reply brief. The Court granted defendants' motion on April 16 and defendants filed their responsive brief on April 29, 1993. As defendants freely acknowledged, said brief raised a new argument based on the abstention doctrine.

The Court issued an Order on May 10, 1993 indicating the Court had "determined that the parties largely failed to provide copies of the various New Castle County Code provisions and New Castle County ordinances relied upon in said submissions and that the Court does not have ready access to said provisions and ordinances." (D.I. 77) The Court accordingly ordered that "[o]n or before May 13, 1993, defendants shall provide copies of all said regulations and ordinances relied upon in their submissions ... except insofar as said documents already were included in the record." (D.I. 77) The Order further provided that "[a]ny regulations or ordinances not so included in the record shall not be considered in resolving defendants' motion for partial summary judgment." (D.I. 77)

*2 Defendants responded to the Order on May 13, 1993 by filing copies of various New Castle County ordinances and Code provisions. In addition, defendants filed correspondence and affidavits with the Court seeking to explain certain facts that allegedly arose in connection with defendants' efforts to comply with said Order and to set forth defendants' preliminary positions regarding the legal impact of those facts.

The Court issued another Order on May 17, 1993 in which it "determined that (1) plaintiff is entitled to respond to defendants' newly-raised abstention argument and to address the relevance and legal significance, if any, of the recently revealed facts [set forth in defendants' correspondence and affidavits filed on May 13, 1993]; and that (2) defendants may also, pursuant to their request, file papers addressing said latter issue." (D.I. 79) On May 20, 1993, the parties filed submissions responsive to the Court's Order of May 17, 1993, and briefing on the matter at bar finally concluded. Defendants' motion for summary judgment comes before the Court without the benefit of any discovery due to defendants' pending motion to stay, which motion, in effect, has been granted *de facto*.

III. FACTUAL BACKGROUND

On October 5, 1984, plaintiff purchased a parcel of land comprising approximately 38 acres situate in New Castle County, Delaware (the "Property"). Plaintiff purchased the Property for a price of over $1,000,000. As of April 1971, the Property had a zoning classification referred to as "diversified, planned unit development" ("DPUD"). On April 11, 1974, a major land development plan for the Property had been approved and recorded by the County. The approved record development plan provided for the development of a 322-unit apartment complex together with development of .87 acres of land for commercial use.

It is undisputed that the Property's DPUD zoning classification and the fact that the Property was the subject of an approved record development plan were critical factors in plaintiff's decision to purchase the Property. It is undisputed as well that plaintiff "paid a premium of approximately [$900,000] in reliance upon the DPUD zoning classification and the fact that the property was the subject of an approved record plan." (D.I. 61, Exhibit A (Affidavit of Frank E. Acierno) at ¶ 3) Indeed, the agreement of sale executed in connection with plaintiff's purchase of the Property described the parcel of land as "[a]ll that parcel of land situated west of McKennans Church Road in Delaware, known as 'The Maples Apartments' and containing approximately 38.65 acres of land." (D.I. 55 at A-3) The description of the Property further provided that "[s]aid parcel has been

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                               Page 3
1993 WL 215133 (D.Del.)
**(Cite as: 1993 WL 215133 (D.Del.))**

approved by New Castle County officials for the construction of three hundred and twenty-two apartments...." (D.I. 55 at A-3)

Prior to closing for the purchase of the Property, plaintiff, through a realtor, sought and received assurances from the New Castle County Department of Planning ("Planning") regarding the current zoning and record plan status of the Property. Correspondence supplied in response to plaintiff's request contained the following assurances:
> *3 The land is still currently zoned Diversified Planned Unit Development (DPUD). The status of the record plan is that it is current and, therefore, the uses permitted are noted on the plan subject to limitations regarding the density, commercial area, etc.

(D.I. 55 at A-6)

Plaintiff's representatives, on or around October 21, 1985, filed with Planning a revised development plan for the "Westhampton project." (D.I. 55 at A-8) Planning officials then directed plaintiff's engineers to make certain modifications and updates to the development plan. (D.I. 55 at A-8)

On or around December 17, 1985, County Council issued Resolution No. 85-443 requesting, "pursuant to Section 23-81(21) of the [then] New Castle County Code," "that the Department of Planning give County Council a recommendation to consider voiding the existing record development plan for the project previously known as 'the Maples Apartments,' now known as 'Westhampton' in Millcreek Hundred." (D.I. 55 at A-10) [FN3] The purported bases for this request were that County Council (1) "[was] concerned with DPUD rezonings which have not been developed in a timely fashion"; (2) "[was] acutely [sic] interested in the quality of life in the county" and "housing density has a direct impact on that quality"; (3) "wishe[d] to have proper review of traffic, water and sewer facilities in support for the [Maples/Westhampton] project"; and (4) "desire[d] to have the subject project reviewed by the Subdivision Advisory Committee in light of the character of the existing neighborhood." (D.I. 55 at A-10) The record indicates that the only property having an approved record DPUD plan subject to County review at that time was the Property at issue. (D.I. 55 at A-10) There is no record of any consideration by the County of voiding the record development plan for the Property prior to plaintiff's purchase thereof, although the record shows that the status of said plan was "current" and "approved" for ten years prior to plaintiff's purchase of the Property. (D.I. 55 at A-3 to A-4, A-6)

In response to County Council's request for "a recommendation to consider voiding the existing record development plan for" the Property, Planning reported to County Council as follows:
> As directed by ... Resolution [No. 85-443], this Department has reviewed your request and has solicited comments from Artesian Water Company, New Castle County Department of Public Works, and [DelDOT], Division of Highways. Attached are their responses. [D.I. 55 at A-12 to A-14] In all three cases, they have indicated that adequate capacity exists to serve this project, recorded as a Major Land Development Plan for The Maples (Microfilm No. 2600). Accordingly, this Department sees no reason to recommend that you consider voiding [said] Record Plan.

(D.I. 55 at A-11)

Approximately two months later, then County attorney Gary Bryde sent a memorandum to County Council regarding Resolution No. 85-443. The memorandum states the following:
> *4 After review of the January 14, 1986 memo of Wayne W. Grafton, Director of Planning, to you and Council, it is my opinion that there is nothing remaining for Council to consider with regard to Resolution No. 85-443. Accordingly, I suggest that a letter or memo be sent to the Department of Planning indicating that it should now continue its review process in its normal course.
> My opinion is based upon Section 23-81(21) of the New Castle County Code, the memo of Scott A. Green, County Attorney, to Wayne W. Grafton dated 12/9/85, and the memo of Richard A. Hauge, Assistant County Attorney, to the Honorable Deborah Boulden dated 12/3/85.
> The operative language of Section 23-81(21) as it

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

applies to the matter is as follows:
"If construction has not been completed ... within five (5) years after the date of approval of the record development plan for the DPUD ... then the approval shall be voidable at the discretion of county council, upon recommendation of the department of planning.
This language indicates that the Department must affirmatively support the voiding of a record plan before Council's discretion comes into being. Without such prerequisite support, Council has no discretion to act. If this were not the case, review by the Department would be meaningless.
As part of its review as requested by Council's resolution relating to this ordinance, the Department actually solicited and received very similar input to that requested for approving a proposed final record plan. The letters supplied by Artesian Water, the Department of Public Works and the Division of Highways all indicate that adequate capacities presently exist for the proposed project. Thus, had the record plan been voided, the plan would have been subject to virtually the same review that it has just received.
     Therefore, the safeguards to prevent stale development have been met.
(D.I. 55 at A-15 to A-16 (emphasis added))

On March 11, 1986, County Council President Karen Peterson informed plaintiff that "according to the opinion" of County Council's attorney "regarding the status of Resolution No. 85-443," " 'there is nothing remaining for Council to consider with regard to Resolution No. 85-443.' " (D.I. 55 at A-17) The correspondence further explained that County Council had "not received any other ordinances or resolutions to be placed on Council's agenda with regard to this matter." (D.I. 55 at A-17)

During the period from approximately March 1986 to December of that same year, the record indicates that plaintiff and his representatives revised the development plan for the Property in order to address concerns raised by the County regarding the planned use of the development site. (D.I. 61, Exhibit A at ¶¶ 7, 13-16) On or around June 4, 1986, Planning informed plaintiff and other interested parties that his revised and updated

record plan, referred to as "SLD 85-343 (Westhampton)," "Microfilm Number 8034," was approved and recorded on April 18, 1986. (D.I. 55 at A-18) It appears from the record that this new plan replaced and modified the prior record plan, referred to as "SLD 70-193," "The Maples Apartments," "Microfilm No. 2600." (D.I. 55 at A-8 to A-9, A-47 to A-48, A-54, A-55, A-57, A-86, A-93) A revised record development plan referred to as "Westhampton" and reflecting the agreed-upon changes and revisions was approved and recorded on December 5, 1986. (D.I. 55 at A-23) According to the record, said plan "superseded" the approved plan recorded on April 18, 1986. (D.I. 55 at A-20)

*5 In 1987, County Council, together with various County agencies and officials, particularly Planning, undertook to substantially revise, update and amend the County's DPUD zoning ordinance. In October 1987, drafting of the amended version of the DPUD ordinance was substantially completed and County Council conducted a "workshop" with Planning officials regarding the amended ordinance. At the time of the workshop, the proposed DPUD amended ordinance contained a "savings clause" that provided as follows:
Section 4. This ordinance shall become effective immediately upon its adoption and approval except for rezoning applications currently pending DPUD approval which shall be exempt from the provisions of this ordinance, but subject to the provisions of the Code in effect at the time of rezoning to DPUD.
(D.I. 81, Exhibit 1 at 21) The proposed DPUD ordinance containing this savings clause, which County Council did not enact into law, was referred to as "Substitute Ordinance No. 1 to Ordinance No. 87-025."

As a result of the workshop, County Council and Planning apparently determined that certain changes in the language of this savings provision were necessary. (D.I. 81, Exhibit 3) Accordingly, Section 4 of the amended DPUD ordinance was revised to read as follows:
Section 4. This ordinance shall become effective immediately upon its adoption and approval

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

1993 WL 215133 (D.Del.)

**(Cite as: 1993 WL 215133 (D.Del.))**

Page 5

except for rezoning applications currently pending DPUD approval which shall be exempt from the provisions of this ordinance *except Section 23-81(18),* but subject to the provisions of the Code in effect at the time of rezoning to DPUD.
(D.I. 81, Exhibit 2 at 21 (emphasis supplied to highlight change in language)) The revised version of the proposed amended DPUD ordinance, referred to as "Substitute Ordinance No. 2 to Ordinance No. 87-025," ultimately was adopted by County Council on October 13, 1987. [FN4]

In 1988, plaintiff further revised his record development plan and submitted the revised plan for County review. On or around June 16, 1988, Planning informed plaintiff and other interested parties that development plan "SLD 88- 95 (Westhampton)" was approved, recorded and "assigned Microfilm Number 9236." (D.I. 55 at A-31) The record indicates that the 1988 record plan "supersede[d]" the "record plan of Westhampton recorded on" December 5, 1986. (D.I. 55 at A-27) It is undisputed that by December 1988, plaintiff already had expended in excess of $1,000,000 developing the Westhampton project, including expenses for mortgage interest, engineering fees and real estate taxes. (D.I. 55 at A-41 to A-46; D.I. 61, Exhibit A at ¶ 24)

On or around April 23, 1991, County Council once again introduced a Resolution "request[ing] that the Department of Planning provide County Council a recommendation in consideration of voiding the existing record development plan for the [Westhampton project]." (D.I. 30, Exhibit A) The purported bases for Resolution No. 91-107 were essentially identical to those set forth as justification for County Council's prior such request. The Resolution indicated that it was introduced "[p]ursuant to Section 23-81(21) of the New Castle County Code." (D.I. 30, Exhibit A)

*6 By correspondence dated April 25, 1991, Bryan C. Shuler, then Director of Planning, informed DelDOT that County Council "had asked the Department of Planning to prepare a recommendation regarding th[e Westhampton] project." (D.I. 55 at A-55) Shuler also stated in the correspondence that he was "enclos [ing] a copy of the current record plan (Microfilm No. 9236)," i.e., the record plan approved and recorded in 1988, and requested that DelDOT "review the plan and submit [its] written comments, if any, to the Department [of Planning]." (D.I. 55 at A-55 (emphasis added)) The correspondence further noted that "[o]f specific interest is the need to identify any issues that would preclude development of the site as depicted by the [record] plan." (D.I. 55 at A-55)

Similarly, in a memo from Shuler to County Council dated May 22, 1991, Shuler advised County Council that Subdivision Advisory Committee members "were asked to comment on [the approved Westhampton record plan] and identify any issues that might preclude development of the site as depicted by the plan." (D.I. 55 at A-60) The memo specifically noted that the plan under consideration for voiding was "the current record plan (Microfilm No. 9236)," i.e., the record development plan approved and recorded on June 16, 1988. (D.I. 55 at A-60) In his May 22, 1991 memorandum to County Council, Shuler also detailed various purported deficiencies in the Westhampton plan found to exist by the assortment of government agencies in response to Planning's request that the agencies "identify any issues that might preclude development" of the Westhampton project. Shuler acknowledged, however, that "[t]his situation can be remedied ... through voluntary revisions to the current plan...." (D.I. 55 at A-65)

In a letter dated May 29, 1991, plaintiff advised Planning that he intended to cooperate with Planning and the other involved governmental agencies to address and resolve the cited deficiencies. (D.I. 55 at A-66) Indeed, by June 1991, plaintiff completed a wetlands delineation report, the absence of which had been cited in the Shuler memo as one of the deficiencies in the existing record plan. (D.I. 55 at A-64 to A-67)

On or around July 2, 1991, County attorney Mitchell issued a legal memorandum for County Council setting forth his opinion regarding the issue

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Page 6

1993 WL 215133 (D.Del.)

**(Cite as: 1993 WL 215133 (D.Del.))**

of whether County Council had authority to lawfully void plaintiff's approved record development plan. Mitchell offered the following legal analysis:
  The current provision, codified as 23-81(18) of the New Castle County Code provides a sunset period of ten (10) years, rather than five (5) years.
  In addition, the current provision provides for review by the Department subsequent to the sunset date and staging of the development in accordance with adequate support facilities as determined by the Department.
  In determining the applicability of the two (2) provisions, Section 4 of Substitute Ordinance No. 1 to Ordinance No. 87-205 is paramount. That Ordinance amended the DPUD provisions. Section 4 provides:
  *7 This Ordinance shall become effective immediately upon its adoption and approval except for rezoning applications currently pending DPUD approval which shall be exempt from the provisions of this ordinance, but subject to the provisions of the code in effect at the time of rezoning to DPUD.
  In adopting the current DPUD provisions, the County Government expressly excluded any pending rezoning applications from the requirements of the revised DPUD Ordinance. Having included a "savings clause" in the current Ordinance, the rights of property owners who had DPUD zonings pending review at that time are governed by the statute in effect when the application was filed, not the newly-adopted provision. [citations omitted] While Section 4 of Substitute Ordinance No. 1 to Ordinance No. 87-025 expressly applies only to those rezoning applications currently pending DPUD approval, it can necessarily be implied that the intent of the County Government was that the then existing DPUD provisions applied to lands already rezoned to the DPUD classification.
  In light of the foregoing, the provisions of Ordinance No. 70-10 must be applied to the Plan of Westhampton. Pursuant to that Ordinance, the New Castle County Council does have the authority to void the [Westhampton] Plan upon recommendation from the Department [of Planning].
(D.I. 55 at A-69 to A-71 (citations omitted)

(emphasis added))

During the period from May 1991 to April 1992, plaintiff continued his efforts to remedy any and all purported deficiencies in the Westhampton plan. (D.I. 61, Exhibit A at ¶¶ 35 to 44 and documents cited therein) Said efforts included the filing of a revised plan for Planning review and approval which incorporated the required changes. (D.I. 55 at A-83 to A-85) In early September 1991, Planning allegedly informed plaintiff that he had complied with all material deficiencies set forth in the May 22, 1991 Shuler memo. (D.I. 55 at A-78) As of April 2, 1992, the "majority of the substantive issues [identified as deficiencies in plaintiff's record plan were] resolved." (D.I. 55 at A-89 to A-90) By memorandum of that date, Planning official Shuler advised County Council that "the only remaining issue with respect to our memo of May 22, 1991, is access through the Oakwood Hills subdivision" and that "[s]hould Council be of the opinion that this issue warrants voiding of the plan, the Department would recommend that it proceed with action on Resolution No. 91-107 as this appears to be the only method of bringing closure on this issue." (D.I. 55 at A-90)

On April 14, 1992, County Council enacted Ordinance No. 91-190 voiding the approved record development plan for Westhampton project. (D.I. 30, Exhibit D) It is undisputed that this was and is the only instance in which the County has ever voided an existing DPUD record plan. (D.I. 61, Exhibit A at ¶ 48)

On April 15, 1992, only one day later, defendant Philip Cloutier, then a member of County Council, informed Planning official Shuler that "[p]ursuant to Section 23-85.1(1)(c) [of the New Castle County Code], I will introduce an ordinance to change the zoning classification of [plaintiff's] property" from DPUD back to R-2, the Property's zoning classification prior to its rezoning to DPUD in 1971. (D.I. 55 at A-93)

*8 In correspondence dated May 27, 1992, Shuler provided certain information to Shirley Agnor, Clerk of the County Council, regarding the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 7
1993 WL 215133 (D.Del.)

**(Cite as: 1993 WL 215133 (D.Del.))**

proposed zoning ordinance. (D.I. 55 at A-96) Shuler included in said correspondence his recommendation that the title of the proposed ordinance contain information indicating that, under the proposed ordinance, the property would be rezoned "from DPUD (Diversified Planned Unit Development) to R-2 (Agricultural and General Purpose)." (D.I. 55 at A-96) As required by statute, legal notice of the proposed zoning ordinance appeared in the News Journal on June 20, 1992. (D.I. 55 at A-97, p. 4) Consistent with Shuler's recommendation, the title of the proposed ordinance contained in the notice informed the public that the ordinance, if enacted, would rezone the subject Property from DPUD to an R-2 zoning classification.

On July 7, 1992, a statutorily required hearing was held before the New Castle County Department of Planning and Planning Board concerning the proposed rezoning amendment. (D.I. 30, Exhibit F) Two weeks later, Planning issued its recommendation regarding the proposed ordinance. (D.I. 55 at A-99) Planning recommended the adoption of a substitute ordinance to proposed Ordinance 92-119. The recommended substitute ordinance, instead of rezoning the subject Property from DPUD to R-2, would rezone the Property from DPUD to R-1-B. (D.I. 55 at A-99, page 4)

On September 9, 1992, County Council adopted Substitute 1 to Ordinance No. 92-119 rezoning the Property from the DPUD zoning classification to a much more restrictive R-1-B classification. (D.I. 30, Exhibit G) It is undisputed that all notices predating the meeting indicated that the proposed ordinance contemplated, as stated in the proposed ordinance title, a rezoning from DPUD to an R-2 classification. (D.I. 55 at A-96 and A-97, p. 4) The rezoning of the subject Property precluded plaintiff from constructing the 322-unit apartment complex he had been planning and developing, with County approval, for seven years at a cost of over $1,000,000.

IV. DISCUSSION

Plaintiff's Amended Complaint asserts constitutional claims grounded on alleged violations of his substantive due process, procedural due process and equal protection rights found in the Fourteenth Amendment to the Constitution. Defendants contend they are entitled to summary judgment as to plaintiff's constitutional claims. Additionally, the individual moving defendants, who were members of County Council at all relevant times hereto, assert that they are entitled to legislative and qualified immunity.

A. Summary Judgment Standard

Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, "inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

B. Due Process Claims

*1. Protected Property Interest*
*9 Defendants' first argument in support of their motion for summary judgment as to plaintiff's due process claims is that plaintiff had no protected property interest grounded in state law in either his existing record development plan or in the DPUD zoning classification with respect to the Property.
It is well-settled that for a plaintiff to recover on a due process claim, he must prove that the defendant governmental authority "infringed a property interest encompassed by the Fourteenth Amendment." *Midnight Sessions, Ltd. v. City of Philadelphia,* 945 F.2d 667, 679 (3d Cir.1991), *cert. denied,* 112 S.Ct. 1668 (1992). "A property interest subject to protection by the due process clause results from a 'legitimate claim of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Page 8

1993 WL 215133 (D.Del.)

**(Cite as: 1993 WL 215133 (D.Del.))**

entitlement' created by an independent source such as state law." *Id.* (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

State, county and municipal law may create a property interest in building permits, use licenses (such as a liquor license) and zoning classifications where said law gives the property owner a "legitimate claim of entitlement" thereto. *See, e.g., Abraham v. Pekarski*, 728 F.2d 167, 170-71 (3d Cir.1984); *see also Midnight Sessions, Ltd., supra* at 679-80. The cases cited by defendants in support of this argument, and the cases cited therein, exemplify the operation of these legal principles. For example, defendants place heavy emphasis upon the Third Circuit's recent opinion in *Midnight Sessions, Ltd.* In that case, the court considered whether a property owner who had applied unsuccessfully for a permit to operate an all-night dance hall had a property interest in the issuance of said permit based on a provision of Pennsylvania state law which "preclude[d] issuance of a license until it has been ascertained that the facility complies with 'all laws, ordinances, health and fire regulations, applicable thereto, and is a safe and proper place for the purpose for which it shall be used.' " *Id.* at 679. The Court of Appeals concluded that this provision did not create a property interest in the issuance of the permit. The court determined that the "safe and proper place for the purpose for which it shall be used" language precluded a legitimate claim of entitlement since said language gave the relevant government agency complete discretion to issue the permit depending upon whether it considered the subject property to be a "safe and proper place for" an all-night dance hall.

In *Midnight Sessions, Ltd.*, the Third Circuit also cited, with approval, a number of other federal cases where "different results were reached ... because the local law was different and justified a claim of entitlement." *Id.* at 680. These cases cited by the Third Circuit reflect the type of situation, and the kind of local law, where a legitimate claim of entitlement to building permits and the like properly is found to exist. For example, in *Littlefield v. City of Afton*, 785 F.2d 596, 601 (8th Cir.1986), the court concluded that the plaintiff land developer had a property interest in the issuance of a building permit where, under relevant state law, "[i]f the landowner complie[d] with the [applicable local] laws and codes, the municipality lack[ed] discretion" to deny the permit. Since the plaintiff developer had complied with all the legal requirements contained in the applicable municipal ordinances, the court correctly concluded that he had a protected property interest in the issuance of the permit. *Id.* at 602.

*10 In the case at bar, the Court concludes that plaintiff had a protected property interest both in the record development plan and in the DPUD zoning classification with respect to the Property, and further concludes that said property interest was derived, independently, both from New Castle County law and from Delaware state law sources.

a. Property Interest Arising From County Law
The record demonstrates that in 1992, County Council relied upon New Castle County Code § 23-81(21), the "five-year sunset provision" repealed in October 1987, as authority for its power to void plaintiff's record plan. [FN5] Assuming, for purposes of these summary judgment proceedings, that the five-year sunset provision contained in repealed Code § 23-81(21) was properly applied in connection with County Council's efforts to void plaintiff's record development plan, it nonetheless is clear that said provision gave plaintiff a legitimate claim of entitlement to the continuing validity of the record plan and the zoning classification to which it related, and to develop the Property consistent therewith.

The five-year sunset provision of repealed Code § 23-81(21) stated that "[i]f construction has not been completed ... within five (5) years after the date of approval of the record development plan for the DPUD ... then the approval shall be voidable at the discretion of county council, upon recommendation of the department of planning." (D.I. 81, Exhibit 2 at 20) In an effort to convince the Court that the five-year sunset provision does not create a legitimate claim of entitlement, defendants argue as follows:

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.