Not Reported in F.Supp.  
1993 WL 215133 (D.Del.)  
**(Cite as: 1993 WL 215133 (D.Del.))**

Page 9

When the zoning ordinance under which a rezoning is enacted allows for the voiding of the Record Development Plan, at the discretion of County Council, upon recommendation from the Department of Planning (also discretionary), there is no [claim of] "entitlement" under the due process clause. Such "double" discretion defeats plaintiff's claim to any property interest in the record development plan. *Midnight Sessions,* 945 F.2d at 679.

(D.I. 32 at 8)

The Court disagrees with defendants' contention. First, defendants seem to concede, as they must, that during the five-year "sunset" period, County Council had no authority whatsoever to void record DPUD development plans. Accordingly, it is clear that plaintiff had a property interest arising from said provision insofar as it gave him a legitimate claim of entitlement to develop the Property, consistent with his approved record plan and the DPUD zoning classification, for a period of "five (5) years after the date of approval of the record development plan for the DPUD." The record clearly indicates, as a factual matter, that the "existing" "record plan" which County Council voided in 1992, i.e., the "record plan of Westhampton" with "microfilm No. 9326," was the record plan approved and recorded in 1988. (D.I. 55 at A-27, A-54, A-55, A-57, A-60, A-64, A-68, A-93) Accordingly, the requisite five-year period had not yet elapsed in 1992 when County Council acted to void plaintiff's record development plan. [FN6]

*11 Additionally, the five-year sunset provision clearly requires, as County Council was well aware from the legal advice given by its attorney in a memorandum dated March 5, 1986, "that the Department [of Planning] must affirmatively support the voiding of a record plan before Council's discretion comes into being [and that] [w]ithout such prerequisite support, Council has no discretion to act." (D.I. 55 at A-15 to A-16) This language, therefore, similarly creates a legitimate claim of entitlement because it gave plaintiff the right to pursue development of his approved DPUD project without County interference, even after the expiration of the five-year sunset period, unless and until Planning "affirmatively support[ed] the voiding of [plaintiff's] record plan." Taking the facts of record in a light most favorable to plaintiff, as the Court must in summary judgment proceedings, the recommendation given by Planning here (D.I. 55 at A-89 to A-90) cannot reasonably be considered "affirmative support [for] the voiding of [plaintiff's] record plan."

If this Court were to assume, in the alternative, that the five-year sunset provision contained in repealed Code § 23-81(21) could not be applied lawfully in 1992 and that only the new ten-year sunset provision contained in current Code § 23-81(18) was properly applicable, it nonetheless is clear that the current provision also created a legitimate claim of entitlement. Significantly, the current ten-year sunset provision contains no language providing County Council with any authority to void record development plans. Indeed, rather than imposing a limitation on the amount of time a developer has to complete development of a DPUD project, the language of Code § 23-81(18) provides that "[t]he landowner shall have ten (10) years ... to develop the parcel as proposed." Such language indicates that a developer will have at least ten years to complete his DPUD project, without County interference. Even after the ten-year period has expired, the plain language of Code § 23-81(18) indicates that a developer, if he "desires," may proceed with the DPUD project, without County interference, by complying with certain requirements; namely, the developer "must submit, to the department of planning, current support facilities information demonstrating the impact on and availability of traffic, sewers, water and open space." (D.I. 81, Exhibit 2 at 20-21) At that point, Planning reviews the information and determines "whether such facilities are adequate for the development as originally established." (D.I. 81, Exhibit 2 at 20-21) "If the support facilities are deemed adequate, the landowner can proceed with the development as shown on the original rezoning ordinance." Significantly, Code § 23-81(18) further provides that even "[i]f the support facilities are determined to be inadequate, only that portion of the development which can be supported by

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1993 WL 215133 (D.Del.)  
**(Cite as: 1993 WL 215133 (D.Del.))**

Page 10

existing facilities will be allowed to proceed and the balance of the development will be staged based upon the availability of support facilities, if at all." (*Id.*)

**\*12** The Court thus concludes that plaintiff had a protected property interest in the Westhampton record development plan and DPUD zoning classification, that such protected property interest was grounded in New Castle County law, and that such protected property interest existed irrespective of whether the five-year or ten-year sunset provision lawfully applied in 1992 when plaintiff's record development plan was voided.

b. Property Interest Arising Under Delaware State Law

Turning to applicable state law, it appears that even if plaintiff did not obtain a property interest based on a legitimate claim of entitlement arising from the New Castle County ordinance and Code provisions discussed in the foregoing, he nonetheless acquired such an interest from Delaware state law.

Defendants contend that "[a] developer has no vested rights in a zoning classification" and that this "rule is absolute." (D.I. 75 at 2) In support of these assertions of law, defendants cite the Delaware Supreme Court case of *Shellburne, Inc. v. Roberts,* 224 A.2d 250, 255 (Del.1966), where the court stated that "a property owner has no vested right in a zoning classification." The Delaware Supreme Court did not limit its discussion to the one holding cited by defendants, however, but went on to explain as follows:

> It is generally recognized that the issuance of a permit does not, alone, confer any right against a later zoning change subsequently adopted. The acquisition of vested rights requires more. As of the time of the zoning change, there must have been a substantial change of position, expenditures, or incurrence of obligations, made lawfully and in good faith under the permit, before the land owner becomes entitled to complete the construction and to use the premises for a purpose prohibited by a subsequent zoning change.

*Id.* at 254.

Subsequent Delaware cases have applied the vested rights doctrine and closely related equitable estoppel doctrine to a broad range of circumstances. *See, e.g., Wilmington Materials, Inc. v. The Town of Middletown, Delaware,* 1988 WL 135507, Del. Ch. LEXIS 157, Civil Action No. 10392 (Del. Ch.1988); *Dragon Run Farms, Inc. v. The Board of Adjustment of New Castle County,* 1988 WL 90551, 1988 Del.Super. LEXIS 297, Civil Action No. 88A-JA-2-1-AP (Del.Super.1988); *Raley v. Stango,* 1988 WL 81162, 1988 Del Ch. LEXIS 105, Civil Action No. 1047-S (Del.Ch.1988); *New Castle County v. Mitchell,* Civil Action No. 6231, slip op., reported in 1981 WL 15144, LEXIS Del.Ch. file (Del.Ch. Nov. 25, 1981).

In *New Castle County v. Mitchell,* the Court of Chancery set forth and applied the following legal principles:

> In general terms the rule is that where the permit is regularly issued in accordance with the zoning ordinance, it may not be revoked after reliance. It must be determined at what point it can be said that an individual has performed acts which form the wellspring from which certain protectable interests may flow and create a countervailing force which will prevail over the normally paramount authority of the municipality to preserve the desirable characteristics of the community through zoning.
> **\*13** There is no easy formula to resolve issues of this kind. The ultimate objective is fairness to both the public and the individual property owner. We think there is no profit in attempting to fix some precise concept of the nature and quantum of reliance which will suffice. Rather a balance must be struck between the interests of the permittee and the right and duty of the municipality. [FN7]
> 
> \* \* \*
> 
> What "action" is sufficient to secure a vested right is a question of fact and degree in each case ... While ordinarily, courts stress actual construction pursuant to a validly issued permit, other courts, more realistically, lay stress upon a change of position which has committed the permittee to substantial expenditure or which has

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.    Page 11
1993 WL 215133 (D.Del.)
**(Cite as: 1993 WL 215133 (D.Del.))**

resulted, wholly or partially, in a physical change in the land or improvements thereon. [FN8]
(Internal quotations omitted) (emphasis added) The court went on to adopt the principle "that because there seems to be no hard and fast rule in these situations, that to a great extent, the decision of the courts in such type of case involves a balancing of the equities." *New Castle County v. Mitchell, supra.*

In applying these principles, which are fully consistent with the legal principles set forth in *Shellburne v. Roberts,* [FN9] the court held as follows:

> In the instant case, there exist the following considerations to be looked into in balancing the equities. (1) The ordinance was proposed and enacted following the issuance to the defendants [land owners] of a state license, (2) defendants had to comply with the strict provisions of 24 Del. C. § 1601 et seq. in order to obtain such a license, (3) defendants' type of business is legal under existing Delaware law and was permitted to be carried out in an area zoned C-2 at the time a State license was applied for, (4) defendants had no knowledge or reason to know of the proposed zoning change, (5) there was no reason for defendants to suspect that the required building permit as well as a use permit would not be granted, (6) at the time of the original alterations [to the building on their property], which were made prior to June 25 [when an application for a certificate of occupancy was filed], defendants were not required to have a building permit, (7) there was no testimony of any substantial change in the character of the area in question which would have put defendants on notice even though the new zoning was part of a comprehensive plan, (8) defendant Mitchell signed a lease conditioned on his obtaining a State license and thereby became obligated to pay rent, (9) defendants acted promptly on the issuance of the license, but because the defendant Mitchell had no knowledge of the imminence of the proposed change on zoning, he cannot be charged with seeking to establish his adult book center in order to beat a deadline.

*New Castle County v. Mitchell, supra* at 6. The court then offered the following in support of its ultimate ruling:

> *14 Admittedly the State license as such gives no immutable right to a zoning classification, nor is individual financial loss controlling in determining whether or not zoning has been properly carried out under the police power. Additionally, there exists no prescribed formula as to what degree of reliance is tantamount to a substantial change of position, including the making of expenditures, and the incurrence of obligations, made lawfully under the permit. Notwithstanding the above, and upon consideration of all factors previously enumerated, coupled with the fact that the defendant Mitchell does not operate a large corporation but is rather an individual whose livelihood is derived from two incorporated and legal business establishments, one ow which the County with some vindictiveness is seeking to shut down, there is ... only one conclusion to be reached, namely that defendants have acquired vested rights in their [adult entertainment] establishment ... and that the principle of estoppel entitles them to continue the operation of their business at such location.

*Id.*

The *New Castle County v. Mitchell* case, and the principles of law set forth therein, are relevant to the matter at bar in a number of significant respects. First, *New Castle County v. Mitchell* fully rebuts defendants' contention that, under Delaware law, "a landowner has no vested right to continue to develop property after an adverse zoning change unless, prior to the zoning change, he had obtained a building permit and materially changed his position in reliance upon the permit." (D.I. 75 at 3) The *Shellburne v. Roberts* case itself did not contain any such holding. The vested rights doctrine clearly is a broader and more flexible legal theory than defendants acknowledge. [FN10] The *New Castle County v. Mitchell* case correctly recognizes that issuance of a building permit is not a talisman necessary for application of the vested rights/equitable estoppel doctrines. Indeed, in *Mitchell* the court relied not upon the issuance of a building permit as the source for detrimental

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1993 WL 215133 (D.Del.)

**(Cite as: 1993 WL 215133 (D.Del.))**

reliance on the part of the property owner, but instead upon the issuance of a state license authorizing operation of an adult entertainment center. Moreover, the court established and applied the principle "that because there seems to be no hard and fast rule in these situations, that to a great extent, the decision of the courts in such type of case involves a balancing of the equities." *New Castle County v. Mitchell, supra.*

In *Wilmington Materials, supra,* another Delaware case involving facts quite analogous to the circumstances at bar, the court similarly applied the vested rights/equitable estoppel doctrines in concluding that a landowner was entitled to develop his property consistent both with previously approved construction plans and with a prior zoning classification, despite the fact that the local legislative council had passed an ordinance precluding the development.

*15 In connection with the property owner's claim under the vested rights doctrine, the court in *Wilmington Materials* accepted the theory that the plaintiff had "substantially relied upon the then-current zoning classification at the time of its application [for a building permit], and thereby obtained a vested right that could not be abrogated by an adverse change in that zoning classification." *Wilmington Materials, supra* 1988 WL 135507 at *6, 1988 Del.Ch. LEXIS 157 at *18. The court quoted language from the Delaware Supreme Court's decision in the *Shellburne v. Roberts* case, and held that "[a]lthough *Shellburne* involved a vested right to the issuance of a building permit, the governing principle is the same where (as here) the claim is to a vested right in an existing zoning classification." *Wilmington Materials, supra* at *6-*7, 1988 Del.Ch. LEXIS 157 at *18-*19 (citing, inter alia, *Raley v. Stango, supra,* slip op. at 8).

As to the closely-related equitable estoppel doctrine, the court explained as follows:

> The estoppel doctrine has been applied where a landowner was induced to expend substantial sums in reasonable, good faith reliance upon governmental assurances (or equivalent conduct) that the landowner's intended use of the property is permitted under the zoning code, and thereafter the government attempts to thwart that land owner's plans by amending the zoning code to prohibit those very intended uses. In such circumstances, the local governmental authority has been held equitably estopped from applying the amended zoning regulation to the landowner.

*Wilmington Materials, supra* at *6-*7, 1988 Del.Ch. LEXIS 157 at *19-*20 (citations omitted).

In applying the vested rights doctrine to the facts before it, the court in *Wilmington Materials* focused on two factors: (1) Whether the landowner relied on assurances by governmental officials regarding its ability to develop the property in a manner consistent with the prior zoning classification, and with approved construction and development plans; and (2) Whether the landowner's expenditures incurred on the basis of such reliance were sufficiently substantial as to give rise to a vested right. *Id.* at *7-*8, 1988 Del.Ch. LEXIS 157 at *21-*24.

In concluding that the plaintiff in *Wilmington Materials* had satisfied the first of these two prongs, the court opined:

> WMI [the plaintiff land developer] acted under a reasonable and good faith belief that the current Zoning Code would apply to, and permit, its intended uses. Mr. Daley's [the Town Solicitor] opinion, which was issued on behalf of the Town with the Mayor's tacit, if not express, imprimatur, made it reasonable for WMI to form that belief. That belief was reinforced by the absence of any challenge to that opinion for over six weeks. Accordingly, [the court] find[s] that WMI prepared its application to the Town for the various required approvals, and for that purpose incurred $88,000 of expenses, in reasonable reliance upon the aforementioned belief and expectation.

*Id.* at *7, 1988 Del.Ch. LEXIS 157 at *21.

As to the second factor, the court concluded the following:

> *16 What level of expenditure will suffice to constitute substantial reliance cannot be determined by any magic formula. That inquiry

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 13
1993 WL 215133 (D.Del.)
**(Cite as: 1993 WL 215133 (D.Del.))**

is necessarily fact specific and must take into account all relevant circumstances. In these specific circumstances, [the court] find[s] WMI's expenditures sufficient to establish substantial reliance. Two factors are material to that conclusion. First, the $88,000 dollar amount, standing alone, would appear significant for a small local firm such as [plaintiff]. *See Board of Supervisors of Fairfax County v. Medical Structures, Inc.,* Va.Supr., 192 S.E.2d 799, 801 (1972) (Expenditure of $59,600 for engineering and structural plans, plus other considerable development costs, established substantial reliance). Second, any reasonable doubt should be resolved in WMI's favor, because ... it would be unconscionable, in this instance, to permit the Town, by its zoning amendment, to defeat WMI's expectations and reliance.
*Id.* at *8, 1988 Del.Ch. LEXIS 157 at *23-*24.

In finding that those same basic facts supported a claim under the equitable estoppel doctrine, the court in *Wilmington Materials* opined:
Clearly the Town, acting through its officials, engaged in conduct that it knew or should have known would (and, in fact, did) induce substantial reliance by WMI. The Mayor caused the Town Solicitor to issue an official, formal opinion advising WMI that its intended uses were permitted under the Zoning Code. At the August 17 meeting with the Mayor and other Town officials, Mr. Corrado [one of WMI's principals] specifically told those present that WMI would be moving forward in furtherance of its plans, and that it would incur expenses and financial obligations. He asked those present if there were any reason why WMI should not proceed, and no one spoke up. Specifically, no Town official responded negatively, or with a caveat that WMI's plans were subject to approval by the Town Council and that any expenditures WMI incurred would be at its own risk. Thus, the Town's conduct could only be viewed as a "green light" for WMI to proceed to prepare its application, with assurance that zoning would not be an issue.
Finally, to permit the Town to defeat WMI's proposal by applying the zoning amendment to it retroactively, would be highly inequitable. The Zoning Code amendment was not adopted out of "police power" considerations, i.e., policy concerns for the health, safety or general or moral welfare of the community. Those broad issues had already been resolved when the Code was adopted in January, 1987, only 23 months before, after extensive study and hearing process. Rather, the purpose for the zoning amendment was to prevent lawful use of the land by WMI, motivated by a vocal protest movement that included a petition signed by many objecting citizens.
*Id.* at *8-*9, 1988 Del.Ch. LEXIS 157 at *24-*26. The court accordingly enjoined the Town from enforcing its zoning amendment so as to prevent the landowner from developing its property under the prior zoning classification. [FN11]

*17 As discussed above, defendants contend that this Court should not rely upon the *Wilmington Materials* and other lower Delaware state court cases discussed herein on the ground that they are inconsistent with applicable Delaware Supreme Court precedent, particularly as to the equitable estoppel doctrine. Defendants contend that "[t]he Supreme Court of Delaware has never accepted the theory that equitable estoppel can be applied against a governmental entity exercising its governmental functions." (D.I. 75 at 7-8) Defendants' contention in this regard is refuted by relevant Delaware caselaw, including a Delaware Supreme Court case decided in 1991.

In *State of Delaware v. Raley,* 1991 WL 18114, 1991 Del.Super. LEXIS 40 (Del.Super.), *aff'd,* 604 A.2d 418, 1991 WL 235357, 1991 Del. LEXIS 327 (1991), a criminal case involving application of the vested rights and equitable estoppel doctrines, defendant Raley, a landowner, was charged with violation of certain Delaware marina regulations which were promulgated subsequent to the time when he received approval to build his marina facility. Although the Delaware Superior and Supreme courts found against Raley on his vested rights and equitable estoppel claims, the courts' discussions of those legal theories refute defendants' narrow interpretation thereof.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.         Page 14
1993 WL 215133 (D.Del.)
**(Cite as: 1993 WL 215133 (D.Del.))**

The Superior Court's decision in *State v. Raley, supra* at *3-*4, 1991 Del.Super. LEXIS 40 at *9-*10, contains the following explanation of the vested rights doctrine:

> The underlying basis for the vested rights doctrine is a recognition that the imposition of government regulation of an intended use of a person's land once he has reached a certain point in achieving his goal, by incurring substantial expenditures or obligations, constitutes a due process violation. The State's imposition of the Marina Regulations constitutes a land-use regulation, very similar to a zoning ordinance. Accordingly, if the doctrine's requisite elements are present here, then the vested rights doctrine applies.
> If Raley has a constitutionally-protected vested right to continue building this marina as planned, then DNREC may not require him to obtain a permit under the Regulations.

(Footnotes and citations omitted) In applying the vested rights doctrine, the court determined that Raley had not incurred substantial expenditures or obligations in a good faith belief that the newly-promulgated Marina Regulations would not impede his ability to construct the marina facility.

It is significant to note the broad characterization of the vested rights doctrine as explained by the Superior Court in *Raley*. This Court would note also that the Superior Court in *Raley* cited with approval the *Wilmington Materials* and *New Castle County v. Mitchell* cases discussed above.

As to the equitable estoppel doctrine, the Superior Court, quoting from the *Wilmington Materials* decision, explained as follows:

> Under the estoppel doctrine, a municipal government or zoning authority may be estopped from exercising its zoning power where a property owner, relying in good faith upon an act of a municipal government, has made a substantial change in its position, or has incurred such extensive obligations and expenses, that it would be highly inequitable and unjust to subject the owner to the zoning change.

*18 *State v. Raley, supra* at *6, 1991 Del.Super. LEXIS 40 at *15-* 16 (citing cases). Again, although the court determined that the equitable estoppel doctrine could not be applied in Raley's favor based on the facts of that case, the court's characterization of that doctrine and its reliance on the *Wilmington Materials* decision is significant.

The Delaware Supreme Court, characterizing the Superior Court's conclusions in *Raley* as "supported by the evidence and the product of a logical and deductive reasoning process," affirmed. In affirming, the Supreme Court gave its tacit if not express approval of the Superior Court's characterizations of the vested rights and equitable estoppel doctrines and of the manner in which the lower Delaware courts had expanded those theories. As to the vested rights doctrine, the court opined:

> The vested rights doctrine protects the holder of an administrative permit from the retroactive application of new regulations. The doctrine does not afford protection, per se, but applies only where the holder of the permit has substantially changed position, in good faith, by incurring obligations or making substantial expenditures before the new regulations are adopted.

*State v. Raley, supra* 1191 WL 235357 at *3, 1991 Del. LEXIS 327 at *8-*9 (citing *Shellburne, Inc. v. Roberts, supra* ). Likewise, as to the equitable estoppel doctrine, the court held:

> The trial court also determined Raley's estoppel argument to be unavailing because it found no substantial change of position and because it concluded that there had been no act by DNREC upon which Raley could reasonably rely. A substantial change in circumstances based on a good faith reliance upon another's act is required for the estoppel doctrine to apply. *Wilson v. American Ins. Co.*, 209 A.2d 902 (1965). [T]here is evidence in the record to support the conclusion that Raley has not substantially and in good faith changed position.

*Raley v. State, supra* at *4, 1991 Del. LEXIS 327 at *10-*11. Thus, rather than refusing to "accept[ ] the theory that equitable estoppel can be applied against a governmental entity exercising its governmental functions" (D.I. 75 at 7-8), the Delaware Supreme Court readily accepted such a theory as a valid application of Delaware law, although on the facts in *Raley* the court declined to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1993 WL 215133 (D.Del.)

**(Cite as: 1993 WL 215133 (D.Del.))**

apply the doctrine. Moreover, the Delaware Supreme Court's characterization of the vested rights doctrine is quite broad.

In applying these principles to the case at bar, it is clear that Delaware law provided plaintiff with a protected property interest both in his approved record development plan and in the DPUD zoning classification with respect to the subject Property.
The relevant inquiry, under either the vested rights doctrine or the equitable estoppel doctrine, reduces itself to whether plaintiff, reasonably and in good faith, relied on assurances by governmental officials regarding his ability to develop the subject Property in a manner consistent with the DPUD zoning classification and with the officially-approved record development plan, and whether his expenditures incurred on the basis of such reliance were sufficiently substantial as to give rise to a vested right or to application of equitable estoppel.
If both questions are answered in the affirmative, then plaintiff has a right under Delaware law to develop the Property without regard to subsequent zoning or similar changes which would preclude such development. The record in this case demonstrates that the County and its officials, including County Council, through their assurances and conduct, gave plaintiff a reasonable, good faith belief and expectation that he would be entitled to develop the subject Property under the DPUD zoning classification and in a manner consistent with his approved record plan, and that plaintiff reasonably relied thereon to his substantial detriment.

**\*19** It is undisputed that the existence of an approved record development plan, together with an approved DPUD zoning classification, were crucial factors in plaintiff's decision to purchase the subject Property. The record demonstrates that, prior to closing for the purchase of the Property, plaintiff sought and received assurances from County officials regarding the zoning and record plan status of the Property. (D.I. 55 at A-6) It is undisputed as well that plaintiff paid a premium of approximately $900,000 in reliance upon the above factors. (D.I. 61, Exhibit A at ¶ 3)

Defendants seek to rebut this conclusion by contending that the Property's "purchase price is not [properly] considered for purposes of determining vested rights." (D.I. 56 at 8 (citing *Raley v. Stango, supra,* slip op. at 9-10)) In *Raley,* although the court found that "acquisition costs are not includable as a general rule," the court specifically left open the possibility that "if a portion of the purchase price represented a premium directly related to the intended use, the premium arguably could be considered under a substantial reliance test." *Raley, supra* at \*4, 1988 Del.Ch. LEXIS 105 at \*11-\*12. Thus, although on the facts before it the court in *Raley* concluded that "there [was] nothing in [the] record to establish that Raley paid any such premium," the court did not preclude such a finding. The Court concludes the instant case presents facts supporting such a finding.

The facts of record also indicate that plaintiff, in connection with the Westhampton project, incurred substantial expenditures (over $1 million to date) and expended considerable effort in preparing various development plans; in negotiating with County officials, planners and engineers in an effort to resolve the various purported deficiencies; and in carrying out remedial measures regarding those deficiencies. (D.I. 55 at A-8, A-18 to A-23, A-64 to A-67, A-72 to A-74, A-78, A-83 to A-90; D.I. 61, Exhibit A at ¶¶ 7, 13-18) Indeed, County officials continued to reinforce plaintiff's well-founded expectations regarding his ability to develop the Westhampton project by officially approving and recording his modified, superseding development plans, including the 1988 plan, that incorporated, and apparently were filed as a result of, the various purported deficiencies noted and modifications requested by County planning officials. [FN12] Even after County Council introduced its 1991 resolution seeking to void plaintiff's record development plan, Planning officials continued to conduct themselves in a manner such that plaintiff could have reasonably concluded, and did conclude, that he would be allowed to resolve any noted deficiencies or other problems in connection with Westhampton and, thereby, to continue the DPUD development. (D.I. 55 at A-64 to A-67, A-78, A-83 to A-85)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 16
1993 WL 215133 (D.Del.)

**(Cite as: 1993 WL 215133 (D.Del.))**

Reviewing these facts in a light most favorable to plaintiff and under settled and well-reasoned principles of Delaware law, the Court concludes that plaintiff's substantial expenditures and efforts, undertaken in reasonable reliance on the conduct of the County and its representatives, form the basis for a valid claim of vested rights both in the voided development plan and in the removed DPUD zoning classification, and, alternatively, for a valid claim that the County should be equitably estopped from enforcing its ordinances so as to deprive plaintiff of these rights and of developing the Property consistent therewith.

c. Pullman Abstention

*20 Defendants contend that the Court should dismiss this action under the *Pullman* abstention doctrine, *see Railroad Comm'n of Texas v. Pullman,* 312 U.S. 496 (1941), on grounds that (1) the lower Delaware court cases relied upon herein, *i.e.,* the *New Castle County v. Mitchell, Raley* and *Wilmington Materials* cases, are "conflicting" with the Delaware Supreme Court's decision in *Shellburne, Inc. v. Roberts,* and (2) "[t]o the extent this Court ... makes a determination that equitable estoppel applies, it would be venturing onto legal waters uncharted by Delaware's highest court." (D.I. 75 at 10) [FN13]

"[T]he Supreme Court has recognized that abstention is an 'extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to state court would clearly serve an important countervailing interest.' " *Heritage Farms, Inc. v. Solebury Township,* 671 F.2d 743, 746 (3d Cir.1982) (quoting *County of Allegheny v. Frank Mashudo Co.,* 360 U.S. 185, 188-89 (1959)). The Third Circuit has held that "the mere presence of a potentially dispositive question of state law ... has never been a sufficient basis in itself for declining federal jurisdiction under Pullman. The doctrine requires that the question of state law be unsettled." *Heritage Farms, Inc.,* 671 F.2d at 747 (internal quotations and citation omitted) (emphasis in original).

In the case at bar, the Court will deny defendants' request for *Pullman* abstention because the state law principles upon which the Court relies in this decision are not unsettled. As indicated throughout the foregoing discussion, the Court finds that the well-reasoned lower Delaware court decisions relied upon herein are fully consistent with the Delaware Supreme Court's opinion in the *Shellburne, Inc. v. Roberts* case. Moreover, although said decisions may have expanded the vested rights and equitable estoppel doctrines, this does not make Delaware law unsettled regarding these principles. *See Raley v. State of Delaware,* 1991 WL 235357, 1991 Del. LEXIS 327.

A recent Sixth Circuit case, involving closely analogous facts and a strikingly similar body of forum law in relation to the matter at bar, provides support for the Court's conclusions that plaintiff had a property interest in the Westhampton record development plan and DPUD zoning classification under Delaware law and that *Pullman* abstention should not be exercised here.

In *Nasierowski Brothers Investment Company v. City of Sterling Heights,* 949 F.2d 890 (6th Cir.1991), the Sixth Circuit was presented with an appeal where the district court had concluded that the plaintiff-landowner did not have a protected property interest under Michigan vested rights doctrine "because he had not obtained a building permit and had not commenced construction of the development prior to the time at which [the subject property] was rezoned." *Id.* at 897. Significantly, the body of forum law upon which the district court relied in reaching this conclusion was substantially similar to the body of Delaware law applicable in the instant case. Much like the relevant Delaware law, Michigan law embodied a state Supreme Court case which provided a narrow view of the vested rights doctrine and a more recent case decided by a lower court which broadened the doctrine. In *City of Lansing v. Dawley,* the Supreme Court of Michigan opined as follows:

*21 [T]he first work done upon the new building was three months after the ordinance went into

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1993 WL 215133 (D.Del.)  
**(Cite as: 1993 WL 215133 (D.Del.))**

Page 17

effect and after the defendant had been notified that his permit had been revoked. If he had constructed the building or partially constructed it, if the work he did after the enactment of the ordinance had been done before, there would be no question as to his vested property rights. But he did nothing of a substantial character. He went no farther than to order plans and cause a survey to be made of the lot. This preliminary work was not sufficient to create a vested right to erect the building. * * *

[T]he test in each case as to whether a holder of a permit has acquired vested rights thereunder is not whether he has spent much or little in reliance upon it, but rather whether there has been any tangible change in the land itself by excavation and construction.

It is our conclusion that the defendant acquired no vested right to erect this building in violation of the zoning ordinance.

247 Mich. 394, 396-97 (Mich.1929) (citation and internal quotation omitted). In the lower court decision, the court held that "[a] vested property interest acquired before the enactment of an ordinance may not be destroyed by a subsequent rezoning;" moreover, "[t]o have acquired a vested right in the planned business classification, plaintiff would have had to have undertaken acts, in reliance on the zoning change, of such a nature that a rezoning back to SFR [the new classification] would be to his substantial detriment." *Trever v. City of Sterling Heights,* 53 Mich.App. 144, 146 (1974). The court determined:

Plaintiff undertook no such acts here. The Mobil lease was executed more than six months before the township zoned the property planned business. Thus, there could have been no reliance. While plaintiff hired an architect to prepare preliminary studies for a shopping center, he did not do so until September, 1969, almost a year after the property had been rezoned SFR. * * * Since plaintiff did not rely to his detriment on the planned business classification, he acquired no vested right in it.

*Id.* at 147.

Relying solely upon these Michigan authorities, which are quite similar, though less favorable, to landowners than the Delaware cases cited herein, the Sixth Circuit in *Nasierowski* held as follows on the facts before it:

Nasierowski actively pursued and completed a course of action of an inarguably substantial character in an effort to construct a retail and warehouse development on the property. First, and perhaps foremost, he expressly conditioned the purchase of the property on his obtaining a favorable zoning opinion from the City. It is clear that Nasierowski would not have purchased the land unless the City had first advised him that, as of right, he was authorized to develop the parcel along proposed lines. The acquisition of the land was, in and of itself, a substantial act undertaken exclusively upon the City's approval and affirmative encouragement of the proposal.

*22 Second, Nasierowski expended considerable money and effort in drafting a site plan, submitting it to the City for preliminary approval, petitioning the City for a variance from the specific site plan requirements, and negotiating with the City's planners and engineers in an effort to resolve minor disputes over relatively insignificant matters. These substantial undertakings bear only a vague resemblance to the modest efforts of the landowner in *City of Lansing,* who in 1927 "went no farther than to order the plans and cause a survey to be made of the lot." [citation omitted] The expenditure of the plaintiff in *City of Lansing,* in contrast to Nasierowski's in the case at bar, was correctly deemed too modest to give rise to a vested property interest. Thus, Nasierowski had a property interest in the old zoning classification within which his development was permitted.

That property interest was securely vested by Nasierowski's engagement in substantial acts in reliance, to his detriment, on representations from and affirmative actions by the City.

Accordingly, the district court's grant of summary judgment in favor of the city is hereby REVERSED. Based on the record as it currently stands, it is evident that Nasierowski should have been granted his motion for summary judgment insofar as he requested an injunction prohibiting enforcement of the new zoning ordinance as against his property.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1993 WL 215133 (D.Del.)  
**(Cite as: 1993 WL 215133 (D.Del.))**

Page 18

949 F.2d at 897 (emphasis in original).

The *Nasierowski* case has relevance to several matters at issue in the case at bar. First, while abstention apparently was not raised in *Nasierowski*, it is obvious that the Sixth Circuit did not consider Michigan law to be "unsettled" and had no difficulty relying upon a lower state court case which obviously went beyond the applicable state supreme court case. Second, without citing any Michigan authority, the court had no difficulty in holding that the property's purchase price could be considered in undertaking a vested rights analysis where, as here, the record showed that the subject property was purchased in reliance upon assurances from government officials that the property could be developed consistent with the purchaser's proposal. Third, the other facts upon which the Sixth Circuit relied in concluding that the plaintiff had a property interest in the subject zoning classification are also present in the instant case; i.e., that the landowner had "expended considerable money and effort in drafting a site plan, submitting it to the City for preliminary approval, petitioning the City for a variance from the specific site plan requirements, and negotiating with the City's planners and engineers in an effort to resolve minor disputes over relatively insignificant matters," are likewise present in the case at bar. [FN14]

Defendants also contend that legal uncertainty regarding the interpretation and application of the New Castle County ordinance and Code provisions at issue likewise compels the Court to exercise *Pullman* abstention. The Court disagrees. The inquiry under the second prong of the *Pullman* doctrine is whether the pertinent law "is amenable to an interpretation by the state courts that would obviate the need for or substantially narrow the scope of the constitutional issues." *Chez Sez III Corp. v. Township of Union*, 945 F.2d 628, 632 (3d Cir.1991), *cert. denied*, 112 S.Ct. 1265 (1992). Because the Court has determined that Delaware state law, wholly independent of pertinent New Castle County law, gives plaintiff a protected property interest in the Westhampton record development plan and DPUD zoning classification, a contrary conclusion with regard to plaintiff's protected property interest under County law "would [not] obviate the need for or substantially narrow the scope of the constitutional issues" at bar.

**\*23** For all of the foregoing reasons, the Court must reject defendants' contention that Delaware law regarding the vested rights and equitable estoppel doctrines is so unsettled that *Pullman* abstention should be exercised.

d. Substantive Due Process

It is well-settled that the "test for determining whether a law comports with substantive due process is whether the law is rationally related to a legitimate government interest." *Midnight Sessions, Ltd.*, 945 F.2d at 682. It is equally clear, however, at least in land use planning cases involving substantive due process claims, that "allegations that the government's actions in a particular case were motivated by bias, bad faith, or improper motive, such as partisan political reasons or personal reasons unrelated to the merits of the plaintiffs' [land use proposal, or license or building permit] application, may support a finding of a substantive due process violation." *Id.*

Although the Third Circuit has not yet defined "the outer limits of the showing necessary to demonstrate that a governmental action was arbitrary, irrational, or tainted by improper motive," the court has held that summary judgment must not be granted where a plaintiff "present[s] evidence from which a factfinder could reasonably conclude that certain council members, acting in their capacity as officers of [a] municipality improperly interfered with the process by which the municipality issued building permits, and that they did so for partisan political or personal reasons unrelated to the merits of the application for the permits." *Bello v. Walker*, 840 F.2d 1124, 1129 (3d Cir.), *cert. denied*, 488 U.S. 851 (1988).

The Third Circuit concluded in *Bello* that governmental actions that are "arbitrary, irrational, or tainted by improper motive" "can have no relationship to any legitimate governmental objective, and if proven, are sufficient to establish a substantive due process violation actionable under

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.   Page 19

1993 WL 215133 (D.Del.)

**(Cite as: 1993 WL 215133 (D.Del.))**

section 1983." *Id.* at 1129-30. The Third Circuit further concluded, on the particular facts of the *Bello* case, that "[w]hile the defendants claim that the building permit was denied because of plaintiffs' failure to build in numerical sequence, thus presenting an arguably rational ground for the denial of the permit, it is the factfinders' role to resolve this factual dispute." *Id.* at 1130.

With respect to plaintiff's substantive due process claim, defendants contend that County Council had a rational basis for voiding plaintiff's record plan and for rezoning the Property from DPUD to R-1-B. In support of this contention, defendants point to two documents prepared by Planning in connection with the County's 1991-92 effort to void plaintiff's record development plan. (D.I. 32 at 13) Defendants first rely upon the May 22, 1991 memo drafted by Planning official Shuler in which Shuler "identified [various] ... significant issues affecting development of the [Westhampton] site." (D.I. 30, Exhibit B at 1) Defendants apparently suggest that the "significant issues" identified in the May 22, 1991 Shuler memo provided a rational basis for the voiding of plaintiff's record plan. However, in a subsequent memo dated April 2, 1992, Shuler informed County Council that, with one exception, the "significant issues" identified in the May 22, 1991 memo had been resolved and further informed County Council that "the only remaining issue with respect to [Planning's] memorandum of May 22, 1991, is access through the Oakwood Hills subdivision." (D.I. 30, Exhibit C at 2) Although the Shuler memo alleged that plaintiff "has not indicated he will cooperate" to resolve the access issue, the record does not contain any evidence to support this assertion; [FN15] indeed, the record indicates the contrary. (D.I. 55 at A-8, A-18 to A-23, A-27 to A-31, A-33 to A-34, A-47 to A-49, A-66, A-67, A-72, A-73 to A-74, A-87 to A-88; D.I. 61, Exhibit A at ¶¶ 7, 13-18, 25, 35, 36, 38, 43-44) Nor is there any indication on the record that plaintiff was given an opportunity to remedy the Oakwood Hills subdivision access issue "through voluntary revisions to the current plan" prior to County Council's voiding of the Westhampton record development plan.

*24 Plaintiff alleges in the case at bar that the entire process voiding the Westhampton record development plan and rezoning the Property was undertaken by defendants "maliciously" and for "political" and "personal" reasons "unrelated to the merits of the subject record plan[ ] and the zoning depicted thereon." (D.I. 61, Ex. A; D.I. 72 at 12) Viewing the evidence presented in a light most favorable to plaintiff, the Court concludes that it is the factfinders' role to determine whether the governmental actions in issue were "arbitrary, irrational, or tainted by improper motive." *See Midnight Sessions, Ltd.,* 945 F.2d at 683; *Bello,* 840 F.2d at 1129-30; *deBotton v. Marple Township,* 689 F.Supp. 477, 481 (E.D.Pa.1988).

Defendants' motion for summary judgment as to plaintiff's substantive due process claim, therefore, must be denied.

*2. Procedural Due Process*

In *Midnight Sessions, Ltd.,* 945 F.2d at 680, the Third Circuit set forth the following settled principles applicable to procedural due process claims:

> To establish a cause of action for a violation of procedural due process, a plaintiff in addition to proving that a person acting under color of state law deprived it of a protected property interest, must establish that the state procedure for challenging the deprivation does not satisfy the requirements of procedural due process. *Parratt v. Taylor,* 451 U.S. 527, 537 (1981). Due process requires that a deprivation of property "be preceded by notice and opportunity for hearing appropriate to the nature of the case," *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542 (1981), and the opportunity to be heard must be at a meaningful time and in a meaningful manner. *Armstrong v. Manzo,* 380 U.S. 545 (1965). However, when a state "affords a full judicial mechanism with which to challenge the administrative decision [regarding zoning, the issuance of a building permit or other similar land use matters]," the state provides adequate due process. *Bello v. Walker,* 840 F.2d at 1128.

(Parallel citations omitted).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.