Defendants contend that summary judgment is proper as to plaintiff's procedural due process claim because plaintiff received adequate "notice and an opportunity to be heard, of which he repeatedly availed himself, at every step of the public process for both the voiding of the record plan and the rezoning of the property." (D.I. 32 at 10) Defendants further contend that "there is no question that the alleged technical defects could have been challenged in state court by way of a declaratory judgment or injunction action. *See Shellburne, Inc. v. Buck,* 240 A.2d 757, 759 (Del.1968). The state judicial procedures being adequate, there is no procedural due process cause of action." (D.I. 56 at 9)

Plaintiff essentially concedes, and the record indicates, that he received actual notice of County Council's proposed actions with respect to the Property, and the purported reasons therefor, and that he exercised his right to be heard at the various public hearings preceding defendants' voiding of his record plan and rezoning of the Property. (D.I. 54 at 20-21; D.I. 61 at 9) Plaintiff also does not dispute defendants' contention that the Delaware state courts may provide an adequate post-deprivation judicial mechanism for challenging defendants' deprivation of his property interests. Plaintiff's argument in opposition to defendants' motion for summary judgment as to his procedural due process claim is that defendants failed to follow applicable state and local laws in connection with the adoption of the ordinances which effectuated the deprivation of his property interests. (D.I. 54 at 20-21; D.I. 61 at 9)

*25 The Court rejects plaintiff's argument because it is well-settled that a procedural due process claim cannot be grounded on the failure of government officials to follow applicable state and local procedures and regulations governing the deprivation process so long as the plaintiff received constitutionally adequate notice and an opportunity to be heard. *See, e.g., Board of Curators v. Horowitz,* 435 U.S. 78, 92 n. 8 (1978); *Eguia v. Tompkins,* 756 F.2d 1130, 1137-38 (5th Cir.1985); *C & M Group, Inc. v. New Britain Township,* 1991 WL 25684, 1991 U.S. Dist. LEXIS 2239 (E.D.Pa.1991). While it appears from the record that the process leading to the alleged deprivation of plaintiff's property interest may have been accompanied and accomplished by procedural irregularities and possibly unlawful actions, the Court nonetheless finds that plaintiff received constitutionally adequate notices and opportunities to be heard throughout that process. As recently held by another district court in this circuit, "even if [the government officials] acted arbitrarily and failed to base [their] decision on the applicable law and facts, that goes to substance rather than procedure. It does not amount to a failure to provide adequate procedure." *C & M Group, Inc.,* 1991 WL 25684 at *3, 1991 U.S. Dist. LEXIS 2239 at *8-*9 (citing *Rogin,* 616 F.2d at 692-94). [FN16]

Accordingly, defendants' motion for summary judgment as to plaintiff's procedural due process claim will be granted.

C. Equal Protection

Defendants seek summary judgment as to plaintiff's equal protection claim on three separate grounds. Defendants first contend they are entitled to summary judgment as to this claim because plaintiff's "Complaint is devoid of any specific facts concerning the identities of any other 'similarly situated landowners and developers,' or how the defendants allegedly treated such developers differently from plaintiff. As such, it is facially defective." (D.I. 32 at 14 (citing *Carr v. Town of Dewey Beach,* 730 F.Supp. 591, 611-12 (D.Del.1990))

As an initial matter, the Court must reject defendants' suggestion that plaintiff was required to plead specific allegations regarding how other developers were treated in comparison to him. The *Carr* opinion cited by defendants in support of this assertion contains no such requirement. Further, the Court is not aware of any authorities which required plaintiff, in pleading his equal protection claim, to plead more facts than those contained in the Complaint and Amended Complaint.

Insofar as plaintiff was required to set forth specific

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 21
1993 WL 215133 (D.Del.)
**(Cite as: 1993 WL 215133 (D.Del.))**

facts supporting his constitutional claims brought under 42 U.S.C. § 1983, *see Pace Resources, Inc. v. Shrewsbury Township,* 808 F.2d 1023, 1035 (3d Cir.1987), the Court concludes plaintiff has satisfied that requirement. Plaintiff alleges in his pleadings that this is the only instance in which County Council has acted to void an existing record DPUD development plan. The record also indicates that this case may involve the only instance in which County Council has removed a DPUD zoning classification which was subject to a record development plan. Defendants have neither disputed these factual assertions nor presented any evidence refuting plaintiff's claims of unequal treatment. Moreover, since no discovery has been conducted as of yet, defendants' argument in this regard is most likely premature.

**\*26** Defendants' second argument is that "for purposes of equal protection analysis, the same rational basis test [as applied to substantive due process claims] applies." (D.I. 56 at 12; D.I. 32 at 14-15) The Third Circuit has held that "[t]o prevail on [an] equal protection claim, [the plaintiff] must [demonstrate] that the passage and application of [local] zoning [ordinances] 'so lack rationality that they constitute a constitutionally impermissible denial of equal protection.' " *Rogin v. Bensalem Township,* 616 F.2d 680, 688 (3d Cir.1980) (quoting *New Orleans v. Dukes,* 427 U.S. 297, 305 (1976) (per curiam)). In *Rogin,* the court further posited that dismissal of a plaintiff's equal protection claim is proper unless the governmental authorities' decisions and actions at issue were "so unrelated to the achievement of the Townships's [legitimate] objectives as to be irrational...." 616 F.2d at 689.

Defendants contend that for the same reasons they are entitled to summary judgment as to plaintiff's substantive due process claim, they are likewise entitled to judgment on plaintiff's equal protection claim. The Court rejects this argument for reasons stated above in its analysis of plaintiff's substantive due process claim.

Defendants' final argument is that "[i]n order to assert a viable constitutional claim based on a violation of equal protection, a complaining party must assert disparate treatment based on membership in a protected group." (D.I. 32 at 15) Defendants misconstrue applicable precedent.

Relevant decisions from this circuit and others indicate that it is precisely in cases where the plaintiff does not allege membership in a protected group or suspect classification that it is necessary, in order to succeed on an equal protection claim, for the plaintiff to prove that the defendants' actions "so lack rationality that they constitute a constitutionally impermissible denial of equal protection." *See, e.g., Rogin,* 616 F.2d at 687 n. 29; *Scott v. Greenville County,* 716 F.2d 1409, 1420 (4th Cir.1983); *Redfield v. City of Jersey City,* 1989 WL 4956, \*10, 1989 U.S. Dist. LEXIS 529, \*28 (D.N.J.1989); *see also Homebuilders Association of Bucks/Montgomery Counties, Inc. v. Borough of Trappe,* 1991 WL 74911, \*10, 1991 U.S. Dist. LEXIS 6019, \*32 (E.D.Pa. May 3, 1991) ("inquiry under the equal protection clause is whether Borough has irrationally distinguished between similarly situated classes, [whereas] the question under substantive due process is whether it was irrational for the Borough to have passed the law at all and to have applied it to [this developer]"); *Hidden Creek Stock Farms, Inc. v. Upper Frederick Township Bd. of Supervisors,* 1993 WL 40056, \*5, 1993 U.S. Dist Lexis 1747, \*17 (E.D.Pa. Feb. 1993) ("When a municipality treats similarly situated landowners differently, and the discrimination is arbitrary or irrational, an equal protection violation arises").

In the case at bar, it is undisputed that defendants have not treated any other landowner in the manner in which they have treated plaintiff. [FN17] Whether the treatment resulted from arbitrary or irrational conduct, viewing the evidence presented in a light most favorable to plaintiff, cannot be resolved on the record as it stands. Therefore, defendants' motion for summary judgment as to plaintiff's equal protection claim must be denied.

D. Legislative Immunity

**\*27** Members of municipal legislative bodies are

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1993 WL 215133 (D.Del.)

**(Cite as: 1993 WL 215133 (D.Del.))**

entitled to legislative immunity only when both of the following conditions are present: (1) The actions of the legislative body at issue must have been legislative in nature, as opposed to being administrative or managerial; [FN18] and (2) The actions of the legislative body must have been taken pursuant to and in compliance with the statutory procedures specified for such action. [FN19] In support of their motion for summary judgment as to the issue of legislative immunity, defendants (who were members of County Council at all relevant times hereto) have addressed the latter of the two conditions set forth above, but have failed to address sufficiently the former.

Relevant authorities indicate that legislative acts are those which apply generally to the entire community, whereas acts specifically directed at one or a few individuals are executive or administrative acts. *See Donivan,* 835 F.2d at 488; *Rogin,* 616 F.2d at 693; *Ryan,* 708 F.Supp. at 640; *de Botton,* 689 F.Supp. at 482-83; *see also Cutting v. Muzzey,* 724 F.2d 259, 261 (1st Cir.1984) ("[i]f the action involves establishment of a general policy, it is legislative; if the action 'singles out specifiable individuals and affects them differently from other,' it is administrative"); *Scott v. Greenville County,* 716 F.2d at 1422-23 (county council members "assumed non-legislative role" when they did "more than adopt prospective, legislative-type rules and [took] the next step into the area of enforcement"). [FN20]

County Council's adoption of ordinances voiding plaintiff's record development plan and rezoning the Property clearly were acts which involved "not only general policy considerations but also application of that policy to an individual landowner." It is significant to note in this regard that County Council did not seek to rezone any other property except plaintiff's in connection with the rezoning ordinance at issue. *Compare Horizon House Development Services, Inc. v. Township of Upper Southhampton,* 1990 U.S. Dist. LEXIS 6081, *15 (E.D.Pa. May 1990) (in finding that county council acted in legislative capacity, court relied upon fact that defendants "did not become involved in a particular issuance of a permit or an individual zoning decision"; rather "they adopted an ordinance that not only regulate[d] plaintiff's homes, but many other categories of group homes as well"). As such, defendants' acts are properly characterized as administrative rather than legislative. *See Rogin,* 616 F.2d at 693 n. 60.

Even if it were assumed that the defendants have met their burden to show that their actions taken with respect to the Property were of a legislative nature, they have failed to demonstrate that their actions were taken pursuant to and in compliance with specified statutory procedures, at least with respect to the rezoning of the Property. [FN21]

Defendants contend that "[t]here is no question that Council followed all applicable laws in proposing and adopting" the ordinance which rezoned the Property. (D.I. 32 at 19) In response to this assertion, plaintiff contends that County Council failed to follow specified procedures regarding the adoption of rezoning ordinances. In particular, plaintiff posits that County Council failed to comply with the statutory requirements for adoption of ordinances imposed by title 9, section 1152(b) of the Delaware Code.

*28 Code § 1152(b) provides that "[a]fter the public hearing [mandated by this section] the county government may adopt the ordinance with or without amendments or reject it, but if it is amended as to any matter of substance which is not embraced within the title of the ordinance, the county government may not adopt it until the ordinance or its amended sections have been subjected to all of the procedures ... required [under this section] in the case of a newly introduced ordinance." [FN22] Plaintiff contends that County Council failed to comply with specified statutory procedures because (1) it adopted an amended version of the proposed rezoning ordinance, (2) said amendment went "to a matter of substance which [was] not embraced within the title of the ordinance" as originally proposed, and (3) County Council failed to subject the amended ordinance "to all of the procedures ... required in the case of a newly introduced ordinance." 9 Del.C. § 1152(b).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Page 23

1993 WL 215133 (D.Del.)

**(Cite as: 1993 WL 215133 (D.Del.))**

Defendants respond to this argument by seeking to demonstrate that the amended rezoning ordinance adopted by County Council did not go "to a matter of substance which [was] not embraced within the title of the ordinance" as originally proposed. As discussed in the foregoing statement of facts, the ordinance County Council originally proposed would have rezoned the Property from DPUD to R-2. It is undisputed that all notices preceding the hearings regarding the proposed rezoning ordinance and the meeting of County Council at which the amended ordinance was adopted indicated that the proposed ordinance would rezone the Property from DPUD to an R-2 classification. It also is undisputed that County Council ultimately adopted an ordinance rezoning the Property from DPUD to R-1-B, after receiving the recommendation from Planning that the Property should be rezoned to R-1-B instead of R-2.

Defendants contend that County Council was not required to subject the amended ordinance to the statutorily mandated process for adoption of newly-introduced ordinances because the rezoning ordinance "was not amended substantively;" that the information in the public notices indicating that the proposed ordinance, if adopted, would rezone the Property from DPUD to R-2 was "informational only" and not part of the ordinance title because said language was "in lower case" and bracketed whereas, according to defendants, "[t]he title is clearly that [unbracketed] portion set apart in capital letters." (D.I. 56 at 10) Defendants' assertion in this regard is without merit.

Evidence of record demonstrates that the title of the proposed ordinance contained information indicating that the rezoning ordinance, if adopted, would rezone the Property from DPUD to R-2. [FN23] Moreover, it cannot seriously be disputed that a change in the proposed rezoning was both "material" and "a matter of substance" since the very purpose of the ordinance was to change the zoning classification of the subject Property. Indeed, besides the location of the Property, a more material piece of information regarding the rezoning can hardly be imagined. Rezoning the Property from DPUD to R-1-B clearly was not a matter embraced within the title of the ordinance as originally proposed.

*29 The Court, therefore, finds that County Council was required by Delaware law to subject the amended ordinance to the statutorily mandated process for adoption of newly-introduced ordinances. Since County Council failed to do so, defendants' contention that County Council followed all statutorily specified procedures in connection with the rezoning process must fail on the record presented.

For the foregoing reasons, the Court concludes that the moving defendants are not entitled to summary judgment on the issue of whether they enjoy legislative immunity in this action as members of County Council.

E. Qualified Immunity

Defendants contend, in the alternative to their legislative immunity defense, that they are shielded from liability by qualified immunity. It is well-settled that qualified immunity applies only when a defendant's conduct did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "[O]fficials are protected by qualified immunity if 'reasonable officials in the defendants' position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful.' " *Elsmere Park Club Ltd. Partnership v. Town of Elsmere,* 771 F.Supp. 646, 654 (D.Del.1991) (quoting *Good v. Dauphin County Social Serv. for Children and Youth,* 891 F.2d 1087, 1092 (3d Cir.1989)).

In 1992, when County Council enacted ordinances voiding plaintiff's record development plan and rezoning the Property, the vested rights and equitable estoppel doctrines were clearly established by Delaware state law. A reasonable official would have realized, in light of the decisional law discussed *supra,* that County Council was precluded by law from enacting ordinances which prevented plaintiff from developing the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1993 WL 215133 (D.Del.)  
**(Cite as: 1993 WL 215133 (D.Del.))**

Page 24

Property consistent with his record development plan and the DPUD zoning classification.

The Court also finds that a reasonable official would have realized that the County's own laws precluded the actions taken as to the Property. The record clearly demonstrates that County Council relied upon an unadopted ordinance to apply a repealed Code provision to void plaintiff's record development plan. [FN24] It is self-evident that no reasonable official in defendants' positions at the relevant time could possibly believe that any decision, particularly one which substantively affects the property rights of a citizen, should be based on legislation that the official never adopted. Defendants argue, and make considerable efforts to demonstrate, that language contained in the "savings clause" of the revised DPUD ordinance that actually was adopted by County Council can be interpreted in a manner consistent with County Council and County attorney Mitchell's legal conclusion that said clause provided authority for applying the repealed five-year sunset provision to void plaintiff's record plan. Whether or not then County Council and its legal advisor would have interpreted the savings provision contained in the adopted ordinance as allowing County Council to apply a repealed Code provision, and whether the members of County Council would have actually voted in favor of the ordinance voiding plaintiff's record plan had they been aware of the language contained in the actual savings clause of the adopted ordinance, is speculative and provides insufficient grounds on which to conclude that qualified immunity is available to the moving defendants.

*30 Under the circumstances at bar, defendants' motion for summary judgment on the issue of qualified immunity must be denied.

V. CONCLUSION

For the reasons stated, defendants' motion for summary judgment shall be denied except as it relates to plaintiff's procedural due process claim.

FN1. Although defendants filed an untimely brief in opposition to plaintiff's motion for leave to amend on March 31, 1993, said brief was not yet before the Court on April 2 when plaintiff's motion was granted. On April 5, 1993, defendants filed a letter requesting that the Court vacate its April 2 Order on the ground that said Order mischaracterized plaintiff's motion as "unopposed." (D.I. 67) The Court denied defendants' request in an order issued on April 16, 1993. (D.I. 69)

FNThe Court's Order of April 16, 1993 also denied defendants' motion to strike the affidavit of Frank E. Acierno and provided that defendants' pending motion for summary judgment as to the original Complaint would be treated as a motion for partial summary judgment as to plaintiff's constitutional claims raised both in his initial pleading and in his Amended Complaint. (D.I. 69)

FN2. The newly-added party defendant, Michael Mitchell, New Castle County First Assistant County Attorney, is represented by his own counsel and has not formally joined in the other defendants' motion for partial summary judgment. Therefore, the Court will refer only to the moving defendants as "defendants" in this Memorandum Opinion.

FN3. Then Code § 23-81(21) provided in relevant part as follows:  
If construction has not been completed within ... five (5) years after the date of approval of the record development plan for the PUD or the date of approval of the record development plan of the last stage of PUD, if submitted in stages, whichever is longer, then the approval shall be voidable at the discretion of county council, upon recommendation of the department of planning.  
(D.I. 81, Exhibit 2 at 20)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                    Page 25
1993 WL 215133 (D.Del.)
**(Cite as: 1993 WL 215133 (D.Del.))**

FN4. Current Code § 23-81(18) provides in relevant part as follows:
The landowner shall have ten (10) years from the effective date of the original rezoning ordinance to develop the parcel as proposed. The rezoning ordinance shall contain the expiration date for the zoning date for the zoning classification.
If, at the end of ten (10) years, or at the time of requesting revised record plan approval, the parcel has not been fully and completely developed and the landowner desires to proceed under this classification, he must submit, to the department of planning, current support facilities information demonstrating the impact on and availability of traffic, sewers, water and open space. The department of planning will evaluate the data submitted, consult with the support facilities agencies where deemed necessary, and determine whether such facilities are adequate for the development as originally established. If the support facilities are deemed adequate, the landowner can proceed with the development as shown on the original rezoning ordinance. If the support facilities are determined to be inadequate, only that portion of the development which can be supported by existing facilities will be allowed to proceed and the balance of the development will be staged based upon the availability of support facilities, if at all.
(D.I. 81, Ex. 2 at 20-21)

FN5. The Court rejects defendants' contention that County Council did not rely upon unadopted Substitute Ordinance No. 1 to 87-025, and the language contained therein, as authority for its interpretation of New Castle County law providing it with discretion to void plaintiff's record plan under the repealed five-year sunset provision, and for defendants' related contention that County Council did not rely upon repealed § 23-81(21) as the legal authority which provided it with power to void plaintiff's record plan. The record contemporaneous with County Council's decision to void plaintiff's record plan, as well as the court record in this litigation, clearly show otherwise. (D.I. 55 at A-54, A-69 to A-71 and A-89; D.I. 32 at 7-8; D.I. 56 at 3-4)

FN6. Defendants contend that the record development plan approved in 1974 is the record plan which County Council voided. The record indicates, as just mentioned, that the actual "existing" record plan which defendants considered and voided was the record plan which was approved and recorded in 1988. (D.I. 55 at A-27, A-54, A-57, A-60, A-64, A-68, A-93)

FN7. 1981 WL 15144 at *5, LEXIS slip op. at 6 (quoting *Tremarco Corporation v. Garzio,* 161 A.2d 241, 245 (N.J.Super.1960)).

FN8. 1981 WL 15144 at *6, LEXIS slip op. at 6 (quoting 3 Rathkopf, § 10, pp. 57-19 & 20)).

FN9. Significantly, the court in *New Castle County v. Mitchell* specifically relied upon the *Shellburne v. Roberts* decision in rendering its legal analysis. *Supra* at 4. Indeed, the court characterized the *Shellburne, Inc. v. Roberts* case as involving "[a]n analogous situation." *Id.*

FN10. Defendants contend that the "Supreme Court of Delaware [has] reaffirmed the 'permit plus' rule it had adopted in *Shellburne.*" (D.I. 75 at 4 (citing *Mayor & Council of New Castle v. Rollins Outdoor Advertising, Inc.,* 475 A.2d 355, 360 (Del.1984)). However, in the *Rollins* case, the Delaware Supreme Court merely reiterated that "under certain circumstances, such as where an owner had made a substantial change of position or a substantial expenditure, a vested right arises from good faith reliance upon a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

1993 WL 215133 (D.Del.)

**(Cite as: 1993 WL 215133 (D.Del.))**

Page 26

building permit." *Id.* Again, the court did not hold that this is the only circumstance in which a vested right can arise.

Defendants also cite *Willadel Realty, Inc. v. New Castle County,* 270 A.2d 174, 178 (Del.Ch.), *aff'd,* 281 A.2d 612 (Del.1971), a case in which County Council rezoned the plaintiff's property while a building permit application was pending and after the plaintiff already had obtained plan approval from the Department of Planning.

Defendants argue that "the Chancery Court held that the lack of a building permit at the time of rezoning was fatal to plaintiff's claim." (D.I. 75 at 4)

In *Willadel,* however, the Chancery Court, after recognizing that under *Shellburne* "(a) the Levy Court may institute a change in zoning on its own initiative, and (b) it may do so even if the owner has obtained a building permit for a use permitted under present classification but forbidden in the proposed classification," simply held that in the case before it the "County government initiated the change without request, ownership had not changed, and (unlike *Shellburne* ) the owners did not have a permit at the time of rezoning." *Id.* at 278. Significantly, the court went on to point out that the plaintiff there failed to show "any of the kinds of matters which created vested rights as outlined in the Supreme Court's opinion in [*Shellburne* ]," *id., e.g.,* "a substantial change of position, expenditures, or incurrence of obligations."

FN11. Defendants characterize the *Wilmington Materials* case as "an extreme factual situation where an opinion of counsel was given to the developer approving his proposed project under the existing zoning classification." (D.I. 75 at 5) In the instant case, more than involving a situation merely where "an opinion of counsel was given to the developer approving his proposed project under the existing zoning classification," plaintiff received repeated assurances from various County officials, including County Council itself, County attorney Bryde, various Planning officials and others, indicating that his proposed (and approved) development project was and would be allowed under the existing record plan and DPUD zoning classification.

FN12. It should be noted that the entire process leading to these assurances from the County essentially constituted a re-approval process whereby the County gave its approval for plaintiff to develop the Westhampton project and to have the Property classified under the DPUD zoning classification. *See* New Castle County Code § 23- 81(21) (1986); D.I. 55 at A-15 to A-16.

FN13. On the basis of the Delaware Supreme Court's decision in *Raley v. State, supra,* the Court rejects this latter contention.

FN14. The Court notes that defendants' reliance upon the Sixth Circuit's decision in *Sequin v. City of Sterling Heights,* 968 F.2d 584 (6th Cir.1992), is misplaced because the court there relied upon language from a Michigan Supreme Court case decided subsequent to *Nasierowski,* where the court held that the "test in each case is not whether a little or a lot has been spent in reliance upon past zoning classifications, but, rather, whether there has been any tangible change in the land itself by excavation and construction." *Sequin,* 968 F.2d at 591, *citing Bevan v. Brandon Township,* 475 N.W.2d 37 (Mich.1991). Delaware court cases relied upon herein are contrary thereto.

FN15. The April 2, 1992 Shuler memo stated the following with respect to this issue:
Responding to the Department of Planning's inquiry, DelDOT, in a letter dated November 8, 1991 ..., recommended

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1993 WL 215133 (D.Del.)

**(Cite as: 1993 WL 215133 (D.Del.))**

Page 27

that the Oakridge Road access be deleted from the plan, and that a note be placed on the plan limiting development to 100 units until such time as additional frontage is obtained on McKennans Church Road. The applicant has agreed to place such a note on the plan but, to date, has not been willing to delete the secondary access to Oakridge Road.
(D.I. 30, Exhibit C at 2 (emphasis added))

FN16. Since the Court finds that the deprivation of plaintiff's property interest was " 'preceded by notice and opportunity for hearing appropriate to the nature of [this] case,' " *Midnight Sessions, Ltd., supra* (emphasis added), it is unnecessary to reach defendants' undisputed contention that procedural due process was satisfied here because the Delaware state courts afforded plaintiff with "a full judicial mechanism" for challenging County Council's adoption of ordinances voiding his record plan and rezoning the Property.

FN17. Defendants have submitted evidence indicating that County attorney Mitchell, in another unrelated case, interpreted the savings clause at issue here in a manner consistent with the interpretation set forth in his July 1991 memo to County Council. (D.I. 74) The Court views this evidence as irrelevant to the issue at hand. The question is whether defendants treated similarly situated landowners the same or differently in connection with the voiding of record DPUD development plans and rezoning of DPUD classified property. The evidence supplied by defendants does not indicate that any other similarly situated landowners have had their approved record development plans voided or that other land zoned DPUD has been rezoned in the manner which County Council rezoned plaintiff's land. Development of these factual matters clearly requires discovery.

FN18. *See, e.g., Donivan v. Dallastown Borough,* 835 F.2d 486, 487- 89 (3d Cir.1987); *Abraham v. Pekarski,* 728 F.2d 167, 174-75 (3d Cir.1984); *Ryan v. Burlington County, New Jersey,* 708 F.Supp. 623, 639- 40 (D.N.J.1989).

FN19. *See Abraham,* 728 F.2d at 174-75.

FN20. *See also Jodeco, Inc. v. Hann,* 674 F.Supp. 488, 495 (D.N.J.1987), where the court held as follows:
[T]he appropriate inquiry [is] whether the conduct of the defendant zoning officials involved either the enactment or amendment of zoning legislation or simply the enforcement of already existing zoning laws. Acts performed pursuant to the former are legislative in character and the officials performing them are entitled to absolute immunity, while acts performed pursuant to the latter are administrative, executive, or ministerial and the officials performing them may only receive the protection of qualified immunity.
Factored into this equation should be the impact that such official conduct has on the citizens of the municipality. Official acts affecting the community at-large might tip the balance in favor of a finding of legislative conduct, while acts directed at one or a few individuals might be dispositive of executive or administrative conduct.
(Emphasis added)

FN21. As to the process leading to passage of the ordinance voiding plaintiff's record plan, it is clear, as discussed below, that Council failed to follow its own laws.

FN22. It should be noted that New Castle County Code section 23- 85.1(13) imposes the same requirement.

FN23. As related above, in correspondence dated May 27, 1992, Planning official Shuler gave his recommendation that the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1993 WL 215133 (D.Del.)  
**(Cite as: 1993 WL 215133 (D.Del.))**

Page 28

title of the proposed ordinance include information indicating that, under the proposed ordinance, the subject property would be rezoned "from DPUD (Diversified Planned Unit Development) to R-2 (Agricultural and General Purpose)." (D.I. 55 at A-96) As required by statute, legal notice of the proposed zoning ordinance appeared in the News Journal on June 20, 1992. (D.I. 55 at A-97, p. 4) Consistent with Shuler's recommendation, the title of the proposed ordinance contained in the notice informed the public that the ordinance, if enacted, would rezone the subject Property from DPUD to an R-2 zoning classification. (D.I. 55 at A-96, A-97 at 4) This evidence directly contradicts defendants' contention that the information regarding the proposed change in zoning classification was not part of the title.

FN24. Significantly, defendants did not call to the Court's attention this fact until the Court required defendants to make available copies of all the legislative materials upon which they relied in support of their motion for summary judgment.
Having been ordered to submit the full record, defendants now make a transparent effort to justify County Council and County attorney Mitchell's reliance upon an unadopted ordinance as authority for their position that a repealed Code provision gave County Council discretion to void plaintiff's record plan, by (1) emphasizing that "all parties to this proceeding were construing a version of Ordinance 87-025 which was never adopted by New Castle County Council" (D.I. 82 at 1 (emphasis supplied)); and (2) attempting to set forth a factual explanation in an effort to justify defendant Mitchell and County Council's "good faith, but mistaken" (D.I. 85 at 1) reliance on an unadopted ordinance. (D.I. 80 and D.I. 81)
The Court rejects these efforts for the following reasons: (1) County Council and its official attorney are reasonably charged with constructive knowledge of which version of any ordinance actually is adopted; (2) There is no evidence in the record demonstrating that defendants did not themselves have actual knowledge that they had not adopted Substitute Ordinance No. 1 to 87-025; (3) The record indicates that County attorney Mitchell had actual knowledge as early as 1988, and as recently as April 29, 1993, of the existence of Substitute Ordinance No. 2 to 87-025 and of the fact that said substitute was the adopted version of this ordinance (D.I. 74 and D.I. 74, Exhibit A); (4) When County attorney Mitchell undertook to analyze the effect of the savings provision contained in Ordinance 87-025, he was duty-bound to ensure that the version of the ordinance upon which he relied was an adopted ordinance, as were defendants' counsel at bar when they relied upon unadopted Substitute Ordinance No. 1 to 87-025 in moving for summary judgment; (5) The record indicates that County Council and County attorney Mitchell initially and continuously represented that Substitute Ordinance No. 1 to 87-025 constituted the adopted ordinance language applicable to this issue (D.I. 55 at A-70; D.I. 55 at A-89; D.I. 32 at 7-8; D.I. 56 at 3-4), and that plaintiff and plaintiff's counsel, both in litigation and during the public proceedings before County Council, reasonably relied upon said representations in assuming that the ordinance so represented and relied upon by County Council in voiding plaintiff's record plan in fact was an adopted piece of legislation; (6) Defendants' explanation of how these events occurred (D.I. 81 and D.I. 80) is insufficient, particularly given the facts just noted regarding Mitchell's actual knowledge regarding the status of Substitute Ordinance No. 1 to 87-025 and Substitute Ordinance No. 2 to 87-025, which raise a genuine issue of material fact

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1993 WL 215133 (D.Del.)  
**(Cite as: 1993 WL 215133 (D.Del.))**

Page 29

as to Mitchell's knowledge, as well as the knowledge of the moving defendants.

1993 WL 215133 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

- 1:92CV00385   (Docket)
  (Jul. 01, 1992)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

87 Fed.Appx. 227    Page 1

87 Fed.Appx. 227, 2003 WL 23155074 (3rd Cir.(Pa.)), RICO Bus.Disp.Guide 10,702, 9 Wage & Hour Cas.2d (BNA) 704

**(Cite as: 87 Fed.Appx. 227, 2003 WL 23155074 (3rd Cir.(Pa.)))**

H

**Briefs and Other Related Documents**

This case was not selected for publication in the Federal Reporter.

NOT PRECEDENTIAL

Please use FIND to look at the applicable circuit court rule before citing this opinion. Third Circuit Local Appellate Rule 28.3(a) and Internal Operating Procedure 5.3. (FIND CTA3 Rule 28.0 and CTA3 IOP APP I 5.3.)

United States Court of Appeals,
Third Circuit.
BONAVITACOLA ELECTRIC CONTRACTOR, INC.; Local Union No. 654 International Brotherhood of Electrical Workers; Local Union No. 98 International Brotherhood of Electrical Workers; Curtis Bell,
v.
BORO DEVELOPERS, INC; Frederick J. Shapiro; Bruce H. Shapiro Bonavitacola
Electric Contractor; Local Union No. 98, International Brotherhood of Electrical Workers, Appellants.
No. 03-1713.

Submitted Under Third Circuit LAR 34.1(a) Oct. 30, 2003.
Decided Dec. 8, 2003.

**Background:** Unsuccessful bidder on three public projects and two labor unions brought civil Racketeer Influenced and Corrupt Organizations Act (RICO) action against successful bidder and two of its officers, alleging that defendant had falsely promised to comply with state prevailing wage laws in its bids. The United States District Court for the Eastern District of Pennsylvania, Michael M. Baylson, J., dismissed action, and plaintiffs appealed.

**Holdings:** The Court of Appeals, Ambro, Circuit Judge, held that:
(1) plaintiffs failed to allege predicate acts of mail and wire fraud with sufficient particularity;
(2) plaintiffs failed to sufficiently allege that the fraudulent transactions were related; and
(3) plaintiffs failed to allege direct injury necessary to give them standing to assert civil RICO claim.
Affirmed.

West Headnotes

**[1] Federal Civil Procedure** €═636
170Ak636 Most Cited Cases
Unsuccessful bidder on public projects failed to allege predicate acts of mail and wire fraud with sufficient particularity to state civil Racketeer Influenced and Corrupt Organizations Act (RICO) claim against successful bidder, whose bids had allegedly contained fraudulent promises to comply with state prevailing wage law; complaint did not identify any particular mail or wire transmissions or allege how any mail or wire transmissions were connected to a fraudulent scheme. Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.; 18 U.S.C.A. §§ 1341, 1343, 1964(c).

**[2] Racketeer Influenced and Corrupt Organizations** €═72
319Hk72 Most Cited Cases
Unsuccessful bidder's complaint, alleging that successful bidder fraudulently promised to comply with state prevailing wage law when bidding on three public projects, failed to sufficiently allege that the fraudulent transactions were related, as required to state civil Racketeer Influenced and Corrupt Organizations Act (RICO) claim; complaint

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

87 Fed.Appx. 227    Page 2
87 Fed.Appx. 227, 2003 WL 23155074 (3rd Cir.(Pa.)), RICO Bus.Disp.Guide 10,702, 9 Wage & Hour Cas.2d (BNA) 704
**(Cite as: 87 Fed.Appx. 227, 2003 WL 23155074 (3rd Cir.(Pa.)))**

alleged that predicate acts of fraud were related by their similar purpose of procuring electrical construction contracts, but did not detail the transactions' similar results, participants, victims, manner of commission, or other characteristics. 18 U.S.C.A. § 1964(c).

**[3] Racketeer Influenced and Corrupt Organizations** ⇐72
319Hk72 Most Cited Cases
Unsuccessful bidder's complaint, alleging that successful bidder fraudulently promised to comply with state prevailing wage law when bidding on three public projects, failed to sufficiently allege that the fraudulent transactions were continuous, as required to state civil Racketeer Influenced and Corrupt Organizations Act (RICO) claim; nothing in the complaint suggested that defendant's alleged fraudulent transactions were its regular way of doing business. 18 U.S.C.A. § 1964(c).

**[4] Racketeer Influenced and Corrupt Organizations** ⇐62
319Hk62 Most Cited Cases
Unsuccessful bidder on three public projects, which alleged that successful bidder fraudulently promised to comply with state prevailing wage law when bidding on the projects, failed to allege direct injury necessary to give it standing to assert civil Racketeer Influenced and Corrupt Organizations Act (RICO) claim; plaintiff's complaint did not allege how defendant's promise to comply with prevailing wage law influenced the award of the contracts. 18 U.S.C.A. § 1964(c).

**[5] Racketeer Influenced and Corrupt Organizations** ⇐62
319Hk62 Most Cited Cases
Labor union did not have standing to bring civil Racketeer Influenced and Corrupt Organizations Act (RICO) action against successful bidder on three public projects, based on bidder's alleged misrepresentations regarding its intent to comply with state prevailing wage law; unions failed to allege how contract revenues following to unsuccessful bidder, assuming it had been awarded any contract, would have resulted in benefit to the unions. 18 U.S.C.A. § 1964(c).

*228 Appeal from the United States District Court for the Eastern District of Pennsylvania. (D.C. Civil Action No. 01-cv-05508). District Judge: Honorable Michael M. Baylson.

Steven F. Marino, Philadelphia, PA, for Appellants.

*229 Philip A. Yampolsky, Narbeth, PA, for Appellees.

Before SCIRICA, Chief Judge, NYGAARD and AMBRO, Circuit Judges.

OPINION

AMBRO, Circuit Judge.

**1 Bonavitacola Electric Contractor appeals the District Court's order dismissing its amended complaint for failing to state a claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C §§ 1961-68 ("RICO"). Because we conclude that the amended complaint fails to allege sufficiently that the defendant committed a pattern of racketeering activity as required under RICO and that the plaintiffs suffered direct injury as a result, we affirm the judgment of the District Court.

I
Facts and Procedural Posture
On October 31, 2001, Bonavitacola Electric Contractor, along with two labor unions and one individual, [FN1] filed a 27-count complaint against a competitor electric contractor, Boro Developers, Inc., and two of Boro's officers-employees, Frank and Bruce Shapiro. [FN2] Bonavitacola alleged that, over a period of ten years, Boro submitted competitive bids to perform electrical work on public projects by the Ridley School District, the Nashaminy School District, and the United States Department of the Navy. Bonavitacola alleges that each of these three bids contained Boro's "fraudulent" promise to comply with prevailing wage law (the Pennsylvania Prevailing Wage Act, 43 Pa. Stat. Ann. § 165-1, and the federal Davis-Bacon Act, 40 U.S.C. §§ 276 *et seq.*), and as

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

87 Fed.Appx. 227                                                                                                    Page 3

87 Fed.Appx. 227, 2003 WL 23155074 (3rd Cir.(Pa.)), RICO Bus.Disp.Guide 10,702, 9 Wage & Hour Cas.2d (BNA) 704

**(Cite as: 87 Fed.Appx. 227, 2003 WL 23155074 (3rd Cir.(Pa.)))**

a result Boro was awarded each of the three contracts over Bonavitacola, the second highest bidder. Bonavitacola further alleges that, in connection with each of the three projects, Boro submitted numerous certified payroll reports (requirements under prevailing wage law) that fraudulently misclassified certain employees' activity as "labor" rather than "electrical." Bonavitacola generally alleges that Boro's conduct involved "repeated" (but unspecified) instances of mail fraud and wire fraud, which constitute a predicate act under RICO. Bonavitacola and the labor unions brought 24 counts against Boro and the Shapiros under §§ 1962(a), 1962(c), and 1962(d) [FN3] of RICO as well as two counts under state law. In addition, co-plaintiff Curtis Bell brought one count against Boro and the Shapiros under state prevailing wage law.

> FN1. For convenience we will use "Bonavitacola" as a collective reference to the four plaintiff-appellants: Bonavitacola Electric Contractor; Local Union No. 654, International Brotherhood of Electric Workers; Local Union No. 98, International Brotherhood of Electric Workers; and Curtis Bell, an employee of Boro Developers, Inc.

> FN2. For convenience we will use "Boro" as a collective reference to the defendants-appellees.

> FN3. Eight counts alleging violations of § 1962(d) of RICO were subsequently withdrawn on July 1, 2002.

In October 2002, Judge Baylson of the United States District Court for the Eastern District of Pennsylvania granted Boro's motion to dismiss Bonavitacola's complaint. *See Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.,* No. CIV.A.01-5508, 2002 WL 31388806 (E.D.Pa. Oct. 23, 2002) (*"Bonavitacola I"*). Specifically, the District Court found that the complaint did not state a claim under RICO because it (1) did not contain any specific allegation of acts of mail or wire fraud, (2) failed to explain how any of the alleged acts by the defendants furthered *230 the scheme to defraud or was incident to an essential part of that scheme, and (3) contained insufficient evidence as to enterprise, relatedness, and continuity. *Id.* *4. But the District Court also granted Bonavitacola leave to amend the complaint, and, in the form of a detailed requirements for including a "RICO Case Statement," instructed Bonavitacola on filing a sufficient RICO complaint. *Id.* *5.

**2 Bonavitacola filed an Amended Complaint on November 11, 2002, but made very few substantive changes from the original complaint. It added numerous subparagraphs specifically identifying each of the various certified payroll reports that allegedly misclassified the activities of either Curtis Bell or an "unnamed black male employee" as "labor" rather than "electrical." *See* Amended Complaint ¶¶ 42A(2)(a)-(aaaa), 42B(2)(a)-(y) and 42C(2)(a)-(p) (App. at A19-A44). Bonavitacola also added a brief discussion of supplemental jurisdiction, removed the § 1962(d) Counts (XVI-XXIV) that the parties had previously agreed to strike, and added an allegation (¶ 109) to Curtis Bell's state law claim (Count XVIII). But Bonavitacola did not include the RICO Case Statement as the District Court had required.

In February 2003, the District Court granted Boro's motion to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). *See Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.,* No. CIV.A.01- 5508, 2003 WL 329145 (E.D.Pa. Feb. 12, 2003) (*"Bonavitacola II"*). The District Court found that the Amended Complaint sufficiently pled the element of "enterprise" required of a RICO complaint, but that it failed to plead the predicate acts of mail and wire fraud with requisite particularity, failed to plead that predicate acts formed a "pattern of racketeering activity," and failed to plead that Bonavitacola was injured as a direct result. The District Court also held that Bonavitacola could not base its RICO claims on alleged violations of the Davis-Bacon Act because it does not provide a private right of action. The District Court dismissed the Amended

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.