Not Reported in F.Supp.2d

Page 7

2004 WL 2220974 (E.D.Pa.)

**(Cite as: 2004 WL 2220974 (E.D.Pa.))**

discussing the "mixed-use" concept, the Township Manager ("Gregan") sent a letter to Garrity stating that HMI's all-office preliminary plan proposal was going to be scheduled "for action" by the Whitemarsh Township Planning Commission on March 19, 2002 and would be acted upon by the Board of Supervisors Regular Meeting on March 21, 2002. The Defendants assert that since the First Revised Preliminary Plan was filed on December 24, 2001:

> the Board of Supervisors was legally obligated to act on the [First Revised Preliminary Plan] by March 24, 2002 not only in accordance with the Municipalities Planning Code, but pursuant to HMI's offered extension which was accepted by the Board of Supervisors. If the Board did not act on the plans within that time frame, it ran the risk that the [First Revised Preliminary Plans], as deficient as they were, would be "deemed approved" in accordance with section 508 of the Municipalities Planning Code. 53 P.S. § 10508(3). That section of the Code provides for an automatic approval of plans if not acted upon within the 90 day period. Because the last Supervisors' meeting before the deadline was March 21, 2002, the [First Revised Preliminary Plans] had to be acted upon by that date, absent a further extension accepted by the Township.

(Defs.' Mem. of Law in Supp. of their Mot. for Summ. J., at 27). The Plaintiff responds by providing this Court a letter dated March 12, 2002. In that letter, Garrity offered an extension of time for the Board of Supervisors to act so that the First Revised Preliminary Plans would not be deemed approved by a lack of Board action. As Plaintiff notes, even with an offer to extend the time for Board action, the Board refused to accept the Plaintiff's offer of an extension. Instead, the [First Revised Preliminary Plans] were to be ready "for action" at the March 19, 2002 Township Planning Commission meeting and then ready "for action" at the Board of Supervisors meeting two days later on March 21, 2002.

Leading up to the March 21 Board of Supervisors meeting, the Plaintiff prepared and ultimately filed a new revised preliminary plan for Creekside Commons on March 19, 2002 (hereinafter referred to as the "Second Revised Preliminary Plan"). [FN8] Since the Second Revised Preliminary Plans were filed on the same day as the Planning Commission meeting, the Planning Commission had no statement from the Township's engineer as to the adequacy of the newly submitted plan.

> FN8. The filing of the Second Revised Preliminary Plans on March 19, 2002 started a new ninety-day period for the Defendants to act.

*7 After receipt of the Second Revised Preliminary Plan, Zarko began to review it in preparation for the March 21, 2002 Board of Supervisors meeting. Zarko issued his review and report of the Second Revised Preliminary Plan on March 21, 2002, a few hours before the Board of Supervisors meeting was to take place. A copy of Zarko's report was faxed to Garrity approximately two hours before the Board of Supervisors meeting was to begin. In his report, Zarko set forth the areas he felt the Second Revised Preliminary Plan failed to comply with the Township's SALDO, zoning ordinance and grading ordinance. For example, Zarko once again noted HMI's proposal for a retention basin in the area of Parcel One that was zoned AA-Residential. Zarko also noted that the specifications concerning the Second Revised Preliminary Plan failed to provided details concerning the proposed on-site sewage treatment plant. Additionally, Zarko once again stated that the plan failed to provide a berm and chain link fence around the perimeter of the proposal. [FN9] The Plaintiff contends that the Township Solicitor, Weiss, instructed Zarko to deviate from his normal routine in making his report. Specifically, the Plaintiff asserts that Zarko's letter was not divided into sections entitled "Preliminary Plan Approval Requirements" as previous reports were noted and that Zarko intentionally jumbled the items on the March 21, 2002 report so they differed in order from the January 24, 2002 report.

> FN9. Specifically, Zarko provided the following comments in his March 21, 2002 review letter: 1. The plan that was submitted for the Project is inconsistent

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 8
2004 WL 2220974 (E.D.Pa.)
**(Cite as: 2004 WL 2220974 (E.D.Pa.))**

> with the following provisions of Chapter 116 "Zoning" of the Whitemarsh Township Code:
> a. The applicant proposes to construct a retention basin on the southeasterly portion of the Project site, which is located within the AA Residential Zoning District, which is not a permitted use within the aforementioned District. (Sections 116-35 and 116-48)
> b. Details/design specifications concerning the proposed on-site sewage treatment plant depicted on the Plan were not submitted to the Township for review. (Section 116-152.A.4)
> c. A suitably sized berm and chain link fencing were not provided around the perimeter of the proposed land development site in the specific locations required by the Whitemarsh Township Code. (Sections 116-156.B and C)
> d. The applicant proposes to construct the on-site sewage treatment plant on the southeasterly portion of the project site, within the 200 ft. setback from the AA-Residential Zoning District, which is not permitted.
> (Defs. Mot. for Summ. J. Ex. WW). The letter also details other problems/deficiencies associated with the Second Revised Preliminary Plan. (*Id.*).

At the start of the March 21, 2002 Board meeting, Garrity made a short presentation of the plans and again reiterated HMI's request for an extension of time. [FN10] The Supervisors ultimately rejected Garrity's request for an extension of time and moved forward to vote on the Second Revised Preliminary Plan. At their depositions, the Board members testified as to the reasons for denying the preliminary plan. First, the members stated that they felt that no real progress had been made on the Creekside Commons all-office proposal and that the proposal was going nowhere. Thus, members of the Board thought an extension of time would be futile. Additionally, the Board members stated that they relied on the report issued by Zarko earlier in the day which stated that the plans did not conform to the Township Ordinances. Thus, the Defendants assert there were valid, legal reasons for denying the plans as well as denying Plaintiff's request for additional time.

> FN10. It should be noted that Weiss had arranged for a court reporter to document the proceedings, as well as chose to have the Township witnesses sworn.

By refusing to grant the extension as requested by HMI, and rejecting the Second Revised Preliminary Plan, the Board of supervisors essentially locked HMI into a plan that would have to be governed by the EX-Extraction zoning requirements. The parties are in agreement that any new submission made by HMI to the Township would be deemed a new plan and, therefore, would not be considered under the previous HVY-X zoning requirements. This is because such a new submission would be deemed a new plan and, therefore, would not be grandfathered in under the old zoning ordinance. As stated previously, the all-office space Creekside Commons proposal was allowed under the HVY-X zoning, but not under the new EX-Extraction zoning implemented initially in October of 2001, and then re-enacted in February of 2002.

### III. *STANDARD*

*8 Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 2220974 (E.D.Pa.)
(Cite as: 2004 WL 2220974 (E.D.Pa.))

Page 9

jury could find for the non-moving party. *Anderson,* 477 U.S. at 249. A factual dispute is material only if it might affect the outcome of the suit under governing law. *Id.* at 248.

To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather that party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester,* 891 F.2d 458, 460 (3d Cir.1989)(citing *Celotex,* 477 U.S. at 325 (1986)). Further, the non-moving party has the burden of producing evidence to establish *prima facie* each element of its claim. *Celotex,* 477 U.S. at 322-23. If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine issue of material fact, then summary judgment is proper. *Id.* at 322; *Wisniewski v. Johns-Manville Corp.,* 812 F.2d 81, 83 (3d Cir.1987).

IV. *DISCUSSION*

Plainitff's Complaint contains three counts. The Plaintiff asserts that through their actions, the Defendants violated its procedural and substantive due process rights under the Fourteenth Amendment. Additionally, the Plaintiff asserts that the Defendants did not afford it equal protection guaranteed under the law. Throughout its Brief, the Plaintiff refers to the actions of the Defendants as a "one-two punch." The Plaintiffs assert that "punch one" was the rezoning of its property from HVY-X to EX-Extraction. "Punch two" was the deficient process of consideration, and ultimate denial of its preliminary plans for Creekside Commons. Thus, this Court will analyze whether one or both of these "punches" can substantiate a procedural or substantive due process claim, and/or whether one or both of these "punches" can substantiate an equal protection claim. As will be discussed, after reviewing the Brief's and exhibits of the parties, this Court finds that summary judgment is proper as to all three claims and, therefore, Defendants' Motion will be granted.

A. PROCEDURAL DUE PROCESS

*9 It is important to first note the elements that are necessary to satisfy a procedural due process claim. As stated by the United States Court of Appeals for the Third Circuit ("Third Circuit"), "[t]o establish a cause of action for violation of procedural due process, a plaintiff in addition to proving that a person acting under color of state law deprived it of a protected property interest, must establish that the state procedure for challenging the deprivation does not satisfy the requirements of procedural due process." *Midnight Sessions, Ltd. v. City of Phila.,* 945 F.2d 667, 680 (3d Cir.1991), *overruled on other grounds, United Artists Theatre Circuit, Inc. v. Township of Warrington,* 316 F.3d 392 (3d Cir.2003)(citing *Parratt v. Taylor,* 451 U.S. 527, 537, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). [FN11] The parties agree that the Defendants were acting under color of state law and that the Plaintiff has a protected property interest. Both sides, however, do contest whether the Plaintiff has satisfied the other requirements of substantiating a procedural due process claim so as to defeat the Defendants Summary Judgment Motion. First, this Court will analyze whether the purported "punch one" substantiates a procedural due process claim. Then, this Court will analyze whether the purported "punch two" substantiates a procedural due process claim.

> FN11. As will be explained, the standard for establishing a substantive due process claim was fundamentally changed by the Third Circuit in *United Artists Theatre Circuit. See infra* Part IV.B. However, cases predating *United Artists Theatre Circuit* remain good law on the issue of substantiating a procedural due process claim including *Midnight Sessions* and similar cases.

1. "Punch One"

Regarding the rezoning issue, or "punch one," the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Third Circuit has stated that
> [t]he Pennsylvania legislature has enacted a system for processing challenges to zoning ordinances.... A landowner who wishes to challenge the validity of a zoning ordinance or amendment that restricts the use or development of its land may file a challenge with the zoning hearing board and may appeal from any decision by the zoning officer applying the ordinance.

*Rogin v. Bensalem Township,* 616 F.2d 680, 694-95 (3d Cir.1980). Additionally:
> [i]f the landowner is dissatisfied with the Board's decision, it then has the right to appeal to the Court of Common Pleas. The appeal may take the form of direct judicial review of the Board's decision, or the court may take new evidence and enter its own findings of fact after trial de novo. The Court is authorized to declare any ordinance or map invalid and to set aside or modify any action, decision, or order of the Township, Zoning Officer, or Zoning Hearing Board.

*Id.* at 695 (footnotes omitted).

After the initial rezoning of HMI's property in October of 2001, the Plaintiff filed an appeal with the Township's Zoning Hearing Board. As was stated previously, the Township re-enacted the rezoning on February 28, 2002 due to procedural deficiencies associated with the October, 2001 rezoning. In *Rogin,* the Third Circuit affirmatively stated that "[i]n Pennsylvania the procedure for challenging zoning ordinances substantially conforms with the general due process guidelines enunciated by the Supreme Court." *Id.* at 695. There is clearly a full judicial mechanism from which HMI could have availed itself and, as one court has noted, "when a state affords a 'full judicial mechanism' with which to challenge administrative decisions of the type at issue, the state provides adequate procedural due process, regardless of whether the plaintiff avails herself of that appeal mechanism." *The Development Group, LLC v. Franklin Township Bd. of Supervisors,* No. 03-2936, 2003 WL 22358440, at *8 (E.D.Pa. Sept.24, 2003). Here, even though it appears as if HMI did not avail itself of the appeals procedures after the February, 2002 zoning re-enactment, the Pennsylvania process for challenging zoning ordinances satisfies the procedural due process requirements under the Constitution. Thus, as to "punch one," this Court cannot find any violation of Plaintiff's procedural due process.

2. "Punch Two"

*10 The thrust of Plaintiff's procedural due process claim relates to "punch two" or the lead up to and ultimate denial of the Second Revised Preliminary Plan for Creekside Commons. Similar to the procedure for appealing the rezoning of a property, Pennsylvania provides a party with a full judicial mechanism to review the denial of a preliminary plan. Indeed, Pennsylvania allows a party to appeal a land use decision to the Court of Common Pleas where the land is located. *See* 53 Pa. Cons.Stat. Ann. § 11001-A *et seq.* As the Third Circuit has noted, "[i]t is the law in this Circuit that a state provides adequate due process when it provides reasonable remedies to rectify a legal error by a local administrative body." *Bello v. Walker,* 840 F.2d 1124, 1128 (3d Cir.1988), *overruled on other grounds, United Artists Theatre Circuit,* 316 F.3d 392. In *Bello,* the Plaintiff argued that the township denied it procedural due process by denying a building permit. *Id.* at 1127. As the Third Circuit noted, "Pennsylvania affords a full judicial mechanism with which to challenge the administrative decision to deny an application for a building permit." *Id.* at 1128. The Third Circuit found that the plainitffs did not show that decision to deny the building permit was made pursuant to a constitutionally defective procedure. *Id.* Indeed, the Third Circuit reiterated this point in *Midnight Sessions,* by stating that "[t]he availability of a full judicial mechanism to challenge the administrative decision to deny an application, even an application that was wrongly decided, precluded a determination that the decision was made pursuant to a constitutionally defective procedure." 945 F.2d at 681.

Even though HMI clearly has a full judicial mechanism with which to challenge the Board of Supervisor's decision to deny its Second Revised Preliminary Plans, HMI still argues that the Defendants have violated its procedural due process

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2004 WL 2220974 (E.D.Pa.)

**(Cite as: 2004 WL 2220974 (E.D.Pa.))**

Page 11

guarantee. Principally, the Plaintiff relies on *C & M Group, Inc. v. New Britain Township,* No. 90-4375, 1991 WL 25684 (E.D.Pa. Feb.14, 1991). Plaintiff quotes *C & M Group* which states that "post-deprivation remedies are adequate to satisfy due process only when the circumstances surrounding the deprivation require quick action by the state, or when pre-deprivation procedures are impractical. *Id.* at *3. However, the Plaintiff fails to consider the full breadth of *C & M Group.*

At the outset, *C & M Group* resolved a 12(b)(6) motion to dismiss. In *C & M Group,* the court noted that "[c]ourts have thus held that pre-deprivation procedures must be provided prior to the denial of a land-use permit." *Id.* at *3. Continuing, the court noted that Plaintiff's averments as to its procedural due process claim were that the board failed to provide a decision on the record and that the board failed to give the land development plan fair consideration. *Id.* However, the court noted that "even if the Board acted arbitrarily and failed to base its decision on the applicable law and the facts, that goes to substance rather than procedure. It does not amount to a failure to provide adequate procedure." [FN12] *Id.* (citing *Rogin,* 616 F.2d at 692-94). Additionally, the court noted that "the standard of procedural due process is not whether the municipality deviates from established procedure, but whether it deviates from constitutionally mandated procedure." *Id.* (citing *Eguia v. Tompkins,* 756 F.2d 1130, 1139 (5th Cir.1985)).

> FN12. Indeed, in their Reply Brief, the Defendants make a similar point by arguing that Plaintiff's complaints about how it was treated during the land development process and rezoning amount to substantive rather than procedural due process challenges since the Plaintiff was afforded pre and post deprivation procedures pursuant to the Township SALDO and Pennsylvania law.

In the case currently before this Court, there were pre-deprivation procedures utilized. These included meetings and conversations with Township officials as well as three reports issued by the Township's engineer. Each of the Zarko's reports detailed deficiencies with HMI's proposal as it related to the Township's ordinances. The Plaintiff states that the third and final Zarko report was issued only two hours before the Board ultimately denied the Second Revised Preliminary Plan and that this third and final report by Zarko raised new issues not present in his other reviews. However, what is clear is that this third report issued on March 21, 2001 also detailed deficiencies that were present in previously submitted preliminary plans by the Plaintiff. While the Plaintiff vigorously states that its Second Revised Preliminary Plan was approvable, this goes to the substance rather than the procedure. The Board's reliance on an allegedly incorrect engineer's report attacks the substance of the decision and not the procedure with which it was made. Pennsylvania clearly has a scheme in place that allows HMI to appeal the denial of its preliminary plan. [FN13] Therefore, Plaintiff's procedural due process claim is knocked out.

> FN13. Indeed, HMI has taken advantage of these procedures by filing an appeal of the Township's denial of its Second Revised Preliminary Plan with the Montgomery County Court of Common Pleas in the spring of 2002.

B. SUBSTANTIVE DUE PROCESS

*11 This Court will now turn its attention to Plaintiff's substantive due process claim. "To succeed in a substantive due process claim under Section 1983, a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Corneal v. Jackson Township,* 313 F.Supp.2d 457, 465 (M.D.Pa.2003), *aff'd,* 94 Fed. Appx. 76 (3d Cir.2004) (non-precedential)(internal quotation marks and citations omitted). Here, since HMI is the owner of a property interest that is subject to a local land use regulation, HMI is entitled to substantive due process protection. *Id.* (citing *DeBlasio v. Zoning Bd. of Adjustment for the Township of West Amwell,* 53 F.3d 592, 600 (3d Cir.1995)).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 12
2004 WL 2220974 (E.D.Pa.)
**(Cite as: 2004 WL 2220974 (E.D.Pa.))**

Next, the Plaintiff must show that the government violated the relevant standard in depriving the plaintiff of that protected property interest. Until recently, Third Circuit precedent stated that if a Township's actions were governed by an improper motive, that was enough to establish a substantive due process violation. *See e.g., DeBlasio,* 53 F.3d at 598; *Midnight Sessions,* 945 F.2d at 683; *Bello,* 840 F.2d at 1129; *Rogin,* 616 F.2d at 689. However, in *United Artists Theatre Circuit,* the Third Circuit raised the standard for a substantive due process violation in the land use context. After analyzing *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), the Third Circuit held that the new standard to determine whether a substantive due process violation has taken place is whether the purported government action "shocks the conscience." *United Artists Theatre Circuit,* 316 F.3d at 400-01. With this holding, the "improper motive" test for substantive due process enunciated in *Bello* and its progeny was no longer good law. *Id.* at 401. Indeed, the Third Circuit noted that "[l]and use decisions are matters of local concern, and such disputes should not be transformed into substantive due process claims based only on allegations that government officials acted with 'improper motives.' " *Id.* at 402.

The "shocks the conscience" test is not a precise test "and it also 'varies depending on the factual context.' " *Eichenlaub v. Township of Indiana,*--F.3d--, No. 03-2707, 2004 WL 2093439, at *9 (3d Cir. Sept.21, 2004)(quoting *United Artists Theatre Circuit,* 316 F.3d at 400). As a result, it is necessary to delve into the factual context of this case to see if the Defendants have satisfied their summary judgment burden. It should also be noted however, that as the Third Circuit recently stated, "[w]hat is clear is that this ["shock the conscience"] test is designed to avoid converting federal courts into super zoning tribunals. What 'shocks the conscience' is only the most egregious official conduct." *Id.* (internal quotation marks and citations omitted).

*12 Once again, Plaintiff asserts that the Defendants' purported "one-two punch" of rezoning and subsequent denial of the Second Revised Preliminary Plans on March 21, 2002 violated its substantive due process rights. First, this Court will examine whether "punch one," the rezoning of the HMI property from HVY-X to EX-Extraction, "shocks the conscience." Then, this Court will analyze whether "punch two," the process and ultimate denial of HMI's Second Revised Preliminary Plan, "shocks the conscience."

1. "Punch One"

As the Third Circuit has noted, "[t]he federal courts largely defer to legislative judgment on such matters as zoning regulation 'because of the recognition that the process of democratic political decisionmaking often entails the accommodation of competing interests, and thus, necessarily produces laws that burden some groups and not others.' " *Pace Res., Inc. v. Shrewsbury Township,* 808 F.2d 1023, 1035 (3d Cir.1987)(quoting *Rogin,* 616 F.2d at 697). As to the rezoning of Plaintiff's property, this Court cannot say that the Defendants' actions were "conscience shocking." The steps that the Defendants undertook in rezoning the property from HVY-X to EX-Extraction were legitimate steps so as to conform HMI's property with the surrounding area. The Defendants rationale for the rezoning related to land use planning.

In *Pace Resources,* the Third Circuit determined whether the rezoning of property constituted a substantive due process violation. *Id.* at 1034-35. The Third Circuit stated that the plaintiff "does not present a case involving actions aimed at this developer for reasons unrelated to land use planning. Rather, the case involves a difference of opinion on how much industrial development is in the best interest of the Township and how that quantum of industrial development should be achieved." *Id.* at 1035. The Third Circuit continued by stating that "[t]he complaint states that the Township acted to curb industrial development within the Township. One can easily articulate a rational connection between each of the Township's actions and this legitimate purpose." [FN14] *Id.* Even though the Third Circuit was acting under the less stringent improper motive standard in *Pace Resources* for substantiating a substantive due process claim, it affirmed the district court's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2004 WL 2220974 (E.D.Pa.)

**(Cite as: 2004 WL 2220974 (E.D.Pa.))**

Page 13

dismissal the substantive due process claim. As the Third Circuit noted, "[r]eduction of the amount of land zoned industrial and standards and procedures that allow the Township to closely monitor any industrial development that does occur are measures rationally related to the goal of restricting industrial presence in the Township for the benefit of the general welfare." *Id.*

> FN14. It should be noted that *Pace Resources* was decided in 1987, and thus was decided under the old, less stringent, and now defunct improper motive test for substantiating a substantive due process claim.

As in *Pace Resources,* the Whitemarsh Township's actions in rezoning related to the goal of conforming HMI's property with the surrounding area, as well as other concerns relating to commercial development in the Township. Certainly, therefore, the Township's actions in rezoning cannot meet the more stringent "conscience shocking" test. Thus, the Township's rezoning of Plaintiff's property does not amount to a substantive due process violation.

2. "Punch Two"

**\*13** Next, the Plainitff asserts that the purported "punch two" violated its substantive due process guarantee. As previously mentioned, "punch two" relates to the process by which HMI's Creekside Commons plan was reviewed and ultimately denied by the Township's Board of Supervisors. For the following reasons, "punch two" does not amount to a substantive due process violation.

The Plaintiff argues that the Defendants conspired and executed a scheme intended to deprive HMI of its property rights. The Plaintiff cites to a number of actions that took place during the course of this supposed scheme designed to thwart the development of HMI's property. However, based on the case law decided in this Circuit after *United Artists Theatre Circuit,* this Court concludes that the facts as set out in *supra* Part II as it relates to "punch two" do not amount to a substantive due process violation. First, this Court will analyze the relevant case law decided after *United Artists Theatre Circuit* so as to determine how the courts have grappled with the new "shocks the conscience" standard in a land use dispute. This step is important since the "shock the conscience" standard is relatively new to this Circuit as it relates to substantiating a substantive due process violation in the land use context. Then, using those cases as a backdrop, this Court will determine whether there is a material issue of fact outstanding as to whether the process and ultimate denial of HMI's Second Revised Preliminary Plan "shocked the conscience."

Perhaps most important for purposes of deciding this Motion is the recently decided case of *Eichenlaub v. Township of Indiana,* --F.3d--, 2004 WL 2093439. In *Eichenlaub,* the plaintiffs asserted many of the same complaints against the defendants as HMI asserts here. As the Third Circuit noted:

> [b]asically, the Eichenlaubs assert that zoning officials applied subdivision requirements to their property that were not applied to other parcels, that they pursued unannounced and unnecessary inspection and enforcement actions; that they delayed certain permits and approvals; that they improperly increased tax assessments; and that they maligned and muzzled the Eichenlaubs .... these complaints are examples of the kind of disagreement that is frequent in planning disputes. As counsel for appellants acknowledged during argument, there is no allegation of corruption or self-dealing here.

*Id.* at \*10. The Third Circuit concluded by stating that the "District Court judge applied the correct legal standard ["shocks the conscience"] and did not abuse its discretion in dismissing the substantive due process claim." *Id* Many of the complaints HMI has levied against the Defendants are similar to those the Third Circuit examined in *Eichenlaub.* For example, the Plaintiff asserts that the Township officials deviated from the requirements and standards the Township followed as compared to other preliminary plans. Additionally, the Plaintiff asserts that the delay and tactics of the Defendants caused the Second Revised Preliminary Plan to be denied. However, as both the District Court and the Third Circuit found in *Eichenlaub,* this does not

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                       Page 14
2004 WL 2220974 (E.D.Pa.)
**(Cite as: 2004 WL 2220974 (E.D.Pa.))**

meet the "shocks the conscience" test. Importantly, as was the case in *Eichenlaub,* there is simply no evidence in this case of corruption or self-dealing so as to find that the Defendants' actions were so egregious as to "shock the conscience."

*14 It should also be noted that *Eichenlaub* clearly distinguishes a case principally relied upon by HMI in its Brief in Opposition to the Defendants' Summary Judgment Motion. Specifically, the case relied upon by the Plaintiff in its Brief in Opposition to Defendants' Motion for Summary Judgment is *Associates in Obstetrics & Gynecology v. Upper Merion Township,* 270 F.Supp.2d 633 (E.D.Pa.2003). At the outset, it should be noted that *Associates in Obstetrics & Gynecology* dealt with a Rule 12(b)(6) motion to dismiss rather than one for summary judgment. *Id.* at 655. Quite obviously, the court in *Associates in Obstetrics & Gynecology* was dealing with a much more difficult standard for the Defendants to overcome than the one currently before this Court. Additionally, as stated by the Third Circuit, in *Associates in Obstetrics & Gynecology,* that case implicated

> more than just a disagreement about conventional zoning or planning rules. In *Obstetrics,* the District Court denied a motion to dismiss a claim that municipal defendants denied substantive due process when they selectively closed plaintiff's medical office for the purpose of blocking the provision of abortion services. Because the municipal action there implicated abortion rights, the District Court's analysis of the "shocks the conscience" standard proceeded largely under those judicial decisions that address protection of abortion services under the Fourteenth Amendment.

*Eichenlaub,* 2004 WL 2093439, at *9. Thus, as the Third Circuit found in *Eichenlaub,* this Court also finds that *Associates in Obstetrics & Gynecology* is also distinguishable from the present dispute between HMI and the Defendants since what is at issue in the present case is a disagreement about rezoning and land use planning rules as applied to the Plaintiff.

Other land use substantive due process cases decided in this District and recently affirmed by Third Circuit are also helpful in resolving the instant Motion. A land use dispute arose in *Lindquist v. Buckingham Township,* No. 00-1301, 2003 WL 22757894 (E.D.Pa. April 15, 2003), *aff'd* 2004 WL 1598735 (3d Cir. July 19, 2004)(non precedential). Similar to the current case before this Court, *Lindquist* involved a denial of a preliminary plan after the Board amended the zoning ordinance. Specifically, the preliminary plan filed by the plaintiffs in that case sought to develop their property as a cluster subdivision using transferable development rights that would have included 216 lots for single family homes. *Id.* at *1. Based on a sketch plan, the plaintiffs submitted their phase one preliminary plan on March 29, 1996. *Id.* at *2 This preliminary plan called for clustered subdivisions in cul-de-sacs then permitted by the SALDO. *Id.* Additionally, at the time the March 29, 1996 plan was submitted, "the Zoning Ordinance permitted the subdivision of the property into cluster subdivision as a 'by right' use in the AG-1 zoning district without the need for a public hearing or 'conditional use' approval by the Board." *Id.* at *2 n. 8. After the preliminary plan was submitted to the Board,

*15 on February 26, 1997, the Board enacted an amendment to SALDO which prohibited cul-de-sacs streets within subdivisions. The concept of such a change had arisen years earlier. However, were the amendment to apply to Lindquists' Original Phase I submission, the plan proposed would be prohibited. On June 11, 1997, the Board enacted an additional amendment to the Zoning Ordinance which eliminated cluster subdivisions as a "by-right" use in AG-1 zoning districts and provided for cluster subdivisions only as a "conditional use."

*Id.* at *4. Ultimately, the Board denied the plaintiffs' preliminary plan even though the Plaintiff requested an extension. *Id.* Thus, "[a]s a result of the denial, the Lindquists were subject to the amended zoning ordinances and could not develop their property as a single family detached cluster development as a 'by-right' use." *Id.* After this denial, the Plaintiffs commenced an action in state court. However, this state court lawsuit was resolved by a settlement which allowed the plaintiffs to resubmit a revised preliminary plan under the old zoning ordinance. *Id.* After another

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2004 WL 2220974 (E.D.Pa.)

**(Cite as: 2004 WL 2220974 (E.D.Pa.))**

Page 15

round of revised preliminary plans were submitted, the Board again rejected the preliminary plans. *Id.* at *5. By doing so, the Board again passed on the plaintiffs offer to extend the time for review, even though the Board had agreed to such extensions in the past. *Id.* at *5. Thereafter, the board of supervisors passed additional resolutions so as to correct legal errors in the earlier denial resolution. *Id.*

The district court in *Lindquist* found that the plaintiffs "failed to meet their burden of establishing a substantive due process violation." [FN15] *Id.* at 8. As the court stated:

> FN15. It should be noted that the *Lindquist* decision by the District Court were findings of fact and conclusions of law after a trial without jury was held. However, the case initially went to trial under the old "improper motive" standard and it was only after trial that the Third Circuit changed the standard to the more stringent "shock the conscience" standard in *United Artists Theatre Circuit.* See *Lindquist,* 2003 WL 22757894, at *7.

*16 [t]he development of the Lindquist farm was an extremely complex project, involving numerous governmental approvals from a variety of public bodies and agencies and requiring compliance with numerous ordinances, regulations, and laws on the local and state level. Not surprisingly, missteps, mistakes, and prolonged delay occurred as a result. It is true that the Township and Board decisions contributed at least some, but certainly not all, of the difficulties that the Lindquists encountered during the protracted subdivision approval process. In addition, the defendants may have been negligent at times and in 1998 may have acted with an improper motive toward the Lindquists and their representatives. However, there is nothing in the facts we have found to prove that the defendants conduct was so egregious as to be "conscious shocking."
*Id.* Indeed, the Third Circuit agreed with the District Court's conclusion, albeit in a non-precedential opinion, by stating "[t]he District Court concluded that while the Township 'may have been negligent' and 'may have acted with an improper motive,' *desirous of thwarting development of the property,* its conduct did not shock the conscience. We concur." *Lindquist,* 2004 WL 1598735, at *5 (emphasis added). Therefore, as in the present dispute between HMI and the Defendants, *Lindquist* also involved the purported "one-two punch" of 1) submission of a preliminary plan; 2) rezoning; and 3) denial of the preliminary plan so as to force the plaintiff to file a new preliminary plan that conformed to the new zoning regulations. Similar to the District Court's holding in *Lindquist,* this Court cannot find any disputed facts which if proven would satisfy the "shock the conscience standard." Rather, as the District Court held in *Lindquist,* the Defendants' actions in the case currently before this Court is not so egregious as to be "conscience shocking."

As the Third Circuit noted in its non-precedential *Lindquist* opinion, "without more, a violation of state law, even a bad faith violation of state law, will not support a substantive due process claim in a land-use dispute." *Id.* at *5 (citing *Baker v. Coxe,* 230 F.3d 470, 474 (1st Cir.2000); *Natale v. Town of Ridgefield,* 170 F.3d 258, 262 (2d Cir.1999)). Here, the record indicates that there are disputed issues of fact as to whether the Defendants properly applied the state and local ordinances to HMI's Creekside Commons proposal, and whether the Defendants deviated from their usual procedure in analyzing the Creekside Commons proposal. However, as the case law previously cited illustrates, this, without more, does not amount to actions by the Defendants that "shocks the conscience."

Another case that is instructive and helpful in this Court's analysis of the instant Motion is *Corneal,* 313 F.Supp.2d 457. In *Corneal,* the plaintiffs sought to subdivide and sell a portion of a tract of land they recently purchased. *Id.* at 459. They had the tract surveyed for such a purpose. *Id.* at 459-60. During this time however, the Township placed a "temporary moratorium on subdividing property pending the enactment of a formal ordinance governing subdivision and land development" in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2004 WL 2220974 (E.D.Pa.)  
**(Cite as: 2004 WL 2220974 (E.D.Pa.))**

Page 16

January of 2000 since the Township had no subdivision ordinance to govern land development. *Id.* at 460 Subsequently, in February of 2000, the plaintiffs presented their original subdivision plan to the board. *Id.* In April of 2000, Mr. Corneal requested that the board sign five sewage modules, but the board refused. *Id.* Mr. Corneal had argued that he needed the sewage modules to begin to build his own personal house on the property, but the board stated that this would constitute a subdivision since the property already had an existing dwelling on it. *Id.* at 460-61. Later, the plaintiffs prepared a revised plan that reflected only subdividing the property into two lots. The plaintiffs would then sell one of the lots to a buyer. However, the plaintiffs never submitted the revised preliminary plan to the Township because of the moratorium that was in place. *Id.* at 461. The plaintiffs subsequently began to develop the land and constructed a 1.5 mile driveway through the tract in the spring of 2000. *Id.*

*17 Later, Mr. Corneal requested a building permit from the township's building permit officer to build his garage. *Id.* at 461-62. The building permit officer refused to issue the permit because the board had instructed him not to issue any permits to the Corneals. At his deposition, the township's building permit officer stated that although he had
> never refused to provide any other person in the Township with a permit, he refused to even provide the Corneals with a permit application. During his conversations with Mr. Corneal [the township's building permit officer] referred to Mr. Corneal as a "trouble making yuppie from over the mountain." [The township's building permit officer] used this term to describe Mr. Corneal because Mr. Corneal "just behaves like someone who wants to get their own way and his age group."

*Id.* at 462 (internal citations omitted). Ultimately, the buyer for the other tract pulled out of the agreement to purchase due to difficulties with the township associated with obtaining subdivision approval. *Id.* Additionally, after the buyers pulled out of the agreement to purchase, a board member's nephew approached the plaintiffs about purchasing the tract of land. *Id.* Ultimately, the Corneals brought a substantive due process claim against the township and the board. [FN16] As the district court noted:

> FN16. The Corneals also brought other claims, but for purposes of this Court's analysis, only the substantive due process discussion is relevant.

[t]he crux of the Conreal's substantive due process claim is that Defendants acted in concert to frustrate the Conreals' effort to subdivide and develop their ninety-five acre tract of land. According to the Conreals, Defendants needlessly complicated and delayed the Conreals' applications for permits and subdivision, thereby causing the Buyers to cancel their sales contract with the Conreals. Drawing all genuine factual disputes in favor of the Conreals, it appears that Defendants intentionally opposed the Conreals' efforts, at least in part, because they did not like the Conreals.... Finally, the Conreals also contend that Defendant Wilson [a board member] intentionally held up the subdivision process so that the Conreals would be unable to convey a portion of the tract to the Buyers on June 30, 2000. According to the Conreals, Defendant Wilson wished to prevent this contract from culminating so that he or his nephew could purchase the property, which belonged to Defendant Wilson's grandfather until 1960.

*18 *Id.* at 464-65 (footnotes omitted).

Ultimately, the district court in *Corneal* granted summary judgment in favor of the defendants on plaintiffs' substantive due process claim. *Id.* at 470. The court began by setting out the relevant "shock the conscience test" and then stated that:
> unless the evidence indicates that a challenged decision is completely unrelated in any way to a rational land use goal, there is no violation of substantive due process. The corollary of that rule being that where the locality's decision is related in any way to some rational goal, then no due process violation occurs even if the locality may have exceeded the scope of its jurisdiction.

*Id.* at 466. The court continued by stating that it uncovered only "a single case where a plaintiff's substantive due process challenge to a local land

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 17
2004 WL 2220974 (E.D.Pa.)
**(Cite as: 2004 WL 2220974 (E.D.Pa.))**

use decision survived a summary judgment motion under the 'shocks the conscience' test." *Id.* (citing *Collier v. Town of Harvard,* CV No. 95-11652-DPW, 1997 U.S. Dist. LEXIS 23582 (D.Mass. Mar. 28, 1997)). In the case currently before this Court, even HMI has come forward with no case arising in the land use context where a party overcame the stringent "shocks the conscience" standard so as to defeat a summary judgment motion. [FN17] As to the once case the court in *Conreal* found defeated a summary judgment motion, the court noted,

> FN17. Indeed, aside from their expert reports, HMI cites to only a relatively few number of cases to support its substantive due process claim. First, Plaintiffs rely on *Associates in Obstetrics & Gynecology,* 270 F.Supp.2d 633. As previously stated, while a land use case, the decision by the district court arose out of a 12(b)(6) motion to dismiss rather than a summary judgment motion. *Id.* at 655-56. Additionally, for similar reasons that the Third Circuit distinguished *Associates in Obstetrics & Gynecology* in its recently decided *Eichenlaub* opinion, this Court has already distinguished *Associates in Obstetrics & Gynecology.* Additionally, the Plaintiffs rely on *Estate of Smith v. Marasco,* 318 F.3d 497 (3d Cir.2003). At the outset, it should be noted, that *Estate of Smith* was not a land use case. The Plaintiffs argue that *Estate of Smith* stands for the proposition that a plaintiff's burden is less where the defendants actions are not in the context of a "hyperpressurized environment." However, in the precedential and non-precedential opinions that have been issued by the Third Circuit after *United Artists,* the Third Circuit has made no such distinction as it applies to a substantive due process challenge arising from a land use/zoning dispute. *See e.g., Eichenlaub,*--F.3d--, 2004 WL 2093439; *Lindquist,* 2004 WL 1598735; *Corneal,* 94 Fed. Appx. 76.

[e]ssentially, *Collier* involved an allegation of governmental extortion. That is, the plaintiffs' applications would have been approved if they simply capitulated to the public official's request for an easement across their property. As a result, the court found that a reasonable jury could have concluded that the [Zoning Board of Appeal's] decision to deny the plaintiffs' application was fueled solely by personal motivations totally devoid of any rational land use planning concerns. Thus, *Collier* fell within the very narrow class of challenges to local land decision which are "truly horrendous."

*Id.* at 467 (citing *Welch v. Paicos,* 66 F.Supp.2d 138, 169 (D.Mass.1999)). In *Conreal,* the court found that the facts viewed in the light most favorable to the Plaintiffs only established that the Defendants might have acted with mixed motives; "one related to a legitimate land regulation purpose (preserving land development status quo during the final approval process of the subdivision ordinance), the other related to illegitimate personal animus." *Id.* at 468. However, the court noted that "the plaintiff must demonstrate that the land use decision or regulation was so totally irrational that it could not possibly be the real reason for the locality's action, or alternatively, that the locality applied its decision selectively so that its land use concern could not have been legitimate despite the rational basis for it." *Id.* at 469. Indeed, albeit in a non-precedential opinion affirming the district court in *Corneal,* the Third Circuit stated that "[a]s noted by the district court, unless the defendants' actions were 'completely unrelated in any way to a rational land use goal,' there is no violation." 94 Fed. Appx. 76, 78 (citing *Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043).

*19 In the case currently before this Court, the Defendants did have rational reasons for denying the Second Revised Preliminary Plan. Most notably, the Board relied on Zarko's report which set forth the deficiencies in the Second Revised Preliminary Plan for Creekside Commons. Even if Zarko did in fact apply the wrong legal standard to these plans, this Court reiterates that an error in applying state or local law, even a bad faith mistake, does not amount to a violation of substantive due process. *See Conreal,* 313 F.Supp.2d at 470 (citations

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.