## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

FRANK E. ACIERNO, CHRISTIANA      )
TOWN CENTER, LLC, a Delaware limited   )
liability company, 395 ASSOCIATES, LLC,  )
a Delaware limited liability company,      )
ESTATE HOMES, INC.,                )
a Delaware corporation,              )
                                 )
     Plaintiffs,                )
              v.           )     C.A. No. 04-1376
                                 )
GEORGE O. HAGGERTY, individually and   )
in his official capacity as Assistant General  )
Manager of the New Castle County Department )
of Land Use, SCOTT G. WILCOX,      )
individually and in his official capacity as a  )
First Assistant County Attorney, TIMOTHY P. )
MULLANEY, individually and in his    )
capacity as New Castle County Attorney,   )
CHARLES L. BAKER, individually and in his  )
capacity as General Manager of the New Castle )
County Department of Land Use, JAMES H.  )
EDWARDS individually and in his capacity as )
Inspections Manager and Licensing Division  )
Manager of the New Castle County Department )
of Land Use, and SHERRY L. FREEBERY,  )
in her individual capacity as Chief Administrative )
Officer of New Castle County, and     )
NEW CASTLE COUNTY, a political subdivision )
of the State of Delaware,         )
                                 )
     Defendants.            )

## THE INDIVIDUAL DEFENDANTS' REPLY BRIEF
## IN SUPPORT OF THEIR MOTION TO DISMISS
## OR TO STAY THE PROCEEDINGS

Collins J. Seitz, Jr. (Del. Bar No. 2237)
Matthew F. Boyer (Del. Bar No. 2564)
Max B. Walton (Del. Bar No. 3876)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302)-658-9141
*Attorneys for Defendant Scott G. Wilcox*

Michael P. Kelly (Del. Bar No. 2295)
Paul A. Bradley (Del. Bar No. 2156)
McCARTER & ENGLISH
919 N. Market Street, Suite 1800
Wilmington, DE 19801
(302)-984-6301
*Attorneys for Defendant Charles L. Baker*

Claire M. DeMatteis (Del. Bar No. 3187)
C. Clark Hodgson, Jr. (of counsel)
Sean R. Adam (of counsel)
STRADLEY, RONON, STEVENS &
    YOUNG, LLP
300 Delaware Avenue, Suite 800
Wilmington, DE 19801
(302)-576-5850
*Attorneys for Sherry L. Freebery*

Joseph R. Biden, III (Del. Bar No. 4203)
Ian Connor Bifferato (Del. Bar No. 3273)
Joseph K. Koury (Del. Bar No. 4272)
BIFFERATO, GENTILOTTI & BIDEN, P.A.
1308 Delaware Avenue
Wilmington, DE 19806
(302)-429-1900
*Attorneys for Defendant Timothy P. Mullaney*

Jeffrey I. Pasek (*pro hac vice*)
Shelley A. Kinsella (Del. Bar No. 4023)
COZEN O'CONNOR
Chase Manhattan Center
1201 N. Market Street, Suite 1500
Wilmington, DE 19801
(302)-295-2034
*Attorneys for Defendants George O. Haggerty
    and James H. Edwards*

DATED: April 22, 2005

ii

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................ v

ARGUMENT ............................................................................................... 1

I.    Acierno Cannot Re-litigate Final Conclusions Of Law And
Findings Of Fact ............................................................................... 4

    A.    Preclusion principles bar re-litigation ............................... 5

    B.    The specific legal and factual issues precluded ............... 8

II.    Absolute Immunity And *Noerr-Pennington* Bar Claims Based
On Prosecution Of And Participation In The Administrative
And State Court Proceedings ........................................................... 11

    A.    Absolute immunity bars claims relating to prosecutorial
functions ............................................................................. 12

    B.    *Noerr-Pennington* bars claims relating to participation
in proceedings ................................................................... 15

III.    Qualified Immunity Bars Acierno's § 1983 Claims ....................... 16

    A.    The procedural due process allegations fail to state a claim
that is clearly established ................................................... 17

    B.    The substantive due process allegations fail to state a
claim that is clearly established ......................................... 21

    C.    The equal protection allegations fail to state a claim
that is clearly established ................................................... 22

    D.    The takings allegations fail to state a claim that is
clearly established .............................................................. 24

    E.    The supervisory liability allegations fail to state a
claim that is clearly established ......................................... 28

IV.    Acierno's RICO Claims Are Barred By Qualified Immunity .......... 28

    A.    The Amended Complaint Fails To State A Civil
RICO Claim ....................................................................... 29

1.     Acierno has failed to plead a RICO pattern .......................................................... 29

2.     Acierno admits non-reliance and fails to plead racketeering and resulting injury .......................... 30

3.     Acierno has failed to plead a § 1962(d) conspiracy claim .................................................... 32

B.     Qualified Immunity Shields The Individual Defendants From Acierno's RICO Claims Because The Facts Alleged Do Not Show A Violation Of Clearly Established Law .................................................... 33

V.     The State Law Tort Claims Should Be Dismissed For Lack Of Supplemental Jurisdiction And Are Barred By the Delaware's Torts Claims Act .......................................................... 34

VI.     Any Remaining Claims Should Be Stayed Until The Conclusion Of The Five Pending State Court Proceedings Arising From the Eight Disputes .................................................... 35

CONCLUSION .......................................................................................................... 38

## TABLE OF AUTHORITIES

<u>Page</u>

**Cases**

*Abbiss v. Delaware Dept. of Transportation,*
    712 F. Supp. 1159 (D. Del. 1989) ..................................................................... 24, 25

*Acierno v. New Castle County,*
    C.A. No. 92-385 (SLR), 2000 WL 718346 (D. Del. 2000) ....................................... 23

*Allen Neurosurgical Assoc., Inc. v. Lehigh Valley Health Network,*
    No. Civ.A. 99-4653, 2001 WL 41143 (E.D. Pa. Jan. 18, 2001) .......................... 30, 31

*Alten v. Ellin & Tucker, Chartered,*
    854 F. Supp. 283 (D. Del. 1994) ............................................................................ 7

*Angelino v. New York Times Co.,*
    200 F.3d 73 (3d Cir. 1999) .................................................................................. 10

*Astoria Federal Sav. and Loan Ass'n v. Solimino,*
    501 U.S. 104 (1981) ............................................................................................. 6

*Bailey v. City of Wilmington,*
    766 A.2d 477 (Del. 2001) ...................................................................................... 5

*Barber v. City of Lewes,*
    C.A. No. 95C-08-006, 1997 WL 127951 (Del. Super. Ct. Jan. 31, 1997) ............... 18

*Bello v. Walker,*
    840 F.2d 1124 (3d Cir. 1988) ............................................................................... 18

*Bertucci's Restaurant Corp. v. New Castle County,*
    836 A.2d 515 (Del. Ch. 2003) ........................................................................... 9, 27

*Brownsville Golden Age Nursing Home, Inc. v. Wells,*
    839 F.2d 157 (3d Cir. 1988) ................................................................................. 15

*Buckley v. Fitzsimmons,*
    509 U.S. 259 (1993) ............................................................................................ 12

*Butz v. Economou,*
    438 U.S. 478 (1978) ............................................................................................ 13

*Cardillo v. Council of South Bethany,*
    C.A. No. 86A-NO-2, 1991 WL 113632 (Del. Super. Ct. June 11, 1991) ................. 24

*Carr v. Town of Dewey,*
    730 F. Supp. 591 (D. Del. 1990) ........................................................................... 34

*Chaffee v. Kraft General Foods, Inc.,*
    886 F. Supp. 1164 (D. N.J. 1995) ......................................................................... 10

*Chesterfield Devt. Corp. v. City of Chesterfield,*
   963 F.2d 1102 (8th Cir. 1992) ............................................................................. 22

*Christiana Town Center v. New Castle County,*
   No. 3342004, 2004 WL 2921830 (Del. Dec. 16, 2004)................................... 7, 17, 20

*Christiana Town Center, LLC v. New Castle County,*
   No. Civ. A. 03M-08-072, 2004 WL 2088032 (Del. Super. Ct. Sept. 16, 2004) ................ 11, 27

*Christiana Town Center, LLC v. New Castle County,*
   No. Civ.A. 20215, 2003 WL 21488200 (Del. Ch. June 23, 2003) ........................... 19

*Christiana Town Center, LLC, v. New Castle County,*
   *Civ. A. 03A-07-008,* 2004 WL 1551457 (Del. Super. Ct. July 7, 2004) ................... 17

*Citizens v. Smyrna-Clayton First v. Town of Smyrna,*
   No. Civ. 1545K, 2002 WL 31926613 (Del. Ch. Dec. 24, 2002) ............................ 19

*Cohen v. Oasin,*
   863 F. Supp. 225 (E.D. Pa. 1994) ..................................................................... 12, 13

*Cowell v. Palmer Twp.,*
   263 F.3d 286 (3d Cir. 2001)................................................................................. 26

*Cray-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc.,*
   344 F.Supp.2d 923 (D. Del. 2004)........................................................................ 3

*Cullen v. Whitman Med. Corp.,*
   188 F.R.D. 226 (E.D. Pa. 1999) .......................................................................... 31

*Cullinan v. Abramson,*
   128 F.3d 301 (6th Cir. 1997) .............................................................................. 33

*Dale v. Town of Elsmere,*
   702 A.2d 1219 (Del. 1997) .............................................................................. 34, 35

*DeBlasio v. Zoning Board of Adjustment for the Tp. of West Amwell,*
   53 F.3d 592 (3d Cir. 1995)................................................................................... 18

*Dominque v. Telb,*
   381 F.2d 673 (6th Cir. 1993) .............................................................................. 33

*EBY-Brown Co. LLC v. Wisconsin Department of Agriculture,*
   295 F.3d 749 (7th Cir. 2002) ............................................................................... 23

*Eichenlaub v. Township of Indiana,*
   385 F.3d 274 (3d Cir. 2004).............................................................................. 21, 22

*Ernst v. Child and Youth Services of Chester County,*
   108 F.3d 486 (3d Cir. 1997)................................................................................. 12

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,*
   __ U.S. __, 125 S. Ct. 1517 (Mar. 30, 2005) ......................................................... 4

*Foy v. Holston,*
    94 F.3d 1528 (11th Cir. 1996) ............................................................................ 16, 28

*General Motors Corp. v. New A.C. Chevrolet, Inc.,*
    263 F.3d 296 (3d Cir. 2001)........................................................................................ 2

*Gibbs v. Deckers,*
    234 F. Supp.2d 458 (D. Del. 2002)........................................................................... 13

*Herr v. Pequea Township,*
    274 F.3d 109 (3d Cir. 2001)..................................................................................... 15

*Highway Materials, Inc. v. Whitemarsh Twp.,*
    Civ.A. 02-3212, 2004 WL 2220974 (E.D. Pa. Oct. 4, 2004)..................................... 23

*Iacaponi v. New Amsterdam Cas. Co.,*
    379 F.2d 311 (3d Cir. 1967)...................................................................................... 2

*Ideal Dairy Farms v. John Labatt, Ltd.,*
    90 F.3d 737 (3d Cir. 1996)....................................................................................... 31

*Imbler v. Pachtman,*
    424 U.S. 409 (1976).................................................................................................. 13

*In re 244.5 Acres of Land,*
    808 A.2d 753 (Del. 2002) .......................................................................................... 28

*In re Fruehauf Trailer Corp.,*
    250 B.R. 168 (D. Del. 2000) ...................................................................................... 2

*Izquierdo v. Sills,*
    C.A. No. 15505-NC 2004 WL 2290811 (Del. Ch. June 29, 2004)........................... 35

*John E. Long, Inc. v. Borough of Ringwood,*
    61 F.Supp.2d 273 (D. N.J. 1998) ....................................................................... 26, 27

*Jones v. City of Boston,*
    No. Civ. 03-12130, 2004 WL 1534206 (D. Mass. July 9, 2004)............................... 14

*Kotler v. Board of Medical Practice,*
    C.A. No. 92A-03-004, 1993 WL 54587 (Del. Super. Ct. Jan. 19, 1993) ................... 20

*Kremer v. Chemical Const. Corp.,*
    456 U.S. 461 (1982).............................................................................................. 5, 8

*Laverne v. Corning,*
    522 F.2d 1144 (2d Cir. 1975).................................................................................... 16

*Lindquist v. Buckingham Tp.,*
    106 Fed. Appx. 768 (3d Cir. 2004)............................................................................ 22

*Logan v. City of Wilmington,*
    723 F. Supp. 1025 (D. Del. 1989) ............................................................................... 8

*Lynch v. The City of Rehoboth Beach,*
   C.A. No. 2266-N, Mem. Op. at 10 (Del. Ch. April 21, 2005) .................................................. 19

*Maldonado v. Flynn,*
   417 A.2d 378 (Del. Ch. 1980),
   *rev'd on other grounds,* 430 A.2d 779 (Del. 1981) ..................................................... 5

*Mandarino v. Pollard,*
   718 F.2d 845 (7th Cir. 1983) ............................................................................. 2

*Mariana v. Fisher,*
   388 F.3d 189 (3d Cir. 2003) .............................................................................. 16

*McLaughlin v. Watson,*
   271 F.3d 566 (3d Cir. 2001) .............................................................................. 28

*McNally v. United States,*
   483 U.S. 350 (1987) ....................................................................................... 31

*Midnight Sessions, Ltd. v. City of Philadelphia,*
   945 F.2d 667 (3d Cir. 1994) .............................................................................. 26

*Modahl v. County of Kern,*
   61 Fed. Appx. 394 (9th Cir. 2003) ...................................................................... 15

*Morse v. Lower Merion School District,*
   132 F.3d 902 (3d Cir. 1997) .............................................................................. 3

*Myers v. Penn Twp. Bd. Of Commissioners,*
   50 F.Supp.2d 385 (E.D. Pa. 1999) ...................................................................... 24

*Nernberg v. City of Pittsburgh,*
   50 F. Supp.2d 437 (W.D. Pa. 1999) .................................................................... 13

*New Castle County v. Sterling Properties Inc.,*
   379 A.2d 1125 (Del. 1977) .............................................................................. 5, 8

*Parklane Hosiery Co. v. Shore,*
   439 U.S. 322 (1979) ....................................................................................... 11

*Purze v. Village of Winthrop Harbor,*
   286 F.3d 452 (7th Cir. 2002) ............................................................................ 22

*Pusey v. Delaware Alcoholic Beverage Control Comm.,*
   596 A.2d 1367 (Del. 1991) ............................................................................... 20

*PZF Properties v. Rodriguez, Inc.,*
   928 F.2d 28 (1st Cir. 1991) .............................................................................. 22

*Rivera v. Green,*
   775 F.2d 1381 (9th Cir. 1985) ........................................................................... 15

*Robinson v. Limerick Tp.,*
   C.A. No. 04-3758, 2005 WL 627880 (E.D. Pa. Mar. 18, 2005) .................................. 21, 22, 23

*Rodriguez v. Stevenson,*
    243 F. Supp.2d 58 (D. Del. 2002) ......................................................................... 14, 22

*Rose v. Bartle,*
    871 F.2d 331 (3d Cir. 1989) ............................................................................... 12, 14

*Schrob v. Catterson,*
    948 F.2d at 1402 (3d Cir. 1991) ............................................................................... 13

*Southmark Prime Plus L.P. v. Falzone,*
    776 F. Supp. 888 (D. Del. 1991) ........................................................................ 2, 10

*Spear v. Town of West Hartford,*
    954 F.2d 63 (2d Cir. 1992) ...................................................................................... 13

*Suitum v. Tahoe Regional Planning Agency,*
    520 U.S. 725 (1997) ................................................................................................. 24

*Sutton v. Sutton,*
    71 F. Supp.2d 383 (D.N.J. 1999) ............................................................................... 6

*Tahoe Sierra Preservation Council v. Tahoe Regional Planning Agency,*
    535 U.S. 302 (2002) ................................................................................................. 26

*Taylor Inv., Ltd. v. Upper Darby Tp.,*
    983 F.2d 1285 (3d Cir. 1993) .................................................................................. 19

*Thornbury Noble, Ltd v. Thornbury Tp.,*
    No. Civ. 99-6460, 2000 WL 1358483 (E.D. Pa. Sept. 20, 2000) ...................... 26, 27

*Town of South Bethany v. Cat Hill Water Co., Inc.,*
    C.A. No. 93C-04-004, 1997 WL 27108 (Del. Super. Ct. Jan. 7, 1997) ............... 24, 25

*Truvia v. Julien,*
    No. Civ.A. 04-0680, 2005 WL 83246 (E.D. La. Jan. 13, 2005) ............................. 15

*United States v. Bloom,*
    149 F.3d 649 (7th Cir. 1998) ................................................................................... 31

*United States v. Mangiardi,*
    962 F. Supp. 49 (E.D. Pa. 1997), *affd*, 202 F.3d 255 (3d Cir. 1999) ...................... 31

*University of Tennessee v. Elliott,*
    478 U.S. 788 (1986) ................................................................................................... 6

*Village of Willowbrook v. Olech,*
    528 U.S. 562 (2000) ................................................................................................. 22

*Walcek v. United States,*
    303 F.3d 1349 (Fed. Cir. 2002) ......................................................................... 26, 27

*Wilcher v. City of Wilmington,*
    60 F. Supp.2d 298 (D. Del. 1999) ........................................................................... 34

ix

*Wilmington Hospitality, LLC v. New Castle County,*
    C.A. No. 03C-07-213, 2004 WL 2419157 (Del. Super. Ct. Oct. 8, 2004) ............................... 25

*Young v. West Coast Industrial Relations Ass'n, Inc.,*
    763 F. Supp. 64 (D. Del. 1991) ......................................................................................... 29

*Zahn v. Transamerica Corp.,*
    162 F.2d 36 (3d Cir. 1947) ................................................................................................. 2

**Statutes**

18 U.S.C. § 1346 .......................................................................................................................... 31

28 U.S.C. § 1738 ............................................................................................................................ 4

42 U.S.C. § 1983 .................................................................................................................... passim

Del. Code Ann. tit. 10, § 4010 ............................................................................................... 33, 34

Del. Code Ann. tit. 10, § 4011 ................................................................................................ passim

Del. Code Ann. tit. 25, § 10125(b) ............................................................................................... 20

Del. Code Ann. tit. 29, § 9504 ...................................................................................................... 25

Del. Code Ann. tit. 9, § 1315 ........................................................................................................ 19

Del. Code Ann., tit. 7, § 6006 ....................................................................................................... 18

**Other Authorities**

2 Moore, *Moore's Federal Practice* § 12.34[1][b] (3rd ed. 2001) ................................................. 2

Wright &. Miller, *Federal Practice And Procedure* § 1357 (2d ed. 1997) .................................... 3

**Rules**

Fed. R. Civ. P. 9(b) ...................................................................................................................... 30

**Regulations**

NCC Code § 12.08.006 ................................................................................................................. 19

## ARGUMENT

Like the Amended Complaint, Acierno's answering brief in opposition to the Individual Defendants' motion to dismiss or stay is long on accusations but short on well-pled facts or case law supporting his claims against government officials. Acierno seeks "unbridled" re-litigation of eight disputes with the County that have already resulted in twenty-two prior administrative or state court proceedings and seventeen final dispositions, arguing that these prior proceedings are not the "focus" of his claims. AB 1, 19.[1] In fact, the Amended Complaint is replete with references to hearings (AC ¶¶ 23, 29-31, 35, 38, 51), appeals and court proceedings (AC ¶¶ 24, 27-28, 32), and, most ubiquitously, the attorneys' fees that Acierno was allegedly "forced" to incur by initiating twenty of these proceedings (AC ¶¶ 21, 24, 26, 28, 32, 54, 59, 70, 73, and 81). In all five administrative appeals arising from these eight disputes, the County's position has been affirmed; in all nine of the finally-resolved proceedings initiated by him in Delaware trial courts, Acierno's claims have been dismissed without a single judgment in his favor; and in both of Acierno's appeals to the Supreme Court of Delaware, his claims have been rejected. OB 3-13 at Exhibit A. Regardless whether the Amended Complaint focuses on these decisions, the findings of fact and conclusions of law from these proceedings preclude key allegations upon which all five Counts of the Amended Complaint are based.

Acierno's answering brief does not contest the authenticity of the administrative and judicial rulings and related pleadings of record that are provided in the appendix to the Individual Defendants' opening brief. However, Acierno erroneously contends that the Court may not consider them in ruling on a motion to dismiss. AB 14-17. As previously noted, courts routinely

---

[1]     Acierno's answering brief in opposition to the Individual Defendants' motion to dismiss (D.I. 52) is referenced herein as "AB [pg.]"; the Individual Defendants' opening brief in support of their motion (D.I. 41) as "OB [pg]"; and the Amended Complaint (D.I. 9) as "AC [¶ ]."

take judicial notice of prior proceedings and public records in ruling on motions to dismiss and motions for judgment on the pleadings. OB 19. For example, in *Southmark Prime Plus L.P. v. Falzone*, 776 F. Supp. 888, 892 (D. Del. 1991), a civil RICO case, this Court held that in motions for judgment on the pleadings, courts may take judicial notice of "proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue" and the "contents of the court records that may be judicially noticed include the briefs and petitions of the parties."[2] If forced to turn a blind eye to prior decisions between the parties, courts would be powerless to prevent disappointed litigants from inflicting unrestrained re-litigation of clearly precluded claims through lengthy, burdensome discovery.

Acierno also relies heavily on the standard of review on motions to dismiss. However, the Rule 12(b)(6) standard does not avail Acierno because vitriol is no substitute for well-pled facts, and subjective characterizations do not state a claim. The Third Circuit has held that "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *General Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 333 (3d Cir. 2001) (quoting 2 Moore, *Moore's Federal Practice* § 12.34[1][b], at 12-61 to 12-63 (3rd ed. 2001)). In ruling on Rule 12(b)(6) motions, courts consistently reject "legal conclusions," "unsupported conclusions," "unwarranted inferences," "unwarranted deductions,"

---

[2]     *See also In re Fruehauf Trailer Corp.*, 250 B.R. 168, 183 (D. Del. 2000) (court may consider, in Rule 12(b)(6) motion, "matters of public record" and "undisputably authentic documents upon which the claims are based" including documents filed with administrative agency (SEC)); *Iacaponi v. New Amsterdam Cas. Co.*, 379 F.2d 311, 312 (3d Cir. 1967) (affirming dismissal where the fact that the issues in the federal suit had been previously litigated in state court "appears on the face of the complaint" and where district court took judicial notice of the state proceedings); *Zahn v. Transamerica Corp.*, 162 F.2d 36, 48 n.20 (3d Cir. 1947) (taking judicial notice of pleadings in state court action); *Mandarino v. Pollard*, 718 F.2d 845, 849 (7th Cir. 1983) (taking judicial notice of a state court judgment and characterizing as almost frivolous the argument that *res judicata* must be rejected because appellants had not placed the state court judgment on the record).

"footless conclusions of law" and "sweeping legal conclusions cast in the form of factual allegations." *Morse v. Lower Merion School District*, 132 F.3d 902, 906 n.8 (3d Cir. 1997) (citing Wright &. Miller, *Federal Practice And Procedure* § 1357 (2d ed. 1997)); *see also Cray-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc.*, 344 F.Supp.2d 923, 929 (D. Del. 2004). The test is not whether the Amended Complaint hurls sufficient epithets at the Individual Defendants, but whether it pleads *facts* that state a claim that withstands application of the preclusion doctrines, the absolute and qualified immunity doctrines, and the statutory immunity afforded by Delaware's County and Municipal Tort Claims Act.

Finally, Acierno contends that in light of a federal investigation begun in September 2002, the Individual Defendants were "reasonably cognizant that any actions that [they] might take against Acierno . . . could potentially subject them to Civil [treble] RICO liability, particularly given ... the fact that Acierno has not been shy to assert his legal rights." AB 49-50. Acierno further argues that the Individual Defendants, "who are not strangers to Acierno, ... should know better than to even take the slightest chance that their conduct might be misconstrued; and they knew right well that they could be questioned regarding their actions involving Acierno." AB 40. These statements vividly illustrate why the absolute and qualified immunities exist, and why the Delaware General Assembly has similarly adopted a statutory immunity for County and municipal employees. Absent these immunities, the Individual Defendants and all government decision makers would in fact be well-advised not to apply the law for fear that a decision adverse to a litigious party could spell personal financial ruin for them and their families.

As set forth below, the Individual Defendants' motion to dismiss should be granted because the Amended Complaint: (1) is grounded on factual and legal disputes that have already

been resolved; (2) attacks the Individual Defendants for performing prosecutorial functions for which they are absolutely immune and for participating in legal proceedings for which they cannot be held liable; (3) alleges violations of constitutional rights that are not clearly established and therefore are barred by qualified immunity; (4) fails to allege key elements of RICO or any violation of clearly established RICO law; and (5) asserts state law tort claims that are plainly barred by Delaware's County and Municipal Tort Claims Act.

## I.    Acierno Cannot Re-litigate Final Conclusions Of Law And Findings Of Fact

The Individual Defendants argued in their opening brief that many of the allegations underlying the Amended Complaint have already been finally resolved against Acierno and thus are barred by the *Rooker-Feldman* doctrine and/or preclusion principles. OB at 18-25. Since then, in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, __ U.S. __, 125 S. Ct. 1517 (Mar. 30, 2005), the U.S. Supreme Court has clarified the scope of *Rooker-Feldman* and stressed that preclusion doctrines, including the Full Faith and Credit Act, 28 U.S.C. § 1738, resolve issues arising from most attempts to re-litigate prior claims.[3] In light of the *Exxon* decision, the Individual Defendants will address Acierno's attempt to re-litigate claims as preclusion issues arising under Rule 12(b)(6) rather than as *Rooker-Feldman* issues under Rule 12(b)(1).

---

[3]    *Exxon* held that the *Rooker-Feldman* doctrine is "confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and reject those judgments." 125 S. Ct. at 1521-22. The court stressed where a "federal plaintiff denies a legal conclusion that a state court has reached in a case to which he was a party" the federal "defendant prevails under principles of preclusion." 125 S. Ct. at 1527. Similarly, where parallel state and federal court proceedings are pending, the court stated that "comity or abstention doctrines might permit or require the federal court to dismiss or stay the federal action in favor of state court action." *Id.* at 1527.

**A.     Preclusion principles bar re-litigation**

Acierno attempts to avoid preclusion primarily through a series of general arguments in which he offers no supporting authority and fails to address the contrary authority cited by the Individual Defendants.

Acierno argues that the preclusion doctrines require that parties to be barred must initiate the prior proceeding "on their own volition." AB 17. Acierno claims he has "brought zero (0) lawsuits of his own volition" because they were "forced upon him." AB 2, 29. In fact, Acierno brought twenty different proceedings of his own volition relating to the eight disputes addressed in the Amended Complaint. Either way, preclusion is based on the issues and claims resolved by the prior actions, not whether the party to be barred was the plaintiff or the defendant.

Acierno erroneously contends that claim preclusion (*res judicata*) does not apply because the Individual Defendants only argue that certain "legal issues" have been resolved in the past. AB 18. Claim preclusion bars parties "from re-litigating *issues* that were or could have been raised" in a prior action between them and requires that "*issues* in the prior action must be decided adversely to the plaintiff's contentions in the instant case." OB 19-20 (quoting *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 466 n.6 (1982) and *Bailey v. City of Wilmington*, 766 A.2d 477, 481 (Del. 2001)). Similarly, Acierno argues that claim preclusion does not apply because the prior proceedings did not involve the exact same causes of action set forth in the Amended Complaint. AB 18, 21. As previously pointed out, claim preclusion "does not require that the claim subsequently asserted be based on the same cause of action to be barred." OB 20 (citing *Maldonado v. Flynn*, 417 A.2d 378, 381 (Del. Ch. 1980), *rev'd on other grounds*, 430 A.2d 779 (Del. 1981); *see also New Castle County v. Sterling Properties Inc.*, 379 A.2d 1125, 1129 (Del. 1977) ("res judicata is no longer confined to a second attempt to re-assert the same

'cause of action' asserted in the first suit, but is available if the pleadings framing the issues in the first action would have permitted the raising of the issues sought to be raised in the second action, and if the facts were known, or could have been known to the plaintiff in the second action at the time of the first action"). Acierno cannot re-litigate a series of finally-resolved legal claims by repackaging them together under a new legal theory. *See, e.g., Sutton v. Sutton*, 71 F. Supp. 2d 383, 385, 391-92 (D.N.J. 1999) (dismissing on *res judicata* and other grounds 42 U.S.C. § 1983 and RICO claims arising from a "seemingly endless series of matters previously litigated in the state courts" as an attempt to "trump[ ] up federal jurisdiction over state law claims for strategic reasons").

With respect to issue preclusion (collateral estoppel), Acierno contends that the proposition that administrative board decisions can have a preclusive effect "would be humorous if the County were intending it as a joke." AB 22. Acierno does not address the Individual Defendants' citation to *University of Tennessee v. Elliott,* 478 U.S. 788, 799 (1986), which holds that preclusion principles can be applied to administrative agency resolution of disputed issues of fact. OB 20. Indeed, the U.S. Supreme Court has emphatically held that:

> We have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality. When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose. Such repose is justified on the sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise.

*Astoria Federal Sav. and Loan Ass'n v. Solimino,* 501 U.S. 104, 107-08 (1981) (internal citations, quotations omitted).

Acierno alleges that issue preclusion does not apply because he did not have an "adequate opportunity to litigate." AB 23. Specifically, he claims that the administrative procedures involving the initial rule to show cause hearings were inadequate because he was not afforded the full panoply of trial procedures. AB 23. However, as the Supreme Court of Delaware has held, administrative proceedings do not require full-blown trials, but rather "adequate notice to all concerned; a full opportunity to be heard by any person potentially aggrieved by the outcome; a decision which reflects the reasons underlying the result and, most importantly, an adherence to statutory or decisional standards then controlling." *Christiana Town Center v. New Castle County*, No. 3342004, 2004 WL 2921830, at *3 (Del. Dec. 16, 2004) (citations, quotations omitted). D.I. 44 at A978-980. Acierno had the benefit of each of these fundamental protections through two-tiered administrative review. Moreover, this Court has specifically rejected the contention that full trial procedures are required in order for administrative decisions to be accorded collateral estoppel effect. In *Alten v. Ellin & Tucker, Chartered*, 854 F. Supp. 283, 291 (D. Del. 1994), Judge Latchum rejected the contention that the Internal Revenue Service was not acting in a judicial capacity based on the absence of the ability to call, examine, cross-examine, and subpoena witnesses in connection with its initial determination. Viewing the administrative process as a whole, including appellate procedures available, the Court held collateral estoppel barred re-litigation of an IRS administrative determination that an employer had willfully failed to pay federal employee withholding taxes in part to prevent persons from circumventing the administrative appeals process. *Id.* at 292.

Acierno also erroneously contends that the findings of the Planning Board and the Review Board have no preclusive effect because the standard of review (as well as further judicial review) is not *de novo*. AB 18-22. A party is precluded by collateral estoppel from re-

litigating matters or facts which the party actually litigated, and it is no objection that the administrative decision was subjected only to a lenient standard of review. *See Kremer Chemical Const. Corp.*, 456 U.S. at 480 n.21 (no requirement that judicial review be *de novo* if it is to be preclusive); *Logan v. City of Wilmington,* 723 F. Supp. 1025, 1034 (D. Del. 1989) (recognizing collateral estoppel effect of prior municipal court conviction even though the federal court plaintiff could have sought only *certiorari* review of that conviction in the Delaware Superior Court); *Sterling Properties Inc.,* 379 A.2d at 1129 (claims barred by *res judicata* based on prior mandamus proceeding).

Finally, Acierno mistakenly contends that issue preclusion does not apply because the Individual Defendants have not argued that he is attempting to re-litigate a factual issue. AB 18. As previously discussed (OB 3-13, 15-25), Acierno is indeed attempting to re-litigate not only legal issues but also factual issues that have already been resolved against him with respect to the eight underlying disputes.

B.     **The specific legal and factual issues precluded**

Acierno concedes that "there may be a few legal or factual issues which this Court ultimately decides to give preclusive effect to" (AB 23) although he does not say what they are. The specific legal and factual issues precluded are addressed below, along with Acierno's arguments (if any) related to them.

The Sterling Dispute (AC ¶¶ 19-22).  The factual allegations in the Amended Complaint relating to the cancellation of the pre-construction meeting are barred by the final decision of the Planning Board.  Acierno's attack on the legality of the sunsetting provision in an action filed in

8

the Court of Chancery is foreclosed by the Court's grant of the County's motion for judgment on the pleadings as to that same claim. OB 21-22.[4] Acierno does not respond to these points.

The January 15 Dispute (AC ¶ 23). Acierno's allegation that he had inadequate notice of the January 24, 2003 hearing is barred by the Supreme Court of Delaware decision affirming the "factual finding" that CTC "voluntarily, knowingly and intelligently waived its due process rights to adequate notice of the hearing by failing to object at the actual hearing." OB 6-7; D.I. 44 at A980. Acierno does not respond to this point.

The Buildings 4&5 Dispute (AC ¶ 24). Claim preclusion bars Acierno's factual allegations regarding a certificate of occupancy because such issues were finally resolved by the Review Board. OB 7-8; 22-23. Acierno does not respond to this point.

The Bertucci's Dispute (AC ¶¶ 25-26). Acierno's claims for attorneys' fees relating to the three decisions by the Court of Chancery and the Supreme Court of Delaware dismissing his claims as filed in the wrong court, and a fourth decision by the Superior Court dismissing the case by stipulation, are absolutely barred as a matter of claim preclusion. OB 8-9, 23. No one "forced" Acierno's attorney to file in the wrong court, to seek reargument on the issues, to appeal the issues, then to file in a different court only to agree to stipulate to the dismissal of that action. Not surprisingly, Acierno fails to cite a single case in support of the proposition that the dismissal of a case for lack of subject matter jurisdiction or by stipulation allows a litigant to bring a new cause of action to recover his attorneys' fees relating to those cases.

The Home Warranties Dispute (AC ¶ 27). Claim preclusion bars Acierno's attempt to collect attorneys' fees incurred in a ten-day litigation that Acierno resolved by clarifying the

---

[4]    Even if claim preclusion would not apply as an absolute bar, because other claims in the case remain pending, this Court could re-decide the legality of the sunsetting provision on the pleadings as did the Court of Chancery.

9

reference to "exceptions" in letters to homeowners accompanying required warranties. OB 23. Acierno erroneously suggests that he did not have an "opportunity" to raise a claim for his attorneys' fees. AB 19. He could have pursued such a claim in the unlikely event the court would have considered it of merit. Also, Acierno erroneously contends that his counsel's representation to the court that First Assistant Wilcox was "well meaning" in seeking clarification of a reference to "exceptions" relating to the warranties (see OB 9-10; 23-24) does not judicially estop Acierno from now attacking Wilcox's good faith in the same matter. Acierno may not reverse his position as to Wilcox's good faith because the prior representation was "not stated as a formal position by Acierno." AB 24. An "admission made by a party's attorney in an argument to the court is ample basis for application of the doctrine." *Chaffee v. Kraft General Foods, Inc.*, 886 F. Supp. 1164, 1169 (D. N.J. 1995); *see also Angelino v. New York Times Co.*, 200 F.3d 73, 100 (3d Cir. 1999) (district court did not abuse its discretion "by holding counsel to the representation that no further discovery was needed"). Acierno's counsel's representation to the Superior Court was not a meaningless "pleasantry," but one that sought to advance Acierno's claim in the Superior Court by demonstrating the reasonableness of Acierno's position. Moreover, the representation flatly contradicts allegations at the heart of the Amended Complaint relating to Wilcox. *Southmark Prime Plus*, 776 F.Supp. at 899 ("[a] party cannot change a characterization of the facts in a case in order to later gain an advantage").

The June 11 Violation Dispute (AC ¶¶ 29-32). Issue preclusion bars Acierno's claim regarding the allegedly "vague and general" June 11 violation notice because the Review Board found that the notice was proper and that Acierno's witness "abandoned the argument" to the contrary. OB 10-11; 24. Acierno does not address this point.

10

The Phase 4 Dispute (AC ¶ 33).  Claim and issue preclusion bars Acierno's contention that the only explanation for the denial of the building permit for phase 4 is the alleged "ongoing scheme."  The Superior Court specifically held that CTC had not met the legal requirements for issuance of a building permit.  *Christiana Town Center, LLC v. New Castle County*, No. Civ. A. 03M-08-072, 2004 WL 2088032 at *1-2 (Del. Super. Ct. Sept. 16, 2004).  Acierno does not address this point.

The Stop Work Order Dispute (AC ¶ 35).  Issue preclusion bars Acierno's factual claim that the September 24, 2003 stop work order was "factually flawed" because the Review Board found that the order complied with County law and found that it was not arbitrary and capricious. Acierno does not address this point.

In sum, the Amended Complaint should be dismissed because it is based on precluded legal and factual claims.  Acierno effectively concedes that some of these claims may be precluded (AB 23); therefore, he cannot engage in "unbridled" re-litigation of them in this Court. AB 19.  The purpose of the preclusion doctrines is to prevent plaintiffs from subjecting defendants to *any* re-litigation of precluded claims.  *E.g., Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979) ("[c]ollateral estoppel ... has the dual purpose of protecting litigants from the burden of re-litigating an identical issue with the same party ... and of promoting judicial economy by preventing needless litigation").  The Amended Complaint should be dismissed based on this fundamental flaw that permeates all five Counts.

## II. Absolute Immunity And *Noerr-Pennington* Bar Claims Based On Prosecution Of And Participation In The Administrative And State Court Proceedings

As previously noted, the Third Circuit has applied absolute and *Noerr-Pennington* immunities in land use cases to shield public servants from the threats and intimidation that

might otherwise prevent them from doing their jobs.  OB 26-28.  Acierno's threats of suit against public employees who disagree with his demands underline why the immunity doctrines are compelling in this case.

**A.    Absolute immunity bars claims relating to prosecutorial functions**

Acierno concedes that "the prosecutorial conduct of presenting the County's case at [administrative appeal board] hearings could potentially be subject to absolute immunity" and that this issue is "typically" addressed under Rule 12(b)(6).  AB 28, 25.  Acierno also concedes that First Assistant Wilcox, who prosecuted the hearings referenced in the Amended Complaint, took actions that "might be" considered prosecutorial.  AB 26.  However, Acierno erroneously contends that Wilcox's immunity is limited to his actual participation in administrative proceedings, that the other Individual Defendants did not perform prosecutorial functions, and that the immunity is not available because they misapplied the law.  AB 27.

Absolute immunity is not limited to presenting the County's case at hearings. Preparation of a case is also immunized because it involves the prosecutor's function. *See Rose v. Bartle*, 871 F.2d 331, 345 & n.12 (3d Cir. 1989) (absolute immunity from allegation of instituting grand jury proceedings without investigation and without good faith belief that any wrongdoing occurred); *Cohen v. Oasin*, 863 F. Supp. 225, 229 (E.D. Pa. 1994) ("the public official enjoys an absolute immunity for those activities associated with the preparation and presentation of the Government's case at an adjudicative proceeding").  To deny immunity for the observations and judgments that are the necessary predicate for administrative actions would "eviscerate" absolute immunity. *See Ernst v. Child and Youth Services of Chester County*, 108 F.3d 486, 497-98 (3d Cir. 1997); *Buckley v. Fitzsimmons*, 509 U.S. 259, 272 (1993).

Absolute immunity is also not limited to an attorney/prosecutor. Executive officers who initiate administrative hearings, such as Assistant General Manager Haggerty and Licensing Manager Edwards, are also within the scope of the prosecutorial immunity. *Butz v. Economou*, 438 U.S. 478, 514-15 (1978); *Spear v. Town of West Hartford*, 954 F.2d 63, 66 (2d Cir. 1992). In applying absolute immunity, courts consider the "nature of the functions performed" and "not the identity of the actor who performed it." *Cohen*, 863 F. Supp. at 229. Administrative personnel performing adjudicatory or prosecutorial functions (such as initiating administrative proceedings or acting as hearing officers) have absolute immunity from damage liability for their acts because adjudication within an agency shares characteristics of the judicial process. *See, e.g., Nernberg v. City of Pittsburgh*, 50 F. Supp.2d 437, 442 (W.D. Pa. 1999) (affording prosecutorial immunity when plaintiffs alleged that City officials acted in bad faith for prosecuting building code violations).

Acierno's claim that absolute immunity is inapplicable because Wilcox, Haggerty and Edwards allegedly "misapplied the law" (AB 27) is mistaken. Absolute immunity applies even where professional misconduct is alleged. *Cohen*, 863 F. Supp. at 229; *Schrob v. Catterson*, 948 F.2d at 1402, 1417 (3d Cir. 1991); *Imbler v. Pachtman*, 424 U.S. 409, 416 (1976). Indeed, even if these Individual Defendants acted willfully, maliciously or in bad faith (and they did not), absolute immunity would apply. *See Gibbs v. Deckers*, 234 F. Supp.2d 458, 462 (D. Del. 2002).

Here, First Assistant Wilcox acted as the attorney for the Department of Land Use in prosecuting Acierno for numerous Code violations (AC ¶ 6), a classic prosecutorial function. Acierno's argument that Wilcox "spent most of his time . . . in his role as an investigator for administrative decision makers" (AB 26) is belied by the allegations of the Amended Complaint. Acierno alleges improprieties by First Assistant Wilcox (and General Manager Haggerty and

Licensing Manager Edwards) in initiating and prosecuting Acierno for numerous County Code violations. *See* AC ¶ 23 (alleging improprieties arising from issuing a violation notice and holding (and prosecuting) an administrative hearing); AC ¶ 24 (alleging improprieties for issuing a violation notice for failure to obtain a certificate of occupancy); AC ¶ 27 (alleging improprieties for issuing a violation notice); AC ¶¶ 29-31 (alleging improprieties for initiating charges under the County Drainage Code and conducting and prosecuting administrative rule to show cause hearings). The mere use of the "catch word investigatory" by Acierno cannot "suffice . . . to forestall dismissal on immunity grounds." *Rose*, 871 F.2d at 345.

Similarly, Assistant General Manager Haggerty and Licensing Manager Edwards are also entitled to absolute immunity for performing prosecutorial functions. Haggerty initiated certain violation notices for Acierno's continued violations of the County Code. D.I. 43 at A544-46; A553-59; A568-76; A591-92. Haggerty also presided over several administrative rule to show cause hearings, and issued several administrative rule to show cause decisions. *See* AC ¶¶ 23, 24, 27, 29, 30, 31; *see also* D.I. 43 at A548-51; A578-85; A587-90; A652-58. Edwards initiated administrative proceedings and conducted administrative rule to show cause hearings. AC ¶¶ 38, 39. These actions are prosecutions of Acierno's violations through the County's process which entitle the Individual Defendants to absolute immunity.[5]

Finally, absolute immunity for initiation of prosecution also extends to General Manager Baker, former County Attorney Mullaney, and former CAO Freebery because "[t]he same immunity accorded to the prosecutor who is directly performing an adjudicatory function

---

[5]     Acierno's reliance upon *Rodriguez v. Stevenson*, 243 F. Supp.2d 58 (D. Del. 2002) is misplaced. In *Rodriguez*, this Court held that people who preside over administrative hearings and persons prosecuting administrative hearings <u>are</u> entitled to absolute immunity and also granted qualified immunity to investigators who performed investigatory functions in opening cases files against the plaintiff. *Id.* at 64, 69.

14

attaches to the supervisor who sets general prosecutorial policies." *Jones v. City of Boston*, No. Civ. 03-12130, 2004 WL 1534206, at *3 (D. Mass. July 9, 2004); *see also Truvia v. Julien*, No. Civ.A. 04-0680, 2005 WL 83246, at *1 (E.D. La. Jan. 13, 2005) (holding that management and supervision of staff for actions in preparation of the initiation of prosecution fall within "sphere of prosecutorial duties" and are afforded absolute immunity); *Rivera v. Green*, 775 F.2d 1381, 1384 (9th Cir. 1985) (granting absolute immunity for a supervisor of a prosecutor); *See, e.g., Modahl v. County of Kern*, 61 Fed. Appx. 394 (9th Cir. 2003) (holding that a district attorney's management and supervision of staff involved in actions preliminary to initiation of prosecution fall within the sphere of absolute immunity).

In sum, Acierno's claims against the Individual Defendants are barred by the absolute immunity doctrine because they are based on alleged actions taken by Wilcox, Haggerty and Edwards in the context of prosecuting violations of the County Code or by the other Individual Defendants in allegedly supervising such actions.

### B.    *Noerr-Pennington* bars claims relating to participation in proceedings

Acierno argues that the *Noerr-Pennington* doctrine does not bar his claims because the Amended Complaint allegedly focuses on the purported "conspiracy" that "gave life" to Acierno's lawsuits. AB 30. However, repackaging claims into a conspiracy theory does not avoid *Noerr-Pennington* immunity. In *Herr v. Pequea Township*, 274 F.3d 109, 111 (3d Cir. 2001), the developer claimed that the defendants "conspired to prevent him from securing the necessary approvals from . . . government agencies." Nevertheless, the Third Circuit held that *Noerr-Pennington* immunity barred the suit and neither the Township nor its supervisors could be "held liable for the delays occasioned by the proceedings." *Id.* at 120. Similarly, in *Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 157-58 (3d Cir. 1988), where

plaintiffs alleged a conspiracy relating to the loss of a license to operate a nursing home, the Third Circuit held that *Noerr-Pennington* immunity prevented plaintiffs from seeking damages for inducing legislative, administrative, or judicial action. *Id.* at 160. There, as here, a plaintiff cannot circumvent *Noerr Pennington* immunity by alleging a conspiracy.

Acierno cites *Mariana v. Fisher*, 388 F.3d 189, 199 (3d Cir. 2003) for the proposition that "the *Noerr-Pennington* doctrine does not apply . . . where a plaintiff seeks to impose liability against a local government based upon zoning enforcement decisions." AB 32. However, the *Mariana* case reaffirmed the holding in *Herr* "reject[ing] the proposition ... that petitioning immunity cannot apply to a public entity." *Mariana*, 338 F.3d at 199.

Finally, there is no inconsistency between the Individual Defendants' invocation of both absolute immunity and *Noerr-Pennington*, as Acierno alleges. AB 31. Because the Amended Complaint attacks both the Individual Defendants' performance of prosecutorial functions and their participation in the twenty-two proceedings upon which the Amended Complaint is grounded, both doctrines apply.

## III.    Qualified Immunity Bars Acierno's § 1983 Claims

Acierno contends that the Individual Defendants "should know better" than to take the "slightest chance" that their actions with respect to Acierno could be "misconstrued." AB 40. Under the doctrine of qualified immunity, public servants need not fear this type of intimidation or second-guessing. *Laverne v. Corning*, 522 F.2d 1144, 1149 (2d Cir. 1975); *Foy v. Holston*, 94 F.3d 1528, 1534 (11th Cir. 1996) (qualified immunity defense functions to prevent public officials from being intimidated – by the threat of lawsuits which jeopardize the official's and his family's welfare – from doing his job). None of Acierno's claims survive scrutiny under the

qualified immunity doctrines because none involve a violation of a due process, equal protection, or a violation of the takings clause, let alone the denial of a clearly established right.

**A.    The procedural due process allegations fail to state a claim that is clearly established**

Acierno appears to concede that his procedural due process claim against the Individual Defendants arises from two administrative rule to show cause hearings held on January 24, 2003 (AC ¶ 23) and on July 8, 2003 (AC ¶ 28). He does not dispute that the decision from the January 24, 2003 rule to show cause hearing (AC ¶ 23) was affirmed by the Review Board (D.I. 42 at A107), the Delaware Superior Court (*Christiana Town Center, LLC, v. New Castle County, Civ. A. 03A-07-008,* 2004 WL 1551457 at *1 (D.I. 44 at A957) (Del. Super. Ct. July 7, 2004)), and the Supreme Court of Delaware (*Christiana Town Center, LLC,* 2004 WL 2921830, at *1 (D.I. 44 at A978)). Similarly, he does not dispute that the July 8, 2003 rule to show cause hearing decision (AC ¶ 28) (dated August 15, 2003 (D.I. 43 at A652-659)) was unanimously upheld by the Review Board (D.I. 44, A878-83).[6] Despite these rulings, Acierno claims that the Individual Defendants denied him due process because of the lack of: (1) a *de novo* standard of review on appeal; and (2) recording and subpoena procedures at the rule to show cause stage (even though both are provided at the administrative review stage).[7] These allegations fall far short of stating any procedural due process claim, let alone a claim for a denial of clearly established right.

Acierno offers no support for his position that the Individual Defendants denied him procedural due process because he was not afforded a *de novo* review of his challenges to the

---

[6]    Acierno's petition for a writ of *certiorari* from this decision of the Review Board is pending before the Superior Court.

[7]    A copy of the Review Board's Rules of Procedures is attached hereto as Exhibit "A."

administrative decisions.  AB 36.  *De novo* review is not required in order to have an adequate procedure because "[i]t is the law in this Circuit that a state provides adequate due process when it provides 'reasonable remedies to rectify *legal error* by a local administrative body.'" *DeBlasio v. Zoning Board of Adjustment for the Tp. of West Amwell*, 53 F.3d 592, 597 (3d Cir. 1995) (emphasis supplied) (quoting *Bello v. Walker*, 840 F.2d 1124, 1128 (3d Cir. 1988)).[8]  Acierno has three distinct levels of review of alleged legal errors committed by the Code Official at rule to show cause hearings – appeal to the Review Board, followed by *certiorari* review by the Superior Court and the Supreme Court of Delaware – which are clearly "reasonable remedies" to "correct legal error" if there had been any.  *DeBlasio,* 53 F.3d at 597.  Moreover, Acierno's complaint about review standards ignores the fact that the Individual Defendants did not create or apply the standard of review that he complains of and therefore they cannot be held personally liable for the application of these standards.  *See Barber v. City of Lewes*, C.A. No. 95C-08-006, 1997 WL 127951, at *15 (Del. Super. Ct. Jan. 31, 1997) (holding that although the city's public safety director may have played a part in plaintiff's demotion by the town council, he was "not in a position to afford [the plaintiff] procedural due process and thus is not a proper defendant").

Acierno's claim that rule to show cause hearings must be recorded is also unfounded. AB 38.  No provision in the County Code, the County Building Code, the County Drainage Code, or the State Code requires the recording of rule to show cause hearings held by the Code Official, and no judicial decision requires such recordation.  Acierno's reliance on Del. Code Ann., tit. 7, § 6006 (AB 38) is misplaced because that statute applies only to hearings conducted by the Secretary of the Delaware Department of Natural Resources ("DNREC") or his designee

---

[8]    Both cases were overruled on other grounds in the case of *United Artists Theatre Circuit, Inc. v. Tp of Warrington*, 316 F.3d 392 (3d Cir. 2003).

within DNREC. Recording of administrative show cause hearings is not required by any statute, and there is no due process violation for holding unrecorded initial administrative hearings.[9]

Acierno's contention that the County Code does not permit an appeal from a violation notice (AB 37-38) is misplaced. Pursuant to NCC Code § 12.08.006, a violation notice, as a decision by the Code Official, may be appealed to the Review Board.[10] Because Acierno did not appeal the June 11, 2003 violation notice to the Board, that notice became final. *See Christiana Town Center, LLC v. New Castle County*, No. Civ.A. 20215, 2003 WL 21488200, at *2 (Del. Ch. June 23, 2003). D.I. 42; A249-50. Acierno's claims therefore are not ripe and must be dismissed. *See Taylor Inv., Ltd. v. Upper Darby Tp.*, 983 F.2d 1285, at 1291 (3d Cir. 1993) (dismissing § 1983 claims on ripeness grounds due to plaintiffs' failure to exhaust administrative remedies).

Acierno appears to concede that his general allegation of inadequate notice and opportunity to be heard, or to subpoena witnesses, falls far short of the type of particularized allegation of a denial of procedural due process that a reasonable official would understand as a

---

[9]     The Review Board has the final decision regarding validity of the decision of the Code Official in rule to show cause hearings because the Board has the authority to affirm, reverse, modify or vacate any decision of the Code Official. Del. Code Ann. tit. 9, § 1315. Under Delaware law, only hearings before final decision makers are entitled to full procedural due process protection. *Citizens v. Smyrna-Clayton First v. Town of Smyrna*, No. Civ. 1545K, 2002 WL 31926613, at *8 (Del. Ch. Dec. 24, 2002) (holding that an alleged procedural irregularity before the planning commission was legally insignificant because the applicant had a full and fair opportunity to present its case to the council – the decision makers in the case); *Lynch v. The City of Rehoboth Beach*, C.A. No. 2266-N, Mem. Op. at 10 (Del. Ch. April 21, 2005) (unreported) (holding that when plaintiffs had a full opportunity to present their arguments to the ultimate decision maker, their due process rights were not offended). Because there is no allegation by Acierno that there are any procedural irregularities committed by the Review Board (the final decision maker), there can be no procedural due process violation as a matter of law.

[10]     Acierno's argument that a landowner could or should ignore a violation notice issued by the government if no penalties are imposed (AB 37-38) is illogical, as most persons receiving violation notices move to correct the violations so that penalties will not issue. Acierno chose to ignore Code violations, which led to the enforcement actions and fines. *See D.I. 43 at A544-802.*

violation of Acierno's clearly established constitutional rights. AB 36-37.[11] With respect to the January 24, 2003 rule to show cause hearing (AC ¶ 23), there is no such clearly established right. The Supreme Court of Delaware specifically found that Acierno waived any additional procedural due process violation relating to notice. *Christiana Town Center, LLC*, 2004 WL 2921830, at *1 (D.I. 44 at A978). Similarly, with respect to the July 8, 2003 rule to show cause hearing (AC ¶ 28), Acierno has not alleged that the Individual Defendants have violated a clearly established right.

In sum, there is no right to a recording or to subpoena witnesses to attend administrative rule to show cause hearings as a matter of law, particularly in light of all the procedures afforded including administrative appellate review. No Court has held that the County's procedures for review of the administrative hearings are inadequate, and Acierno has not cited a single decision supporting his view that a *de novo* hearing is required on appeal for the procedures to be adequate. Acierno has failed to allege any violation of a "clearly established" procedural due process right. The Individual Defendants are therefore entitled to qualified immunity as to Acierno's procedural due process claims.

---

[11] No County or state law requires a board or a hearing officer to issue subpoenas. Under the state administrative procedures act, Del. Code Ann. tit. 25, § 10125(b), or under Chapter 60 of the Delaware Code (neither of which are applicable to rule to show cause hearings under the County Code), a board or the DNREC Secretary (or their designated subordinate) *may* issue subpoenas for witnesses. This, however, is a discretionary act, and the board "is not required to use these powers in any proceeding. . ." *Pusey v. Delaware Alcoholic Beverage Control Comm.*, 596 A.2d 1367, 1369 (Del. 1991); *see also Kotler v. Board of Medical Practice*, C.A. No. 92A-03-004, 1993 WL 54587, at *4 (Del. Super. Ct. Jan. 19, 1993) ("the Board has the discretion to determine when pre-hearing discovery is necessary").

**B.     The substantive due process allegations fail to state a claim that is clearly established**

Acierno's response to the Individual Defendants' arguments on substantive due process consists of vague accusations about alleged "outlandish" conduct.  AB 40.  Acierno's only specific argument is that the Third Circuit has announced a "newly revived arbitrary and irrational standard" based on a single, non-precedential opinion.  AB 39.  In fact, the Third Circuit has uniformly applied the rigorous "shocks the conscience" standard in all precedential opinions since 2003.  *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004); *United Artists*, 316 F.3d at 399.

Acierno argues that the Individual Defendants acted with improper motive.  AB 7, 40; AC ¶ 54.  However, the County's enforcement of the Drainage Code, the County's issuing violation notices and conducting hearings for Acierno's numerous violations of the law (D.I. 43 at A544-802), and the County's actions in attempting to bring Acierno into compliance with the provisions of the subdivision and building codes (AC ¶¶ 20, 21, 22, 25, 27) do not, as a matter of law, meet the "shocks the conscience" standard.  For instance, in *Robinson v. Limerick Tp.*, C.A. No. 04-3758, 2005 WL 627880, at *1 (E.D. Pa. Mar. 18, 2005), the plaintiffs similarly argued that they were the victim of the Township's "shotgun" litigation strategy, and alleged that the town supervisors' actions against them were taken to garner votes in a municipal election.  The court, in dismissing plaintiffs' complaint on a 12(b)(6) motion, held that plaintiffs' allegations were "at best allegations of improper motive which do not meet the high standard of egregiousness required" by the "shocks the conscience test."  *Id.*  Therefore, even if the Court gives weight to Acierno's subjective characterizations, Acierno has not stated a substantive due process claim because Acierno alleges only that the Individual Defendants acted with "improper motives."

Finally, even if Acierno's substantive due process claim could survive Rule 12(b)(6) scrutiny, the Individual Defendants are entitled to qualified immunity because Acierno has not alleged or otherwise pointed to any particularized right that is clearly established and violated by the Individual Defendants' actions. In fact, Acierno admits that he cannot point to such a law under the facts alleged. AB 41. Indeed, in the Third Circuit (as in other circuits), the enforcement of building, zoning, and other municipal laws does not rise to the level of a substantive due process violation. *Eichenlaub*, 385 F.3d at 285; *United Artists*, 316 F.3d at 399; *Chesterfield Devt. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1104-05 (8th Cir. 1992); *PZF Properties v. Rodriguez, Inc.*, 928 F.2d 28, 32 (1st Cir. 1991): *Lindquist v. Buckingham Tp.*, 106 Fed. Appx, 768, 773 (3d Cir. 2004); *Robinson*, 2005 WL 627880, at *1. There is no "clearly established" substantive due process violation for enforcing municipal laws against a developer who refuses to obey the Code. *See, inter alia* D.I. 42, 43, 44, Appx. Tab 5, Tab 6, Tab 18, Tab 19, Tab 23, Tab 24, Tab 28, Tab 30, Tab 32, and Tab 34. Acierno has not met his burden of alleging facts that would permit a reasonable inference that the Individual Defendants violated clearly established substantive due process rights in attempting to enforce the County Code.

**C.    The equal protection allegations fail to state a claim that is clearly established**

The Individual Defendants' opening brief demonstrated that Acierno's equal protection claims fail because the Amended Complaint does not allege facts showing that: (1) Acierno was treated differently than others who are *prima facie* identical under an "apples to apples" comparison (*see e.g.*, *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002)); and that (2) the different treatment was wholly irrational and arbitrary (*Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 565 (2000)) such that there is no conceivable set of facts that could provide a rational basis for the treatment complained of (*EBY-Brown Co. LLC v. Wisconsin*

22

*Department of Agriculture*, 295 F.3d 749, 754 (7th Cir. 2002)). Acierno does not address either of these points; rather, Acierno argues only that because he alleged examples of developers who purportedly received more favorable treatment than him, he has stated an equal protection claim. AB at 41.

Alleging similarly situated parties is not enough – Acierno must plead facts establishing that there is no rational basis for the alleged disparate treatment. For example, in *Robinson*, 2005 WL 627880, at *2, the court dismissed a Complaint where the plaintiffs alleged the existence of other similarly situated parties but failed to establish that there was no rational basis for the different treatment. *See also Highway Materials, Inc. v. Whitemarsh Twp.*, Civ.A. 02-3212, 2004 WL 2220974, at *22 (E.D. Pa. Oct. 4, 2004) (holding that plaintiff must show that there is no rational basis for the treatment). Because Acierno has failed to plead that there is no rational basis for the purported differing treatment, his equal protection claims should be dismissed. Moreover, as set forth in the Individual Defendants' opening brief, a rational basis exists to support the denial of the equal protection claim. OB 41-42.

Additionally, Acierno has not pled facts showing a violation of any clearly established and particularized equal protection right. There is no clearly established law that prevents municipal officials from enforcing building codes, drainage codes, or other laws against a recalcitrant developer. Moreover, there is no clearly established law that County officials are required to follow under the equal protection clause to enforce development laws in the exact same manner when situations differ. *See Acierno v. New Castle County*, C.A. No. 92-385 (SLR), 2000 WL 718346, at *6 (D. Del. 2000) (even if there are others similarly situated, a classification does not fail rational basis review because it results in some inequality). Because Acierno points

23

to no particularized law indicating a "clearly established" equal protection claim arising from the facts presented, the Individual Defendants should be afforded qualified immunity.

**D.      The takings allegations fail to state a claim that is clearly established**

Arguing that Judge Roth acted on a "mistaken belief" in deciding the case of *Abbiss v. Delaware Dept. of Transportation,* 712 F. Supp. 1159 (D. Del. 1989), Acierno claims that his takings claims are ripe even though he never sought compensation in the state court system. The law does not support Acierno's position.

Twenty years ago, the Supreme Court held "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Williamson County,* 473 U.S. at 194; *see also Myers v. Penn Twp. Bd. Of Commissioners,* 50 F.Supp.2d 385, 392 (E.D. Pa. 1999) ("Before a federal court can entertain a takings claim . . . the owner must have sought compensation for the taking through available state avenues for relief.").[12] Thus, if a state inverse condemnation remedy exists, Acierno does not have a ripe takings claim.

Delaware state courts recognize a right for a property owner to seek an inverse condemnation remedy. *See Town of South Bethany v. Cat Hill Water Co., Inc.,* C.A. No. 93C-04-004, 1997 WL 27108, at *4 (Del. Super. Ct. Jan. 7, 1997); *Scott v. City of Harrington,* 1987 WL 11461, at *1 (Del. Super. Ct. May 15, 1987); *Cardillo v. Council of South Bethany,* C.A. No. 86A-NO-2, 1991 WL 113632, at *2 (Del. Super. Ct. June 11, 1991). Moreover, Article I, §8 of

---

[12]     The cases of *Palazzolo v. Rhode Island,* 533 U.S. 606 (2001) and *Suitum v. Tahoe Regional Planning Agency,* 520 U.S. 725 (1997) (cited by Acierno) do not alter this rule. In *Palazzolo,* the plaintiff exhausted state inverse condemnation remedies and the United States Supreme court heard the case on appeal from the Rhode Island Supreme Court. *Palazzolo,* 533 U.S. at 611. In *Suitum,* the Supreme Court reaffirmed that state just condemnation procedures must be exhausted before asserting a takings claim in federal court. *Suitum,* 520 U.S. at 734. The *Suitum* Court, however, did not reach this issue because, unlike here, the Tahoe Regional Planning Agency did not have provisions for paying just compensation. *Id.* at n.8.

the Delaware Constitution provides that no person's property may be taken for public use without due compensation, and Del. Code Ann. tit. 29, § 9504 provides certain rights for persons seeking an inverse condemnation remedy. [13]   Delaware courts also recognize a claim for inverse condemnation for alleged regulatory takings.   *See Wilmington Hospitality, LLC v. New Castle County*, C.A. No. 03C-07-213, 2004 WL 2419157, *1 (Del. Super. Ct. Oct. 8, 2004).   Thus, Delaware courts provide an adequate inverse condemnation remedy and Acierno's federal takings claims are not ripe.

Even if the Court entertains Acierno's flawed argument that there is "no right to pursue an inverse condemnation claim under the State Constitution or any other express statutory procedure" (AB 46), Acierno would still be required to pursue the state inverse condemnation remedy before pursuing a takings remedy in this court.   As Judge Roth held in *Abbiss*, 712 F. Supp. at 1162-1163:

> Even if Delaware law did not provide specifically for inverse condemnation actions or even if every decision from the Delaware courts to have considered the issue of inverse condemnation had denied recovery to the plaintiff that would not be enough to waive the requirement for the plaintiffs to pursue their state law remedies first.

In this case, Acierno has not exhausted the available State condemnation remedy before asserting a takings claim in this Court.   Acierno's takings claims are not ripe and should be dismissed.[14]

Even if the takings claims were ripe, they fail to state a claim.   The Individual Defendants' opening brief demonstrated that a regulatory taking occurs only when the

---

[13]     State sovereign immunity "does not bar an inverse condemnation action." *Town of South Bethany*, 1997 WL 27108, at *4.

[14]     Acierno may not avoid the ripeness requirement mandated by the United States Supreme Court because it believes that it would suffer procedural difficulties if the state remedy is exercised.

government's action deprives a landowner of all economically viable use of the land. *Cowell v. Palmer Twp.*, 263 F.3d 286, 291 (3d Cir. 2001). And, a temporary prohibition on use of property cannot render a property valueless because the property will regain its value once the prohibition is lifted. *Tahoe Sierra Preservation Council v. Tahoe Regional Planning Agency*, 535 U.S. 302, 332 (2002) (upholding a thirty-two month moratorium on building in the Lake Tahoe area). A taking may not be established upon a showing of "the denial of 'the ability to exploit a property interest that [the plaintiffs] heretofore had believed was available.'" *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 676 (3d Cir. 1994).

To determine if a regulatory takings has occurred, the court is required to look at the relevant parcel as a whole. *Walcek v. United States*, 303 F.3d 1349, 1356 (Fed. Cir. 2002) (citing *Tahoe Sierra Preservation Council*, 535 U.S. at 326-29). To state a claim for a temporary taking, it is not enough for a landowner to allege that it was merely denied a particular permit, especially when the owner retained the right to put its land to alternate uses. *Thornbury Noble, Ltd v. Thornbury Tp.*, No. Civ. 99-6460, 2000 WL 1358483, at *3 (E.D. Pa. Sept. 20, 2000). Even if the municipal regulation denies the best and most profitable use of the land, if economically viable uses remain, there is no taking. *John E. Long, Inc. v. Borough of Ringwood*, 61 F.Supp.2d 273, 288 (D. N.J. 1998); *Palazzolo*, 533 U.S. at 631 ("[a] regulation permitting a landowner to build a substantial residence on an 18-acre parcel does not leave the property 'economically idle'").

As outlined in Acierno's brief, the only alleged takings are: (1) the hindering of Acierno's ability to develop a 600+ unit manufactured home community known as Red Lion

Village; and (2) delay occasioned in opening a Bertucci's restaurant[15] and phase 4[16] of the Christiana Town Center. As a matter of law, there is no takings relating to the Red Lion Village plan because Acierno fails to allege that there has been a denial of all economically viable use of the land. Certainly Acierno can submit a plan and build on this parcel, albeit not the 600+ manufactured home community that he desires. Being denied the highest and best use does not constitute a regulatory taking. *John E. Long, Inc.*, 61 F.Supp.2d at 288.

Alleged delay causing lost rent at the Christiana Town Center site is also not a compensable taking. The Christiana Town Center site is a functioning shopping center with tenants such as Boscov's Department Stores, Linens and Things, DSW Shoe Warehouse, and other retail shops. Acierno's inability to construct phase 4 until road issues are resolved with the Delaware Department of Transportation does not constitute a taking. *See infra* n.16. Moreover, there can be no temporary takings claim because Acierno has not lost all economically viable use of the land. *Thornbury Noble, Ltd.*, 2000 WL 1358483, at *3; *Walcek*, 303 F.3d at 1356. Acierno's failure to allege any loss of all economically viable use of any property mandates dismissal of the takings allegations for failure to state a claim.

Finally, Acierno tacitly admits that there is no clearly established right by arguing that the taking determination is a fact intensive analysis. AB 47. Acierno has not cited a case or an analogous situation wherein a takings claim was recognized. Without such a showing of a how

---

[15]    As a matter of law, there can be no temporary taking with respect to the delay in opening the Bertucci's restaurant because the delay was caused by Acierno's refusal to request the required inspections. *Bertucci's Restaurant Corp. v. New Castle County*, 836 A.2d 515, 521 (Del. Ch. 2003).

[16]    As a matter of law there can be no taking with respect to phase 4 of the Christiana Town Center because the Superior Court has already held (after trial) that Acierno's building permit applications for the site are deficient on their face and that the Delaware Department of Transportation has objected to any further construction at this site until issues relating to the roads are resolved. *Christiana Town Center, LLC*, 2004 WL 2088032, at *1 (D.I. 44 at A967).

the alleged taking allegedly violates a clearly established and particularized right (*see McLaughlin v. Watson*, 271 F.3d 566, 571) (3d Cir. 2001), Acierno has not met his burden and the Individual Defendants should be afforded qualified immunity. *Foy*, 94 F.3d at 1532. [17]

### E.    The supervisory liability allegations fail to state a claim that is clearly established

As stated in the opening brief, the Amended Complaint fails to state a claim for "supervisory liability" against General Manager Baker, former County Attorney Mullaney, and former CAO Freebery under § 1983 because it does not allege "with appropriate particularity" facts showing a direct causal link between any supervisor and the alleged unconstitutional conduct of a subordinate. In response, Acierno does not point to any specific allegations that would meet this standard. Rather, Acierno repeats the same vague claim of "conspiracy." AB 48. Acierno has failed to plead any requisite specific "acts or omissions" necessary to overcome the immunity enjoyed by County Attorney Mullaney, General Manager Baker and CAO Freebery in their supervisory capacities. Therefore, the Amended Complaint should be dismissed as to these Individual Defendants as well.

### IV.    Acierno's RICO Claims Are Barred By Qualified Immunity

Acierno appears to allege that the Individual Defendants engaged in a pattern of racketeering activity through an enterprise consisting of either themselves or the County. AC ¶ 67. Assuming, *arguendo*, that such allegation satisfies the "enterprise" requirement with respect to the Individual Defendants, Acierno's RICO claim still cannot survive review under Rule 12(b)(6) and the doctrine of qualified immunity. Acierno proceeds on the theory that the

---

[17]    The decision in *In re 244.5 Acres of Land*, 808 A.2d 753, 758 (Del. 2002) does not create a "clearly established" takings right. AB 34. That decision applied the vested rights doctrine in holding that once a developer has gone far enough in the development process, relying in good faith on existing standards, the municipality cannot change the law.

Individual Defendants engaged in a "pattern of racketeering activity" by working for the County and prosecuting violations of the County Code, which have been repeatedly affirmed on review. Acierno's theory fails for several reasons, not the least of which is that no reasonable County official would have been on notice that successfully prosecuting violations of the County Code would constitute a clearly established violation of RICO, or that the official could be held liable for the multiple affirmances of these decisions on appeal.

## A.    The Amended Complaint Fails To State A Civil RICO Claim

Acierno fails to state a civil RICO claim under Rule 12(b)(6) because he has failed to plead sufficiently: (1) the requisite continuity; (2) mail and wire fraud; and (3) a legally cognizable RICO conspiracy claim.

### 1.    Acierno has failed to plead a RICO pattern

Acierno fails to establish the "pattern" or "continuity" element of a § 1962(c) claim. To establish close ended continuity, Acierno must establish a series of predicate acts (here, mail or wire fraud) that last for at least greater than one year. *Young v. West Coast Industrial Relations Ass'n, Inc.*, 763 F. Supp. 64, 74 (D. Del. 1991). While Acierno argues that "[t]he period of conduct alleged" is over two years, AB 52, the Amended Complaint pleads that the first purported mail or wire fraud allegation occurred on December 31, 2002 (AC ¶ 21), and the last alleged acts that involved alleged mail or wire fraud occurred sometime in August of 2003 (AC ¶ 31). [18] Thus, the duration of predicate activities alleged lasted only eight months, i.e., from December 31, 2002 through August 2003. Eight months is not enough to establish continuity for purposes of establishing a "close-ended" pattern. *See Young*, 763 F. Supp. at 74 (granting

---

[18]    The proposed Second Amended Complaint, which will be separately addressed, does not extend the relevant time for purported mail and wire fraud claims.

motion to dismiss on grounds that plaintiffs failed to allege proper pattern of racketeering activity).

Regarding "open-ended" continuity, Acierno essentially admits that the Amended Complaint fails to establish an ongoing pattern of related, continuous predicate activity but suggests that he might find "residual animosity" toward him through discovery (AB 52).  The Amended Complaint fails to allege the purported predicate acts (i.e. alleged mail and wire fraud) are ongoing or that the pattern is a regular way of doing business.  Thus, the Amended Complaint fails to plead facts sufficient to satisfy either the closed-ended or open-ended test for the RICO continuity requirement.

### 2.    Acierno admits non-reliance and fails to plead racketeering and resulting injury

Acierno has failed to plead the elements of the alleged predicate activity—mail and wire fraud—with particularity, as required by § 1962(c) and Fed. R. Civ. P. 9(b), because the Amended Complaint fails to state the who, what, when, and where of the alleged fraud.  *Allen Neurosurgical Assoc., Inc. v. Lehigh Valley Health Network,* No. Civ.A. 99-4653, 2001 WL 41143, at *3 (E.D. Pa. Jan. 18, 2001).  In his answering brief (AB 51-52), Acierno: (1) repeats vague and conclusory statements of RICO's fraud elements; (2) cites no cases with facts similar to his allegations in which RICO liability existed; and (3) claims, without support or citation, that his mail and wire fraud-based RICO claims constitute "a statutory abrogation of the traditional fraud elements of detrimental reliance."  AB 52.

The Amended Complaint vaguely alleges that Wilcox and others authored letters or violation notices that were "factually and legally incorrect" or were "false or manufactured."  AC ¶¶ 22, 24, 25, and 31.  Acierno fails to plead how or why the letters or the notices are legally incorrect or fraudulent.  This bare-bones pleading, without any specific allegations regarding the

purported conduct that constitute fraud is not enough to satisfy Rule 9(b). The RICO claims can be dismissed on this basis alone.

More importantly, repleading the mail and wire fraud claims would be futile because Acierno cannot plead reliance, a necessary predicate act in a civil RICO case. *Allen Neurosurgical Associates, Inc.*, 2001 WL 41143, at *4 (granting motion to dismiss RICO claim where particularly plead facts failed to show reliance). Reliance is a necessary element to establish mail and wire fraud because a fraud requires misrepresentation and misrepresentation requires justified reliance. *See id.* at *4, n.3 (citing *Ideal Dairy Farms v. John Labatt, Ltd.*, 90 F.3d 737, 746-47 (3d Cir. 1996) ("a person cannot be defrauded by a representations [sic] that he knows to be untrue")).[19]

If anything is clear from the Amended Complaint, it is that Acierno has challenged every single government action alleged therein and has not, therefore, *relied* on any action of the Individual Defendants to his detriment. Acierno admits that "no rational person would ever detrimentally rely on governmental actions which they recognize were illegal, and then proceed to challenge them in good faith." AB 52. There can be no detrimental reliance by Acierno as a matter of law because he challenged every action before boards and courts.[20] Without satisfying

---

[19]     "[W]here the RICO predicate act is mail or wire fraud, proof of proximate cause is fraught with the same evidentiary trappings as proof of reliance." "[C]ontrasting reliance with causation is simply noting a distinction without a difference." *Cullen v. Whitman Med. Corp.*, 188 F.R.D. 226, 233 (E.D. Pa. 1999). Whether as an element of fraud or a requirement of § 1964(c), a plaintiff must establish reliance. *See id.* at 233 n.1.

[20]     Acierno states, without any supporting authority, that the adoption of the "honest services" doctrine is "a statutory abrogation of the traditional fraud elements of detrimental reliance." AB 51-52. This is not the law. The "honest services" statute (18 U.S.C. § 1346) was adopted in response to *McNally v. United States*, 483 U.S. 350 (1987), which held that mail and wire fraud statutes did not prohibit schemes to defraud citizens the rights to honest governmental services. *See United States v. Mangiardi*, 962 F. Supp. 49, 51 (E.D. Pa. 1997), *affd*, 202 F.3d 255 (3d Cir. 1999). Thereafter, the "honest services" doctrine has been applied when a public

the reliance prong, there can be no civil cause of action for the predicate acts of mail and wire fraud under civil RICO.

Because Acierno has failed to plead fraud with particularity, has failed to allege reliance, and cannot bootstrap non-mail and wire fraud claims into a RICO claim, the RICO count should be dismissed.

### 3.     Acierno has failed to plead a § 1962(d) conspiracy claim

Acierno claims, without citing authority, that pleading conspiracy requires "nothing more than an agreement between two or more persons to commit an illegal act and an overt act in furtherance thereof" and that "the entire part and parcel of what a conspiracy claim must aver" is "alleging that parties agreed to act in concert for an illicit purpose." AB 53-54. This Court has held that alleging an agreement to commit predicate acts standing alone is not enough, and specific elements must be pled for a valid conspiracy claim. *See Supra Medical Corp. v. Baker*, C.A. No. 95-556-SLR, 1996 WL 571544, at *6 (D. Del. Sept. 26, 1996) (holding no facts alleged from which court could infer that defendant "had knowledge of or himself had a bad purpose" for alleged plan to take control of company). Acierno has failed to plead with particularity, *inter alia,* that each of the Individual Defendants knew that their performance of their duties was part of an alleged pattern of racketeering activity. Thus, his conspiracy allegations fail to state a claim under § 1962(d).

---

official is bribed or personally benefits from the alleged mail or wire fraud (which is not alleged here). *Id.*; *see also United States v. Bloom,* 149 F.3d 649, 656 (7th Cir. 1998). There is no indication that the adoption of the "honest services" provision of 18 U.S.C. § 1346 abrogates the requirement of reliance for the predicate acts of mail and wire fraud under civil RICO.

**B.    Qualified Immunity Shields The Individual Defendants From Acierno's RICO Claims Because The Facts Alleged Do Not Show A Violation Of Clearly Established Law**

Even assuming Acierno's RICO cause of action states a claim, the Individual Defendants are shielded by qualified immunity because Acierno has not pled a violation of any clearly established law. Acierno does not plead any facts or cite any cases to show that "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Cullinan v. Abramson*, 128 F.3d 301, 301 (6th Cir. 1997). To circumvent qualified immunity, Acierno must prove that "[t]he statutory or constitutional rights in question . . . [were] 'so clearly established when the acts were committed that *any* officer in the defendant's position, *measured objectively*, would have *clearly* understood that he was under an affirmative duty to have refrained from such conduct.'" *Id.* (quoting *Dominque v. Telb,* 381 F.2d 673, 676 (6th Cir. 1993)) (emphasis supplied in *Cullinan*).

Acierno has not cited a single case where municipal government officials (who took an action similar to the actions allegedly taken by the Individual Defendants) were held liable under civil RICO. Nor does Acierno allege why hypothetical similarly situated officials would have understood that they could be held liable under civil RICO for following established County procedures and enforcing the County Code. Acierno seems to suggest that it is enough to claim that the Individual Defendants were "reasonably cognizant" that Acierno, who is not "shy" regarding litigation, might sue them under RICO. But this argument only shows, again, why the doctrine of qualified immunity exists to protect government officials from well-funded developers who litigate when the government says "no" or brings enforcement actions.

**V.    The State Law Tort Claims Should Be Dismissed For Lack Of Supplemental Jurisdiction And Are Barred By the Delaware's Torts Claims Act**

Acierno does not contest that the Court may decline jurisdiction over his state law claims of civil conspiracy and tortious aiding and abetting should it dismiss his federal claims. However, he contends that his state law claims would survive a motion to dismiss the Delaware's County and Municipal Tort Claims Act, Del. Code Ann. tit. 10, § 4010 *et seq.,* because: (a) the Individual Defendants are not really "employees" under the Act for purposes of his suit; (b) they allegedly acted with malicious intent. Neither of these arguments has merit.

The Tort Claims Act broadly provides that: "Except as otherwise expressly provided by statute, all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery of damages." Del. Code Ann. tit. 10, § 4011 (a). An "employee" is defined as a person acting on behalf of a governmental entity in any official capacity." Del. Code Ann. tit. 10, § 4010(1). These broad definitions would be meaningless if, as Acierno contends, plaintiffs could evade the Act by alleging that employees acting on behalf of the government were really acting "on behalf of themselves" or on behalf of some alleged conspiracy. AB 56.

Nor do the Individual Defendants fit the narrow exception to the grant of immunity to governmental employees. Pursuant to the Act, an employee may be personally liable "for acts or omissions causing property damage, bodily injury or death in instances in which the governmental entity is immune under this section, but only for those acts which were not within the scope of employment or which were performed with wanton negligence or willful and malicious intent." Del. Code Ann. tit. 10, § 4011(c). This exception narrowly defines both the types of injuries and the types of actions for which immunity is waived. *Wilcher v. City of Wilmington,* 60 F. Supp.2d 298, 306-08 (D. Del. 1999), (citing *Carr v. Town of Dewey,* 730 F.

Supp. 591, 601 (D. Del. 1990)). Thus, "in order to avoid defeating the broad grant of immunity set forth in Section 4011(a), the exception set forth in Section 4011(c) is to be narrowly construed." *Wilcher,* 60 F. Supp. 2d at 306 (citing *Dale v. Town of Elsmere*, 702 A.2d 1219, 1222 (Del. 1997)).

Here, Acierno has not alleged "property damage, bodily injury or death" resulting from the Individual Defendants' actions. For example, in *Carr,* 750 F. Supp. at 601, a plaintiff alleged that a building inspector and others caused "lost profits resulting from the delay in construction engendered by the stop work letter." This Court held that the plaintiff had claimed no physical damage to the property itself and that, therefore, the § 4011(c) exception was inapplicable. *See also Dale,* 702 A.2d at 1222 (homeowners' claims seeking monetary compensation for lost enjoyment and value of property were not sufficient to implicate Del. Code Ann. tit. 10, § 4011 (c)); *Izquierdo v. Sills*, C.A. No. 15505-NC 2004 WL 2290811, at *7 (Del. Ch. June 29, 2004) (economic damages for loss of income as the result of having been harmed in role as police officer not within scope of § 4011(c)). Because the harm Acierno alleges is not within the scope of § 4011(c), "there is no need to reach whether the Individual Defendants' actions were performed with wanton negligence or willful and malicious intent." *Id.* at *7.

In sum, the Court may decline to exercise jurisdiction over Counts IV and V, but may also dismiss them for failure to state a claim upon which relief may be granted.

## VI.    Any Remaining Claims Should Be Stayed Until The Conclusion Of The Five Pending State Court Proceedings Arising From the Eight Disputes

None of Acierno's claims survive application of the preclusion and immunity doctrines and the other legal principles set forth above. However, if the court determines that any claim should not be dismissed, the Individual Defendants request that the Court either abstain from

accepting jurisdiction or at least stay any remaining claims under the *Younger, Colorado River,* and *Burford* doctrines pending resolution of related state court cases.

Acierno argues that a stay under *Younger* principles would be inappropriate because the five pending State court proceedings do not afford him an adequate opportunity to raise federal claims and do not provide for a trial by jury. As pointed out in the opening brief, Acierno can raise his federal claims in state court and has done so in the past. OB 57-58.[21] While *Younger* requires that the plaintiff have an opportunity to raise and have timely decided by a competent state tribunal the federal issues involved, *Younger* does not require that the plaintiff have a state court jury trial on every issue. Indeed, even in this proceeding, Acierno is not guaranteed a jury trial on every issue.

Acierno also argues that *Younger* is inapplicable because the pending state actions involve only some of the disputes referenced in the Amended Complaint. However, other disputes have been resolved in several other administrative and state judicial proceedings. Acierno may not rely on other, precluded claims as a reason for denying a stay of any pending claims pursuant to *Younger* principles.

Acierno argues that a stay under *Colorado River* would be inappropriate because the Individual Defendants are not included in the pending state actions. However, *Colorado River* does not require complete identity of parties particularly where, as here, the Individual Defendants are the same actors at issue in Acierno's state law claims. Finally, Acierno contends

---

[21]    Acierno erroneously claims that "this is the first time Acierno has been able to present claims under the U.S. Constitution, RICO, and the common law of torts." AB 21. In the June 11 violation notice dispute (D.I. 43 at A833-34) and the stop work order dispute (D.I. 44 at A905 (AC ¶ 15) and A907 (AC ¶ 20)), Acierno has alleged in the Superior Court that the County violated both his federal and state due process rights. In the Sterling dispute, Acierno chose to claim violation of his substantive and procedural due process and property rights under the Delaware constitution only, although he could have raised federal claims as well.

36

that a stay under *Burford* would be inappropriate because the local issues are not of "substantial public import." AB 60. However, in light of the strong local interest in land use laws and procedures, a stay would be appropriate under *Burford* grounds as well.

## CONCLUSION

For the reasons set forth herein, the Individual Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice or stay any remaining claims.

Collins J. Seitz, Jr. (Del. Bar No. 2237)
Matthew F. Boyer (Del. Bar No. 2564)
Max B. Walton (Del. Bar No. 3876)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302)-658-9141
*Attorneys for Defendant Scott G. Wilcox*

Michael P. Kelly (Del. Bar No. 2295)
Paul A. Bradley (Del. Bar No. 2156)
McCARTER & ENGLISH
919 N. Market Street, Suite 1800
Wilmington, DE 19801
(302)-984-6301
*Attorneys for Defendant Charles L. Baker*

Jeffrey I. Pasek (*pro hac vice*)
Shelley A. Kinsella (Del. Bar No. 4023)
COZEN O'CONNOR
Chase Manhattan Center
1201 N. Market Street, Suite 1500
Wilmington, DE 19801
(302)-295-2034
*Attorneys for Defendants George O. Haggerty
  and James H. Edwards*

Claire M. DeMatteis (Del. Bar No. 3187)
STRADLEY, RONON, STEVENS &
  YOUNG, LLP
300 Delaware Avenue, Suite 800
Wilmington, DE 19801
(302)-576-5850
*Attorneys for Defendant Sherry L. Freebery*

Joseph R. Biden, III (Del. Bar No. 4203)
BIFFERATO, GENTILOTTI & BIDEN, P.A.
1308 Delaware Avenue
Wilmington, DE 19806
(302)-429-1900
*Attorneys for Defendant Timothy P. Mullaney*

Dated: April 22, 2005