IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FRANK E. ACIERNO, CHRISTIANA TOWN CENTER, LLC, a Delaware limited liability company, 395 ASSOCIATES, LLC, a Delaware limited liability company, ESTATE HOMES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>GEORGE O. HAGGERTY, individually and in his official capacity as Assistant General Manager of the New Castle County Department of Land Use, SCOTT G. WILCOX, individually and in his official capacity as a First Assistant County Attorney, TIMOTHY P. MULLANEY, individually and in his capacity as New Castle County Attorney, CHARLES L. BAKER, individually and in his capacity as General Manager of the New Castle County Department of Land Use, JAMES H. EDWARDS individually and in his capacity as Inspections Manager and Licensing Division Manager of the New Castle County Department of Land Use, and SHERRY L. FREEBERY, in her individual capacity as Chief Administrative Officer of New Castle County, and NEW CASTLE COUNTY, a political subdivision of the State of Delaware,<br><br>Defendants. | C.A. No. 04-1376 |

**COMPENDIUM OF UNREPORTED CASES FOR THE INDIVIDUAL DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS OR TO STAY THE PROCEEDINGS**

Vol 7 (Tabs 16-22)

16

**H**
Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
Robert C. ROBINSON and Carol T. Robinson, Plaintiffs,
v.
LIMERICK TOWNSHIP, et al., Defendants.
**No. CIV.A. 04-3758.**

March 18, 2005.

*MEMORANDUM*

ROBERT F. KELLY, S.J.

***1** Presently before this Court is Defendants' Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Motion will be granted.

As the parties appear comfortable with the Court's previous articulation of the background and legal standards applicable to this case, they will not be repeated here but are incorporated by reference. [FN1] However, a brief procedural history may be helpful in the context of the present motion.

FN1. For a full discussion of the original complaint, see *Robinson v. Limerick Township,* No. 04-3758, 2005 WL 15469, 2005 U.S. Dist. LEXIS 17 (E.D.Pa. Jan. 4, 2005).

The Robinsons filed the present action on August 6, 2004, alleging constitutional violations and jurisdiction pursuant to 42 U.S.C. § 1983. The two count complaint named causes of action for violations of procedural due process, equal protection, and substantive due process by property deprivation in count one, and a violation of an unspecified liberty interest in count two. Defendants filed their first motion to dismiss the complaint on October 7, 2004. In a Memorandum and Order of January 4, 2005, I concluded that the original complaint failed to state a claim upon which relief could be granted and, therefore, granted the first motion to dismiss. However, as I had concerns that the Robinsons intended to state a claim for First Amendment retaliation and that such a claim may have been substantiated, I granted leave to file an amended complaint.

The Robinsons filed their amended complaint on January 25, 2005. The now four count complaint names the above causes of action, separating the property deprivation claims into separate counts (Counts I, II, and III), and continuing with their deprivation of liberty interest claim, which now names their freedom of speech as an impinged liberty interest (Count IV). In terms of factual allegations, the amended complaint has few significant differences from the original complaint. The Robinsons argue that while the "central story" remains the same, they have included enough extra material required to state substantiated claims within the bounds of notice pleading.

I review the amended complaint under the same standard as the original. Dismissal is appropriate where it clearly appears that the plaintiff has alleged no set of facts that, if proven, would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80; *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990). All well pleaded facts in the complaint are accepted as true and are viewed in the light most favorable to the plaintiff. *See Holder v. City of Allentown,* 987 F.2d 188, 194 (3d Cir.1993). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss. While facts must be accepted as alleged, this does not automatically extend to bald assertions, subjective characterizations, or legal conclusions." *Gen. Motors Corp. v. New A.C. Chevrolet, Inc.,* 263 F.3d 296, 333 (3d Cir.2001).

To substantiate their claim for violations of procedural due process, the Robinsons argue that the state judicial remedies offered separately for each of the Township's alleged attacks upon them are insufficient to address their injury. The Robinsons argue that they are, in fact, the victims of a "shotgun" litigation strategy pursued by the Township in denying their appeal of the cease and desist order and in challenging the preferential tax assessment their property receives. Furthermore, the Robinsons urge that their procedural due process rights have been violated by the Township's abuse of its broadly delegated powers without providing them with

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

additional process to guard against an unlawful deprivation.

*2 Neither argument is persuasive. It remains undisputed that for each and every action taken by the Township a right of appeal exists to the Court of Common Pleas. As a result, there is a full judicial remedy provided for the alleged violations. Furthermore, the Robinsons' reliance on *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), is misplaced. [FN2] That case involved a question in which the petitioner would have been left with only common law tort remedies against the alleged violations. There could be no other review of his voluntary commitment. However, in this case, the Robinsons have a direct right of appeal of the administrative decisions and judicial review. Though it may be piecemeal, sufficient process has been provided in this case. *See Bello v. Walker,* 840 F.2d 1124, 1128 (3d Cir.1988).

FN2. In *Zinermon,* the United States Supreme Court held that a mental health professional who accepts the consent of a patient to voluntary commitment, when he knows that the patient is incompetent to give it, violates the patient's due process rights when he does not rely instead upon the involuntary commitment process. *Zinermon,* 494 U.S. 134-35.

In further support of their claims for a violation of substantive due process, the Robinsons argue that the Township's actions are extreme, egregious, and undertaken with malice. The Robinsons also allege that the supervisors' actions have been taken to perpetuate their terms in office by making decisions intended to garner votes in upcoming municipal elections. The allegations of the amended complaint fail to meet the requirements of the shocks the conscience test as required by *United Artists Theatre Circuit, Inc. v. Township of Warringon,* 316 F.3d 392 (3d Cir.2003). They are at best allegations of improper motive, which do not meet the high standard of egregiousness required by this test. A plaintiff must demonstrate much more than an improper motive to shock the conscience. *See Dev. Group, LLC v. Franklin Township Bd. of Supervisors,* 2004 U.S. Dist. LEXIS 24681, at *46-66 (E.D.Pa. Dec. 7, 2004). It has been suggested that only allegations of outright corruption and bribery by municipal officials are sufficient to meet this standard. *Id.* at *48-49 (citing *Eichenlaub v. Township of Indiana,* 385 F.3d 274 (3d Cir.2004)). It is highly doubtful that allegations of decision making based upon its political expediency shocks the conscience.

The Robinsons' equal protection claim also remains deficient. Although they have alleged the existence of similarly situated parties, an identical farm and the Westmount Soccer Team, the Robinsons have failed to allege facts establishing that there was no rational basis for the differences in treatment. *See Highway Materials, Inc. v. Whitemarsh Township,* No. 02-3212, 2004 WL 2220974, at *21 (E.D.Pa. Oct.4, 2004). The Township has reached the conclusion that the Robinsons' property is not a farm. (Am.Compl.¶ 62). As a result, its decisions to enforce its ordinances against the property, and its decision to challenge the preferential tax assessment the property receives are related to legitimate governmental interests. Whether the conclusion that the property is not a farm is in error is not a matter for this Court to decide. It lies in the purview of the state courts handling the appeals of the enforcement and assessment matters.

*3 The Robinsons' deprivation of liberty claim must also fail. Although the amended complaint now names the freedom of speech as its deprivation of a protected liberty interest, the amended complaint fails to substantiate the claim. In order to prevail on a First Amendment retaliation claim, a plaintiff must prove that (1) he engaged in a constitutionally protected activity, (2) the government responded with retaliation, and (3) the protected activity was the cause of the government's retaliation. *Grimm v. Borough of Norristown,* 226 F.Supp.2d 606, 636 (E.D.Pa.2002). The amended complaint is devoid of allegations establishing that the Township's actions are caused by the Robinsons' political activities. Although full of general allegations of a partisan animus of the supervisor defendants, including vague allegations of spying, the amended complaint fails to show any type of causal relationship. The Robinsons have been active in local politics since 1989 without any type of adverse municipal actions taken against them. The mere fact that the Robinsons are politically active in their community does not, in and of itself, establish that actions taken by the Township are in retaliation for their activities. The claim is, therefore, unsubstantiated.

As a result of the above, I conclude that the amended complaint fails to state a claim upon which relief can be granted. It will, therefore, be dismissed.

An appropriate Order follows.

*ORDER*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

AND NOW this 18th day of March, 2005, upon consideration of the Defendants' Motion to Dismiss the Amended Complaint (Doc. No. 10), the Response in opposition and the Reply thereto, it is hereby ORDERED that the Motion is GRANTED and the Amended Complaint is hereby DISMISSED.

2005 WL 627880 (E.D.Pa.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

17

C
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware, Kent County.
DOROTHY SCOTT, Plaintiff,
v.
CITY OF HARRINGTON and the DEPARTMENT OF TRANSPORTATION of the STATE OF DELAWARE, Defendants.

Submitted: May 13, 1987.
Decided: May 15, 1987.

Defendant Department of Transportation's Motion To Dismiss DENIED

Michael K. Tighe, of Howard M. Berg & Associates, P.A., Wilmington, for plaintiff.

John K. Welch, Deputy Attorney General, Dover, Delaware, for defendant Department of Transportation.

ORDER

RIDGELY, Judge.

*1 This 15th day of May, 1987, upon consideration of defendant Department of Transportation's motion to dismiss, the record in this case, and the briefs of counsel, it appears that:

(1) Plaintiff, Dorothy Scott ('Scott'), brings this action against the defendants, the Department of Transportation ('DOT') and the City of Harrington ('City'), seeking inverse condemnation, alleging that defendants' actions during construction amounted to a de facto taking of her property, for which she was entitled to just compensation. Scott first brought her action on August 24, 1984 against the defendants in the Court of Chancery, seeking injunctive and declaratory relief. That Court, in its April 14, 1986 decision, decided it lacked jurisdiction over Scott's claim because the Superior Court was vested with exclusive jurisdiction. The case was transferred to this Court pursuant to 10 Del. C. § 1902. Defendant DOT's motion to dismiss contends that Scott's action is time-barred by the provisions of 10 Del. C. § 8106.

(2) Since 1948, Scott has lived on East Street in Harrington, Delaware in a single-family dwelling. In September 1978, DOT contracted with Warren Brothers, a general contractor, to widen and resurface East Street. Warren Brothers commenced work on November 6, 1978 and completed the project on January 17, 1980. During the period of street work, Scott remained in her home.

Scott alleges that, during construction, the contractor covered a drain which had existed in front of her home to direct the flow of water away from her property through a drainage ditch. She contends that, after the project was finished, she began to experience severe flooding, although she suffered no drainage problems prior to the construction. She also contends that the flooding has continued until the present.

The defendants deny those allegations. DOT further disputes the plaintiff's claim that she contacted its appropriate representatives to seek help prior to bringing suit. DOT asks this Court to dismiss Scott's complaint by arguing that her action is barred by a statute of limitations expressed in 10 Del. C. § 8106. Scott opposes dismissal by stating that her suit is based upon constitutional provisions of the State and federal governments; thus, she argues that 10 Del. C. § 8106 does not apply to this taking of her property.

(3) Inverse condemnation is '. . . a means of bringing suit against a governmental defendant to recover the value of property which has in fact been taken by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted. The basis of this action is the constitutional guaranty against the taking of private property for public use without compensation.' The City of Wilmington, by and through the Water Department, v. Lord, et al., Del. Super., C.A. 5388, 1976, Bifferato, J. (June 8, 1981). 'An inverse condemnation action does not rest in contract or tort principles and is not necessarily governed by statutes pertaining to eminent domain or condemnation procedures.' Id. Therefore, DOT's contention that Scott's cause of action is based upon condemnation pursuant to 10 Del. C. Ch. 61 fails without merit in this proceeding. The Court has stated:

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*2 Condemnation . . . is not an after-the-fact action. It is a statutory procedure that must be complied with, including giving the defendant/condemnee a chance to protest prior to any actual taking.'

Id. Upon review of the record, the Court concludes that Scott's complaint expresses the language appropriate to a claim for compensation for a constitutional taking of property. Further, there is no evidence that (1) DOT had begun any formal condemnation actions under any Delaware statute, or (2) provided specific notice to Scott or allowed her the chance to protest prior to the alleged taking of her property.

(4) The central substantive question involves whether the statute of limitations expressed in 10 Del. C. § 8106 applies to bar Scott's claim. That particular issue was addressed by the Court in Lake v. The Mayor and Council of Odessa, Del. Super., C.A. 81C-DE-1, Stiftel, P.J. (March 21, 1983), where the Court wrote:

> The limitations period applicable to a claim for compensation for a constitutional taking of property is the period of prescription which, in the State of Delaware, is 20 years. 10 Del. C. § 7901. The rationale behind this rule is that the right to compensation for a governmental taking is not equivalent to a mere common law or statutory right to contract or tort damages, but is a fundamental constitutional right which cannot be abrogated by a statute of limitations which applies to contract and tort damages.

Id (cites omitted). The statute of limitations at 10 Del. C. § 8106 is inapplicable here since that section 'applie[s] to personal actions for damages based on tort and contract claims.' Id. The Delaware legislature has passed no statute of limitations specifically applicable to an inverse condemnation proceeding. Scott's claim does not fall under the language of 10 Del. C. § 8106, and, '[i]n the absence of any applicable statute of limitations, the general rule applying the statutory period of prescription must hold.' Id. Accordingly, Scott's claim is not time-barred as a matter of law.

(5) It remains for a fact-finder to decide whether the facts in this case show a taking of Scott's property without just compensation. Her rights at issue include the right to use and enjoyment and are not limited to merely possessing her home and land. If Scott's ability to use her property has been eliminated by defendants' actions, then the fact-finder may decide that Scott has a right to compensation. Id. There are material facts in dispute on whether a compensable taking has occurred; those facts must be resolved by a trier of fact according to the circumstances of this case.

NOW, THEREFORE, IT IS ORDERED that defendant Department of Transportation's motion to dismiss is DENIED.

1987 WL 11461 (Del.Super.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

18

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.

SUPRA MEDICAL CORP., Plaintiff,
v.
Myron A. BAKER, Marvin Burstein, Terry L. Collier, Dennis D. Cole, Russell A. Hill, Phillip E. Loori, Richard J. Reinhart, Thomas H. Scott, Guy Zani, Jr.,
David Hill, John Hill, and White Star Management, Inc., Defendants.

**Civ. A. No. 95-556-SLR.**

Sept. 26, 1996.

Neal J. Levitsky, of Agostini, Levitsky & Isaacs, Wilmington, Delaware, attorney for plaintiff. Of counsel: Jonathan L. Rosner, of Rosner Bresler Goodman & Bucholz, New York, New York.

William O. LaMotte, III, and Karen L. Pascale, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, attorneys for defendant Phillip E. Loori. Of counsel: Richard F. Horowitz, and Joel C. Haims, of Heller, Horowitz & Feit, P.A., New York, New York. Myron A. Baker, pro se. Marvin Burstein, pro se. Of counsel: Robert S. Lewis, Nyack, New York. Terry L. Collier, pro se. Dennis D. Cole, pro se. Russell E. Hill, pro se. Richard J. Reinhart, pro se. Thomas H. Scott, pro se. Guy Zani, Jr., pro se. David Hill, pro se. John Hill, pro se.

MEMORANDUM OPINION

SUE L. ROBINSON, District Judge.

I. INTRODUCTION

*1 Plaintiff Supra Medical Corporation ("Supra") filed this suit on September 13, 1995 pursuant to 18 U.S.C. § 1964 *et seq.*, the Racketeer Influenced and Corrupt Organizations Act ("RICO"). In its amended complaint ("complaint"), plaintiff seeks treble damages for violations of RICO and conspiracy to violate RICO, injunctive relief prohibiting defendants from transferring or otherwise utilizing plaintiff's proprietary biomedical technology, and the return of said technology. (D.I. 32) Defendant Phillip E. Loori has moved to dismiss the complaint, contending that plaintiff has failed to state a claim against him upon which relief can be granted. (D.I. 36) This motion has been fully briefed, and oral argument was held on September 9, 1996. For the reasons set forth below, defendant Loori's motion will be granted.

II. BACKGROUND

The allegations plaintiff has set forth in its complaint are as follows:

Plaintiff Supra was incorporated in 1985. Defendants Loori and Thomas H. Scott had control over the corporation between 1987 and 1992, during which years the company met with little financial success. (D.I. 32 at ¶¶ 18-21) At some point during their control of the company, plaintiff contends, defendants Loori and Scott caused Supra to obtain certain biomedical and health care technology for the purpose of artificially inflating the price of Supra's common stock. (D.I. 32 at ¶¶ 22-23) In 1992, defendant Loori sold his shares in Supra and resigned from its board, leaving the company, plaintiff contends, without sufficient capital to utilize the technology it had acquired. (D.I. 32 at ¶¶ 30-31) Plaintiff does not allege that any of defendant Loori's actions before 1992 constitute predicate acts or parts of the RICO "scheme" referred to later in the complaint.

According to plaintiff, in March or April of 1994 defendant Richard J. Reinhart devised a scheme to misappropriate Supra's biomedical and health care technology by taking over control of the corporation.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(D.I. 32 at ¶ 35) Plaintiff alleges that Reinhart's first attempt to execute this scheme consisted of a merger agreement with Medhealth Imaging, Inc., whose assets were artificially inflated via a sham agreement between Medhealth Imaging and another company controlled by defendant Terry L. Collier. (D.I. 32 at ¶¶ 39- 41) This agreement, made without the consent of Supra's board of directors, would have placed "a group represented by defendant Myron A. Baker" in control of Supra. (D.I. 32 at ¶ 38) Supra's board later learned of and disavowed the merger agreement. (D.I. 32 at ¶ 42)

Plaintiff contends that after the board rejected the merger, defendant Reinhart

> had circuit boards, source codes, control drawings, form drawings, working drawings, instructions, blueprints, mock-ups and other documents containing proprietary details and information essential to its biomedical and health care technology surreptitiously removed from [plaintiff's] facilities and placed in his possession or under his custody and control.

***2** (D.I. 32 at ¶ 43) Reinhart then resigned his positions with Supra. Meanwhile, defendants Baker, Cole, and Guy Zani, Jr. submitted to Supra's board another proposal for a merger with Medhealth Imaging, which the board approved. (D.I. 32 at ¶¶ 46-48) Plaintiff contends, however, that the board's approval of the merger was based on statements which defendants Baker, Cole, and Zani knew were untrue when made. In addition, plaintiff alleges that since the agreement was made, defendants Baker, Collier, Cole, and Zani

> have transmitted and caused the transmission of communications by mail and wire in interstate and foreign commerce to plaintiff ... and others to give the appearance of fulfilling the agreement to provide plaintiff ... with necessary additional capital and administrative and financial planning which in fact never was provided, while misappropriating [plaintiff's] proprietary biomedical and health care technology and name and reputation.

(D.I. 32 at ¶ 50) In this manner, plaintiff contends, defendants Baker, Cole, Zani, and Collier took control of Supra and held themselves out as its authorized representatives. (D.I. 32 at ¶¶ 52-84)

By early 1995, relations between Supra's board and defendants Baker, Cole, Zani, and Collier had soured. The board sent defendant Baker a memorandum terminating the merger agreement, citing specifically Medhealth Imaging's failure to secure the promised capital and "[r]eferring to eight months of documented deceit, misrepresentations, dishonored checks, exaggerations and broken promises...." (D.I. 32 at ¶ 82) Plaintiff contends that defendants Baker and Cole continued to hold themselves out, fraudulently, as President/Chief Executive Officer and Vice President/General Counsel of Supra for the purpose of soliciting investments, which they then misappropriated. (D.I. 32 at ¶¶ 88-91, 96) In connection with these investments, plaintiff contends that defendants Baker and Cole, along with defendant Zani and Medhealth Imaging, issued a document purporting to represent shares of preferred stock in Supra. This action was allegedly taken without the required authorization of the board. (D.I. 32 at ¶¶ 93-94) Plaintiff also contends that on the instruction of defendants Baker and Zani, one of Supra's Supra Ultra Sound Scanner systems was removed from its authorized location and placed under the control of Medhealth Imaging.

Plaintiff alleges no involvement by defendant Loori in any of these events until March 1995 when, according to plaintiff, defendants Baker, Collier, Cole, Russell Hill, Reinhart, Scott, Zani, and Loori "formulated a plan to solicit proxies from [Supra] shareholders and elect new Directors of [Supra] to misappropriate [Supra's] proprietary biomedical and health care technology and equipment for their benefit and conceal the misappropriation from [plaintiff's] duly elected Directors and shareholders." (D.I. 32 at 101) In furtherance of this plan, plaintiff alleges, defendants, including defendant Loori, solicited proxies from Supra's shareholders to replace the existing board members with defendants Russell Hill, Reinhart, Baker, Zani, and Cole. (D.I. 32 at ¶¶ 103- 04) The forms mailed in this solicitation, plaintiff contends, were false and misleading in numerous respects. (D.I. 32 at ¶ 106) [FN1]

FN1. This mailing was the subject of a separate suit filed by Supra to enjoin the solicitation. *John W. Cantwell, Evelyna Dyson-Cantwell, Niels Lauerson, George J.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Stasen and John F. Brooks, Individually and on behalf of Supra Medical Corp. v. Russell A. Hill, Thomas H. Scott, Nancy Loori-Niesgard, Phillip E. Loori and Diane E. Simmons,* No. 95-390-SLR (D.Del.1995). The parties to that action reached a settlement and the case was dismissed with prejudice on August 17, 1995. As a result of the settlement, the consent forms were nullified and no further solicitation took place. (D.I. 32 at ¶ 118) As noted, the instant suit was filed on September 13, 1995.

*3 The last remaining allegation in which defendant Loori is mentioned concerns the transmission of an announcement in August 1995 to the effect that a corporation called Joe Franklin Productions, Inc. had agreed to take over the assets and technology of Medhealth Imaging, Inc. (D.I. 32 at ¶ 119) According to plaintiff, at the time of the announcement Medhealth Imaging, Inc. was in possession of assets and technology belonging to Supra. These assets were transferred to Joe Franklin Productions when Medhealth Imaging was sold. (D.I. 32 at ¶¶ 120-22) Plaintiff does not allege that defendant Loori played any role in the actual sale or announcement thereof, but only that defendant Baker

> on behalf of himself and defendants Terry L. Collier, Dennis D. Cole, Russell A. Hill, Phillip E. Loori, Thomas H. Scott, [and] Guy Zani, Jr., caused a statement to be transmitted by wire in interstate commerce from Clearwater, Florida, to various print media in the financial community throughout the United States announcing that Medhealth Imaging, Inc. agreed to sell one hundred percent of its assets and proprietary technology to a publicly-held corporation known as Joe Franklin Productions, Inc....

(D.I. 32 at ¶ 119)

III. DISCUSSION

A. Standard for Dismissal Under Rule 12(b)(6)

Defendant Loori has moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. In ruling on a Rule 12(b)(6) motion, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto,* 405 U.S. 319, 322 (1972) (*per curiam* ). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the complaint. *Retail Clerks International Association v. Schermerhorn,* 373 U.S. 746 (1963). Additionally, the court must resolve any ambiguities concerning the sufficiency of the claims in favor of the plaintiff. *Hughes v. Rowe,* 449 U.S. 5, 10 (1980) (*per curiam* ). The "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).

B. Standard for Liability under RICO

The applicable sections of RICO provide:

> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
>
> ....
>
> It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(b), (d). The essential elements of a civil RICO claim are "(1) the existence of a RICO 'enterprise'; (2) the existence of 'a pattern of racketeering activity'; (3) a nexus between the defendant, the pattern of racketeering activity or the RICO 'enterprise'; and (4) resulting injury to plaintiff, in his business or property." *Klapper v. Commonwealth Realty Trust,* 657 F.Supp. 948, 953 (D.Del.1987). To establish a pattern of racketeering activity, plaintiff must allege defendant's participation in at least two predicate acts of racketeering activity. 18 U.S.C. § 1961(5). Section 1961(1) provides a list of offenses defined as racketeering activities, including mail and wire fraud and fraud in the sale of securities.

C. Parties' Contentions

*4 Loori raises several grounds for dismissal. He contends that: 1) plaintiff has failed to plead his

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

involvement in the requisite predicate acts of racketeering activity, thus failing to establish the required nexus; 2) the complaint does not allege that Loori obtained or maintained control of an enterprise through a pattern of racketeering activity; 3) plaintiff does not allege any injury resulting from Loori's actions; 4) plaintiff does not allege that Loori knowingly and willingly participated in the alleged scheme to misappropriate Supra's biomedical technology; 5) the complaint does not meet the specificity requirements of Fed.R.Civ.P. 9(b); and 6) plaintiff is not entitled to injunctive relief because it failed to plead that Loori is in possession or control of the technology in question. Plaintiff answers Loori's first three arguments with an assertion that Loori, as an aider and abettor and a member of a conspiracy, is liable for the predicate acts, the pattern of activity, the control of the RICO enterprise, and the damages caused by his co-conspirators, including those that occurred before he joined the conspiracy. Plaintiff also claims that the complaint clearly states that Loori knowingly and intentionally joined the scheme to defraud plaintiff, and that the complaint fully meets the specificity requirements of Rule 9(b). Plaintiff has not responded in its brief to defendant Loori's contentions that plaintiff's claims for injunctive relief must be dismissed for failure to allege that the technology is in his possession or control. [FN2]

> FN2. Plaintiff alluded briefly to this issue during oral argument, stating that if Loori is not in possession of the technology, he should be willing to stipulate to that fact.

D. Co-Conspirator/Aider and Abettor Liability

According to the complaint, the predicate acts in which all defendants took part are mail and wire fraud. (D.I. 32 at ¶ 127) However, plaintiff alleges actual participation on defendant Loori's part in only one of the activities alleged during the period when the "scheme" was operative--the mailing of the proxy solicitation in March 1995.

Defendant Loori contends that because the proxy solicitation was the subject of a previous lawsuit, consideration of the mailing as a predicate act is barred by *res judicata* and collateral estoppel. *Res judicata*, or claim preclusion, bars subsequent suits based on the same cause of action and between the same parties as a previous suit. *Labelle Processing Co. v. Swarrow*, 72 F.3d 308, 313 (3d Cir.1995). Claim preclusion applies only where 1) a final judgment was had on the merits in a previous litigation; 2) the previous suit involved the same parties or their privities; and 3) the subsequent suit is based on the same cause of action. *Board of Trustees v. Centra*, 983 F.2d 495, 504 (3d Cir.1992). Collateral estoppel, or issue preclusion, bars relitigation of an identical issue where "1) the identical issue was decided in a prior adjudication; 2) there was a final judgment on the merits; 3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and 4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question." *Id.* at 505.

*5 Although there is overlap between the parties to the present suit and those involved in the prior litigation, the parties are not the same. Moreover, the prior suit was based on alleged violations of federal securities regulations and Delaware corporate law. The suits were not based on the same cause of action, and the issues therein cannot be characterized as identical. Therefore, neither issue preclusion nor claim preclusion operates in this case.

Loori also argues that a deficient proxy solicitation of the sort alleged in the complaint cannot by law constitute a predicate act under RICO. In support of this argument, defendant relies on *First Pacific Bancorp, Inc. v. Bro*, 847 F.2d 542 (9th Cir.1988), in which a proxy solicitation, albeit one which failed to comply with relevant securities regulations, was held not to constitute a sale of securities. Because no sale had taken place, the solicitation could not be "fraud in the sale of securities," a predicate act listed in § 1961(1). *Id.* at 546. In addition, the solicitation did not constitute mail or wire fraud because it was not done "for obtaining money or property by means of false or fraudulent pretenses," as such fraud is defined in 18 U.S.C. § 1341. In reaching this conclusion, the court relied on the reasoning of the Second Circuit in *United States v. Dixon*, 536 F.2d 1388, 1399 (2d Cir.1976):

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

> [O]ur research has discovered [no case] which has sustained a conviction for mail fraud on the basis of nothing more than the failure to mail a correct proxy solicitation where this was not in furtherance of some larger scheme contemplating pecuniary loss to someone or direct pecuniary gain to those who designed it.

In contrast to *Dixon* and *First Pacific Bancorp*, the complaint in this case alleges that, while the proxy solicitation itself did not solicit money or pertain to the sale of shares, it was undertaken with the purpose of obtaining control over the company so that defendants could misappropriate Supra's technology. It was, therefore, "in furtherance of some larger scheme," and, if proven, constitutes a predicate act under RICO.

Loori's participation in this mailing, however, at most constitutes a single predicate act. [FN3] Plaintiff argues that, regardless of whether Loori's participation in the proxy solicitation is itself considered a predicate act, he is responsible for the predicate acts of the other defendants as an aider/abettor and as a member of a conspiracy. A defendant who has not himself committed any predicate acts may be held liable for RICO violations if he has aided and abetted at least two predicate acts by others. *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.*, 46 F.3d 258, 270 (3d Cir.1995). To find a defendant liable as an aider and abettor, a plaintiff must prove that 1) the predicate acts have been committed, and 2) defendant "knew of the commission of the act[s] and acted with intent to facilitate [them]." *Id.* The existence of intent may be inferred from circumstantial evidence. *Id.*

FN3. Plaintiff states in its brief that defendant Loori participated in "more than two dozen mailings in furtherance of the scheme...." (D.I. 47 at 13) The complaint, however, describes a single communication mailed to approximately twenty-nine individuals. If plaintiff meant by its description to argue that each individual piece of mail counts as one predicate act, the court rejects this contention.

*6 Plaintiff contends that intent on the part of Loori may be inferred from the following alleged scenario: Loori acquired, in the first instance, the proprietary technology at issue merely to enhance the value of his stock. Although in control of Supra and in possession of the technology at that point, Loori chose instead to sell "a substantial amount" of his stock and resign his position as an officer and director. To infer from these facts an intent, years later, to facilitate a scheme to gain control of Supra in order to misappropriate its technology has no basis in logic, let alone fact. The only allegation concerning Loori after the RICO scheme is alleged to have begun is the conclusory assertion that Loori, along with other defendants, "formulated a plan to solicit proxies from [Supra] shareholders and elect new Directors of [Supra] to misappropriate [Supra's] proprietary biomedical and health care technology and equipment for their benefit and conceal the misappropriation from [plaintiff's] duly elected Directors and shareholders." (D.I. 32 at 101) The court finds that plaintiff's conclusion that a plan was formulated is an insufficient basis upon which to infer that defendant Loori knew of the plan.

Likewise, plaintiff has failed to adequately plead conspiracy. To plead conspiracy in a RICO case, a complaint must set forth factual allegations that indicate 1) the period of the conspiracy, 2) its intended purpose, 3) the specific actions taken by the conspirators in furtherance of the conspiracy, 4) agreement to commit predicate acts, and 5) knowledge that the acts agreed upon formed part of a pattern of racketeering activity. *Glessner v. Kenny*, 952 F.2d 702, 714 (3d Cir.1991), *citing Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1166 (3d Cir.1989). It is not enough to state in the complaint that these elements exist. "It is a longstanding rule in the Third Circuit that a mere general allegation of conspiracy is insufficient. A general averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient." *Kalmanovitz v. G. Heileman Brewing Co., Inc.*, 595 F.Supp. 1385, 1400 (D.Del.1984), *aff'd*, 769 F.2d 152 (3d Cir.1985), *citing Black & Yates, Inc. v. Mahogany Assoc.*, 129 F.2d 227 (3d Cir.1941), *cert. denied*, 317 U.S. 672 (1942).

According to plaintiff, the conspiracy was initiated in 1994 when defendant Reinhart devised a scheme to misappropriate plaintiff's proprietary technology.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Plaintiff's only alleged involvement in the conspiracy [FN4] was his participation in the failed proxy solicitation one year later. Even if the court must draw the inference from defendant Loori's participation that he had knowledge of his co-defendants' attempt to gain control of Supra from its existing board, there are no facts alleged from which the court can infer that defendant Loori had knowledge of or himself had a bad purpose for such control.

FN4. Although plaintiff alleges as well that the August 1995 announcement regarding the transfer of Medhealth Imaging's assets was undertaken on behalf of defendant Loori, *inter alia,* there are absolutely no facts alleged to support the assertion and, therefore, the court cannot infer knowledge and intent on the part of Loori from such an event, unrelated as it is to the proxy solicitation.

*7 In the absence of factual allegations sufficient to sustain a finding of conspiracy or aider and abettor liability, plaintiff's claims against defendant Loori cannot stand. Plaintiff has alleged, at most, Loori's direct involvement in a single predicate act, which by itself cannot establish a pattern of racketeering activity. Plaintiff has failed to make any allegations that Loori himself controlled the enterprise during the relevant time period or that his single alleged predicate act caused harm to Supra. Accordingly, plaintiff's first and second claims for relief against defendant Loori will be dismissed. [FN5]

FN5. Because the court concludes that the complaint has not alleged predicate acts sufficient to sustain its RICO claim against defendant Loori, it is not necessary to address Loori's arguments concerning the sufficiency of pleading under Fed.R.Civ.P. 9(b).

E. Claims for Injunctive Relief

Plaintiff has not addressed defendant Loori's contention that injunctive relief cannot be awarded in the absence of an allegation that he possesses or controls plaintiff's property. Having reviewed the pleadings, the court concludes that the complaint fails to allege that defendant Loori has had any access to or control over plaintiff's proprietary biomedical or health care technology since terminating his relationship with the company in 1992. The complaint, therefore, fails to provide an adequate factual basis for the relief requested. Plaintiff's claims for injunctive relief against defendant Loori will be dismissed.

IV. CONCLUSION

For the reasons stated above, the court concludes that plaintiff has failed to state a claim against defendant Loori upon which relief can be granted. Accordingly, the complaint against defendant Loori will be dismissed.

**Motions, Pleadings and Filings** **(Back to top)**

• 1:95CV00556 (Docket)
(Sep. 13, 1995)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

19

**H**
Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
THORNBURY NOBLE, LTD.,
v.
THORNBURY TOWNSHIP, et al.
**No. CIV. A. 99-6460.**

Sept. 20, 2000.

*MEMORANDUM*

O'NEILL.

*1 Presently before me is defendants' motion to dismiss the complaint on a variety of grounds. For the reasons stated below, the motion will be denied in part and granted in part.

I.

For the purposes of this motion, I assume that the well-plead factual allegations in the complaint are true.

Plaintiff Thornbury Noble, Ltd. owns a property known as "Thornbury Commons" at the intersection of Routes 926 and 202 in Thornbury Township, Pennsylvania. Complaint ¶ 13. In March 1995, plaintiff received approval for a zoning and site plan for that property from defendant Thornbury Township Board of Supervisors (the "Board"). *Id.* ¶ 14. The plan called for an "L-shaped," strip-style building. *Id.* ¶ 15.

In November 1997, plaintiff sought to change the approved plan for Thornbury Commons to allow for a 50,000 square foot supermarket. *Id.* ¶ 16-18. The revised plan was taken before the Board on July 7, 1998. *Id.* ¶ 37-42. At that meeting, two of the Board members requested a "contribution" from plaintiff in order to "compensate" the Township for the loss of residential zoning. *Id.* ¶ 41. Plaintiff declined to make such a contribution unless specifically authorized by ordinance. *Id.* ¶ 42, Exhibit F. One of the Board members responded that such contributions had previously been made to the Township "voluntarily." *Id.* Plaintiff continued to decline to make such a contribution because it believed such a payment would constitute "contract zoning" in violation of the Pennsylvania Municipalities Planning Code. [FN1] In November 1998, the Board rejected plaintiff's plans for a supermarket at Thornbury Commons. *Id.* ¶ 48.

FN1. The MPC states that: "No municipality shall have the power to require as a condition for approval of a land development or subdivision application the construction, dedication or payment of any offsite improvements or capital expenditures of any nature whatsoever or impose any contribution in lieu thereof, exaction fee, or any connection, tapping or similar fee except as may be specifically authorized under this act." 53 Pa.C.S.A. § 10503-A(a). In Count II, plaintiff contends that this solicitation of a "voluntary contribution" violated this provision of the MPC.

Plaintiff further alleges that while the Board was considering its plans for a supermarket, R.J. Waters Associates, a second developer, was also pursuing plans for a supermarket at a second site in the Township. *Id.* ¶ 22. In that instance, Waters agreed to make a contribution of $600,000 to the Township in exchange for the rezoning that was necessary to build the supermarket. *Id.* ¶ 31. Plaintiff claims that the Board thereafter stopped considering its zoning requests on the merits in an effort to promote the Waters project. In support of this contention, plaintiff points to correspondence from one of the Board members which states: "One key issue is not having this [the concerns of an adjacent property owner about the Waters plan] slow down the Waters' project since we want them to be able to lay the first brick and assure their supermarket will be the next one built to enable our funding for the next phase of the Dallet tract acquisition effort." *Id.* ¶ 33, Exhibit E. The plan for the Waters' project was approved at the same meeting where the Board rejected the plan for plaintiff's project. *Id.* ¶¶ 48-49.

II.

*2 In Count I, plaintiff alleges that defendants violated its substantive due process rights. Defendants' motion to dismiss this Count will be denied.

As a general matter, "federal courts are reluctant to sit as appeal boards for disputes between land

developers and a Township's planning body." *Woodwind Estates, Ltd. v. W.J. Gretkowski,* 205 F.3d 118, 122 (3d Cir.2000). Nonetheless, developers have a due process right to be free from "arbitrary and irrational zoning actions." *Arlington Heights v. Metropolitan Housing Corp.,* 429 U.S. 252, 263, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *see also Bello v. Walker,* 840 F.2d 1124, 1129 (3d Cir.1988) (a zoning action violates due process if it is "arbitrary, irrational, or tainted by improper motive"). This due process protection includes the right to be free from governmental decisions made for improper economic motives. *See Parkway Garage, Inc. v. City of Philadelphia,* 5 F.3d 685, 695 (3d Cir.1993) (reversing the grant of a Rule 50 motion because jury could have reasonably concluded that City closed parking garage for an "improper economic motive"--namely, "the garage had considerably more value to the City if it could relieve itself of the Parkway lease").

Plaintiff argues that the Board's rejection of its plan for a supermarket at Thornbury Commons violated this substantive due process right because: 1) consideration of its plan was made contingent upon its making a contribution to the Township that is allegedly illegal under state law; and 2) its plan was rejected in order to give an unfair advantage to another developer who had agreed to make such a payment. Defendants implicitly concede that if these allegations were proven a reasonable person could conclude that the Board acted with an improper motive. Defendants argue, however, that plaintiff can succeed with its claim "only if the [Board] could have had no legitimate reason for its decision." *Pace Resources, Inc. v. Shrewsbury Township,* 808 F.2d 1023, 1034 (3d Cir.1987). Defendants further argue that the same documents plaintiff relies upon to create an inference of improper motive also state legitimate justifications for the Board's action. For example, the minutes of the July 7, 1998 Board meeting show that one of the members commented that "many residents are opposed to converting [the zoning at Thornbury Commons] from residential to commercial." *See* Complaint, Exhibit F at 2. Defendants believe that this evidence of competing motivations requires dismissal of this Count.

Defendants misconstrue plaintiff's burden. *Pace* did state in passing that "federal judicial interference with a state zoning board's quasi-legislative decisions ... is proper only if the governmental body could have had no legitimate reason for its decision." *Pace,* 808 F.2d at 1034. However, the court's analysis of the complaint in that case was not as deferential to the Township as that one sentence would seem to imply. In holding that the complaint failed to state a claim for a substantive due process violation, the *Pace* Court emphasized that a plaintiff need only "allege facts that would support a finding of arbitrary or irrational legislative action by the Township." *Id.* at 1035. In that case, the complaint failed to do so because it contained only "conclusory pleadings" that "fail[ed] to make *any* factual allegations that indicate irrationality." *Id.* (emphasis added). However, the *Pace* Court did not address the situation where, as in this case, the complaint contains specific factual allegations of improper motive but also provides benign alternative explanations for the questioned actions.

The Court of Appeals did, however, address a similar situation in *Bello.* In that case, the District Court entered summary judgment against a developer who claimed that municipal officials had improperly denied building permits. *Bello,* 840 F.2d at 1126-27. Plaintiffs claimed that the permits were denied "for partisan political or personal reasons unrelated to the merits of the application for the permits." *Id.* at 1129. Defendants presented "an arguably rational ground" for the denials; namely, "plaintiffs' failure to build in numerical sequence." *Id.* at 1130. The Court of Appeals contrasted this situation with the facts in *Pace* and concluded that "it is the factfinders' role to resolve this factual dispute." *Id.* On this basis, the summary judgment was reversed. *See also Woodwind Estates,* 205 F.3d at 125 (reversing the grant of a Rule 50 motion because evidence presented at trial "*could* provide a jury with a basis from which it could reasonably find that the decision of the defendants to deny approval [for a low-income housing subdivision plan] was made in bad faith or was based upon an improper motive") (emphasis added).

***3** The issue in *Bello* and *Woodwind Estates* was whether the plaintiffs had amassed sufficient evidence from which a reasonable jury could find improper motives. Here, on a motion to dismiss, plaintiff has a lesser burden. It need only allege facts which if proved would be sufficient to support a finding of improper motive. Plaintiff has met its burden.

III.

In Count II, plaintiff claims that defendants violated § 10503-A(a) of the Pennsylvania Municipalities Planning Code during the July 7, 1998 Board meeting when plaintiff was asked to make a "voluntary contribution" to "compensate" the Township for the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

loss of residential zoning. Defendants argue that the MPC claim is untimely because it was not filed within 30 days of the Board's decision.

However, it is unclear whether there is a private cause of action under the MPC, and plaintiff concedes that it cannot point to "any case law that establishes a separate cause of action for a violation of the MPC." Plaintiff's Mem. at 15. Therefore, before reaching the statute of limitations issue I will Order the parties to brief the question of whether there is a private cause of action under the MPC.

IV.

In Count III, plaintiff claims that defendants effected a temporary regulatory taking of Thornbury Commons during the period in which the Board was considering the supermarket zoning plan. Defendants' motion to dismiss this Count will be granted.

The Fifth Amendment prohibits private property from "be[ing] taken for public use, without just compensation." Since Justice Holmes' opinion in *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415, 43 S.Ct. 158, 67 L.Ed. 322 (1922), the Supreme Court has consistently held that "while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." The Court has since "described at least two discreet categories of regulatory action" that are compensable as takings. *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1015, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). The first category comprises those regulations that "compel the property owner to suffer a physical 'invasion' of his property." *Id.* The second category comprises those regulations that "den[y] all economically beneficial or productive use of land." *Id.* Moreover, in *First English Evangelical Lutheran Church of Glendale v. Los Angeles,* 482 U.S. 304, 318, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987), the Court recognized that a temporary regulatory taking is not "different in kind" from a permanent depravation.

Since it is clear that plaintiff's property was never physically invaded, its taking claim can survive only if it can allege that it was denied "all use" of it property for the period of time in question. *See Bello,* 840 F.2d at 1130. It is not enough for plaintiff to allege that it was "merely denied a particular [ ] permit, [but] retained the right to put [its] land to a variety of alternative uses." *Id.* However, that is exactly what happened. Although plaintiff experienced delays in the Board's consideration of its plan for a supermarket, throughout that period plaintiff had approvals for its "L-shaped," strip mall plan. In fact, when the supermarket plan was finally rejected, plaintiff proceeded with that original plan. *See* Plaintiff's Mem. at 8. Although the supermarket plan may have been more profitable, plaintiff was not denied all economically beneficial use of its land. Therefore, there was no temporary taking and Count III will be dismissed.

V.

***4** In Count IV, plaintiff asserts a state law claim for intentional interference with contractual relations. Defendants' motion to dismiss this Count will be granted as to defendants Thornbury Township and Thornbury Township Board of Supervisors but denied as to the individual Board members.

Defendants argue that this tort claim is barred by the immunity afforded to municipalities and their officials by the Political Subdivision Tort Claims Act. *See* 42 Pa.C.S.A. § 8541, *et seq.* Plaintiff concedes that the municipal defendants are immune from suit, but argues that the individual Board members are not immune from claims for intentional torts, including intentional interference with contractual relations.

42 Pa.C.S.A. § 8550 provides that there is no immunity for municipal officials that cause injury through "a crime, actual fraud, actual malice or willful misconduct." In *Delate v. Kolle,* 667 A.2d 1218, 1221 (Pa.Commw.1995), the court applied that provision to a case arising from a zoning dispute and held that "the mere failure to reach the correct legal conclusion in a zoning case does not constitute the type of purposeful conduct which is necessary for a finding of willful misconduct [within the meaning of § 8550]." However, the court went on to note that in this context "willful misconduct" is synonymous with the term "intentional tort." *Id.* Therefore, individual zoning board members could be held liable if they "intentionally reached the wrong decision knowing that it was wrong, acted from corrupt motives, or engaged in any other type of conduct which would demonstrate willful misconduct." *Id.*

I therefore hold that if it were confronted with the issue the Pennsylvania Supreme Court would find that the intentional interference with contractual relations alleged here constituted willful misconduct within the meaning of § 8550 and *Delate.* On this basis, I will deny the motion to dismiss Count IV as to the individual Board members but grant it as to the municipal defendants.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

An appropriate Order follows.

*ORDER*

***5** AND NOW, this ______ day of September, 2000, after consideration of defendants' motion to dismiss, and plaintiff's response thereto, and for the reasons stated in the accompanying Memorandum, it is hereby ORDERED that:

1. Defendants' motion to dismiss Count I (substantive due process) is DENIED;
2. Defendants' motion to dismiss Count II (violation of the Pennsylvania MPC) is DENIED WITHOUT PREJUDICE subject to renewal within 20 days with appropriate briefing on whether there is a private cause of action under the Pennsylvania MPC. Plaintiff may respond 20 days thereafter;
3. Defendants' motion to dismiss Count III (temporary regulatory taking) is GRANTED;
4. Defendants' motion to dismiss Count IV (intentional interference with contractual relations) is GRANTED as to defendants Thornbury Township and Thornbury Township Board of Supervisors and DENIED as to the remaining defendants.

2000 WL 1358483 (E.D.Pa.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

20

**H**
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware.
Re TOWN OF SOUTH BETHANY
v.
CAT HILL WATER COMPANY, LTD.
Goodwin H. TAYLOR, Jr.
v.
TOWN OF SOUTH BETHANY and the Mayor and Members of the Town of South Bethany.
**Civil Action No. 93C-04-004.**

Jan. 7, 1997.

John Sergovic, Georgetown.

Bruce C. Herron, Wilmington.

GRAVES, Judge.

Dear Counsel:

***1** Cat Hill and Taylor's Motion for Reargument and/or for Leave to File an Amended Counterclaim is before the Court. Taylor seeks reargument of the Court's October 31, 1996 Memorandum Opinion on the takings claim. Cat Hill and Taylor seek reargument on the preclusion of damages relief under the Delaware Constitution, the Federal procedural due process claim, the Federal substantive due process claim, and the punitive damages claim.

Cat Hill and Taylor first assert that part of the underlying rationale of the Court in assessing their claims "was a misconception by the Court that South Bethany had sought a 'declaratory judgment' on the effect of the deed to Taylor, after the reverter was claimed to operate." They assert that South Bethany only brought an ejectment action and did not request declaratory judgment relief but "merely demanded a judgment that no reverter occurred and that Defendant, Cat Hill, be ordered to vacate the premises." The Court agrees with South Bethany that such a request is the equivalent to a formal request for a declaratory judgment. In asking the Court to declare that the reverter has not occurred, South Bethany is in effect asking the Court to determine who owns the property in question. South Bethany is also correct in asserting that in any event, the Court's rationale is not dependent on a finding that South Bethany sought a formal declaratory judgment.

In reviewing Cat Hill and Taylor's motion and applicable case law, the Court has determined that it did err in its October 31, 1996 Memorandum Opinion by granting summary judgment on the trespass and wrongful possession claims based on sovereign immunity, as discussed below. I raise this *sua sponte* because Cat Hill and Taylor have not sought reargument on the preclusion of damages on their trespass claim. Nonetheless, the Court finds that it was appropriate to grant summary judgment simply because the claim is premature. A trespass action would not be appropriate until the rightful owner of the property is determined in order for Cat Hill and Taylor to establish that South Bethany is in wrongful possession.

As mentioned above, the Court was in error in finding that Cat Hill and Taylor's trespass claims are barred by sovereign immunity. The Delaware Supreme Court has held that Article I, § 8 of the Delaware Constitution, which provides that no person's property shall be taken for public use without his consent and without due compensation, is a self-executing waiver by the State of its sovereign immunity. *State v. 0.24148, 0.23831 and 0.12277 Acres of Land,* Del.Supr., 171 A.2d 228, 231 (1961); *Donovan v. Delaware Water and Air Resources Co.,* Del.Supr., 358 A.2d 717, 722 (1976). "Where there is a trespass by the State or a state agency, which interferes with the landowner's use of his property, the doctrine of sovereign immunity does not bar the recovery of money damages from the state." *Seitz v. A-Del Construction Co.,* Del.Super., C.A. No. 85C-FE-40, Bifferato, J. (August 13, 1987) at 3.

***2** In *Seitz, supra,* the plaintiff brought an action for money damages against the State Department of Transportation for property damage. The State had hired a construction company to install a storm drainage system and perform reconstruction work on Blue Rock Road, which was adjacent to plaintiff's property. Plaintiff alleged that as a result of the reconstruction work, the condition of her property had been permanently altered and the resulting flooding caused various damages. The Court, in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

denying the State's summary judgment motion regarding the trespass, held that the plaintiff could recover money damages from the State if she could show that the intrusion of water resulted from action by the State and that the intrusion interfered with the plaintiff's use of her property. *Id.* Similarly, if Taylor is declared the true owner, then it could bring a trespass action for any damages caused by South Bethany's occupation of the property. However, Taylor's present trespass action is premature, and therefore summary judgment was appropriate, though not on sovereign immunity grounds. The fact that trespass is a viable remedy only weakens Taylor's position that there are no available state remedies to compensate him for any loss.

The October 31, 1996 decision dismisses all of Cat Hill and Taylor's claims arising from what the Town, the Mayor and Council Members (individually and in their official capacities) have done in using the property and in defending their position. The Town lawfully owns and occupies the property at the present time. Simply put, inverse condemnation is not applicable to the facts alleged in Cat Hill's best case scenario.

The Town was in lawful possession of the property based upon a deed granting the property to the Town with a condition: that the property be used for park purposes. Even if Taylor and Cat Hill establish to the finder of fact that the charitable condition was breached and the property reverted to the heirs of the grantor and then to Taylor and Cat Hill, I do not find that South Bethany's post-reverter possession of the property to be inverse condemnation. South Bethany has not used its governmental takings power to take an interest in land; it simply has remained on the property that Mrs. Hall conveyed to it, subject to a reversion. Here, the government is not acting as a government but as a private party, and therefore, in the event Taylor is the owner of the property, he would have the same cause of action that he would have against a private person who remained in wrongful possession of property by the operation of a reverter clause--an ejectment action.

In Cat Hill and Taylor's Motion for Reargument, they assert:

> To raise affirmative recovery of possession for the person holding title after the reversion, where a reverter operated, the holder of the reversionary estate being out of possession would normally sue in ejectment, as the common law remedy to regain possession.... However, such a Counterclaim is an action which Taylor concedes is subject to affirmative defense under the Delaware Sovereign Immunity Statute.

*3 Taylor states that because he cannot bring an ejectment action, it must "resort" to inverse condemnation. However, it seems that Taylor is conceding to something that is not correct. An ejectment action appears to be a property action, and thus not barred by sovereign immunity. The procedure for an ejectment action is detailed in 10 *Del.C.* § 6701:

> (a) The legal title to lands or to any tenements whereon entry can be made may be tried in a civil action, based upon a cause of action in ejectment.... If the premises for which the action is brought are actually occupied by any person such actual occupant shall be named defendant in the action, and all other persons claiming title or interest to or in the same may be joined as defendants.

Mense profits are recoverable after an ejectment pursuant to 10 *Del.C.* 8110:

> When, after a recovery in ejectment, an action is brought for mense profits, if such an action is commenced within 6 months after the ejectment ... the action shall ... be deemed a continuation of the proceeding in ejectment. The plaintiff shall not be debarred from recovering mense profits for 3 years next preceding the commencement of the ejectment.

A party can bring an ejectment action to force the removal of the party unlawfully in possession and to recover damages for the trespass. Even if ejectment is considered a tort, it encompasses trespass damages, and if sovereign immunity does not apply to a trespass action, then it would not apply to an ejectment action.

If the finder of fact determines that the reverter clause was triggered, an ejectment action seeking mense profits and/or trespass damages would be viable. Once the reverter issue is resolved, if South Bethany refuses to vacate the premises because it wants to take the property for public use and does not initiate condemnation proceedings, then an inverse condemnation action would be appropriate. In any event, Cat Hill and Taylor are not left without a state remedy if the finder of fact determines that the reversion occurred.

Cat Hill and Taylor also assert that the Court erred in granting summary judgment on the Federal procedural and substantive due process and punitive damages claims and further asserts that if the Court upholds the dismissal of these claims, it must do so on federal jurisdictional grounds and without

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

prejudice. However, the Court disagrees. Cat Hill and Taylor state that under *Abiss v. Delaware Dept. of Transp.*, D.Del., 712 F.Supp. 1159 (1989):

> [T]he basis of any due process claim in the context of a Federal inverse condemnation claim can only be addressed after two questions are decided: (1) whether property as determined by State law is taken, thus making it property protected by the U.S. Constitution; and (2) does the State law provide that the taking under color of State law will be compensated. If the answer to (1) is yes, and the answer to (2) is no, 42 U.S.C. § 1983 is available to implement relief, and a direct Federal taking remedy is ripe for consideration.

***4** As stated above, there has been no "taking" in South Bethany's remaining in possession of the property conveyed by the deed and therefore no cause of action for inverse condemnation as of yet. There cannot be a deprivation of due process for a taking when there is no taking. Once the reverter issue is decided, South Bethany's subsequent actions may give rise to due process claims, but such claims are not applicable to South Bethany's conduct thus far. Therefore, summary judgment was appropriate as to the claims under 42 U.S.C. § 1983.

With respect to Cat Hill's assertion that the case law the Court relied on in dismissing the Article 1, § § 7 and 8 due process claims under the Delaware Constitution only addresses § 7 and not § 8, Cat Hill has misinterpreted the Court's ruling. Cat Hill's counterclaim seeks "damages" from substantive and procedural due process violations of the Delaware Constitution. It is true that the case law cited, *Carr v. Town of Dewey Beach*, D.Del., 730 F.Supp. 591 (1990) and *Kern Co. v. Town of Dewey Beach*, Del.Super., C.A. No. 92C-09-007, Lee, J. (February 18, 1994), only addresses § 7 claims with respect to sovereign immunity; however, the reasoning is applicable to § 8 as well. The Court was not saying that sovereign immunity bars any recovery for property taken without compensation--this is what an inverse condemnation or trespass action addresses. A party is entitled to recover the value of the property or the amount of damages to the property. However, just as sovereign immunity bars recovery of general "due process" damages under § 7, the same argument appears applicable to "due process" damages, not actual damages, under § 8 and I do not see, as Cat Hill suggests, that "the precedential problems created by the extension of the *Carr* and *Kern* statutory defenses to constitutional protections afforded by Article I, § 8 ... are abhorrent to the only protection available to a private citizen from government confiscation of private property, the inverse condemnation remedy." Cat Hill is correct that sovereign immunity does not bar an inverse condemnation action. However, this was not the Court's ruling. In Cat Hill's counterclaim, it states that South Bethany's actions gave rise "to causes of action for inverse condemnation *and* denial of procedural and substantive due process" under Article I, § § 7 & 8 of the Delaware Constitution and seeks damages "that the Court deems just and proper for the knowing violations of the state constitution", separate from the prayer for damages for inverse condemnation. It is the "knowing violation" damages that are barred in by the Tort Claims Act, and because case law specifically has barred recovery under § 7, the same should apply to § 8. Furthermore, even if sovereign immunity were not an issue in the case *sub judice,* because the Court found that there has been no taking as of yet with respect to the property, there is no cause of action for inverse condemnation. If there has been no taking, then there cannot be a denial of due process for such a taking, and therefore any claims under § § 7 and 8 of Article I of the Delaware Constitution would fail.

***5** All of Cat Hill and Taylor's claims with respect to the property are premature and therefore summary judgment was appropriate. Here, the "dog" of this case involves real property ownership, i.e., was there a breach of the charitable conditions placed in the deed to South Bethany thereby causing the reverter clause to "kick in", and the dispute concerning the water utility lease. The "tail" of this case is the potential trespass damages awardable to Cat Hill and Taylor if, and only if, the reverter clause is determined to have become operational. I shall bifurcate the trial of these issues so the tail does not try to wag the dog. The initial trial in this case will focus only on the property issue and the lease agreement. If Cat Hill and Taylor prevail on the reversion issue, then the damages claims subsequently will be considered. These damages would begin upon the date of reversion. Similarly, if South Bethany prevails on the reversion but is found in breach of the lease agreement, the damages resulting from the breach subsequently will be considered.

This is a property case and shall be treated as a property case until the reverter issue is decided. If South Bethany loses, then its subsequent action or inaction might cause us to revisit some of these issues. South Bethany has the absolute right to a determination by the Courts of its rights and because it is in lawful possession, it may remain in lawful possession until the finder of fact at trial determines

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

whether the reverter has occurred.

Based on the foregoing, I deny the Motion to Reargue. As outlined above, I shall bifurcate the case. With respect to Cat Hill and Taylor's request for leave to file an amended counterclaim, the Court will not consider this request without first reviewing the proposed amended counterclaim. Cat Hill and Taylor should file a motion for leave to amend their counterclaim attached to the proposed amended counterclaim, within five (5) days, as suggested by Cat Hill and Taylor, of the Court's decision.

IT IS SO ORDERED.

1997 WL 27108 (Del.Super.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

21

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Louisiana.
Earl TRUVIA
v.
Henry P. JULIEN, Jr., et al
**No. Civ.A.04-0680.**

Jan. 13, 2005.

Robin Bryan Cheatham, Adams & Reese, New Orleans, LA, Phillip E. Friduss, Hall Booth Smith Slover, PC, Atlanta, GA, William B. Mitchell, Cruser & Mitchell, LLP, Norcross, GA, for Plaintiff.

William David Aaron, Jr., Richard Anthony Goins, Goins Aaron, P.L.C., Ralph R. Alexis, III, Porteous, Hainkel & Johnson, James Bryan Mullaly, City Attorney's Office, New Orleans, LA, for Defendants.

PORTEOUS, J.

*1 Before the Court is a Motion for Reconsideration of Part of Order Granting Motion to Dismiss Defendants Connick, Julien, and Sins in their Individual Capacities as Supervisors for Violating Plaintiffs' Rights, filed on behalf of the plaintiffs, Earl Truvia and Gregory Bright (Doc. 34). The matter was taken under submission on November 17, 2004. The Court, having considered the arguments of the parties, the Court record, the law and applicable jurisprudence, is fully advised in the premises and ready to rule.

*ORDER AND REASONS*

I. BACKGROUND

On September 24, 2004, this Court issued an Order denying in part and granting in part the defendants' Motion to Dismiss. The plaintiffs now request this Court to reconsider whether the defendants can be individually liable in their alleged supervisory and administrative capacity for alleging implementing and supporting an alleged policy and custom of denying Brady material to criminal defendants and for alleged failure to train other assistant district attorneys in proper handling of discovery. Plaintiffs contend that this Court did not consider plaintiffs' Amended Complaint which allegedly asserted specific factual claims and allegations against these district attorney defendants which would give rise to supervisory liability against these defendants in their individual capacities.

II. LAW AND ANALYSIS OF THE COURT

Under Rule 59 of the Federal Rules of Civil Procedure, a district court enjoys considerable discretion in granting or denying a motion for reconsideration. See, *First Commonwealth Corp. v. Hibernia Nat. Bank of New Orleans,* 891 F.Supp. 290 (E.D.La.1995), amended 896 F.Supp. 634, affirmed 85 F.3d 622. There are three grounds upon which a Court may grant a Rule 59 motion for reconsideration or to alter or amend the judgment: (1) intervening change in the controlling law has occurred, (2) evidence not previously available becomes available, or (3) it is necessary to correct clear error of law or prevent manifest injustice. *Database America, Inc. v. Bellsouth Advertising & Pub. Corp.* 825 F.Supp. 1216 (D.N.J.1993).

While the Court finds that the majority of the plaintiffs' motion merely reiterates the arguments previously made, which this Court found unpersuasive on September 24, 2004, this Court will address plaintiffs' contention that the Amended Complaint filed on their behalf alleges with sufficient factual specificity genuine issues as to the illegality of the defendants' conduct as supervisors which would give rise to supervisory liability against the defendants in their individual capacities.

Plaintiffs contend that the allegations against defendants Connick, Julien and Sins for supervisory liability are not protected by prosecutorial immunity, as this immunity only applies to activities "intimately associated with the judicial phase of the criminal process." *Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Plaintiffs assert that training/supervising is an administrative function, as opposed to adversarial. However, this Court finds, as did the Ninth Circuit Court of Appeal in *Modahl v. County of Kern,* that the management and supervision of staff involves actions preliminary to the initiation of prosecution and actions in preparation of the initiation of the criminal process and for trial. *Modahl,* 61 Fed. Appx. 394, 2003 WL

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1870878 (9th Cir.2003). These actions fall within the sphere of prosecutorial duties, which are granted absolute immunity. *Id.* Therefore, any alleged supervisory actions relating to *Brady v. Maryland* disclosures would necessarily fall within the protective ambit of *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Consequently, defendants Connick, Julien and Sins are protected by absolute immunity with respect to the supervisory liability allegations against them individually.

*2 Accordingly,

IT IS ORDERED that the Motion for Reconsideration, filed on behalf of the Plaintiffs, Earl Truvia and Gregory Bright, be, and the same is hereby, DENIED.

2005 WL 83246 (E.D.La.)

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 2687316 (Trial Motion, Memorandum and Affidavit) Reply Memorandum Filed on Behalf of Defendant Kurt Sins (Jul. 13, 2004)

• 2004 WL 2687315 (Trial Pleading) Amended Complaint (Jul. 09, 2004)

• 2004 WL 2687314 (Trial Motion, Memorandum and Affidavit) Reply Memorandum to Plaintiff's Opposition to the Motion to Dismiss Filed on Behalf of Harry Connick and Henry P. Julien, Jr. (Jun. 22, 2004)

• 2004 WL 2687312 (Trial Motion, Memorandum and Affidavit) Earl Truvia's Brief in Opposition to Motion to Dismiss Filed on Behalf of Harry Connick, Individually and in His Capacity as District Attorney for the Parish of Orleans, and Henry P. Julien, Individually and in His Capacity as Assistant District Atto rney, and Alternatively, to Require Rule 7(a) Reply (Jun. 15, 2004)

• 2004 WL 2687313 (Trial Motion, Memorandum and Affidavit) Earl Truvia's Response to Motion to Dismiss Filed on Behalf of Kurt Sins, Individually and in His Capacity as Assistant District Attorney, and Alternatively, to Require Rule 7(a) Reply (Jun. 15, 2004)

• 2004 WL 2687311 (Trial Pleading) Answer on Behalf of Harry Connick, Individually and in His Capacity as District Attorney for The Parish of Orleans, and Henry P. Julien, Jr. Individually and in His Capacity as Assistant District Attorney (Apr. 19, 2004)

• 2004 WL 2687310 (Trial Pleading) Answer (Mar. 30, 2004)

• 2004 WL 2687309 (Trial Pleading) Complaint (Mar. 09, 2004)

• 2:04CV00680 (Docket) (Mar. 09, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

22

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware.
WILMINGTON HOSPITALITY, LLC, a Delaware limited liability company, Plaintiff,
v.
NEW CASTLE COUNTY, a political subdivision of the State of Delaware, Defendant.
**No. Civ.A. 03C-07-213MMJ.**

Issued Oct. 4, 2004.
Revised Oct. 8, 2004.

Upon Plaintiff's Motion for Reargument. Denied.

*ORDER*

JOHNSTON, J.

***1** 1. By Memorandum Opinion dated August 4, 2004, the Court considered Defendant's Motion to Dismiss. The Court dismissed Counts 1 and 3 of the Complaint. Counts 2 and 4 were retained and the Court outlined certain limited discovery that would be permitted with regard to the remaining counts. Plaintiff filed a Motion for Reargument of the Court's decision.

2. The purpose reargument is to permit reconsideration of findings of fact, conclusions of law, or judgments of law. [FN1] Reargument usually will be denied unless the moving party demonstrates that the Court overlooked a precedent or legal principle that would have a controlling effect, or that it misapprehended the law or the facts in a manner affecting the outcome of the decision. "A motion for reargument should not be used merely to rehash the arguments already decided by the court." [FN2]

FN1. *Hessler, Inc. v. Farrell,* 260 A.2d 701, 702 (Del.1969).

FN2. *Wilmington Trust Co. v. Nix,* Del.Super., 2002 WL 356371, Witham, J. (Feb. 21, 2002); *Whitsett v. Capital School District,* Del.Super., C.A. No. 97C-04-032, Vaughn, J. (Jan. 28, 1999); *Monsanto Co. v. Aetna Casualty & Surety Co.,* Del.Super., C.A. No. 88-JA-118, Ridgeley, P.J. (Jan. 14, 1994).

3. During oral argument on September 9, 2004, Defendant, Plaintiff and the Court agreed that the Court erroneously stated a fact in the August 4th Opinion. The Court stated: "It is undisputed that [Plaintiff] now has sold the property at issue to a third party." In fact, Plaintiff did not sell the property to a third party. Plaintiff executed a contract to sell the property. The agreement of sale was approved by the bankruptcy court. Plaintiff's lender subsequently took title to the property and sold it to a third party. Plaintiff conceded that Plaintiff received debt relief as a result of the lender's taking of title to the property.

4. Plaintiff argues that this factual misapprehension affects the outcome of the decision. The Court held: "In order to sustain a claim for inverse condemnation, [Plaintiff] must show that it has been deprived by [Defendant] of *all economic value* of the property by [Defendant's] zoning regulations. Even assuming for purposes of this decision that [Defendant's] actions prevented [Plaintiff] from ever opening the hotel, the property *a fortiori* retained some economic value as clearly evidenced by the recent sale ." Whether Plaintiff sold the property or received the economic benefit of debt relief does not affect the Court's ruling. Plaintiff was not deprived of all economic value because it was relieved of a portion of a substantial financial obligation.

5. Plaintiff further asserts that the Court misapprehended the law by finding that Plaintiff must demonstrate denial of all economically viable use of the property. Therefore, the case should not be dismissed. Instead, Plaintiff should be given the opportunity to present evidence to a finder of fact on the issue of the economic effect of Defendant's actions upon Plaintiff. This argument was made by Plaintiff in support of its Motion to Dismiss. The Court previously considered *Palazzolo v. Rhode Island,* [FN3] in which the United States Supreme Court held: "[A] regulation which denies all economically beneficial or productive use of land will require compensation under the Takings Clause.... Where a regulation places limitations on land that fall short of eliminating all economically beneficial use, a taking nonetheless may have

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

occurred, depending on a complex of factors including the regulation's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action." [FN4]

FN3. 533 U.S. 606 (2001).

FN4. *Id.* at 617 (*citing* *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 124 (1978)).

***2** 6. As a matter of law, Plaintiff has failed to show the existence of a regulatory taking sufficient to require an evidentiary hearing for the purpose of consideration of the *Penn Central* factors. Plaintiff's cause of action is based upon the theory of a categorical or complete regulatory taking. In its Complaint, Plaintiff alleges that Defendant denied Plaintiff *"all economically viable use of the hotel property."* The law is clear that a categorical taking only occurs when there has been a complete elimination of value or a total loss. [FN5] Plaintiff has conceded that to the extent it received debt relief when it surrendered the property, it received some financial benefit.

FN5. *Tahoe-Sierra preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 330 (2002) (diminution in value of 95% not categorical taking); *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992); *Appolo Fuels, Inc. v. United States*, No. 03-5088 (Fed.Cir. Aug. 30, 2004).

7. Plaintiff has failed to demonstrate that the Court overlooked a precedent or legal principle that would have a controlling effect, or that it misapprehended the law or the facts in a manner affecting the outcome of the decision.

THEREFORE, the Plaintiff's Motion for Reargument is hereby DENIED.

2004 WL 2419157 (Del.Super.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**CERTIFICATE OF SERVICE**

I hereby certify that on April 22, 2005, the foregoing **Compendium of Unreported Cases for the Individual Defendants' Reply Brief in Support of Their Motion to Dismiss or to Stay the Proceedings** was filed electronically with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

Richard L. Abbott, Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899

Dennis J. Siebold, Esquire
New Castle County Law Department
New Castle Corporate Commons
87 Reads Way
New Castle, DE 19720

Matthew F. Boyer