IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FRANK E. ACIERNO, CHRISTIANA )
TOWN CENTER, LLC, a Delaware limited )
liability company, 395 ASSOCIATES, LLC, )
a Delaware limited liability company, )
ESTATE HOMES, INC., a Delaware )
corporation, )
                                    )
           Plaintiffs, )
                                    )
           v. )                  Civil Action No. 04-1376-KAJ
                                    )
GEORGE O. HAGGERTY, individually and )
in his official capacity as Assistant General )
Manager of the New Castle County )
Department of Land Use, TIMOTHY P. )
MULLANEY, individually and in his )
capacity as New Castle County Attorney, )
CHARLES L. BAKER, individually and in hi )
capacity as General Manager of the New )
Castle County Department of Land Use, )
JAMES H. EDWARDS, individually and in )
his capacity as Inspections Manager and )
Licensing Division Manager of the New )
Castle County Department of Land Use, )
and SHERRY L. FREEBERY, in her )
individual capacity as Chief Administrative )
Office of New Castle County and NEW )
CASTLE COUNTY, a political subdivision )
of the State of Delaware, )
                                    )
           Defendants. )

## MEMORANDUM OPINION

Richard L. Abbott, Esq., Abbott Law Firm, LLC, 724 Yorklyn Road, Suite 240,
Hockessin, DE 19707; Counsel for Plaintiffs.

Dennis J. Siebold, Esq., New Castle County Department of Law, 87 Reads Way, New
Castle, Delaware 19720; Counsel for Defendant New Castle County.

Of Counsel: Hamilton P. Fox, III, Esq., Gregory S. Smith, Esq., Carter L. Williams, Esq., Sutherland Asbill & Brennan LLP, 1275 Pennsylvania Ave., N.W., Washington, D.C. 20004.

Collins J. Seitz, Jr., Esq., Matthew F. Boyer, Esq., Max B. Walton, Esq., Connolly Bove Lodge & Hutz LLP, 1007 N. Orange St., P.O. Box 2207, Wilmington, Delaware 19899; Counsel for Defendant Scott G. Wilcox.

Michael P. Kelly, Esq., Paul A. Bradley, Esq., McCarter & English, 919 N. Market St., Suite 1800, P.O. Box 111, Wilmington, Delaware 19899; Counsel for Defendant Charles L. Baker.

Claire M. DeMatteis, Esq., Stradley, Ronon, Stevens & Young, LLP, 300 Delaware Ave., Suite 1018, Wilmington, Delaware 19801; Counsel for Defendant Sherry L. Freebery.
    Of Counsel: C. Clark Hodgson, Jr., Esq., Sean R. Adams, Esq., Stradley, Ronon, Stevens & Young, LLP, 2600 One Commerce Square, Philadelphia, Pennsylvania 19103.

Joseph R. Biden, III, Esq., Ian Connor Bifferato, Esq., Joseph K. Koury, Esq., Bifferato, Gentilotti Biden & Balick P.A., 1308 Delaware Ave., Wilmington, Delaware 19806; Counsel for Defendant Timothy P. Mullaney.

David A. Felice, Esq., Cozen O'Connor, Chase Manhattan Center, 1201 N. Market St., Suite 1400, Wilmington, Delaware 19801; Counsel for Defendants George O. Haggerty and James H. Edwards.
    Of Counsel: Jeffery I. Pasek, Esq., Cozen O'Connor, 1900 Market Street Philadelphia, Pennsylvania 19103.

---

November 23, 2005
Wilmington, Delaware



JORDAN, District Judge

## I.   INTRODUCTION

The Amended Complaint (Docket Item ["D.I."] 9) filed in this case by plaintiffs Frank E. Acierno, Christiana Town Center, LLC ("CTC"), 395 Associates, LLC ("395"), and Estate Homes, Inc. ("EHI") (collectively, "Acierno") alleges that the defendants violated Acierno's constitutional rights and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et. seq.* ("RICO"), through various actions affecting the commercial development of Acierno's land. (D.I. 9 at ¶¶ 51-71.) Acierno also alleges state law claims denominated as "civil conspiracy" and "tortious aiding and abetting." (*Id.* at ¶¶ 72-82.)

Before me now is a Motion to Dismiss the Amended Complaint (D.I. 37) filed by defendant New Castle County (the "County"). Also before me is a Motion to Dismiss the Amended Complaint or Stay the Proceedings (D.I. 40) filed by defendants George O. Haggerty ("Haggerty"), Scott G. Wilcox ("Wilcox"), Timothy P. Mullaney ("Mullaney"), Charles L. Baker ("Baker"), James H. Edwards ("Edwards") and Sherry L. Freebery ("Freebery") (collectively, the "Individual Defendants"). In addition to those motions, I also have before me a Motion for Leave to File a Second Amended Complaint (D.I. 50), filed by Acierno. The County and the Individual Defendants (collectively, "Defendants") countered with a jointly submitted Motion for Briefing Schedule on Plaintiffs' Motion for Leave to File a Second Amended Complaint. (D.I. 61.)

Jurisdiction over this case exists under 28 U.S.C. §1331 and § 1367. For the reasons that follow, the Motions to Dismiss filed by the County and the Individual Defendants will be granted to the extent that the Amended Complaint will be dismissed

without prejudice. Acierno's Motion for Leave to Amend and the joint Motion for Briefing Schedule on the Motion for Leave to Amend will be denied as moot.

## II.  BACKGROUND[1]

Frank E. Acierno owns CTC, 395, and EHI. (D.I. 9 at ¶¶ 2-4.) Acierno alleges that starting in 2002, defendants Freebery, Haggerty, and Wilcox,[2] acting in their positions in the government of New Castle County, "decided to act in concert to plan and carry out a scheme and conspiracy to deny Acierno his legal right to use and develop properties owned by him" in New Castle County. (*Id.* at ¶ 19.) In his Complaint, Acierno sets out seven different land development disputes between Acierno and the County, disputes which have led to numerous proceedings in the Delaware state courts and local administrative agencies. (*Id.* at ¶¶ 20-49.) Acierno also alleges additional wrongs beyond those seven disputes, which have also led to proceedings in Delaware state courts. (*Id.*)

---

[1] The following information is drawn from the parties' submissions and is viewed in the light most favorable to the plaintiffs. Materials beyond the pleadings are being considered in accordance with my determination that I may take judicial notice of prior judicial and administrative proceedings. *See infra* at 11-12.

[2] Freebery served as Chief Administrative Officer of New Castle County in the administration of County Executive Thomas P. Gordon (Mr. Gordon individually is referred to as "Gordon," and his administration as the "Gordon Administration"). (D.I. 9 at ¶ 10.) Haggerty was employed by the Gordon Administration as the Assistant General Manager of the New Castle County Department of Land Use. (*Id.* at ¶ 5.) Wilcox acted during the time in question either as First Assistant County Attorney or as private counsel on behalf of the County in dealing with legal issues between the County and Acierno. (*Id.* at ¶ 6.)

1.      Dispute over Red Lion Village by Sterling Properties

Acierno alleges that on December 31, 2002, Haggerty and Wilcox[3] cancelled a

pre-construction meeting regarding a property known as Red Lion Village, which was

owned by another Acierno company, Sterling Property Holdings, Inc.  (D.I. 9 at ¶ 20.)

Wilcox sent letters to Acierno on December 31, 2002 and January 2, 2003, stating that

the County could not grant any application to Acierno because he was not in good

standing with the County based on unresolved violations at other sites.  (Id. at ¶ 21, D.I.

42 at A377, A379.)  On February 4, 2003, Baker[4] sent a letter on behalf of the New

Castle County Department of Land Use (the "Department of Land Use" or the

"Department") to Acierno stating that, because Acierno had not started building on Red

Lion Village within five years of adoption of the Unified Development Code (the

"Sunsetting Provision"), his plan had to be resubmitted before he would be permitted to

begin building.  (D.I. 42 at A387.)

Acierno appealed the February 4th decision to the New Castle County Planning

Board (the "Planning Board"), which affirmed the decision of the Department of Land

Use in cancelling the meeting, finding that the Department had properly interpreted the

provisions at issue.  (D.I. 42 at A436-38.)  Acierno, through Sterling, filed a Complaint in

the Delaware Court of Chancery, No. 20408NC, against the County, the Department of

---

[3] Acierno alleges that Baker and Mullaney, as supervisors of Haggerty and
Wilcox, respectively, are liable for violations of Acierno's rights committed by their
subordinates.  (D.I. 9 at ¶¶ 44-45.)  Furthermore, Acierno claims that Freebery, as
supervisor of Baker and Mullaney, is liable both for her failure to supervise and for
directing the "unconstitutional actions . . . taken against Acierno."  (Id. at ¶ 46.)

[4] Baker was employed as the General Manager of the New Castle County
Department of Land Use, and was Haggerty's direct supervisor.  (D.I. 9 at ¶ 8.)

3

Land Use, and the Planning Board. (D.I. 42 at A361-75.) The Court of Chancery granted judgment on the pleadings to the County as to the challenge to the legality of the Sunsetting Provision, but allegations as to the unconstitutional conduct of the Individual Defendants in cancelling the December 31 meeting are still pending in the Court of Chancery. *Sterling Property Holdings, Inc. v. New Castle County*, C.A. No. 20408, 2004 WL 1087366, at *3 (Del. Ch. May 6, 2004).

    2.    Drainage Violation Notice to Christiana Town Center

Acierno next alleges that on January 15, 2003, Haggerty and Wilcox issued a Violation Notice under the County Drainage Code to CTC. (D.I. 9 at ¶ 23.) Acierno claims that certain Plaintiffs were given less that 24 hours notice of the hearing, which was scheduled by Haggerty and Wilcox. (*Id.*) Acierno alleges that at the hearing, Haggerty and Wilcox found CTC to be in violation of "numerous non-existent provisions of the County Drainage Code." (*Id.*) CTC appealed this decision to the County Board of License Inspection & Review (the "Review Board"), which affirmed on April 17, 2003 the decision made at the hearing. (D.I. 42 at A109-10.) CTC filed a petition for a writ of certiorari in the Superior Court; that court denied the writ and dismissed the action, noting that CTC had waived normal service by failing to object to the timing at the hearing. *Christiana Town Center, LLC v. New Castle County*, C.A. 03A-07-008 (RSG), 2004 WL 1551457, at *1-4 (Del. Super. Ct. July 7, 2004). Acierno and CTC appealed to the Delaware Supreme Court, which affirmed the judgment. *Christiana Town Center, LLC v. New Castle County*, C.A. No. 3342004, 2004 WL 2921830 (Del. Dec. 16, 2004).

4

### 3. Christiana Town Center Buildings 4 and 5

Acierno next alleges that Defendants issued a "factually incorrect and legally unsupported Violation Notice [to CTC] regarding the alleged failure to obtain a Certificate of Occupancy for Building Nos. 4 and 5." (D.I. 9 at ¶ 24.) Acierno alleges that CTC had Certificates of Occupancy for the occupied buildings, and was in full compliance with the County Code. (Id.) After a decision against him at a Rule to Show Cause hearing before the Department of Land Use, Acierno appealed to the Review Board, which affirmed the decision below. (D.I. 42 at A286-87; A104-06.) Acierno again filed a petition for a writ of certiorari in the Superior Court (D.I. 42 at A95-103), and that court entered a stipulation of dismissal on March 8, 2004. (D.I. 44 at A942.)

### 4. Christiana Town Center Bertucci's

Acierno alleges that Haggerty and Wilcox next deprived him of his constitutional rights "by improperly and unlawfully denying Christiana and one of its tenants, Bertucci's Restaurant Corp., the ability to obtain building permits." (D.I. 9 at ¶ 25.) Acierno asserts that Wilcox acted outside his role as First Assistant County Attorney and acted as an administrative decision maker. (Id.) Acierno filed an action in the Court of Chancery contesting the denial, but that court found that Acierno had an adequate remedy at law and had failed to exhaust all administrative remedies. Christiana Town Center, LLC v. New Castle County, C.A. No. 20214, 2003 WL 21314499, at *4 (Del. Ch. June 6, 2003). After the Supreme Court affirmed the decision of the Court of Chancery, No. 3182003, 2004 WL 77868 (Del. Jan. 16, 2004), Acierno filed a complaint in the Superior Court on the same issues. (D.I. 42 at A251-

58.) A stipulation of dismissal was entered in that action on February 20, 2004. (D.I. 44 at A941.)

### 5. Home Warranties

Acierno next claims that Haggerty and Wilcox deprived him of his constitutional rights by refusing to issue Letters of Compliance after Acierno had submitted documentation showing that he had cured prior home warranty violations. (D.I. 9 at ¶ 27.) Acierno filed an action in the Delaware Superior Court for New Castle County seeking a writ of mandamus to force the issuance of the Letters of Compliance. (*Id.*) When that court indicated that it would likely issue the writ, the Letters of Compliance were issued. (*Id.* at ¶ 28.)

### 6. Christiana Town Center Drainage Code Violation

According to Acierno, on June 11, 2003, Wilcox and Haggerty issued "a Violation Notice . . . regarding certain bogus charges under the County Drainage Code" to CTC. (D.I. 9 at ¶ 29.)  A Rule to Show Cause Hearing was held on July 8, 2003, during which, Acierno alleges, Haggerty and Wilcox committed "half a dozen or more violations of Acierno's Constitutional Due Process Rights" at a "'kangaroo court' session." (*Id.* at ¶ 30.) After a decision against him at the hearing, and after Acierno's petition for a writ of certiorari in the Superior Court was dismissed as premature, Civ. A. No. 03A-08-007 (RSG), 2003 WL 22120857, at *1 (Del. Super. Ct. Sept. 10, 2003), CTC appealed to the Review Board, which affirmed the decision made at the hearing. (D.I. 44 at A878-83.) Acierno then filed another action in the Delaware Superior Court, challenging the actions of the Department of Land Use and the Review Board, and alleging that CTC's

6

due process rights were violated by the failure to provide sufficient notice of the violations. (D.I. 44 at A822-34.) That action is currently pending.

### 7. Denial of Phase 4 Building Permit at Christiana Town Center

Acierno also alleges that Haggerty and Wilcox, in August 2003, ordered County personnel not to issue a building permit for Phase Four of CTC. (D.I. 9 at ¶ 33.) Acierno alleges that one of the reasons cited by Haggerty and Wilcox for denying the permit, namely the failure to receive a letter from DelDOT regarding road improvements, was impossible to comply with because "DelDOT ha[d] refused to permit the road work and ha[d] dubbed it unnecessary in June of 2002." (Id.) Acierno further alleges that all of the other reasons cited for denying the permit were either not required by the County Building Code or were manufactured by Haggerty and Wilcox. (Id.)

Acierno sought a writ of mandamus in the Delaware Superior Court to overturn the action of the Department of Land Use. (D.I. 43 at A463-70.) The Superior Court denied relief, finding that a writ of mandamus was not appropriate based on the facts presented. Christiana Town Center, LLC v. New Castle County, No. Civ. A. 03M-08-072 (RSG), 2004 WL 2088032, at *1 (Del.Super. 2004). Acierno then filed a Complaint in the Delaware Court of Chancery based on the same dispute. (D.I. 44 at A969-77.) That case is still pending.

8.    Other Alleged Wrongs[5]

In addition to the seven disputes outlined above, Acierno also alleges various additional wrongs committed against him by the County and the Individual Defendants. Acierno alleges that in 2003 and 2004, Freebery used County resources to "issue multiple inaccurate press releases or written statements[,] falsely painting Acierno as a lawbreaking developer." (D.I. 9 at ¶ 34.) Furthermore, Acierno alleges that, through "uneven and selective application of the law," the Individual Defendants treated him differently than other developers who were similarly situated. (Id. at ¶ 35.) Acierno alleges that this unequal treatment is evidenced by Baker's personal visits to two development projects owned by another developer, which projects were then placed on the public hearing agenda despite having been "submitted late and/or incomplete." (Id. at ¶¶ 36-37.) Acierno also notes that "Freebery for County Executive" signs were displayed on the property at those two projects. (Id. at ¶ 37.) Acierno claims that Gordon and Freebery gave preferential treatment to developer Verino Pettinaro, in

---

[5] The Individual Defendants allege that these remaining allegations relate to five separate proceedings arising out of a dispute over so-called "stop work" orders issued to address violations at CTC. With respect to the first stop work order, the proceedings include a petition for a writ of certiorari to the Delaware Superior Court filed by Acierno that was dismissed for failure to appeal to the Review Board, *Christiana Town Center, LLC v. New Castle County*, 2003 WL 22120857 (Del. Super. Sept. 10, 2003), and a complaint filed by the County in the Court of Chancery that was dismissed by stipulation without prejudice (D.I. 44 at A943). A second stop work order was issued, and three proceedings followed: an appeal to the Review Board by Acierno, in which the Board upheld the stop work order (D.I. 44 at A929-33); a suit filed by the County in the Court of Chancery, in which the County alleged that CTC had violated the stop work order (D.I. 43 at A510-32) and Acierno claimed that the Code provisions at issue were unconstitutional (*id.* at A897-99); and a petition for a writ of certiorari filed by Acierno alleging that the stop work order violated his federal and state due process rights. (D.I. 44 at A902-08.) The latter two actions remain pending.

8

return for favorable business deals for Gordon and Freebery. (*Id.* at ¶¶ 40-41.)

Furthermore, Acierno claims that developer Louis Capano has also received

preferential treatment from the Individual Defendants. (*Id.* at ¶ 42.)

Acierno further alleges that he was treated unfairly by Edwards. He alleges that

Edwards held a Rule to Show Cause hearing, which was improperly convened, and that

Edwards issued a decision adverse to Acierno six months after the hearing. (D.I. 9 at ¶

38.) Acierno claims that when dealing with another developer on another project,

Edwards found the developer in violation but fined him only $200 and refused to require

him to fix the problem that led to the fine. (*Id.* at ¶ 39.)

## III. STANDARD OF REVIEW

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction Under 12(b)(1)

Once jurisdiction is challenged, the party asserting subject matter jurisdiction has

the burden of proving its existence. *See Carpet Group Int'l v. Oriental Rug Importers*

*Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000). Under Rule 12(b)(1), the court's jurisdiction

may be challenged either facially, based on the legal sufficiency of the claim, or

factually, based on the sufficiency of jurisdictional facts. *See* 2 James W. Moore,

Moore's Federal Practice § 12.30[4] (3d ed. 1997). Under a facial challenge to

jurisdiction, the court must accept as true the allegations contained in the complaint.

*See id.* Dismissal for a facial challenge to jurisdiction is "proper only when the claim

'clearly appears to be immaterial and made solely for the purpose of obtaining

jurisdiction or . . . is wholly insubstantial and frivolous.'" *Kehr Packages, Inc. v.*

9

*Fidelcor, Inc.*, 926 F.2d 1406, 1408-1409 (3d Cir. 1991) (*quoting Bell v. Hood*, 327 U.S. 678, 682 (1946)).

Under a factual attack, however, the court is not "confine[d] to allegations in the . . . complaint, but [can] consider affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction." *Gotha v. United States,* 115 F.3d 176, 179 (3d Cir. 1997). *See also Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891-892 (3d Cir. 1977). In such a situation, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Carpet Group*, 227 F.3d at 69 (quoting *Mortensen*, 549 F.2d at 891). Although the court should determine subject matter jurisdiction at the outset of a case, "the truth of jurisdictional allegations need not always be determined with finality at the threshold of litigation." Moore at § 12.30[1]. Rather, a party may first establish jurisdiction "by means of a nonfrivolous assertion of jurisdictional elements and any litigation of a contested subject-matter jurisdictional fact issue occurs in comparatively summary procedure before a judge alone (as distinct from litigation of the same fact issue as an element of the cause of action, if the claim survives the jurisdictional objection)." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 537-38 (1995) (citations omitted).

B.    Motion to Dismiss Under 12(b)(6)

In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*,

140 F.3d 478, 483 (3d Cir. 1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* The moving party has the burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

## IV. DISCUSSION

As a threshold issue, Acierno and Defendants dispute what material may be considered in deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b). Along with their motion to dismiss, the Individual Defendants submitted extensive appendices containing violation notices, decisions of County administrative boards, Delaware state court complaints and attachments, answers to those complaints, decisions of Delaware state courts, and stipulations of dismissal of Delaware state court actions. (D.I. 42, 43, and 44.) Acierno claims that these materials cannot be considered at this stage because only the pleadings and materials attached to the Complaint may be considered in the context of a 12(b) motion to dismiss.[6] (D.I. 53 at 15.) The Defendants, on the other hand, contend that I can take judicial notice of prior proceedings and public records when considering a 12(b) motion. (D.I. 59 at 2.)

_____  _____  _____

[6] Acierno correctly cites the law stating that different materials can be considered in a facial and a factual attack on subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). (D.I. 53 at 16.) However, because I determine here that the materials submitted by the Individual Defendants fall within the categories of information of which I may take judicial notice, that distinction is irrelevant here.

11

In the Third Circuit, "on a motion . . . to dismiss pursuant to Rule 12(b), the Court
is not strictly limited to the facts addressed in the pleadings; the Court may take judicial
notice of additional facts where appropriate." *Southmark Prime Plus, L.P. v. Falzone*,
776 F. Supp. 888, 892 (D. Del. 1991) (finding that a court could take judicial notice of
proceedings in other courts, and the contents of court records); *see also In re NAHC
Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002) (taking judicial notice of SEC filings).

Therefore, to the extent that the documents submitted by the Individual
Defendants are public documents or the decisions of other courts, I take judicial notice
of those documents and will consider them here in deciding this motion to dismiss.
Contrary to Acierno's assertions, this does not turn the pending motions into ones for
summary judgment.

### A.    The Rooker-Feldman Doctrine

Defendants first argue that the Rooker-Feldman doctrine prevents this court from
hearing this action and, therefore, that this action should be dismissed under Federal
Rule of Civil Procedure 12(b)(1). Until recently, the Rooker-Feldman doctrine had been
given a relatively expansive reading. *See, e.g.*, *Exxon Mobil Corp. v. Saudi Basic
Industries Corp.*, 364 F.3d 102 (3d Cir. 2004), *rev'd*, 125 S. Ct. 1517 (2005). However,
a recent decision of the Supreme Court limited the Rooker-Feldman doctrine, stating
that it is "confined to . . . cases brought by state-court losers complaining of injuries
caused by state-court judgments rendered before the district court proceedings
commenced and inviting district court review and rejection of those judgments." *Exxon
Mobil Corp.*, 125 S. Ct. at 1521-22. The court went on to add that a federal court is not

12

precluded by Rooker-Feldman from exercising subject matter jurisdiction "simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id.* at 1527. "If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id.* at 1527 (internal quotations and citations omitted).

Here, several state court decisions reviewed administrative board decisions and decided issues of county zoning and land use law. *See, e.g.*, *Sterling Property Holdings, Inc. v. New Castle County*, C.A. No. 20408, 2004 WL 1087366, at *3 (Del. Ch. May 6, 2004); *Christiana Town Center, LLC v. New Castle County*, C.A. 03A-07-008 (RSG), 2004 WL 1551457, at *1-4 (Del. Super. Ct. July 7, 2004); *Christiana Town Center, LLC v. New Castle County*, C.A. No. 3342004, 2004 WL 2921830 (Del. Dec. 16, 2004). Acierno challenges not the state court decisions themselves but the behavior of county officials in allegedly treating him unfairly and violating various constitutional rights. (D.I. 9 at ¶¶ 21-49.) This case therefore does not fit within the paradigm of *Rooker* and *Feldman*, as explained by the Supreme Court. Accordingly, Defendants' challenge to subject matter jurisdiction fails, and principles of preclusion under Delaware state law will apply to determine whether this court can hear this action under 12(b)(6).

B.   Claim Preclusion and Issue Preclusion

Defendants argue that this court lacks jurisdiction to hear this case because prior litigation in state court and in administrative agencies must result in claim preclusion or issue preclusion. (D.I. 41 at 19-25.) Again, as a preliminary matter, principles of preclusion may operate to bar a claim or issue from being relitigated, but they do not deprive the court of jurisdiction. *See Exxon*, 125 S. Ct. at 1527 ("Preclusion, of course, is not a jurisdictional matter."). The question, then, becomes what preclusive effect, if any, the state cases have on this case.

With respect to both claim and issue preclusion, it is clear that the decisions of state courts are given preclusive effect in later actions in federal court.[7] *See* 28 U.S.C. § 1738 ("Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."). Whether a final judgment by a state court precludes federal court adjudication under either res judicata or collateral estoppel[8] is a question of state law. *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81 (1984).

---

[7] Although there are many decisions by administrative agencies on the disputes that Acierno attempts to litigate here, only the decisions of state courts are given preclusive effect here.

[8] "Res judicata" is simply another name for the doctrine of claim preclusion; similarly, "collateral estoppel" is synonymous with issue preclusion. BLACK'S LAW DICTIONARY 1312, 256 (7th Ed. 1999).

14

When a state court has entered final judgment in a proceeding, res judicata

operates to bar a federal claim that could have been brought in that state court

proceeding. *Migra*, 465 U.S. at 84-85. Under Delaware law, a party claiming

preclusion under res judicata must show:

> (1) the court making the prior adjudication had jurisdiction, (2) the parties
> in the present action are either the same parties or in privity with the
> parties from the prior adjudication, (3) the cause of action must be the
> same in both cases or the issues decided in the prior action must be the
> same as those raised in the present case, (4) the issues in the prior action
> must be decided adversely to the plaintiff's contentions in the instant case,
> and (5) the prior adjudication must be final

*Bailey v. City of Wilmington*, 766 A.2d 477, 481 (Del. 2001).[9] The determination of

whether claim preclusion operates to bar a claim is "based on the underlying

transaction and not on the substantive legal theories or types of relief which are sought.

Under the modern rule, ordinarily a transaction gives rise to only one claim regardless

of the number of ways that the claim can be asserted." *Maldonado v. Flynn*, 417 U.S.

378, 381 (Del. Ch. 1980).

---

[9] In neither his complaint nor his briefs does Acierno challenge the jurisdiction of the Delaware courts or local administrative agencies that decided the relevant disputes before them. (D.I. 9, 52, 53). Furthermore, it is clear that the County, a party in all of the state court and administrative actions, is in privity with the Individual Defendants, as the Individual Defendants were employees of the County and acting within the scope of their employment in committing the alleged violations. They are therefore bound by any prior judgments against the County for actions taken in their official capacities. *See, e.g. Fox v. Christina Square Assoc., L.P.*, 1994 WL 146023, at *3 (Del.Super. 1994) ("The concept of privity pertains to the relationship between a party to a suit and a person who was not a party but whose interest in the action was such that he or she will be bound by the final judgment as if he or she were a party.")

15

Collateral estoppel, or issue preclusion, operates to bar parties from relitigating the factual issues litigated in a prior case. *Columbia Cas. Co. v. Playtex FP, Inc.*, 584 A.2d 1214, 1216 (Del. 1991) ("where a question of fact essential to the judgment is litigated and determined by a valid and final judgment, the determination is conclusive between the same parties in a subsequent case on a different cause of action"). A party alleging that a particular issue is barred by collateral estoppel must show that "(1) a question of fact essential to the judgment, (2) [was] litigated and (3) determined (4) by a valid and final judgment." *Messick v. Star Enterprise*, 655 A.2d 1209, 1211 (Del. 1995) (internal citations and quotations omitted).

Here, Acierno has essentially attempted to repackage the same claims that he has already pursued in state courts and before local administrative agencies. He seeks, in short, a second bite at the apple. Actually, given the number of lawsuits he has brought on these disputes, that metaphor significantly understates the apple's risk. Under the factors outlined above, it is clear that many of Acierno's claims are barred by res judicata and collateral estoppel, as those claims spring from disputes that have already been finally resolved in state courts.

First, with respect to the dispute over Red Lion Village by Sterling Properties, the New Castle County Planning Board found that the pre-construction meeting on that property had been properly cancelled. (D.I. 42 at A436-38.) Acierno attempts to assert here, again, that this cancellation was improper. (D.I. 9 at ¶¶19-22.) Although the Planning Board decided the same issues that are presented here, and its decision was adverse to Acierno, its decision was not final. (D.I. 42 at A436-38). Acierno brought a case in the Court of Chancery challenging those same actions by the County. (D.I. 42

16

at A361-75.) The Court of Chancery granted judgment on the pleadings to the County as to the legality of the Sunsetting Provision. *Sterling Property Holdings, Inc. v. New Castle County,* C.A. No. 20408, 2004 WL 1087366, at \*3 (Del. Ch. May 6, 2004). That decision precludes Acierno, under principles of collateral estoppel, from challenging the legality of the Sunsetting Provision here. However, the case in the Court of Chancery is still pending regarding constitutional claims brought by Acierno against the County, and those claims are not precluded.

Second, with respect to the dispute over the drainage violation notice to CTC, Acierno's claims against the County and the Individual Defendants are barred by the doctrine of res judicata. In his complaint, Acierno claims that he was denied procedural due process through improper notice of the Rule to Show Cause hearing regarding that violation. (D.I. 9 at ¶ 23.) However, the Supreme Court of Delaware found that "the record shows that Christiana voluntarily, knowing and intelligently waived its due process rights to adequate notice of the RTC [Rule to Show Cause] hearing by failing to object to the inadequate notice at the actual hearing." *Christiana Town Center, LLC v. New Castle County,* No. 3342004, 2004 WL 2921830, at \*3 (Del. Dec. 16, 2004). That judicial decision was final and adverse to Acierno, and therefore the claims involving those facts are precluded.

Third, Acierno brings claims against the County and the Individual Defendants based on a dispute over a violation notice issued to CTC for failure to obtain a Certificate of Occupancy for Buildings 4 and 5. (D.I. 9 at ¶ 24.) Acierno's claims based on this dispute are also precluded by res judicata. Acierno challenged the decision of the Review Board, affirming a decision of the Department of Land Use against Acierno,

17

by filing a petition for a writ of certiorari in the Superior Court. (D.I. 42 at A95-103.) The Review Board's decision found that CTC was not in compliance with the County Code at the time that the Violation Notice was issued. (D.I. 42 at A104-06.) The Superior Court entered a stipulation of dismissal with prejudice in that action on March 8, 2004. (D.I. 44 at A942.) That final resolution by the Delaware Superior Court precludes Acierno from bringing this claim here.

Fourth, Acierno makes claims based on the denial of building permits to CTC and its tenant, Bertucci's Restaurant Corp. (D.I. 9 at ¶ 25.) The Delaware Court of Chancery previously dismissed a case over that dispute, based partially on a finding that CTC had not exhausted all of its administrative remedies. *Christiana Town Center, LLC v. New Castle Center*, C.A. No. 20214, 2003 WL 21314499, at *4 (Del.Ch. 2003) ("appeals to a court of law cannot occur until after the Planning Board has rendered a decision. Therefore, a statutory remedy at law exists by which Christiana can appeal the County's decision to deny its application to the Planning Board, and thereafter, to a court of law.") That decision was affirmed by the Delaware Supreme Court. *Christiana Town Center, LLC v. New Castle County*, 841 A.2d 307, 2004 WL 77868, at *1 (Del. 2004). Acierno then filed a complaint in the Superior Court on the same issues (D.I. 42 at A251-58), but a stipulation of dismissal with prejudice of that case was entered on February 20, 2004. (D.I. 44 at A941.) As a result, Acierno cannot now assert these claims, as the final rulings of the Delaware courts requiring Acierno to exhaust his administrative remedies bar his bringing them.

Fifth, Acierno filed an action in the Delaware Superior Court, seeking a writ of mandamus that would force the County to issue Letters of Compliance in connection

18

with home warranty violations. (D.I. 9 at ¶ 27.) Those letters were ultimately issued by the County. (*Id.* at ¶ 28.) Acierno now asserts claims for attorneys' fees and litigation costs, as well as losses based on the loss of use of his land. (*Id.*) However, as was stated above, res judicata bars not only claims that were brought in prior proceedings, but also claims that could have been brought. *See, e.g.*, *Migra*, 465 U.S. at 84-85. Acierno's claims of violations of his constitutional rights, as well as his claims for attorney's fees, costs, and losses could have been brought in front of the Delaware Superior Court in connection with his motion for a writ of mandamus. *See, e.g, New Castle County v. Sterling Properties, Inc.*, 379 A.2d 1125, 1129 (Del. 1977) ("The County is barred, in our opinion, by rules of privity and res judicata from litigating in this action an issue which the members of the County Council could have litigated on behalf of the County in the mandamus action."). Therefore, these claims are now barred by principles of claim preclusion.

Sixth, Acierno alleges that the County and the Individual Defendants violated his constitutional rights by issuing a "bogus" violation notice of charges under the County Drainage Code. (D.I. 9 at ¶ 29.) An action regarding this violation is currently pending in the Superior Court, and there has yet to be a final decision. (D.I. 44 at A822-34.) Therefore, the principles of res judicata and collateral estoppel do not apply to this dispute.

Seventh, Acierno claims that the County and the Individual Defendants violated his rights by refusing to issue a building permit for Phase 4 of CTC. (D.I. 9 at ¶ 33.) Acierno has brought suit alleging this violation in the Court of Chancery, but there has

19

not been a final decision. (D.I. 44 at A969-77.) Therefore, this claim too is not precluded.

Finally, two cases, one in the Court of Chancery and one in the Superior Court, remain pending based on two separate stop work orders issued to CTC by the County. Acierno bases his claims here in part on the issuance of these stop work orders. (D.I. 9 at ¶ 35.) Because there is no final decision in the pending state cases, the underlying disputes are not barred by principles of res judicata or collateral estoppel.

C.    Abstention

As was described earlier, there are five pending state court proceedings that arise out of the same factual scenarios that Acierno alleges here. Four of those were filed by Acierno, and in them he has alleged violations of his constitutional rights. (See, e.g., D.I. 42 at A373, ¶¶ 50-51; D.I. 44 at A824, ¶ 9; D.I. 44 at A972, ¶ 14; D.I. 44 at A904, ¶ 12). In the fifth proceeding, which was filed by the County in the Court of Chancery, (D.I. 43 at A510-32), Acierno alleged constitutional violations in his counterclaim and answer. (D.I. 44 at A897-98, ¶¶ 111-112.) Where an action in federal court essentially duplicates an action currently pending in state court, the federal court may abstain from exercising jurisdiction, as explained in *Colorado River Water Conservation District v. United States*. 424 U.S. 800 (1976). While the Supreme Court held in *Colorado River* that abstention is warranted only in exceptional, limited circumstances, *id.* at 813, such circumstances exist here.

When determining whether to abstain under *Colorado River*, a court should consider six factors: "(1) which court first assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation;

20

(4) the order in which jurisdiction was obtained; (5) whether federal or state law
controls; and (6) whether the state court will adequately protect the interests of the
parties."[10] *Spring City Corp. v. American Bldgs. Co.*, 193 F.3d 165, 171 (3d Cir. 1999).
Here, as to the first factor, although no specific piece of property is at issue, Acierno is
litigating his right to use and develop land in New Castle County in five separate
proceedings in the Delaware courts. Even though this does not directly fit into the first
*Colorado River* factor, it is clear that the Delaware state courts and local administrative
agencies are the desired fora for addressing land use rights. *Acierno v. Mitchell*, 6 F.3d
970, 975 (3d Cir. 1993) ("land-use regulation generally affects a broad spectrum of
persons and social interests, and ... local political bodies are better able than federal
courts to assess the benefits and burdens of such legislation") (citation omitted).
Therefore, because the state courts in Delaware first assumed jurisdiction over
Acierno's land use disputes, the first factor of *Colorado River* weighs in favor of
abstention.

The second factor of *Colorado River* weighs against abstention; the state court is
no more convenient than the federal court, as the two courts are located just blocks

---

[10] The Supreme Court originally delineated only the first four factors. *Colorado
River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 818 (1976) ("the court first
assuming jurisdiction over property may exercise that jurisdiction to the exclusion of
other courts . . . [and] may also consider such factors as the inconvenience of the
federal forum, the desirability of avoiding piecemeal litigation, and the order in which
jurisdiction was obtained by the concurrent forums") (internal citations omitted). The
final two factors were articulated by the Supreme Court in *Moses H. Cone Memorial
Hospital v. Mercury Construction Corp.* 460 U.S. 1, 23, 26 (1983) ("Besides the four
factors expressly discussed in Colorado River, there is another that emerges . . . the
fact that federal law provides the rule of decision on the merits"; "an important reason
against allowing a stay is the probable inadequacy of the state-court proceeding to
protect Mercury's rights").

21

from one another. However, the third factor, avoiding piecemeal litigation, weighs heavily in favor of abstention. As has been stated several times, Acierno already has five different suits pending in Delaware courts. (*See, e.g.*, D.I. 42 at A361-75; D.I. 44 at A822-34; D.I. 44 at A902-08; D.I. 44 at A969-77; D.I. 43 at A510-32.) All five of these suits contain claims that the actions of the Individual Defendants and the County violated his constitutional rights. (*See* D.I. 42 at A373, ¶¶ 50-51; D.I. 44 at A824, ¶ 9; D.I. 44 at A972, ¶ 14; D.I. 44 at A904, ¶ 12; D.I. 44 at A897-98, ¶¶ 111-112.) Adding a sixth case would only further fragment the dispute resolution processes that are underway.

The fourth *Colorado River* factor also weighs in favor of abstention. The five state court proceedings that are currently pending are at different stages of completion. The present case was filed on October 21, 2004. Four of the five state court proceedings were filed in 2003, and the fifth was filed by Acierno in early October of 2004. (*See* D.I. 42 at A361-75; D.I. 44 at A822-34; D.I. 44 at A902-08; D.I. 44 at A969-77; D.I. 43 at A510-32.) Moreover, each of those state court cases is based on administrative proceedings that began long before this case was filed. Therefore, under the fourth *Colorado River* factor, this court should abstain and allow cases first filed in the state courts to run their course.

The next factor to be considered, whether federal or state law controls, weighs somewhat in favor of abstention. Acierno here attempts to assert claims under § 1983 and RICO, both of which are vehicles for vindicating federal rights. (D.I. 9 at ¶¶ 51-71.) However, the outcome of those claims depends in large measure on the determination

22

of whether the County and the Individual Defendants properly followed state law and regulations in their dealings with Acierno.

The final factor, whether the state court will adequately protect the interests of the parties, clearly weighs in favor of abstention. Each of the pending state proceedings presents one or more of the constitutional claims presented here. (See D.I. 42 at A361-75; D.I. 44 at A822-34; D.I. 44 at A902-08; D.I. 44 at A969-77; D.I. 44 at A897-899.) Because the Delaware courts are fully capable of addressing those claims, abstention under *Colorado River* is appropriate.

Having determined that abstention is appropriate, the next question is whether this case should be stayed or dismissed. The United States Courts of Appeal for the First, Second, Seventh, and Ninth Circuits have found that a plaintiff's decision to file overlapping suits in both state and federal court is a relevant factor to consider when determining whether a district court should dismiss the federal case. *See, e.g.*, *American Int'l Underwriters (Philippines), Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1260-61 (9th Cir. 1988); *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, (1st Cir. 1990); *LaDuke v. Burlington Northern R.R. Co.*, 879 F.2d 1556, 1561 (7th Cir. 1989); *Telesco v. Telesco Fuel and Masons*, 765 F.2d 356, 363 (2d Cir. 1985). As the Ninth Circuit stated, "it is clear that the rationale that prohibits plaintiffs from removing cases to federal court under 28 U.S.C. § 1441 also bars [a plaintiff] from bringing . . . [a] repetitive lawsuit in federal court." *American Int'l Underwriters*, 843 F.2d at 1260. "The district court was justified in dismissing [the plaintiff's] complaint for this reason as well as for abstention reasons." *Id.* at 1261.

Acierno has filed four of the five Delaware state suits that overlap this suit. He now recasts his state court claims in an attempt to get this court to examine what he has already litigated or is already litigating elsewhere. Acierno's claims will be dismissed without prejudice as opposed to being stayed, because the claims he brings here overlap totally with factual scenarios that he is litigating in Delaware state courts, such that, after the state cases are finally decided, it is unlikely that there will be issues left to litigate.[11] *See, e.g., Lui v. Commission, Adult Entertainment, De*, 369 F.3d 319, 327 (3d Cir. 2004) ("where 'a stay of the federal suit pending resolution of the state suit meant that there would be no further litigation in the federal forum; [then] the state court's judgment on the issue would be res judicata ... [and the] stay order amounts to a dismissal of the suit.'" (*quoting Moses H. Cone Mem. Hosp.,* 460 U.S. at 10 )). However, in the unlikely event that some claims remain, the dismissal is without prejudice, so that Acierno may refile claims if appropriate at a later time.

D.    Motion for Leave to Amend

Because I have here determined that all of the claims at issue are either barred by res judicata and collateral estoppel, or should be dismissed on grounds of

---

[11] Whether or not state law would provide a remedy for Acierno's alleged state law claims, denominated as "civil conspiracy" and "tortious aiding and abetting," they too are subject to res judicata and abstention. As was stated above, "ordinarily a transaction gives rise to only one claim regardless of the number of ways that the claim can be asserted." *Maldonado v. Flynn,* 417 U.S. 378, 381 (Del. Ch. 1980). Therefore, Acierno's state law claims are subject to the same preclusion as his constitutional claims and claims under RICO. Furthermore, as to those disputes which have not yet been resolved in the Delaware courts, it appears that they will turn on questions of state law, and that is yet another reason for this court to abstain. *Spring City Corp.,* 193 F.3d at 171 (3d Cir. 1999) (stating that the fifth factor under the Colorado River analysis is "whether federal or state law controls").

abstention, I decline to reach any of the other arguments made by the parties. The current motion for leave to file a Second Amended Complaint (D.I. 50) will be denied as moot, and the joint motion filed by the County and the Individual Defendants for a Briefing Schedule on Plaintiffs' Motion for Leave to File a Second Amended Complaint (D.I. 61) will also be denied as moot.

## V.   CONCLUSION

Accordingly, the County's Motion to Dismiss the Amended Complaint (D.I. 37) and the Individual Defendants' Motion to Dismiss the Amended Complaint or Stay the Proceedings (D.I. 40) are granted to the extent that this case is dismissed without prejudice. Acierno's Motion for Leave to File a Second Amended Complaint (D.I. 50) and Defendants' Motion for a Briefing Schedule on the Motion for Leave to File a Second Amended Compliant (D.I. 61) are denied as moot. An appropriate order will follow.